**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| PPS DATA, LLC<br><br><br>vs.<br><br><br>JACK HENRY & ASSOCIATES, INC. | CIVIL ACTION No. 2:18-cv-0007-JRG |

**DEFENDANT'**
**DEFENDANT'S RESPONSE TO MOTION FOR JUDGMENT OF INVALIDITY**
**UNDER 35 U.S.C. § 101**

# TABLE OF CONTENTS

**Page**

I.   Introduction....................................................................................................... 1

II.  Background....................................................................................................... 1

III. Applicable Law ................................................................................................ 1

IV. JHA's Motion is a Motion for Summary Judgment Under Rule 56......................................... 2

V.  The Invention Claimed in the Asserted Patents is Patent Eligible  ........................................ 3

    A.   The Asserted Patents' Claims are Not Directed to an Abstract Idea ............................ 5

    B.   The Asserted Patents' Claims Include an Inventive Concept .................................... 14

VI. Claim Construction is Necessary ........................................................................... 23

VII. Conclusion ................................................................................................... 24

**TABLE OF AUTHORITIES**

**Cases**                                                                         **Page(s)**

*In re Abele*,
    684 F.2d 902 (CCPA 1982) ................................................................20

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
    838 F.3d 1253 (Fed. Cir. 2016)............................................................7

*Alice Corp. Pty. Ltd. v. CLS Bank Inern.*,
    134 S. Ct. 2347, 2355 (2014)..............................................5, 14, 16

*Amdocs (Israel) Ltd. V. Openet Telecom, Inc.*,
    841 F.3d 1288 (Fed. Cir. 2016)......................................................7, 18

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
    809 F.3d 1282 (Fed. Cir. 2015)......................................................6, 11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................2

*Bascom Global Internet Services, Inc. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016)...........................................................15

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................2

*Bilski v. Kappos*,
    130 S. Ct. 3218 (2010)........................................................................19

*In re Bilski*,
    545 F.3d 943 (Fed. Cir. 2008)......................................................20, 21

*Causey v. Sewell Cadillac-Chevrolet, Inc.*,
    394 F.3d 285 (5th Cir. 2004) ...............................................................2

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
    776 F.3d 1343, 1347 (Fed. Cir. 2014)..............................................6, 13

*Electric Power Group, LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016)...........................................................14

*Enfish, LLC v. Microsoft Corporation*,
    822 F.3d 1327 (Fed. Cir. 2016)..............................5, 6, 7, 10, 11, 13

*Genband US LLC v. Metaswitch Networks Ltd*,
    211 F.Supp.3d 858 (E.D. Tex. 2016) ...................................................4

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,
  313 F.3d 302 (5th Cir. 2002) ...............................................................................1

*Intellectual Ventures I LLC v. Capital One Financial Corp.*,
  850 F.3d 1332 (Fed. Cir. 2017)...........................................................................15

*Intellectual Ventures I LLC v. Symantec Corp.*,
  838 F.3d 1307 (Fed. Cir. 2016)...........................................................................12

*Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*,
  677 F.2d 1045 (5th Cir. 1982) ..............................................................................2

*In re Katrina Canal Breaches Litigation*,
  495 F.3d 191 (5th Cir. 2007) ................................................................................2

*Mortgage Grader, Inc. v. First Choice Loan Services Inc.*,
  811 F.3d 1314 (Fed. Cir. 2016)...........................................................................14

*OIP Technologies, Inc. v. Amazon.com, Inc.*,
  788 F.3d 1359 (Fed. Cir. 2015)...........................................................................14

*Proto Labs, Inc. v. Ico Products, LLC*,
  Civ. No. 15-02562 (SRN/JSM), 2016WL 4974951, at *5 (D. Minn. Sept. 156,
  2016) .....................................................................................................................4

*Rapid Litigation Management Ltd. v. CellzDirect, Inc.*,
  827 F.3d 1042, 1051 (Fed. Cir. 2016)..................................................................16

*RecogniCorp, LLC v. Nintendo Co. Ltd.*,
  855 F.3d 1322 (Fed. Cir. 2017)...........................................................................12

*In re Smith*,
  815 F.3d 816 (Fed. Cir. 2016).............................................................................12

*Solutran, Inc. v. U.S. Bancorp*,
  291 F.Supp.3d 877 (D. Minn. 2017) .................................................10, 11, 19, 20

*T-Rex Prop., AB v. Cedar Fair, L.P.*,
  No. 16-2018 (DWF/BRT), 2017WL 2414482, at *4 (D. Minn. June 2, 2017) ........4

*In re TLI Communications LLC Patent Litigation*,
  823 F.3d 607 (Fed. Cir. 2016)..........................................................................6, 12

*Ultramercial, Inc. v. Hulu, LLC*,
  772 F.3d 709 (Fed. Cir. 2014)...............................................................7, 8, 19, 21

*Versata Development Group, Inc. v. SAP America, Inc.*,
  793 F.3d 1306 (Fed. Cir. 2015)...........................................................................21

**Statutes**

35 U.S.C. § 282(a) ......................................................................................................................4

# I.     Introduction

In its Motion for Judgment on the Pleadings, file on July 20, 2018, Jack Henry & Associates ("JHA") alleges that the asserted claims of the asserted patents-in-suit are directed to patent ineligible subject matter under 35 U.S.C. § 101.  The Court should deny JHA's motion. JHA has not met its high burden of proof to show that the asserted claims of the patents-in-suit are invalid under Section 101.

# II.     Background

PPS Data's complaint alleges that JHA infringes five U.S. patents, 7,181,430 (the "'430 patent"), 7,216,106 (the "'106 patent"), 7,440,924 (the "'924 patent"), 7,624,071 (the "'071 patent") and 8,660,956 (the "'956 patent") (collectively "the asserted patents).  The '430 patent contains 55 claims, of which only three are independent.  The '106 patent contains 51 claims, of which only three are independent.  The '924 patent contains 34 claims, of which only three are independent.  The '071 patent contains 23 claims, of which only three are independent.  The '956 patent contains 11 claims, of which only one is independent.  The claims of the asserted patents include system claims, method claims and apparatus claims.[1]

# III.     Applicable Law

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed-but not early enough to delay the trial-a party may move for judgment on the pleadings."  The standard for deciding a motion under Rule 12(c) is the same as the one for deciding a motion to

---

[1] Based on the information available, PPS Data asserted the following claims against JHA: Claims 1, 2, 3, 4, 5, 6, 7, 8, 12, 15, 18, 19, 20, 21, 22, 23, 24, 25, 26, 30, 33, and 36 of the '430 patent; Claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, and 15 of the '106 patent;  Claims 1, 2, 3, 4, 5, 6, 10, 11, 12, 13, 14, 15, 16, 17, 21, and 22 of the '924 patent; Claims 1, 2, 3, 4, 5, 6, 10 and 12 of the '071 patent; and  Claims 1, 2, 3, 4, 5, 6, 10 and 12 of the '071 patent (hereinafter the "asserted claims").

dismiss under Rule 12(b)(6). *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 302, 313 n. 8 (5th Cir. 2002).

When deciding a motion to dismiss under Rule 12(b)(6), the court must "accept all well-pleaded facts as true, viewing them in light most favorable to the plaintiff." *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007)(internal citation and internal quotation marks omitted). To survive a Rule 12(b)(6) motion, the plaintiff's pleadings must allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982).

Rule 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." However, documents referred to in the complaints may be considered in a Rule 12(b)(6) or Rule 12(c) motion. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

## IV.     JHA's Motion is a Motion for Summary Judgment Under Rule 56

As a preliminary matter, the Court should consider JHA's motion as a motion for summary judgment under Fed. R. Civ. P. 56. In its motion, JHA presents matters that are outside the pleadings. JHA argues that the prosecution of an abandoned patent application is relevant to the validity of the asserted patents. The '667 application was abandoned and is not a part of this

lawsuit.  Dtk. 28, pp. 22-24.  Although the '667 application claims the same priority date as the asserted patents, the '667 application is not referenced anywhere in the pleadings in this case. Exhibits 5-9 to the motion are materials related to the '667 application which were neither included with or cited in PPS Data's complaint.

JHA cites no case law to support its assertion that the prosecution of the '667 application, which occurred years after the asserted patents issued, has any relevance regarding the validity of the asserted claims of the patents-in-suit.  JHA asks the Court to assume that PPS Data's decision to abandon the '667 application is an admission that earlier issued patents in the same family as the '667 application are invalid.  JHA cites no evidence that would give rise to the reasoning behind the decision to abandon the '667 application.  Indeed, JHA has not taken any discovery related to the decision to abandon the '667 application.   This is a perfect example of why matters outside the pleadings cannot be presented in a motion pursuant to Rule 12(c).

## V.      The Invention Claimed in the Asserted Patents is Patent Eligible

The invention set forth in the asserted claims of the patents-in-suit relate to a system, apparatus and  physical process and therefore constitutes patent-eligible subject matter under 35 U.S.C. § 101.  Since the invention is not directed to an abstract idea, there is no basis for JHA's motion for judgment on the pleadings on section 101 grounds.

In its motion, JHA tries very hard to depict the claims of the asserted patents as being only directed to a method.  This is not true.  The inventions claimed in the asserted patents include a system, a computer readable medium and a physical process.  JHA claims that claim 1 of the '430 patent, which claims a physical process, is representative of all claims of the five asserted patents.  Although PPS Data strongly disagrees with JHA's over generalization, for the purposes of opposing JHA's motion, PPS Data will address JHA's allegations regarding claim 1 of the '430 patent.

The U.S. Patent Act requires that all issued patents are presumed valid:

> A patent shall be presumed valid. ... The burden of
> establishing invalidity of a patent or any claim thereof
> shall rest on the party asserting such invalidity.

35 U.S.C. § 282(a).

Courts have not hesitated to apply this presumption to validity challenges under § 101. *See, e.g.*, *Genband US LLC v. Metaswitch Networks Ltd,* 211 F.Supp.3d 858, 902 (E.D. Tex. 2016) ("To invalidate a claim because it does not claim eligible subject matter, the challenger must prove their case by clear and convincing evidence."); *T-Rex Prop., AB v. Cedar Fair, L.P.*, No. 16-2018 (DWF/BRT), 2017WL 2414482, at *4 (D. Minn. June 2, 2017) ("[T]he Court agrees with the decisions that have applied the statutory presumption of validity" under § 101). Indeed, while a minority of courts have declined to apply the presumption in § 101 cases, this Court has embraced the "more persuasive" and "apparent majority view" that the presumption applies to § 101. *Proto Labs, Inc. v. Ico Products, LLC*, Civ. No. 15-02562 (SRN/JSM), 2016WL 4974951, at *5 (D. Minn. Sept. 16, 2016) (citing *SkillSurvey, Inc. v. Checkster LLC*, 178 F. Supp. 3d 247 (E.D. Pa. 2016); *Listingbrook, LLC v. Market Leader, Inc.*, 144 F. Supp. 3d 777, 784 (M.D.N.C. 2015); *Exergen Corp. v. Brooklands Inc.*, 125 F. Supp. 3d 307, 311-12 (D. Mass. 2015); and *Tuxis Technologies, LLC v. Amazon.com, Inc.*, No. 13-1771-RGA, 2014WL 4382446, at *1 (D. Del. Sept. 3, 2014)).

Applying this presumption, dismissal will generally be unwarranted unless the "**only** plausible reading of the patent must be that there is clear and convincing evidence of ineligibility." *Proto Labs,* 2016WL 4974951, at *4 (emphasis in original).  To prevail on its motion, JHA must prove, by clear and convincing evidence, that each asserted claim of the patents-in-suit is invalid for being directed to an abstract idea.

As the Supreme Court explained in *Alice*, determining whether an invention constitutes patent-eligible subject matter requires a two-step analysis. The first step is to "determine whether the claims at issue are directed to a patent-ineligible concept." *Alice*, 134 S. Ct. at 2355 (2014) (citing *Mayo*, 132 S.Ct. at 1297). The second step is to "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.*

### A. The Asserted Patents' Claims are Not Directed to an Abstract Idea

The *Alice* test's first step requires the court to consider whether the claims at issue are directed to an abstract idea. *Alice*, 134 S. Ct. at 2355. The Supreme Court emphasized that it is important to "tread carefully in construing this exclusionary principle lest it swallow all of patent law," since, at some level, "***all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas***." *Alice*, at 2354 (emphasis added). The Federal Circuit has explained that the way to tread carefully is to focus on whether the claims are "directed to" the abstract idea rather than whether they simply embody, use, or apply the abstract idea. *Enfish, LLC v. Microsoft Corporation*, 822 F.3d 1327, 1337 (Fed. Cir. 2016). This is true even if a claim involves computer software, as the Federal Circuit has made clear that even though all inventions might embody or apply an abstract idea, not all software claims are "directed to" an abstract idea. *Enfish*, at 1335. In other words, the Supreme Court's test is not whether an abstract idea can be found in the claim, but rather whether the claims are actually directed to the abstract idea. Unfortunately, the Supreme Court has not yet set forth a definition of what constitutes an "abstract idea." *Enfish*, 822 F.3d at 1334. Instead, courts are left "to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Id*. Federal Circuit case law does offer some guidance:

> Abstract steps are, axiomatically, the opposite of tangible steps; that which is not tangible is abstract. But steps that involve machines, which are tangible, steps that involve transformation of tangible subject matter, or tangible implementations of ideas or abstractions should not be considered to be abstract ideas.

*Ariosa Diagnostics, Inc. v. Sequenom, Inc*., 809 F.3d 1282, 1285 (Fed. Cir. 2015) (Judge Lourie's concurrence in denial of petition for rehearing en banc). This is not to say that a claim that recites a machine or other tangible subject matter is automatically patent-eligible under section 101, as the Federal Circuit has, since *Alice*, found claims that incorporated tangible items to be ineligible. *See, e.g., In re TLI Communications LLC Patent Litigation*, 823 F.3d 607, 611 (Fed. Cir. 2016) ("not every claim that recites concrete, tangible components escapes the reach of the abstract-idea inquiry"); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,* 776 F.3d 1343, 1347 (Fed. Cir. 2014) (finding that claims reciting a scanner are nevertheless directed to an abstract idea). In other words, when claims are directed to an abstract idea, the mere presence of a tangible item in the claim will not save it under *Alice*'s step one.

On the other hand, in situations when the claims are not directed to an abstract idea, the mere fact that a claim involves or uses an abstract idea will not prevent the claim from being patent-eligible under *Alice*'s step one. *See, e.g., Enfish*, 822 F.3d at 1335 ("The 'directed to' inquiry, therefore, cannot simply ask whether the claims involve a patent-ineligible concept, because essentially every routinely patent-eligible claim involving physical products and actions involves a law of nature and/or natural phenomenon—after all, they take place in the physical world.").

Thus, the question under *Alice*'s step one of whether the claim is directed to an intangible abstract idea cannot be answered by merely identifying an abstract idea or a tangible item within the claim itself. Instead, the Federal Circuit has explained that step one's "directed to" inquiry

requires a determination as to whether the character of the claims "as a whole is directed to excluded subject matter." *Enfish*, 822 F.3d at 1335. To determine this "character," it is important that the claims as a whole be "considered in light of the specification." *Id*.

In identifying the character of the claim, one cannot simply describe the claim "at a high level of abstraction," as this would all but ensure "that the exceptions to § 101 swallow the rule." *Enfish*, 822 F.3d at 1337. Instead, the Federal Circuit instructs courts to focus on the claimed advance over the prior art. *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016). *See also Amdocs (Israel) Ltd. V. Openet Telecom, Inc.*, 841 F.3d 1288, 1310 (Fed. Cir. 2016) (Reyna, J., dissenting) ("the step one inquiry is a legal analysis that must focus on determining 'what type of discovery is sought to be patented.'") (quoting *Parker v. Flook*, 437 U.S. 584, 593 (1978)). In other words, the question is whether the claimed advance over the prior art identified in the claims and the specification is directed to an abstract, intangible idea, or to tangible steps involving tangible subject matter. Note that while the inventor's understanding of the advancement over the prior art as identified in the specification is an important part of this determination, the prior art's actual teachings are irrelevant to this step one analysis. *Ultramercial, Inc. v. Hulu, LLC,* 772 F.3d 709, 715 (Fed. Cir. 2014) ("any novelty in implementation of the idea is a factor to be considered only in the second step of the *Alice* analysis").

In making this determination, the Federal Circuit further reminds us that *Alice*'s step one must be considered a "meaningful" step, and that a substantial class of claims will not be considered directed to a patent-ineligible concept under this step. *Enfish*, 822 F.3d at 1335.

In this case, an analysis of the claims as a whole, when viewed in light of the specification, makes clear that character of the claims of the asserted patents are not directed to

an abstract idea. Instead, the claims' character is directed to a physical process for processing paper checks in which data captured from a paper check at a remote site is used to process the deposit while bypassing the prior MICR capture, deposit accounting, cash management, and float processing systems of the bank of first deposit.

The analysis of the claims' character must start with the content of the claims themselves. *Ultramercial*, 772 F.3d at 714. For the purpose of determining the character of the claims, the analysis for all the claims will be essentially the same as the analysis of claim 1 of the '430 patent.

JHA argues that Claim 1 of the '430 patent is representative of the claims of all of the asserted patents. Claim 1 starts with a preamble explaining that the claim covers "[a] method for deposit processing at a central system a plurality of checks deposited at a remote site with accompanying deposit information." Claim 1 contains four steps:

1. the central system receiving deposit information for a plurality of different deposit transactions, with the deposit information including for each of the different deposit transactions a deposit account designation, electronic check data and check image data for at least one check to be deposited, wherein the central system is separate from MICR capture, deposit accounting, cash management, and float processing systems for a bank of first deposit and wherein the deposit account designation for each of at least a subset of the plurality of the deposit transactions is to a different bank of first deposit;

2. the central system transmitting the electronic deposit data and optionally the check image data for each different deposit transaction of the subset of the plurality of the deposit transactions to a respective different one of the banks of first deposit;

3. the central system performing at least one of sorting the received deposit information and error checking the received deposit information before transmission to any of the MICR capture, deposit accounting, cash management, and float processing systems of each of the different banks of first deposit designated in the respective deposit account designations in the deposit information; and

4. the central system transmitting electronic check data and the check image data directly or indirectly to a maker bank or a Federal Reserve Bank or a correspondent bank in a transmission having a transmission path that bypasses the MICR capture,

deposit accounting, cash management, and float processing systems of the bank of
first deposit for that deposit transaction.

Prior to the invention, depositing and clearing checks required individuals and businesses

to take checks and physically deposit them at a financial institution. The checks were then taken

to a processing center (either at the financial institution or with a vendor). The processing center

would use large sorters to read the MICR data on the bottom of the check (e.g. ABA routing

information and account number) and make a copy of the front and back of the check. This

process is generally known in the industry as MICR capture. The sorter would then use the

MICR data to sort the checks to be sent to the maker banks, various clearinghouses, or the

Federal Reserve Bank for presentment and settlement. A significant disadvantage with this

system was the reliance on the transportation and exchange of physical checks.

As described in the expert declaration of PPS Data's Expert, Dr. Michael Shamos, the

invention claimed in the asserted patents made MICR capture unnecessary. *See* Ex. 1, ¶ 23. Dr.

Shamos further opines that this bypassing of MICR capture is what distinguished the invention

from prior art check deposit methods. *See* Ex. 1, ¶ 29.

At a high level, the present invention is directed to a remote capture system that enables

the capture of deposit information and images of physical checks and processing the check image

and deposit information without actually transferring the check physically. In other words, the

invention bypasses the old MICR capture. An imaging device is used to capture an image of the

check and the associated check data. The check image and data are then routed, along a specific

path, to a central processor that processes the check image and data and determines the most

efficient means for clearing the check. The checks are then routed, along a specific path, to the

Federal Reserve Bank, maker bank, clearinghouse or correspondent bank to be presented and

cleared. Advantageously, once the check image and data are captured by the imaging device, the original physical check is no longer necessary. Accordingly, properly construed, the claims as a whole, when viewed in light of the specification, makes clear that the character of the asserted claims are not directed to an abstract idea.

Not surprisingly, JHA has proposed a different understanding of what the claims are directed to. In its motion, JHA alleges that the claims were directed to "processing imaged check data at a centralized location." Dkt. 28, at p. 9. JHA's mischaracterization of the claims, however, omits the processing of the physical checks deposited at remote sites and routing of the deposit to different locations (including a central system, specific locations within a bank of first deposit, Federal Reserve Bank, maker bank, or correspondent bank) in a particular sequence while bypassing the MICR capture, deposit accounting, cash management or float processing systems of the bank of first deposit.[2] By ignoring these claim elements, JHA improperly construes the invention claimed in the asserted patents to an impermissibly high level of abstraction. The claim construction process will significantly aid the court in understanding the scope of the claimed invention and useful to discern that the claims are not so broad as to merely claim an abstract idea. JHA's abstraction of the claims is directly contrary to Federal Circuit precedent that hold that courts not to simply abstract the claims to "a high level of abstraction" (*Enfish*, 822 F.3d at 1337) A very similar example of describing an invention at too high a level of abstraction occurred in *Solutran, Inc. v. U.S. Bancorp*, 291 F.Supp.3d 877 (D. Minn. 2017).

---

[2] It should be noted that other claims of the patents-in-suit address the problems associated with clearing checks when physical hard copy of the check are required. *See, e.g.,* '430 patent, Claim 4-5, 22-23, 41-42 (requiring printing a hard copy of the check and presenting the hard copy of the check). JHA's reliance on the "exemplary" claim 1 of the '430 patent simply ignores this substantive claim limitations that require physical printing, processing, and handling of hard copy of check.

In that case, the asserted patent also claimed a method of processing checks that involved scanning the checks and processing information from the scanned checks. *Id.*, at 881. The defendant moved for summary judgment that the claims of the asserted patent were invalid under § 101. The court denied the motion, finding that the claims of the patent were not directed to an abstract concept. *Id.*, at 889. Importantly, the court was critical of the defendant's attempt to construe the claims of the asserted patent to cover the abstract idea of converting a paper check to an electronic image, holding that the defendant "improperly construes claim 1 to a high level of abstraction." *Id.*, at 886 (internal citations and quotations omitted).

The claims of the asserted patents are directed to capture of deposit information and images of the checks and the processing the check image and deposit information without actually transferring the check physically, but following a specific pathway that bypasses the MICR capture, deposit accounting, cash management and float processing systems of the bank of first deposit. This process involves tangible steps and the handling of tangible subject matter, and therefore this processing cannot be considered an abstract idea. *Ariosa*, 809 F.3d at 1285.

The tangible, non-abstract nature of the claims of the asserted patents is not altered even if the claims contain or otherwise involve an abstract idea. *Enfish*, 822 F.3d at 1335. Thus, even if the processing of check image and deposit information could be characterized as a fundamental economic practice and hence an abstract idea, the fact that the claims as a whole are directed to the physical process of processing paper checks remains unaltered.

JHA has cited numerous Federal Circuit cases in which software-related patents were found to be directed to an abstract idea. But in each of these cases, the claimed advance over the prior art was found in the processing of data by the computer, not in the physical processing of tangible objects. Numerous courts have found that a process that "started with data, added an

11

algorithm, and ended with a new form of data was directed to an abstract idea." *RecogniCorp, LLC v. Nintendo Co. Ltd.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017), citing *Digitech Image Technologies, LLC v. Electronics for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014). In these cases, the advancement over the prior art was in the gathering and manipulation of data, which was considered an abstract idea. Those patents did not become directed to a non-abstract concept by the mere inclusion of a tangible device such as a general- purpose computer that was described generally and was responsible for merely processing the data in the desired manner. *See, e.g., In re TLI Communications*, 823 F.3d at 612 (holding that the fact that the server was described simply in terms of performing generic computer functions indicated that the focus of the claims was not on improving the server), *In re Smith*, 815 F.3d 816, 818-819 (Fed. Cir. 2016) (finding that a claim directed to the abstract concept of rules for conducting a wagering game was not altered by the presence of playing cards in the claims); *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1318 (Fed. Cir. 2016) (finding that a claim directed to the screening of messages by corporate organizations, which could be entirely performed by a human, mentally or with pen and paper, remained directed to an abstract idea even if "generic computer implemented steps" were also included). Each of these cases supports the conclusion that *Alice*'s step one requires that the character of the claims as a whole, considered in light of the specification, be analyzed to help identify the claimed advancement of the invention. If the claimed advance is in an abstract implementation of data analysis, then the claim is directed to an abstract idea regardless of the presence of tangible items within the claims.

The situation found in the Federal Circuit's *Content Extraction* case sets forth a good example of this type of analysis. This case also nominally involved financial checks, but the claim was directed to a computerized technique for recognizing data from scanned documents

and storing that data into appropriate data fields in a computer. *Content Extraction*, 776 F.3d at 1345. Although the claims involved using a scanner to scan a paper document ("receiving output representing a diversity of types of hard copy documents from an automated digitizing unit," *id*.), no argument was ever made that the handling and processing of the hard copy documents was any different than the prior art. In other words, the claimed advance over the prior art was not a novel transmission path that bypassed a conventional pathway, but it was in the recognition process performed by the computer after the documents were scanned. In this context, it is little wonder that the Federal Circuit found the nominal presence of a document scanner in the claims to be little different than the presence of a generic computer that performs the steps of the abstract process. *Id.* at 1347. In other words, the patent in *Content Extraction* focused primarily on the processing of data within the computer system, meaning that the presence of a tangible scanner in the *Content Extraction* claims was rightly considered secondary in determining the character of the claims under *Alice*'s step one.

JHA relies on the PTAB's decision in *Fidelity Nat'l Servs. v. DataTreasury Corp.*, CBM 2014–00020, 2015 WL 1967327, at *5–6 (PTAB April 29, 2015), aff'd 669 Fed.Appx. 572 (Fed. Cir. 2016) ). However, *DataTreasury* is not applicable in this case. The patent owner in *DataTreasury* did not assert that the claimed invention was anything more than the encrypted transfer of information, instead arguing that the presence of a tangible object precluded a finding that the claim was directed to an abstract idea. *Id.*, at *10. Moreover, the PTAB analyzed the *DataTreasury* case's patent in a manner similar to *Content Extraction*. In *DataTreasury*, the PTAB found that the claims were directed to the "underlying idea of transferring information from one location to another where the transferred information is unreadable without a secret decoder key." *DataTreasury* at *7. The patent owner did not argue that the claimed advance was

13

anything other than this encrypted transferring of information, but rather argued that the presence of a tangible object in the form of a scanner rendered the claim not abstract. The PTAB correctly responded that the mere presence of a physical limitation does not preclude a determination that the claim is an attempt to preempt an abstract idea. Id., at *10.

In contrast to the above cases, the claims of the asserted patents are directed to an improved system that bypasses the conventional process of MICR capture deposit accounting, cash management and float processing systems of the bank of first deposit. Moreover, other claims of the asserted patents involve the physical printing, processing and handling of physical copies of checks, not just check data. *See, e.g.* '430 patent, Claims 4-5, 22-23, 41-42; '071 patent, Claims 5-6, 17-18; '924 patent, Claims 5-6, 16-17, 28-29, '511 patent, Claim 1, 24, 47; '106 patent, Claims 10, 11, 12, 27, 28, 29, 44, 45, 46. As the claims are directed to non-conventional transmission pathway, the claims are not directed to an abstract idea under *Alice*'s step one. The Court should deny JHA's motion because JHA has not shown by clear and convincing evidence that the claims of the asserted patents are directed to an abstract concept.

## B. The Asserted Patents' Claims Include an Inventive Concept

*Alice*'s second step is reached only if the first step shows that the claims are directed to an abstract idea. If the claims are not directed to an abstract idea under step one, the claim is patent-eligible and there is no need to proceed to step two. *Enfish*, 822 F.2d at 1339. But if the claims were found to be "directed to" an abstract idea under step one, the claims will still be patent-eligible if they contain an inventive concept under step two.

*Alice*'s second step assesses whether the claim contains an "inventive concept" sufficient to transform the claimed abstract idea into a patent-eligible application. *Alice*, 134 S.Ct. at 2357. Again, while there is no definitive definition of what is required to prove the existence of an

inventive concept, the Federal Circuit has provided some guidance. For example, claim elements that constitute routine data-gathering steps or that involve a generic computer performing conventional computer activities do not constitute an inventive concept. *OIP Technologies, Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015). In addition, limiting the claims to a particular technological environment is not enough to constitute an inventive concept. *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016). On the other hand, claim elements that improve a technological process or otherwise improve the computer's functioning would likely constitute an inventive concept. *Mortgage Grader, Inc. v. First Choice Loan Services Inc.*, 811 F.3d 1314, 1325 (Fed. Cir. 2016) (citing *Alice*, 134 S.Ct. at 2359).

The Federal Circuit has also emphasized that elements specified at a high degree of generality cannot constitute an inventive concept. In *Electric Power*, for example, the Federal Circuit found that a claim related to data gathering and analysis in an electric-power grid lacked an inventive concept under *Alice*'s step two. But the Federal Circuit took care to emphasize that the claims in that case did not specify any particular solution to the problem at hand, and might have reached a different conclusion had the claims been more specific. The Federal Circuit noted a distinction "between patenting a particular concrete solution to a problem and attempting to patent the abstract idea of a solution to the problem in general." *Electric Power*, 830 F.3d at 1356 (quoting the district-court decision). As the claims in *Electric Power* did not claim a specific implementation or solution to a problem, but attempted to patent all solutions in the abstract, the Federal Circuit found that there was no inventive concept. *See also Intellectual Ventures I LLC v. Capital One Financial Corp.*, 850 F.3d 1332, 1342 (Fed. Cir. 2017) (stating that for an inventive concept to be found, the claims must provide more than result-oriented

solutions to identified problems and must describe steps undertaken to overcome a problem found in the prior art).

Notably, the Federal Circuit has found an inventive concept in claims that recited a "specific, discrete implementation" of an abstract idea even though none of the claim limitations, taken individually, was inventive by itself. *Bascom Global Internet Services, Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). Rather than analyzing the claim elements one-by-one, the Court decided that "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Id.* In making this finding, the Federal Circuit relied upon the Supreme Court's instructions to analyze the elements of each claim both individually and "as an ordered combination" when searching for an inventive concept. *Id.*, at 1347. Thus, under *Bascom*, courts may find an inventive concept in a specific and discrete arrangement of known elements that present a non-conventional improvement over the prior art.

The claims of the asserted patents, when viewed as an ordered combination, recite a specific implementation of an invention that is neither routine nor conventional. In arguing that these claims do not include an inventive concept, JHA failed to analyze the ordered combination of elements set forth in these claims. Rather, JHA simply stated that the combination could not constitute an inventive concept since each individual element is considered conventional. But this ignores the Federal Circuit's instruction to consider the claim as a whole and as an ordered combination:

> To the contrary, in examining claims under step two, we must view them as a whole, considering their elements "both individually and `as an ordered combination.'" *Alice*, 134 S. Ct. at 2355 (quoting *Mayo*, 132 S. Ct. at 1298). Thus, "a new combination of steps in a process may be patentable even though all the constituents of the

combination were well known and in common use before
the combination was made." *Diehr*, 450 U.S. at 188.

*Rapid Litigation Management Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1051 (Fed. Cir. 2016).

JHA mischaracterizes the invention claimed in the asserted patent by saying that it is "nothing more than implementing known physical check depositing and clearing steps in an electronic process using conventional computer systems and components."  Dkt. 28, at p. 2.  As PPS Data's expert, Dr. Michael Shamos, explains in his declaration in support of this opposition, the claimed steps and their sequence were not conventional.[3]  *See* Ex. 1, ¶ 37.

In the present case, the claims of the asserted patents describe a new combination of steps, in an ordered sequence, that was never found before in the prior art and has been found to be a non-obvious improvement over the prior art by both the USPTO examiner. Prior to the invention, depositing and clearing checks required individuals and businesses to take checks and physically deposit them at a financial institution.  The checks were then taken to a processing center (either at the financial institution or with a vendor).  The processing center would use large sorters to read the magnetic ink character recognition ("MICR") data on the bottom of the check (e.g. ABA routing information and account number) and make a copy of the front and back of the check.  This process is generally known in the industry as MICR capture.  The sorter would then scan the MICR data, either magnetically or optically, to sort the checks to be sent to the maker banks, various clearinghouses, or the Federal Reserve Bank for presentment and settlement.  A significant disadvantage with this system was the reliance on the transportation and exchange of physical checks.

_____

[3] To be clear, it is not PPS Data's burden to prove that the claimed steps and their sequence were not previously known, but rather JHA's burden to establish by clear and convincing evidence that the claims as a whole, and as an ordered combination were routine and conventional.  JHA's motion fails to cite any evidence to meet its burden.

In contrast, at a high level, the present invention is directed to a remote capture system that enables the capture of deposit information and images of the checks and the processing the check image and deposit information without actually transferring the check physically, bypassing the old MICR capture protocol. In other words, the present invention makes MICR capture unnecessary. An imaging device is used to capture an image of the check and the associated check data. The check image and data are then routed, along a specific path, to a central processor that processes the check image and data and determines the most efficient means for clearing the check. The checks are then routed, along a specific path, to the Federal Reserve Bank, maker bank, clearinghouse or correspondent bank to be presented and cleared. Advantageously, once the check image and data are captured by the imaging device, the original physical check is no longer necessary. When a physical copy of the check is required by a maker bank, a hard copy of the check or an IRD replacement document may be printed, processed and delivered to the maker bank while still bypassing the MICR capture, deposit accounting, cash management, and float processing systems of the bank of first deposit. Accordingly, properly construed, the claims as a whole, when viewed in light of the specification, makes clear that the character of the asserted claims are not directed to an abstract idea.

The Patent Office found that the bypassing MICR limitation was a novel innovation over the prior art. In all of the Notices of Allowability in all five patent prosecutions, the examiner found that the "bypassing" limitation was novel. *See* Exs. 2-6. For example, in the Notice of Allowability for the '430 patent, the examiner states:

> [T]he prior arts do not consider[] the possibility of: wherein the
> central system is separate from MICR capture, deposit accounting,
> cash management, and float processing systems for a bank of first
> deposit; and the central system transmitting electronic check data
> and the check image data directly or indirectly to a maker bank in
> transmission having a transmission path that bypasses the MICR

> capture, deposit accounting, cash management, and float
> processing systems of the bank of first deposit for that deposit
> transaction…

*See* Ex. 2, p. 4. JHA has not offered any evidence that the "bypassing" limitation was

conventional at the time of the invention.

The Patent Office's findings are in line with current Federal Circuit precedent. The

Federal Circuit has held that the claims of a patent recite a sufficient inventive concept "when the

claims solve a technology-based problem, even with conventional, generic components,

combined in an unconventional manner." *Amdocs (Israel) Limited v. Opennet Telecom, Inc.*, 841

F.3d 1288, 1300 (Fed. Cir. 2016). Just as in *Amdocs*, the system claimed in the asserted patents

combines conventional components in an unconventional manner.

In addition, the ordered combination is not a results-focused reformulation of the benefits

provided by the invention of the type that has been rejected in *Electric Power* or *Mortgage*

*Grader*. As Dr. Shamos states in his declaration, there are numerous methods of check

processing that are not within the scope of the claims. *See* Ex. 1, ¶ 43. The asserted patents do

not merely claim "the abstract idea of check processing" as JHA claims. The claims of the

asserted patents require that the paper checks be scanned by a remote capture system that enables

the capture of deposit information and images of the checks and the processing the check image

and deposit information without actually transferring the original check physically and bypassing

MICR capture. As was the case in *Bascom*, this "non-conventional and non-generic

arrangement" of claim steps creates a "specific, discrete implementation" that was not known in

the prior art. Consequently, this ordered combination of claim elements constitutes an inventive

concept under *Alice*'s step two and therefore the asserted patents are patent-eligible under section

101.

19

If JHA were correct, no check processing patents implemented on general-purpose computers should have issued after *Alice* in 2014. However, as Dr. Shamos points out, the USPTO has issued 246 check processing patents between January 1, 2015 and August 7, 2018. Clearly the USPTO does not believe that check processing patents lack an inventive step. *See* Ex. 1, ¶ 46. Moreover, JHA claims on its own website that its Remote Deposit Capture software uses "a patent-pending process," indicating that JHA itself believes that methods for remote deposit capture are potentially patent eligible. Ex. 7.

The Supreme Court has held that the machine-or-transformation test is a "useful and important clue, an investigative tool, for determining whether some claimed inventions are processes under § 101." *Bilski v. Kappos*, 130 S. Ct. 3218, 3227 (2010). While the Supreme Court held that the machine-or-transformation test is not the only definitive test under section 101, the Court went out of its way to emphasize that the test remains very important. The majority opinion calls the test "a useful and important clue" (*Bilski*, 130 S. Ct. at 3227), while Justices Breyer and Scalia emphasized that the Supreme Court "intends neither to de-emphasize the test's usefulness nor to suggest that many patentable processes lie beyond its reach." *Id.,* at 3259. Importantly, no Justice questioned the actual formulation of the machine-or-transformation test, especially as it relates to transformations, thereby leaving in place the Federal Circuit's interpretation of the test. Under *Alice*'s two part test, the Federal Circuit has clarified that the machine-or-transformation test remains a "useful clue" in determining whether a claim contains an inventive concept under *Alice*'s second step. *Ultramercial*, 772 F.3d at 716.

In *Solutran, Inc. v. U.S. Bancorp,* 291 F.Supp.3d 877 (D. Minn. 2017), a district court rejected a § 101 challenge to a patent that claimed a process for scanning and processing paper checks. The court held that the machine-or-transformation test was satisfied because "the

physical paper check is transformed into a different state or thing, namely into a digital image."

*Id.*, at 890. The court further reasoned that the transformation was "central to the purpose of the claimed process" and imposed "a meaningful limit on the scope of the claim." *Id.* (internal citations omitted). Likewise, the claims of the asserted patents pass the machine-or-transformation test, as the claims require the scanning of the paper checks with a digital-image scanner to create a digital image of the checks. In other words, the physical paper check is transformed into a different state or thing, namely into a digital image. This transformation constitutes patentable subject matter. *In re Bilski*, 545 F.3d 943, 963 (Fed. Cir. 2008). In its *In re Bilski* decision, the Federal Circuit considered the scope of the transformation half of the machine-or-transformation test and turned to its predecessor court's decision in *In re Abele*, 684 F.2d 902 (CCPA 1982) for guidance:

> [W]e held one of *Abele's* dependent claims to be drawn to patent-eligible subject matter where it specified that 'said data is X-ray attenuation data produced in a two dimensional field by a computed tomography scanner.' *Abele*, 684 F.2d at 908-09. This data clearly represented physical and tangible objects, namely the structure of bones, organs, and other body tissues. Thus, the transformation of that raw data into a particular visual depiction of a physical object on a display was sufficient to render that more narrowly-claimed process patent eligible.

*In re Bilski*, 545 F.3d at 962-963. Thus, the Federal Circuit clarified that the transformation of an underlying physical and tangible object into a visual depiction of that object satisfies the transformation part of the machine-or-transformation test. In contrast, the Federal Circuit has excluded other types of transformations from this test's scope. In *Ultramercial*, for example, the court rejected an argument that claim elements involving the viewing of an advisement or the exchange of money constituted a transformation under the machine-or-transformation test, since these abstractions "are not physical objects" and the transformations are "not representative of

physical objects." *Ultramercial*, 772 F.3d at 717. Consequently, since the claims of the asserted patents contain a transformation of a physical object into a visual representation of that object, the claims meet the machine-or-transformation test's transformation prong.

It is true that not all conversions of a physical object into a visual depiction will pass the machine-or-transformation test. The Federal Circuit was explicit in finding that transformations must be "central to the purpose of the claimed process" to satisfy the test. *In re Bilski*, 545 F.3d at 962. *See also Versata Development Group, Inc. v. SAP America, Inc.*, 793 F.3d 1306, 1335 (Fed. Cir. 2015) (while the machine-or-transformation test can be a useful clue in determining subject matter eligibility under section 101, the claimed element must "impose a meaningful limit on the scope of the claim."). This is not an issue here. Scanning paper checks to create a digital image is central to the purpose of the asserted patents. Moreover, as previously discussed, other claims of the asserted patent also involve the printing, processing and handling of hard copy of checks or IRD replacement documents. In other words, the claimed inventions also include not only the transformation of a physical check to create a digital image, but also the transformation of the digital image to a hard copy of the original check or IRD replacement document. The machine-or-transformation test is met here.

While passing the machine-or-transformation test does not by itself compel the conclusion that the claims of the asserted patents contain an inventive concept, the Supreme Court has gone out of its way to note that this is a "useful clue" as to the result that should be reached. Since this clue is consistent with the logic and argument concerning the claim steps as an ordered combination, the conclusion follows that the claims of the asserted patents contain an inventive concept, satisfy *Alice*'s step two, and are patent-eligible under section 101.

JHA has not shown by clear and convincing evidence that the asserted patents lack an inventive concept. The Court should deny JHA's motion.

## VI. Claim Construction is Necessary

Assuming *arguendo* that the Court determines that the claims are directed to an abstract idea, the Court must then proceed to the second test and examine elements of the disputed claim to determine whether the claim contains a sufficiently transformative inventive concept so as to be patent eligible. In performing this analysis, a proper construction of the claims, when viewed as an ordered combination establishes a specific implementation of an invention, and thus satisfying the *Alice* step two analysis. For example, the claim limitation "a transmission having a transmission path that bypasses the MICR capture, deposit accounting, cash management, and float processing systems of the bank of first deposit for that deposit transaction"[4] is dispositive of the motion. The term should be construed as "a transmission that is not received by the magnetic character recognition capture, deposit accounting, cash management, or float processing systems of the bank of first deposit while en route from the central system to the maker bank, Federal Reserve Bank or correspondent bank." The specification supports this construction. *See, e.g.,* '430 patent, Figures 1-6 and corresponding descriptions, Col. 10:52-58; 10:62-67; 13:31-28; 17:46-55; 17:56-59. The proper construction of this claim limitation supports PPS Data's argument that the claims include meaningful limitations and recite an inventive concept under the *Alice/Mayo* analysis. Indeed, this claim limitation makes clear that the route that the deposit is transferred from the central system to the maker bank, Federal Reserve Bank or correspondent bank follows a path that avoids specific systems, and not directed merely to "processing imaged check data at a centralized location." This "transmission" claim element is just one example of

---

[4] This claim limitation and similar claim limitation is found in every asserted claim.

terms that must be construed in order for the Court to properly consider JHA's § 101 motion. Indeed, it was this "transmission" claim element bypassing limitation that was relied upon by the USPTO in allowing the claims to issue, and thus establishing that the claims are not routine and conventional. This issue is compounded by the procedural posture of this case.

## VII.    Conclusion

The Court should deny JHA's Motion for Judgment on the Pleadings.  JHA has not met its burden of showing that the asserted patents are invalid under 35 U.S.C. § 101.  JHA has not shown by clear and convincing evidence that the claims of the asserted patents are directed to an abstract idea and that the claims of the asserted patents do not contain an inventive concept.


Dated: August 13, 2018


By: */s/Jon B. Hyland*                                    
Jon B. Hyland
BARNES & THORNBURG LLP
1717 McKinney Avenue, Suite 700
Dallas, Texas 75202-1241
Telephone: (214) 957-7728
jon.hyland@btlaw.com

Anthony H. Son
BARNES & THORNBURG LLP
225 South Sixth Street, Suite 2800
Minneapolis, Minnesota 55402
Telephone: (612) 333-2111
ason@btlaw.com

*Attorneys for Plaintiff*
*PPS Data, LLC*

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this motion was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email and/or fax, on this the 13th day of August, 2018.

*/s/ Jon B. Hyland*_____
Jon B. Hyland