# EXHIBIT 6, Part A

Express Mail Label No.  EL550340765US

05-01-00

A

04/28/00

JC815 U.S. PTO

| UTILITY PATENT APPLICATION TRANSMITTAL (Large Entity) *(Only for new nonprovisional applications under 37 CFR 1.53(b))* | Docket No. 7905.15 |
|---|---|
| | Total Pages in this Submission |

### TO THE ASSISTANT COMMISSIONER FOR PATENTS
**Box Patent Application**
**Washington, D.C. 20231**

Transmitted herewith for filing under 35 U.S.C. 111(a) and 37 C.F.R. 1.53(b) is a new utility patent application for an invention entitled:

**METHOD AND SYSTEM FOR PROCESSING FINANCIAL INSTRUMENT DEPOSITS PHYSICALLY REMOTE FROM A FINANCIAL INSTITUTION**

U.S. PTO
09/560779
04/28/00
JC678

and invented by:

**Danne L. Buchanan**
**William Ronald Titus**

If a **CONTINUATION APPLICATION,** *check appropriate box and supply the requisite information:*

☐ **Continuation** ☐ **Divisional** ☐ **Continuation-in-part (CIP)** of prior application No.: _____

Which is a:

☐ **Continuation** ☐ **Divisional** ☐ **Continuation-in-part (CIP)** of prior application No.: _____

Which is a:

☐ **Continuation** ☐ **Divisional** ☐ **Continuation-in-part (CIP)** of prior application No.: _____

Enclosed are:

### Application Elements

1. ☒ Filing fee as calculated and transmitted as described below

2. ☒ Specification having _____**fifty-two (52)**_____ pages and including the following:

    a. ☒ Descriptive Title of the Invention

    b. ☐ Cross References to Related Applications *(if applicable)*

    c. ☐ Statement Regarding Federally-sponsored Research/Development *(if applicable)*

    d. ☐ Reference to Microfiche Appendix *(if applicable)*

    e. ☒ Background of the Invention

    f. ☒ Brief Summary of the Invention

    g. ☒ Brief Description of the Drawings *(if drawings filed)*

    h. ☒ Detailed Description

    i. ☒ Claim(s) as Classified Below

    j. ☒ Abstract of the Disclosure

P01ULRG/REV04

PPS-JHA000204

| UTILITY PATENT APPLICATION TRANSMITTAL<br>**(Large Entity)**<br>*(Only for new nonprovisional applications under 37 CFR 1.53(b))* | Docket No.<br>7905.15 |
| | Total Pages in this Submission |

### Application Elements (Continued)

3. ☒   Drawing(s) *(when necessary as prescribed by 35 USC 113)*

    a. ☒   Formal      Number of Sheets     **fifteen (15)**

    b. ☐   Informal      Number of Sheets

4. ☒   Oath or Declaration

    a. ☒   Newly executed *(original or copy)*     ☐   Unexecuted

    b. ☐   Copy from a prior application (37 CFR 1.63(d)) *(for continuation/divisional application only)*

    c. ☒   With Power of Attorney     ☐   Without Power of Attorney

    d. ☐   *DELETION OF INVENTOR(S)*
        Signed statement attached deleting inventor(s) named in the prior application,
        see 37 C.F.R. 1.63(d)(2) and 1.33(b).

5. ☐   Incorporation By Reference *(usable if Box 4b is checked)*
    The entire disclosure of the prior application, from which a copy of the oath or declaration is supplied under
    Box 4b, is considered as being part of the disclosure of the accompanying application and is hereby
    incorporated by reference therein.

6. ☐   Computer Program in Microfiche *(Appendix)*

7. ☐   Nucleotide and/or Amino Acid Sequence Submission *(if applicable, all must be included)*

    a. ☐   Paper Copy

    b. ☐   Computer Readable Copy *(identical to computer copy)*

    c. ☐   Statement Verifying Identical Paper and Computer Readable Copy

### Accompanying Application Parts

8. ☒   Assignment Papers *(cover sheet & document(s))*

9. ☐   37 CFR 3.73(B) Statement *(when there is an assignee)*

10. ☐   English Translation Document *(if applicable)*

11. ☐   Information Disclosure Statement/PTO-1449     ☐   Copies of IDS Citations

12. ☐   Preliminary Amendment

13. ☒   Acknowledgment postcard

14. ☒   Certificate of Mailing

    ☐   First Class    ☒   Express Mail *(Specify Label No.):*   **EL550340765US**

P01ULRG/REV04

PPS-JHA000205

| | Docket No. |
|---|---|
| **UTILITY PATENT APPLICATION TRANSMITTAL**<br>**(Large Entity)**<br>*(Only for new nonprovisional applications under 37 CFR 1.53(b))* | 7905.15 |
| | Total Pages in this Submission |

### Accompanying Application Parts (Continued)

15.  ☐  Certified Copy of Priority Document(s) *(if foreign priority is claimed)*

16.  ☐  Additional Enclosures *(please identify below):*

### Fee Calculation and Transmittal

#### CLAIMS AS FILED

| For | #Filed | #Allowed | #Extra | | Rate | Fee |
|---|---|---|---|---|---|---|
| Total Claims | 32 | - 20 = | 12 | x | $18.00 | $216.00 |
| Indep. Claims | 4 | - 3 = | 1 | x | $78.00 | $78.00 |
| Multiple Dependent Claims (check if applicable) ☐ | | | | | | $0.00 |
| | | | | | **BASIC FEE** | $690.00 |
| OTHER FEE *(specify purpose)* | Assignment Recordation Fee | | | | | $40.00 |
| | | | | | **TOTAL FILING FEE** | $1,024.00 |

☒  A check in the amount of **$1,024.00** to cover the filing fee is enclosed.
☒  The Commissioner is hereby authorized to charge and credit Deposit Account No.  23-3178
 as described below.  A duplicate copy of this sheet is enclosed.
  ☐  Charge the amount of  as filing fee.
  ☒  Credit any overpayment.
  ☒  Charge any additional filing fees required under 37 C.F.R. 1.16 and 1.17.
  ☐  Charge the issue fee set in 37 C.F.R. 1.18 at the mailing of the Notice of Allowance,
   pursuant to 37 C.F.R. 1.311(b).

Dated:  **April 28, 2000**

*Signature*
Kevin K. Johanson
Registration No. 38,506
WORKMAN, NYDEGGER & SEELEY
60 East South Temple
1000 Eagle Gate Tower
Salt Lake City, Utah 84111
Telephone: (801) 533-9800
Facsimile: (801) 328-1707

cc:

Page 3 of 3                     P01ULRG/REV04

PPS-JHA000206

| CERTIFICATE OF MAILING BY "EXPRESS MAIL" (37 CFR 1.10) | Docket No. |
|---|---|
| Applicant(s):   Danne L. Buchanan and William Ronald Titus | 7905.15 |

| Serial No. | Filing Date<br>April 28, 2000 | Examiner | Group Art Unit |
|---|---|---|---|

Invention:   **METHOD AND SYSTEM FOR PROCESSING FINANCIAL INSTRUMENT DEPOSITS PHYSICALLY REMOTE FROM A FINANCIAL INSTITUTION**

I hereby certify that this   <u>Utility Patent Application (including the items listed below)</u>

*(Identify type of correspondence)*

is being deposited with the United States Postal Service "Express Mail Post Office to Addressee" service under

37 CFR 1.10 in an envelope addressed to: The Commissioner of Patents and Trademarks, Washington, D.C.

20231-0001 on _____ **April 28, 2000** _____

*(Date)*

**Kevin K. Johanson**

*(Typed or Printed Name of Person Mailing Correspondence)*

*(Signature of Person Mailing Correspondence)*

**EL550340765US**

*("Express Mail" Mailing Label Number)*

**Note: Each paper must have its own certificate of mailing.**

Transmitted:   Utility Patent Application (52 pgs.)
Utility Patent Application Transmittal Letter (3 pgs.)
Formal Drawings (15 sheets)
Declaration, Power of Attorney, and Petition (3 pgs.)
Assignment including Recordation Form Cover Sheet (4 pgs.)
Check No. 115184 in the amount of $1,024.00
Certificate of Mailing by Express Mail Label No. EL550240765US
Postcard

Copyright 1995 Legalsoft

P06B/REV02

Express Mailing Label No. EL417646426US

PATENT APPLICATION
Docket No.:  7905.15

# UNITED STATES PATENT APPLICATION

of

**Danne L. Buchanan**

and

**William Ronald Titus**

for

## METHOD AND SYSTEM FOR PROCESSING FINANCIAL INSTRUMENT DEPOSITS PHYSICALLY REMOTE FROM A FINANCIAL INSTITUTION

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

PPS-JHA000208

# BACKGROUND OF THE INVENTION

## 1.   The Field of the Invention

The present invention relates to physical financial instrument processing.   More particularly, the present invention relates to a method and system for remotely processing checks through electronic interaction between the physical location of the instrument and a financial institution.

## 2.   Related Applications

The act of depositing or otherwise converting a financial instrument such as a check, draft, or other instrument has generally required the physical presentment of the instrument by the bearer to a financial institution such as a bank, credit union, or other institution authorized to accept and process monetary instruments.  Indeed, the depositing and clearing of checks has heretofore involved individuals or organizations physically taking their deposit, such as in the form of a check, to financial institutions or trusted remote institutional branches, otherwise known as the bank of first deposit, where the deposit may be accepted, and credited to the bank customer's account, of course, subject to the check "clearing" with the maker financial institution.

Financial institutions have developed methods for reducing the amount of paper flow associated with checks within their organizations, however, their target has not been to reduce processing costs, improve the timeliness of the money collection from other financial institutions, and reduce costs associated with handling, storing and returning paper checks to the maker.  Therefore, it would be an advancement to provide a new system centered on electronic information that does not require the use of paper items for any purpose.

Docket No 7905.15

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

PPS-JHA000209

1    Therefore, it would be advantageous to provide an electronic processing system

2    and method that could provide a bearer of a check the convenience to "deposit" a check

3    at a facility, such as a home or office, that is not a traditional bank or bank branch

4    facility.

5    It would also be advantageous to provide a method and system for allowing the

6    remote depositing and processing a check that does not require the physical routing of the

7    actual check in order to accomplish the various post-deposit processing of a check. It

8    would yet be a further advantage to provide a method and system for improving the

9    collection time involved with the funds represented by the check (i.e., reduce credit

10   "float").

11   It would be a benefit to provide a method and system for reducing expenses

12   associated with the transportation costs involved in sending the checks from the bank of

13   first deposit to the maker financial institution.

14   It would also be a benefit to provide a method and system for reducing the check

15   storage expenses incurred by the bank of first deposit.

16   It would be a further benefit to enable the bank of first deposit to reduce the

17   staffing, facilities (i.e., physical buildings), and equipment required to accept and process

18   physical checks.

19

20

21

22

23

24

- Page 3 -

Docket No. 7905.15

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

PPS-JHA000210

# SUMMARY AND OBJECTS OF THE INVENTION

The present invention has been designed to reduce the issues associated with the physical handling of paper items by financial institutions and to improve the collections of associated funds by processing electronic images of checks as opposed to the slower method of sending paper checks through the traditional check clearing routes. Not withstanding the premise for the inventive processes to use electronic images of items to facilitate processing and clearing of items, it would also be desirable for the present invention to accommodate the current use of paper items and all other commonly accepted methods for clearing checks until such time as the use of electronic images becomes a common accepted practice for clearing checks.

This new process involves inventive computer-based software that can be used at financial institution locations and locations remote from financial institution offices for capturing deposits, together herein referred to as remote locations. The remote capture system can be used by individuals and businesses (including the financial institution) to capture deposit information and images of the monetary items, such as checks, required for depositing the checks into their deposit accounts at the financial institution. Once this information is captured and validated at the remote site, it is transferred to the financial institution over telecommunications lines (leased lines, switched lines, Internet, etc.) to a receiving computer at the financial institution. The financial institution computer verifies the information received, stores the image of the items, and passes back to the remote site computer information that is used by the remote site computer to endorse, cancel, and item number, and otherwise mark, void, and identify the check. Another image of the check is then created at the remote location showing the endorsements information. This image is then sent to the central site of the financial institution for storage and to be used

- Page 4 -

Docket No. 7905.15

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

1   for research and re-depositing of the check if this becomes necessary.  The depositor

2   retains the deposit slips and monetary item(s) at the remote site.

3       As an alternative to the interactive process of passing voiding, endorsing, unique

4   number information back and forth between the central site and the remote site, it will be

5   possible (based on parameters set in the inventive software) to do most of the decision-

6   making on the remote site processor before transmitting the check information to the

7   central site.  This can be done by pre-loading the endorsement, voiding, and item

8   numbering information on the remote site processor and/or updating on a regular basis.

9   This allows for checks to be endorsed, voided and item numbered and the image(s)

10  associated with a check deposit to be created and passed to the central site without the

11  need for interactive validation of data between the remote and central sites.

12      In addition to deposits, decisions based on remote site information, the present

13  invention also allows deposits of any number, combination, and dollar amounts of

14  deposit, and checks based upon decisions made regarding the customer by information

15  stored at the central site.  This information can be loaded onto the central site and

16  communicated to the remote processor as part of the interactive exchange of data during

17  the process of validating the deposit.  Additionally, this information while being pre-

18  loaded on the remote processor can also be updated on a regular basis.

19      Once complete deposit data is received by the central site processor at the bank of

20  first deposit's central site, it is passed to the central site's check processing, deposit, and

21  cash management, etc., systems for processing.  As an alternative, if the remote site or

22  central site is being used as a collection center for deposits from other institutions, the

23  deposit information can be passed to the other institutions check processing, deposit, and

24  cash management, etc., systems for processing.  The image of the checks can be used to

Docket No. 7905.15

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

PPS-JHA000212

1  either print the customer statements (for items drawn on the bank of first deposit or

2  routed through the normal check clearing paths (i.e. directly to clearing and

3  correspondent banks or through the FRB electronic clearing process). If the maker or

4  maker bank(s) require physical checks for their internal purposes, a duplicate check is

5  printed by either the bank of first deposit's central site, or the maker bank or by the maker

6  banks FRB.

7  Once received by the maker bank, the check image or duplicate printed check is

8  processed by the maker bank through their computer systems and included as per their

9  policies in their customer statements.  Checks returned to the depositor for any reason

10  will take the reverse path back to the depositor.  Any re-depositing of items by the

11  original depositor is done using the either the printed duplicate paper item (if there is one)

12  or the original endorsed image created and stored at the bank of first deposit's central

13  site.

14  All transmission of data preferably undergoes digital signature verification and

15  certification and data encryption to ensure privacy and confidentiality of the data being

16  transmitted.  In addition, the check images will be stored on a document storage database

17  at the remote site or bank of first deposit as well as Internet enabled and accessible

18  database(s).  The information on these database(s) will be available to the depositor and

19  research personnel at the bank of first deposit's central site under security control through

20  remote access such as Internet access.

21  The system includes computer hardware, computer software, apparatus, and

22  methodology that enables individuals, businesses, and all types of organizations (both for

23  profit and non-profit) to capture and securely transmit check images (including, but not

24  limited to, personal checks, business checks, travelers checks, money orders, merchant

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

- Page 6 -

Docket No. 7905.15

1  coupons, food coupons, line of credit checks, etc.), deposit information, and other

2  information from remote locations (i.e., locations that could include the financial

3  institution's remote locations, other financial institution's locations, businesses, private

4  residences, etc.), for the purpose of having those checks credited to the depositing

5  individual's or organization's bank account(s) and having the check images (and/or

6  physical checks) entered into the  bank check clearing channels for ultimate delivery to

7  the maker bank for payment out of the maker's account.

8  　　　These and other objects and features of the present invention will become more

9  fully apparent from the following description and appended claims, or may be learned by

10  the practice of the invention as set forth hereinafter.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

- Page 7 -

Docket No. 7905.15

PPS-JHA000214

## BRIEF DESCRIPTION OF THE DRAWINGS

A more extensive description of the present invention, including the above-recited features, advantages, and objects, will be rendered with reference to the specific embodiments that are illustrated in the appended drawings. Because these drawings depict only exemplary embodiments, the drawings should not be construed as imposing any limitation on the present invention's scope. As such, the present invention will be described and explained with additional specificity and detail through use of the accompanying drawings in which:

Figure 1 illustrates an overview of a process of capturing and processing deposits from financial institutions and their branches which can be adapted to incorporate some of the features of the present invention;

Figure 2 illustrates an overview of remotely capturing and processing deposits remote from a financial branch or bank, in accordance with a preferred embodiment of the present invention;

Figure 3 is a more detailed block diagram showing the capturing and processing at the remote site or point of check presentment, in accordance with a preferred embodiment of the present invention;

Figure 4 illustrates central site processing of image data as captured at the remote site, in accordance with a preferred embodiment of the present invention;

Figure 5 illustrates processing at the maker or payor institution site, in accordance with a preferred embodiment of the present invention;

Figure 6 illustrates a processing diagram of the interaction between entities of the present invention; and

Figure 7 is a process flowchart of check processing of the present invention.

Docket No. 7905.15

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

PPS-JHA000215

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

The invention is described below with reference to drawings. These drawings illustrate certain details of specific embodiments that implement the systems and methods of the present invention. However, describing the invention with drawings should not be construed as imposing, on the invention, any limitations that may be present in the drawings. The present invention contemplates both methods and systems for remotely accepting a check for deposit and electronically processing the deposit without physically routing the physical paper copy of the check. The embodiments of the present invention may comprise a special purpose or general purpose computer including various computer hardware, the execution unit portion of which may also be known herein as a "processor."

Embodiments within the scope of the present invention also include computer-readable media for carrying or having computer-executable instructions or data structures stored thereon and also known as software. Such computer-readable media can be any available media which can be accessed by a general purpose or special purpose computer. By way of example, and not limitation, such computer-readable media can comprise RAM, ROM, EPROM, EEPROM, CD-ROM or other optical disk storage, magnetic disk storage or other magnetic storage devices, or any other medium which can be used to carry or store desired program code means in the form of computer-executable instructions or data structures and which can be accessed by a general purpose or special purpose computer. When information is transferred or provided over a network or another communications connection (either hardwired, wireless, or a combination of hardwired or wireless) to a computer, the computer properly views the connection as a computer-readable medium. Thus, any such a connection is properly termed a computer-

Docket No. 7905.15

PPS-JHA000216

1  readable medium.   Combinations of the above should also be included within the scope

2  of computer-readable media.   Computer-executable instructions comprise, for example,

3  instructions and data which cause a general purpose computer, special purpose computer,

4  or special purpose processing device to perform a certain function or group of functions.

5  Computer-executable instructions may also be properly termed "software" as known by

6  those of skill in the art.

7       Although not required, the invention will be described in the general context of

8  computer-executable instructions, such as program modules, being executed by

9  computers in network environments.   Generally, program modules include routines,

10  programs, objects, components, data structures, etc. that perform particular tasks or

11  implement particular abstract data types.   Computer-executable instructions, associated

12  data structures, and program modules represent examples of the program code means for

13  executing steps of the methods disclosed herein.   The particular sequence of such

14  executable instructions or associated data structures represent examples of corresponding

15  acts for implementing the functions described in such steps.

16       Those skilled in the art will appreciate that the invention may be practiced in

17  network computing environments with many types of computer system configurations,

18  including   personal   computers,   hand-held   devices,   multi-processor   systems,

19  microprocessor-based   or   programmable   consumer   electronics,   network   PCs,

20  minicomputers, mainframe computers, and the like.   The invention may also be practiced

21  in distributed computing environments where tasks are performed by local and remote

22  processing devices that are linked (either by hardwired links, wireless links, or by a

23  combination of hardwired or wireless links) through a communications network.   In a

24

- Page 10 -

Docket No. 7905.15

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

PPS-JHA000217

1    distributed computing environment, program modules may be located in both local and

2    remote memory storage devices.

3         An exemplary system for implementing the portions of the invention includes a

4    general purpose computing device in the form of a conventional computer, including a

5    processing unit, a system memory, and a system bus that couples various system

6    components including the system memory to the processing unit. The system memory

7    may include read only memory (ROM) and random access memory (RAM). The

8    computer may also include a magnetic hard disk drive for reading from and writing to a

9    magnetic hard disk, a magnetic disk drive for reading from or writing to a removable

10   magnetic disk, and an optical disk drive for reading from or writing to removable optical

11   disk such as a CD-ROM or other optical media.   The drives and their associated

12   computer-readable media provide nonvolatile storage of computer-executable

13   instructions, data structures, program modules and other data for the computer.

14        Program code or software means comprising one or more program modules may

15   be stored on the hard disk, magnetic disk, optical disk, ROM or RAM, including an

16   operating system, one or more application or software programs, other program modules,

17   and program data.

18        The computer may operate in a networked environment using logical connections

19   to one or more remote computers having processors.  Logical connections may include a

20   local area network (LAN) and a wide area network (WAN) that are presented here by

21   way of example and not limitation.  Such networking environments are commonplace in

22   office-wide or enterprise-wide computer networks, intranets and the Internet.

23        It should also be pointed out that while the term "check" may be generically used

24   herein, it is contemplated by the inventors that other financial instruments are also

- Page 11 -

Docket No. 7905.15

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

PPS-JHA000218

1   contemplated within this meaning and therefore, the use of the term "check" is assumed

2   to have the broader meaning, both in the specification and the claims.

3       Additionally, the term "bank of first deposit" means the financial institution

4   sponsoring the remote site and which owns or employs a central site for processing

5   financial transactions.

6       Referring to Figure 1, a bank of first deposit 101 receives a check from the bearer

7   to begin processing the instrument.  Bank of first deposit 101 actually forwards, in step

8   113, the physical check(s) to a central site 102 for additional physical processing of the

9   actual check.  The physical check is processed at central site 102 using a reader/sorter

10   (not separately shown but included in 102) to acquire information such as the information

11   stored on the Magnetic Ink Character Recognition (MICR) line.   This information

12   includes the maker bank number, the account number, a check serial number, etc.  The

13   information from the check is then sent to an in-house computer system  (included in

14   102) for posting in steps 114, 115 to the appropriate bearer account(s) 103, 104 in the

15   bank of first deposit 101.  If the check is an on us item (i.e. an item that is drawn on the

16   bank that is processing it), the check is retained in a step 117 at storage 105 at bank of

17   first deposit 101, otherwise the check is sent in steps 116 and 119 or, alternatively in step

18   118 into a maker bank 108 for collection of funds.    The check(s) are either sent

19   physically in step 118 directly to maker bank 108 or routed in steps 116 and 119 through

20   a Federal Reserve Banks (FRB) 106 and 107 check clearing processes to a maker bank

21   108.

22       The path taken by the check is determined by the working agreement that bank of

23   first deposit 101 has with maker bank 108.  If maker bank 108 is a member of the local

24   clearing-house association (thereby being a clearing bank), the checks can be exchanged

Docket No 7905.15

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

PPS-JHA000219

1  directly with maker bank 108. If the maker bank 108 is a correspondent bank (a bank

2  that has agreed to exchange checks directly with the bank of first deposit) the checks can

3  be sent directly to maker bank 108. All other checks are forwarded in steps 116 and 119

4  to the FRBS, 106 and 107 for exchange with maker bank 108. If a check is not paid by

5  maker bank 108 for any reason (i.e. it is a forgery, there are not sufficient funds in the

6  makers account to cover the amount of the check, etc.) the check is returned to the

7  depositor using the reverse path. Once the check is received by maker bank 108, the

8  check is processed in step 121 through the maker bank's check capture system 109.

9  Information from the check is then sent in steps 122 and 123 to the maker bank's

10  accounting systems 110 and 111 and the checks are either stored in step 124 at the maker

11  bank's check storage 112, or sent directly to the maker with their check statement.

12      Figure 2 depicts a high-level processing diagram of the various entities involved

13  in the overall financial processing of the present invention, in accordance with the

14  preferred embodiment. The present invention comprises three primary processing

15  entities: (i) a remote site 197, (ii) a central site 198, and (iii) a maker bank site 199. Each

16  of these sites enlists specific processing techniques which furthers the novel financial

17  instrument processing technique of the present invention.

18      In the present invention, a remote site processor 201 (further detailed in Figure 3)

19  either autonomously, or under operator/depositor control initially remotely "processes" a

20  check into electronic check data both in the form of image data and informational data

21  which can be further processed and approved at subsequent portions of the overall

22  process. In essence, the remote site provides a processing front-end that electronically

23  interacts via interface 202 with central site 198 through the transfer of electronic check

24  data for review and processing by electronic means at a central site. Remote site 197

Docket No. 7905.15

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

PPS-JHA000220

1   performs functions relating to the physical check including scanning, reading, and

2   printing on the checks. Remote site 197 also exchanges image and/or authorization data

3   with the other entities as further described below.

4   Central site 198 of Figure 2 interacts via interfaces 207, 208 with maker bank site

5   199 for completing the clearing process relating to the check or related instrument.

6   Central site 198 is comprised of a central site processor 203 which coordinates

7   verification and account interaction. Central site 198 also provides both electronic

8   storage of image and information data as well as providing an interface to maker bank

9   site 199. Central site 198 provides image conversion technology for converting check

10  data from electronic form back to a hard copy check format for processing, printing, and

11  archiving when required by more traditional banking processes. Otherwise, a system 205

12  may process the image of the check in image format. System 205 prevents the need to

13  reprint the check and send the duplicate check through the check reader sorters.

14  Maker bank site 199 performs more traditional account processing of information

15  received from central site 198 such as from central site Federal Reserve Bank 106.

16  Maker bank site 199 is further comprised of maker bank FRB 107 and maker bank 108

17  and engages in account processing and statement generation.

18  Figure 3 depicts the remote site as well as the interaction by a depositor or

19  operator, in accordance with a preferred embodiment. The present invention commences

20  with the presentation of a physical instrument such as a check by a bearer to remote site

21  197. A remote scanner/reader/printer 309 provides the interface to the bearer for

22  presentment of the check. Remote scanner/reader/printer 309, in the preferred

23  embodiment, is a multifunction device capable of independently performing each of the

24  functions of scanning, reading, and printing upon the check or physical financial

- Page 14 -

Docket No. 7905.15

PPS-JHA000221

1  instrument. It is also contemplated that individual devices for performing each of these

2  functions, scanning-reading-printing, may be integrated, whether automatically or

3  manually, to perform the combination of functions upon the check.

4  Remote scanner/reader/printer 309 is connected via an interface 310 to remote

5  processor 201. Remote site processor 201, like each of the other processor elements in

6  the present invention, may be comprised of execution-capable devices, and is preferably

7  comprised of a computer, such as a personal, network, or general purpose computer.

8  Remote processor 201 is further coupled to central site processor 203 via an interface

9  transmission or network media 202, which may take the form of one or more of wired or

10  wireless media such as public switched lines, Internet or wide-area network connection,

11  microwave, satellite, digital phone, private leased lines, or any other current or future

12  acceptable communications facility and may further employ include encryption over the

13  interface.

14  Remote site processor 201 executes according to executable instructions such as

15  computer-executable instructions which are figuratively depicted in Figure 3 as software

16  313. Software 313 is loaded or interfaces with remote processor 201 via a bus or other

17  physical interface depicted as interface 312. Generally, software 313 is comprised of

18  executable instructions for (i) causing remote site processor 201 to instruct and execute

19  the necessary steps for capturing the check or financial instrument both physically and

20  electronically, (ii) performing requisite data processing on the electronic data from the

21  capturing step, and (iii) exchanging the captured data over interface or media 202 to

22  central site processor 203 when appropriate.

23  While details relating to the processing and method steps executed by remote site

24  processor 201 via software 313 are described below, remote site processor 201 further

- Page 15 -

Docket No. 7905.15

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

PPS-JHA000222

1   determines if remote processing decisional information such as comparison information

2   for making decisions on the number of deposits, dollar amount of deposits or dollar

3   amount of monetary items is available on remote site processor 201. If such decisional

4   information is not available at remote site 197, then central site check processing may

5   require additional steps. Remote site processor 201 also determines if the remote

6   processing information needed to void, endorse and itemize number each check 303 is

7   available to remote processor 201 for processing of check 303, according to the method

8   of the present invention. If such remote processing information is available but not

9   current, the remote processing information may be updated by either having the updated

10  information manually entered, for example by way of an operator via a keyboard at

11  terminal 301 attached to remote processor 201, or the updated information may be

12  retrieved by remote processor 201, under the direction of software 313, from central site

13  processor 203.

14      In a preferred embodiment, the updated information may be housed in a data set

15  at central site processor 203 and updated by the bank of first deposit, affiliated with

16  remote site 197 prior to loading to remote site processor 201. Remote site processor 201,

17  executing software 313, then determines if all of the decisions concerning voiding,

18  endorsing, item numbering, number of deposits, number of checks or dollar sizes of

19  deposits or items can be made by remote site  processor 201 by checking the remote

20  processing information as pre-defined in remote site processor 201.

21      If the decisions on endorsing, voiding, item numbering, number of deposits,

22  number or dollar amounts of deposits or monetary items can be made by remote site

23  processor 201, then  to ensure proper account processing of check 303, a depositor at

24  terminal 301 is lead through a series of instructions to gather deposit information required

- Page 16 -

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

Docket No 7905.15

PPS-JHA000223

1   to ensure credits are made to the appropriate deposit accounts(s).   In one preferred

2   embodiment, the deposit information is read, interpreted and entered automatically by

3   reader/scanner/printer 309.   In another embodiment, the deposit information is entered

4   manually on, for example, terminal 301 attached to remote site processor 201.

5   Additionally, during the practice of the invention, scanner/reader/printer 309 encodes

6   check 303 with endorsement and voiding information in order to physically "void" check

7   303, thereby keeping check 303 from being re-transmitted, for example over media 202,

8   or re-deposited at an actual financial institution location for an additional collection.   In

9   addition, a unique item identification number may be encoded on check 303 by remote

10   site processor 201 via scanner/reader/printer 309 to aid in tracking data resulting from

11   processing of check 303.

12        The process of the present invention continues when scanner/reader/printer 309

13   performs the functions of scanning check 303 to create electronic check data comprised

14   of image data, informational data including MICR encoding (using either MICR, Optical

15   Character Recognition (OCR) or other like techniques).   Scanner/reader/printer 309

16   "voids" check 303 by endorsing check 303 and printing tracking data thereon.   The

17   electronic image data and informational data such as MICR information of the voided

18   and endorsed check 303 is transferred over interface 310 to remote site processor 201 for

19   processing which includes image integrity verification.   When the image integrity is

20   suspect, the integrity is enhance by either rescanning check 303 or, alternatively, by

21   manual intervention by an operator at terminal 301.   If check 303 is rescanned,

22   scanner/reader/printer 309 does not reprint the endorsement, voiding and item numbering

23   information on check 303.

24

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

- Page 17 -

PPS-JHA000224

1 Once the electronic image data and the MICR encoding for the first check 303 is

2 determined to be readable and accurate, remote site processor 201 determines if this

3 process should be repeated for additional deposits and/or monetary item(s).   When

4 remote site processor 201 determines that processing by scanner/reader/printer 309 of

5 individual check(s), under the direction of remote site processor 201 has ended and that

6 the information is complete and ready for transmission via interface/media 202, remote

7 site processor 201 formats the electronic image data and the MICR encoding and adds

8 any additional control information in preparation for transmission to central site

9 processor 203.   The physical check 305 is stored in file 305 at the remote site.   In

10 addition, the check image is stored on the remote site processor (*i.e.*, magnetic disk, cd

11 rom, etc. not shown on drawing.)  Communications between remote site processor 201

12 and   central   site   processor   203   preferably   incorporates   digital   signature

13 verification/certification performed by process 311 and data encryption performed by

14 process 313 to ensure confidentiality.

15 Figure 4 depicts the central site processor and the various processes and interfaces

16 associated therewith, in accordance with a preferred embodiment of the present

17 invention. While the accuracy of electronic check data transferred from remote site

18 processor 201 to central site processor 203 will generally retain its integrity through the

19 transmission, when electronic check data received by central site processor 203, as

20 evaluated and processed by computer-executable instructions or software loaded therein,

21 is incomplete or inaccurate, or if the image data is not readable, central site processor 203

22 communicates with remote processor 201 giving detailed information to an operator at

23 terminal 301 concerning the need for additional information to restore image information

24 or complete incomplete or inaccurate data. Depending upon the type of missing or

Docket No. 7905.15

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

PPS-JHA000225

otherwise incorrect information, corrected or supplemental information may be supplied by an operator at terminal 301 at remote site 197.  It may even be necessary to re-scan check(s) 303 and re-transmit at least portions of the check data including image and/or MICR data to central site processor 203.  If check 303 is re-scanned, then endorsement, voiding and item number information are not reprinted on check 303.

Once central site processor 203 determines the new check data received for the deposit is accurate and complete, central site processor 203 stores the check image and MICR data of check(s) 303 along with any additional associated information such as time that deposit was captured, who the customer was who captured the deposit, item number, etc. as received from remote site 201.  Central site processor 203 confirms receipt of accurate information by sending a notification reply to remote site processor 201 freeing-up remote site processor 201 for further processing of subsequent remote check deposit interactions.  In alternate embodiments, central site processor 203 may store image data on an Internet-enabled check image document storage 405 thereby allowing access by the depositor/operator from a terminal such as terminal 301, their designee, or the financial institution of first deposit.  It should be pointed out that because of present banking processes, the remote site should still be associated with a chartered financial institution that is authorized to accept the checks from the remote site and process them through normal check clearing paths.  The remote site may be a branch extension of the financial institution or may be a person, or other entity with or without a legal relationship to the financial institution that provides the access services to the financial institution.  Such an affiliated financial institution is still known as the bank of first deposit.  The present embodiment does not propose eliminating the bank of first deposit, only replacing the method used to capture deposits.  Central site processor 203 maintains authentication and

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

Docket No. 7905.15

PPS-JHA000226

1   data integrity at check image document storage 405 through the use of digital signature

2   verification and certification, as well as via data encryption as shown in processes 314

3   and 315.

4       Referring back to Figure 3, in another embodiment, if the decisions of endorsing,

5   voiding, item numbering, number of deposits number or checks or dollar amounts of

6   deposits or monetary items cannot be made by remote site processor 201, for example,

7   when the telecommunications line goes down and the decision information cannot be

8   updated on the remote site processor, or when the central site processor is inoperable, or

9   the specific remote site is not authorized to make these decisions (i.e. we will determine

10  and pass that information to the remote site processor when the remote site processor

11  contacts the central site processor prior to accepting deposit information at the remote

12  site), then remote site processor 201 leads a depositor at for example terminal 301

13  through a series of instructions to gather deposit information required to ensure credits

14  are made to the appropriate deposit accounts(s) 104.  This can be done by either using the

15  reader/scanner/printer 309 or by entering the necessary information on the terminal 301

16  attached to remote processor 201.

17      Then, check 303 is placed into the scanner/reader/printer 309 where the item is

18  scanned, the MICR encoding is read preferably using either MICR or Optical Character

19  Recognition (OCR) techniques, and an electronic image is created of check 303.  The

20  electronic image data and informational data such as MICR information is transferred

21  from scanner/reader/printer 309 onto remote site processor 201 where remote site

22  processor 201 edits and confirms that the electronic check data is readable.  If the

23  electronic check data is not readable or correct, the check data is corrected at the direction

24  of remote site processor 201 by either re-scanning check 303 or having a remote site

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

- Page 20 -

Docket No. 7905.15

operator manually key the information in using terminal 301 or other interface device attached to remote site processor 201.

Once the check data is determined to be readable and accurate, remote site processor 201 then formats the scanned check data and adds additional control information in preparation for transmission to central site processor 203 and the alternate embodiment approach concludes.

Returning to Figure 4, after receipt of valid and accurate check data, if it is determined that the maker bank or maker of the check requires a physical item, the check image is printed in process 401 and then processed through the central site check image capture system 205. If a physical item is not required, the image is sent to the check image capture system 205. In either case, the check image capture system 205 interfaces with the central site 198 deposit systems 103, cash management systems 104, etc. for posting information. The central site then forwards either the printed duplicate check or check image to the maker bank 108. This can be done directly through path 208 if the bank of first deposit's central site 198 has an agreement with maker bank 108 to exchange checks directly, or if the maker bank and the central site bank of first deposit do not have an exchange agreement then through FRBs 106, 107 through path 207.

Figure 5 depicts the various component and processes of the maker bank site, in accordance with the preferred embodiments of the present invention.

The maker bank 108 receives either images of the original paper items 303 or printed duplicates of the original paper items 303 either directly from the bank of first deposit's central site through path 208 or from the central site Federal Reserve Bank (FRB) 106 clearing process through path 206 (Figure 4), 207, 120.

- Page 21 -

Docket No. 7905.15

PPS-JHA000228

1    Central site FRB 106 will process the check images or paper items through their

2    capture system and forward the images or paper items to the maker bank FRB 107

3    through path 207.  The maker bank FRB then processes the items or images through their

4    check capture system 504 through path 503 and if necessary, (*i.e.*, when paper duplicate

5    of item has not already been printed by the bank of first deposit), print a duplicate of the

6    original check 303 image if a paper item is required by maker bank 108.  A maker bank

7    FRB 107 will then forward the printed items or images to the maker bank 108 via

8    communications or transportation path depicted as path 120.  Maker bank 108 will then

9    process the image or paper item though their in-house application systems depicted by

10   deposit system 110, print check image process, 509, check system process, and customer

11   statement process 506 through paths 122, 507, 508, 121, 505, and 507.

12   These in house systems are not to be taken as systems that all banks will have or

13   use for this process.  They are meant to represent the in house processing by maker banks

14   to post monetary items to their accounting systems and to send the items (either image or

15   printed duplicate of original items) to the check maker.

16   Figure 6 is an interface diagram depicting a high level description of the

17   interactions between the various components of the present invention, in accordance with

18   a preferred embodiment.

19   In the preferred embodiment, the remote site operator enters deposit information

20   into the remote processor then inserts a draft in a step 601 at the scanner/reader/printer

21   located at the remote site.  The scanner/reader/printer reads the item, digitizes and

22   validates the check image information and passes it to the software on the remote site

23   processor in a step 602.  The remote site processor software receives the digitized data

24   from the scanner/reader/printer and validates data to ensure that the check information is

Docket No 7905 15

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

PPS-JHA000229

1   readable and valid in a step 603. When the image is ready for transmission to the central

2   site. The remote site processor contacts the transmission facility and, incorporating

3   digital signature verification and certification and data encryption software to ensure

4   confidentiality, transmits in a step 604 the item image and control information to the

5   central site. The central site receives the transmitted data and edits and in a step 611

6   verifies the check data for completeness and content.

7        When the central site has determined the check image and other associated data

8   (relating to both the check image and data, and the deposit information) is complete and

9   accurate and meets the deposit and/or item dollar limits, the central site stores the

10  electronic image of the check and any additional associated information received from

11  the remote site, and then confirms in a step 605 receipt of good information by sending to

12  the remote site information needed to endorse the physical check and to void the physical

13  item to keep it from being re-transmitted or deposited at a physical financial institution

14  location for collection. In addition, a unique item identification number can be

15  transmitted to the inventive software on the remote site processor for printing on the

16  physical checks as a tracking and research mechanism. The invention allows for printing

17  of the unique item number if it is determined by the bank employing the present

18  invention that it is desirable to print the unique item number for tracking and research

19  purposes.

20       After the inventive software on the remote processor receives specific information

21  required to void, endorse, and print the unique item number, the remote site processor

22  and the scanner/reader/printer will pass the check again where the remote site will print in

23  a step 606 the information on the physical item at the locations required by the rules

24  governing automated check processing. The item is also scanned in a step 607 again

- Page 23 -

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

PPS-JHA000230

under the direction of the remote site inventive software and the new image (containing endorsement, voiding and item number information), and associated additional information required by the inventive software for tracking and control purposes, is edited in a step 608 for accuracy and completeness and if correct is then transmitted in a step 609 to the central site by the remote site using the transmission facility set up for this purposes.

If the data is not readable or correct, the information is corrected at the direction of the remote site by either re-scanning the item or having the remote site operator key the information in using the terminal attached to the remote site processor. If the item is rescanned at this point, the endorsement, voiding and item number information is not reprinted by the scanner/reader/printer. When the image is ready for transmission to the central site, the remote site processor contacts the transmission facility and, incorporating digital signature verification and certification, and data encryption software to ensure confidentiality, transmits in a step 609 the item image and control information to the central site.

The central site receives the transmitted updated image data and edits in a step 613 for completeness and content. If the data is incomplete or inaccurate, or if the image data is not readable, the central site communicates, with the remote processor and gives detailed information to the operator concerning the need for additional information to complete the inaccurate data or image information. Based on the specific need, this information can be supplied using the terminal on the remote site processor or by re-scanning the physical item and re-transmitting it to the central site. In either case, this information is supplied under the direction of the remote site processor. Such additional information is transmitted to the central site processor from the remote site processor. If

- Page 24 -

Docket No 7905.15

PPS-JHA000231

1   the physical item is rescanned at this point, the endorsement, voiding and item number

2   information is not reprinted by the scanner/reader/printer.

3       Once the central site determines the new data received for the deposit is accurate

4   and complete, the central site stores in a step 618 the updated image of the physical item

5   (on the database(s) maintained by the bank of first deposit's central site for this purpose)

6   along with any additional associated information received from the remote site, and then

7   confirms receipt in a step 610 of good information by sending a notification to the remote

8   site that the process for that specific deposit is complete unless more items are present in

9   a step 615 and allows for termination of the transmission of information or for the same

10  process to be followed for other items in a step 614  in that deposit or for another deposit

11  in a step 616.

12      In another embodiment of the invention, the central site stores the check image(s)

13  on an Internet enabled documents storage system allowing access by the depositor, their

14  designee, or the central site processing center of the bank of first deposit.  The central site

15  for storing check images and associated information preferably employees incorporating

16  digital signature verification and certification, and data encryption to ensure

17  confidentiality.

18      If the check is removed from the scanner/reader/printer prematurely, at any time

19  during the process of capturing and transmitting data from the remote site, the transaction

20  information associated with that check will be considered invalid and not part of the

21  deposit.  The depositor will need to re-scan and re-enter data associated with that check.

22      The remote site operator will have the option at the remote site to release deposit

23  information to the central site for processing.  This can be done after either a completion

24

- Page 25 -

Docket No. 7905.15

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

PPS-JHA000232

1  of single deposit in step 615 (containing one or more checks) or after completion of all

2  deposits in step 616 (each containing one or more checks) from the remote site.

3      After the deposit(s) from a specific remote site are complete, the central site

4  formats deposit information for processing in the accounting systems of the bank of first

5  deposit's central site in a step 619, including sending the image and other appropriate

6  information for application processing in step 620 (including deposit accounting systems,

7  MICR capture, cash management processing, float processing, etc.,).

8      If an item is an "on us" item, the central site determines that a physical check is

9  required by the maker, that information is relayed to the central site and an identical

10  image or facsimile of the original item can be printed by either the central site processor

11  or by the item capture system in step 619.

12      If the maker bank is a clearing or correspondent bank then the bank of first

13  deposit will determine if the maker bank requires a paper or image item.  If the maker

14  bank requires a paper item, then the bank of first deposit's central site will print an exact

15  duplicate of the paper item and route in step 621 the item to the maker bank.  The

16  duplicate printed item will generally be as exact as possible based on the quality of the

17  original image.  If the maker bank does not require a paper item then the bank of first

18  deposit will route the check image to the maker bank.

19      If the maker bank is not a clearing or correspondent bank, the check data

20  including image will be forwarded in step 621 using the FRB item clearing processes to

21  route the item image to the FRB affiliated with the maker bank.  The maker bank FRB

22  determines if the maker bank will accept check data including an image of the item.  If

23  the maker bank requires a paper item, the maker bank FRB prints an identical image of

24  the original item with information showing that it is a duplicate and that the bank of first

- Page 26 -

Docket No. 7905.15

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

PPS-JHA000233

1    deposit is central site guarantees the item. This duplicated item is then sent in step 621 to

2    the maker bank for the collections of funds.

3              As an alternative, the check image or a printed reproduction of the check can be

4    sent in step 621 to the maker bank from either the bank of first deposit is central site or

5    the maker bank FRB using any other acceptable clearing method or process.

6              Check items that need to be returned, are done so in steps 624 and 625 to the bank

7    of first deposit to be routed back through the same route that was used to clear the item. If

8    a paper item has been created, that item will be returned along with information showing

9    the reason for return.  Otherwise, the image will be used for return item purposes until the

10   return item image is returned to the bank of first deposit's central site.  At that point, if

11   the remote site processor 201 is able to receive an item image, the image along with the

12   return reason will be passed to the remote site processor 201.  If the remote site processor

13   is not capable of receiving check data including an item image, a paper duplicate showing

14   the return reason will be printed either by the central site or by the item capture system

15   under the direction of the central site and sent to the remote site operator 301.   The

16   unique item number assigned at capture time by either the central site or the remote site

17   can a be included in all return images and/or returned paper items to enable complete and

18   accurate tracking of all return items

19              Re-deposit may be performed in steps 626, 627, 628 of items facilitated by the

20   remote site prompting the remote site operator with instructions on how to scan and

21   transmit the returned paper item or re-deposit the endorsed image previously captured

22   and stored.  The unique item number assigned at capture time by either the central site or

23   the remote site  facilitates both options.

24

- Page 27 -

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

PPS-JHA000234

1    Figure 7 is a detailed flowchart depicting the specific steps for carrying out the

2    invention in accordance with a preferred embodiment.

3    In a step 700, the software is loaded or otherwise made available to the remote

4    site processor for execution.  Those skilled in the art appreciate the various processes and

5    steps for performing loading of software into a processor such as the remote site

6    processor.  It is also contemplated within the scope of the present invention that the

7    software for execution on any of the processors may take the form of embedded

8    executable instructions.

9    Query step 900 determines if deposit processing criteria, (e.g., deposit limit and

10   endorsement information) are present at the remote site processor thereby enabling the

11   initial check deposit processing decisions to be performed locally at the remote site

12   processor or, alternatively, when the deposit processing criteria is not local on the remote

13   site processor, processing passes through path 906 to step 701.

14   When query step 900 determines that deposit processing criteria is present at the

15   remote site processor, a query step 910 determines if the information required to

16   determine deposit limits and endorse the item is current on the remote site processor.  If

17   this information is present and current on the remote site processor, processing passes

18   through path 911 to step 930 where the remote site operator enters deposit information, as

19   well as the endorsement voiding and item numbering information in process step 931

20   prior to reading the first monetary item in process step 932 and then proceeding to query

21   step 933. If this information is not present on the remote site processor or if it is not

22   current, then query step 920 determines if this information can be updated by the

23   operator.  If the operator cannot update this information, then process step 926 allows for

24   updating the deposit information from the central site processor and then proceeds to

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

- Page 28 -

PPS-JHA000235

1    process step 930 where the operator begins the remote capture function by entering

2    deposit information. If the operator can update this information, then process step 921

3    allows for the operator to update the deposit limit and endorsement information and then

4    proceed to process query step 922.

5        Query step 922 determines if the remote site processor can make deposit limit

6    and/or endorsement decisions. If the decision can be made by the remote site processor,

7    then process step 930 allows for the remote operator to enter deposit information, as well

8    as the endorsement voiding and item numbering information in process step 931 prior to

9    reading the first monetary item in process step 932 and then proceeding to query step

10   933.

11       Query step 933 determines if the current item exceeds the item dollar limit or

12   makes the deposit exceed the deposit dollar limit.  If the limits are exceed then the

13   process of entering items for the given deposit in process end 934, and the remote site

14   operator has the option of beginning another deposit or ending the deposit process with

15   the central site processor.  If the limits are not exceeded, then process step 935 accounts

16   for the scanned item 932 being edited for accuracy and completeness at the remote

17   location prior to proceeding to query step 936 where it is determined if the data from the

18   scanned item is correct.

19       In query step 936, if the data is correct, then query step 937 determines if there are

20   more items to scan.  If there are more items to scan, then process step 940 passes back to

21   process step 930 to allow the remote operator to begin the item capture process over

22   again.  If query step 937 determines that there are no more items or deposits to process,

23   then process step 941 prepares the item image data or check data for transmission prior to

24   encrypting the data in process step 942 and digitally signing the data in process step 943.

- Page 29 -                                    Docket No. 7905.15

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

PPS-JHA000236

1 Process step 944 transmits the data image to the central site processor for editing in

2 process step 747.

3 In query step 936, if the data is not correct, then query step 938 determines if the

4 operator can correct the data using a data terminal connected to the remote site processor.

5 If the operator can correct the data, it is done in process step 946 prior to passing through

6 process step 947 and going back to query step 936 to test data image for correctness. In

7 query step 938, if the scanned item image is not correct, process step 948 passes through

8 to process step 932 where the item is rescanned.

9 Stepping back to query step 922, if endorsement and deposit limit information

10 cannot be made by the remote site processor, then the remote site operator enters deposit

11 information in process step 701 before scanning the physical monetary item in process

12 step 702 after which the item image is edited in process step 703.

13 In query step 704, if the image data is not correct, the check is returned to process

14 step 702 where it is rescanned and re-edited in step 703. If query step 704 determines the

15 image data is correct, then the data is passed successfully through process step 710 where

16 the image is prepared for transmission to process step 711 where the date is encrypted

17 and step 712 where the digital signature is added in preparation for transmitting the data

18 to the central site in process step 713.

19 Process step 714 receives the transmitted image data and passes it to query step

20 715 where it is edited for accuracy and completeness. If the data is not accurate or

21 complete, it is passed to process step 720 where the data is corrected by requesting

22 updated information from the remote site processor. If the remote site operator cannot

23 supply correct date via the terminal attached to the remote site processor in query step

24 721, then the check passes through process step 725 to process step 702 where it is

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

- Page 30 -

Docket No. 7905.15

1  scanned again in preparation for editing and transmitting the corrected image to the

2  central site processor.  If the remote site operator is able and authorized to correct the

3  data in query step 721, the data is entered in process step 722 and passed through path

4  723 to process step 711 where the data is encrypted in preparation for transmitting to the

5  central site processor.

6  If in query step 715 the check image data is complete and accurate, the data is

7  passed to process step 730 where the image is stored in data sets used by the bank for

8  document archival and research as well as in a database that is Internet enabled and

9  available for access and research purposes by the depositing customer and bank of first

10  deposit.  After the image is stored, a confirmation of good data receipt is created in

11  process step 731.  This confirmation contains necessary endorsement, item numbering

12  and voiding information, which is added to the confirmation record in process steps 732

13  and 733 prior to the confirmation being sent to the remote site processor.  The

14  confirmation record is then data encrypted in process step 734 and a digital signature is

15  added in process step 735 prior to the record being transmitted to the remote processor in

16  process step 736.  Upon receipt by the remote processor in process step 737, the

17  endorsement, item numbering and voiding information is printed on the physical check in

18  process step 738 prior to it being re-scanned in process step 739.

19  After a new check image is created showing the necessary endorsement and

20  voiding information in process step 740, the new check image is edited to ensure the

21  scanned check data is correct.  If in query step 742, it is determined that the image data is

22  not complete or accurate, the image is passed through process step 750 to process step

23  739 where the physical check is scanned again.  If the check is passed through the reader

24  again at this point, the endorsement information has already been printed and will not be

- Page 31 -

Docket No. 7905.15

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

PPS-JHA000238

1   printed again.  If in query step 742 it is determined that the check image data is good, the

2   data in prepared for transmission in process step 743 prior to the data being encrypted in

3   process step 743 and digitally signed in process step 745 prior to being transmitted to the

4   central site in process step 746.

5       As the central site receives the transmitted image data in process step 747, the

6   image is edited by the central site software in process step 748 to ensure completeness

7   and accuracy of data.  Query step 756 determines quality of data and if the data is not

8   complete or accurate, it is sent to query step 791 where it is determined if the deposit

9   limit and or endorsement information is available on the remote site processor.  If this

10  information is available on the remote site processor then the central site processor

11  communicates with the remote site processor through path 794 to determine if the remote

12  site operator can supply the correct image data in query step 938.  The process involved

13  in query step 938 was discussed above.  If query step 791 determines that the deposit

14  limit and endorsement information is not on the remote processor then query step 795

15  determines if the remote operator can supply the correct image information.  If the

16  operator can supply the correct image information, it is entered in process step 796 and

17  the check image is prepared for transmission in process step 797 and passed to process

18  step 744 (previously discussed) for digital signature and transmission.  If in query step

19  795 the operator cannot correct/update the image information, the check is processed

20  through path 798 to process step 739 (previously discussed) where it is scanned again in

21  preparation for transmitting to central site processor.

22      Stepping back to query step 756, if the data image is complete and accurate the

23  endorsed image of the check is stored in process step 760 in datasets used by the bank for

24  document archival and research as well as in a database in process step 762 that is

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

Docket No. 7905.15

PPS-JHA000239

1    Internet enabled and available for the depositing customer and bank of first deposit to be

2    able to access for research purposes.

3         The central processor site then sends confirmation of good receipt of data in

4    process step 762 to the remote processor in process step 763. At this point query step 764

5    at the remote processor determines if the deposit currently being worked on is complete.

6    If the deposit is not complete, then process step 780 returns control to the previously

7    discussed process step 702 where the next item is scanned. If the deposit is complete

8    query step 764 asks the operator in query step 765 if there is another deposit. If there is

9    another deposit to be processed, process step 766 passes through to previously discussed

10   process step 701 where the new deposit process is initiated. If there is not another

11   deposit as determined in query step 765, the remote entry process is completed and the

12   captured deposit and image information is entered into application processing for the

13   bank of first deposit's central site item capture system in process step 771, the deposit

14   systems in process step 772 and the cash management systems in process step 773.

15        In the course of processing a deposit, it is integral to the decision making to

16   understand which banks the deposited items are drawn (i.e. who is the maker bank).

17   Query step 774 determines if the monetary items in the deposit are "on us" items (*i.e.*

18   items drawn on the bank of first deposit). If the items are "on us," the system determines,

19   in query step 850, if the check maker requires a paper check. If they do, then a

20   duplicate of the original check is printed in process step 851 and the paper item is sent to

21   the maker of the check. In addition, the image of the item is sent to process step 860

22   (discussed below) for processing on internal computer accounting systems. In query step

23   850, if the maker of the check does not require a paper duplicate of the original item,

24   process step 860 passes the checks image through the internal accounting systems to

Docket No. 7905.15

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

PPS-JHA000240

1  query step 861 where it is determined if the item is payable (*i.e.*, does the check maker

2  have sufficient funds in their account to cover the check, is the maker account still open,

3  etc.).

4      If query step 861 determines the item is payable, the check data is posted to the

5  maker's account and the process ends for that check item in step 863. If query step 861

6  determines the item is not payable, then process step 870 returns either the printed

7  duplicate of the check or the check image to the original depositor at the remote location.

8  In query step 871, a remote site operator determines if they want to re-deposit the item or

9  return it. If they decide to return the item, this is done in process step 880 and path 881

10  sends control to previously discussed process end step 863. If query step 871 determines

11  that the item should be re-deposited for collection, query step 872 determines if this is to

12  be done using the duplicate paper item or the original check image.

13      If the return from query step 872 is to be done using the duplicate paper item, then

14  this is done in path 873 where control is sent back to previously discussed process step

15  764 where the item is deposited using the scanner/reader/printer. If the check return from

16  query step 872 is to be done using the original captured check image for the item, process

17  step 875 allows for the remote operator to initiate this process in a step 875 by entering

18  the unique number assigned to the original check at capture time. This information is

19  sent to the central site processor via process step 876 and control is then passed through

20  path 877 to process step 764 where the item is deposited using the check original check

21  image.

22      Stepping back to query step 774 where it is determined if the item is an on us

23  item, if query step 774 determines that the item in not an "on us" item then query step

24  800 determines if the maker bank is a clearing bank or a correspondant bank. If the

Docket No. 7905.15

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

PPS-JHA000241

1   maker bank is a clearing bank or a correspondant bank, then query step 801 determines if

2   the maker bank requires a paper copy of the original check item.  If they require a paper

3   duplicate, then a paper duplicate of the original item is printed in process step 802 and

4   sent to the maker bank in path 803 which passes control to process step 805 discussed

5   below.  If query step 801 determines that the maker bank does not require a printed

6   duplicate check, the image of the original item drawn on the maker bank is sent to the

7   maker bank in process step 805 and the maker bank sends the item through path 806 to

8   previously discussed process step 861 to determine if the item is payable at the maker

9   bank.

10       Stepping back to query step 800, if the payee bank is not a clearing bank or

11   correspondent bank, process step 810 sends the check image to the Federal Reserve Bank

12   (FRB) serving as the clearing entity for the bank of first deposit.  That branch of the

13   Federal Reserve Bank forwards the check image to the Federal Reserve Bank serving as

14   the clearing agent for the maker bank.  That Federal Reserve Bank determines in query

15   step 811 if the maker bank requires a paper duplicate of the original paper check.  If the

16   maker bank requires a paper item, the FRB prints the paper item in process step 812,

17   incorporates the duplicate check in their processing systems as depicted in process step

18   813 where the item is sent in path 814 to process step 815 where the maker bank receives

19   the paper item.  If in query step 811 the maker bank does not require a paper check, the

20   FRB sends the image to the maker bank that receives the image in process step 815 and

21   passes, via path 816, either the check image or printed duplicate of the original check to

22   previously discussed query step 861 to determine if the item is payable by the maker.

23       The present invention may be embodied in other forms without departing from its

24   spirit or essential characteristics. As properly understood, the preceding description of

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

- Page 35 -                    Docket No. 7905.15

specific embodiments is illustrative only and in no way restrictive.   The scope of the

invention is, therefore, indicated solely by the appended claims as follows.

What is claimed and desired to be secured by United States Letters Patent is:

Docket No. 7905.15

PPS-JHA000243

1. A method for processing a check deposited at a remote location, said remote locations including financial institutions and other locations capable of interfacing with said financial institutions, said method comprising the steps of:

    a) converting said check into electronic check data;

    b) electronically exchanging said check data with said financial institution; and

    c) said financial institution crediting an account according to said check data.

2. The method as recited in claim 1, wherein converting step comprises the steps of:

    a) scanning said check to create image data, said image data representing an electronic image of said check; and

    b) reading said image data to create informational data from said image data to aid in electronic processing of said deposited check.

3. The method as recited in claim 2, wherein said converting step further comprises the step of:

    a) reading at least a portion of said check to determine additional informational data stored in a Magnetic Ink Character Recognition (MICR) line.

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

- Page 37 -

Docket No. 7905.15

4.  The method as recited in claim 1, wherein said electronically exchanging said check data step comprises the step of:

 a)  sending said check data from said non-financial institution location to said financial institution over an electronic channel;

 b)  said financial institution verifiying said check data with account records accessible by said financial institution;

 c)  when said check data conforms to said account records, said financial institution confirming said check data to said remote location; and

 d)  said non-financial institution location processing said check data into processed check data in response to said confirming step.

5.  The method as recited in claim 4, wherein said financial institution confirming said check data step comprises the steps of:

 a)  said financial institution acknowledging to said remote location receipt and accuracy of said check data; and

 b)  said financial institution sending endorsement and voiding information to said remote location.

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

- Page 38 -

Docket No. 7905.15

PPS-JHA000245

6.   The method as recited in claim 5, wherein said remote location processing said check data into processed check data step comprises the steps of:

a)   endorsing said check using said endorsement information; and

b)   voiding said check using said voiding information, said endorsing and voiding steps creating a processed check.

7.   The method as recited in claim 6, wherein said endorsing and voiding steps are further comprised of the step of:

a)   printing on said endorsement and voiding information on said check.

8.   The method as recited in claim 4, further comprising the step of:

a)   following said processing said check data into processed check data step, said remote location secondly converting said processed check data into electronic processed check data.

9.   The method as recited in claim 8, wherein said secondly converting step comprises the steps of:

a)   scanning said processed check to create image data, said image data representing an electronic image of said processed check; and

b)   reading said image data to create informational data from said image data to aid in electronic processing of said depositing of said check.

- Page 39 -

Docket No. 7905.15

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

PPS-JHA000246

10. The method as recited in claim 9, further comprising the steps of:

    a)  secondly electronically exchanging said processed check data with said financial institution.

11. The method as recited in claim 10, wherein said secondly electronically exchanging said check data step comprises the step of:

    a)  sending said processed check data from said remote location to said financial institution over an electronic channel;

    b)  said financial institution verifying said processed check data with account records accessible by said financial institution; and

    c)  when said processed check data conforms to said account records, said financial institution secondly confirming said processed check data to said remote location.

12. The method as recite in claim 4, wherein said crediting said account according to said check data step further comprises the step of:

    a)  when said financial institution is not the maker bank of said check, sending said processed check data to said maker bank for clearing said check.

Docket No. 7905.15

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

13. The method as recited in claim 12, wherein said sending said processed check data to said maker bank for clearing said check step comprises the steps of:

a) when said maker bank is electronic exchange-capable, electronically exchanging said processed check data with said maker bank; and

b) when said maker bank is not electronic exchange-capable, printing a facsimile of said check from said processed check data; and forwarding said facsimile of said check to said maker bank.

- Page 41 -

Docket No. 7905.15

PPS-JHA000248

14. A computer-readable medium having computer-executable instructions for performing a method for processing a check deposited at a location remote from a financial institution, said computer-executable instructions for performing the steps of:

    a)  converting said check into electronic check data;

    b)  electronically exchanging said check data with said financial institution; and

    c)  said financial institution crediting an account according to said check data.

15. The computer-readable medium having computer executable instructions, as recited in claim 14, wherein said computer-executable instructions for performing the step of converting comprises computer-executable instructions for performing the steps of:

    a)  scanning said check to create image data, said image data representing an electronic image of said check; and

    b)  reading said image data to create informational data from said image data to aid in electronic processing of said depositing of said check.

16. The computer-readable medium having computer executable instructions, as recited in claim 15, wherein said computer-executable instructions for performing the step of converting further comprises computer-executable instructions for performing the step of:

    a)  reading at least a portion of said check to determine additional informational data stored in a Magnetic Ink Character Recognition (MICR) line.

- Page 42 -

Docket No. 7905.15

PPS-JHA000249

17. The computer-readable medium having computer executable instructions, as recited in claim 14, wherein said computer-executable instructions for performing said electronically exchanging said check data step comprises computer-executable instructions for performing the step of:

    a)  sending said check data from said non-financial institution location to said financial institution over an electronic channel;

    b)  said financial institution verifying said check data with account records accessible by said financial institution;

    c)  when said check data conforms to said account records, said financial institution confirming said check data to said non-financial institution location; and

    d)  said non-financial institution location processing said check data into processed check data in response to said confirming step.

18. The computer-readable medium having computer executable instructions, as recited in claim 17, wherein said computer-executable instructions for performing the step of said financial institution confirming said check data step comprises computer-executable instructions for performing the steps of:

    a)  said financial institution acknowledging to said non-financial institution location receipt and accuracy of said check data; and

    b)  said financial institution sending endorsement and voiding information to said non-financial institution location.

Docket No. 7905.15

PPS-JHA000250

19. The computer-readable medium having computer executable instructions, as recited in claim 18, wherein said computer-executable instructions for performing the step of said non-financial institution location processing said check data into processed check data step comprises computer-executable instructions for performing the steps of:

    a)   endorsing said check using said endorsement information; and

    b)   voiding said check using said voiding information, said endorsing and voiding steps creating a processed check.

20. The computer-readable medium having computer executable instructions, as recited in claim 18, wherein said computer-executable instructions for performing the steps of endorsing and voiding are further comprised of computer-executable instructions for performing the step of:

    a)   printing on said endorsement and voiding information on said check.

21. The computer-readable medium having computer executable instructions, as recited in claim 17, wherein said computer-readable medium further comprise computer-executable instructions for performing the step of:

    a)   following said processing said check data into processed check data step, said non-financial institution location secondly converting said processed check data into electronic processed check data.

Docket No. 7905.15

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

PPS-JHA0000251

22. The computer-readable medium having computer executable instructions, as recited in claim 21, wherein said computer-executable instructions for performing the step of secondly converting comprises computer-executable instructions for performing the steps of:

    a)  scanning said processed check to create image data, said image data representing an electronic image of said processed check; and

    b)  reading said image data to create informational data from said image data to aid in electronic processing of said depositing of said check.

23. The computer-readable medium having computer executable instructions, as recited in claim 22, wherein said computer-readable medium further comprise computer-executable instructions for performing the steps of:

    a)  secondly electronically exchanging said processed check data with said financial institution.

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

- Page 45 -

Docket No. 7905.15

PPS-JHA000252

24. The computer-readable medium having computer executable instructions, as recited in claim 23, wherein said computer-executable instructions for performing the step of secondly electronically exchanging said check data comprises computer-executable instructions for performing the steps of:

    a)  sending said processed check data from said non-financial institution location to said financial institution over an electronic channel;

    b)  said financial institution verifying said processed check data with account records accessible by said financial institution; and

    c)  when said processed check data conforms to said account records, said financial institution secondly confirming said processed check data to said non-financial institution location.

25. The computer-readable medium having computer executable instructions, as recited in claim 17, wherein said computer-executable instructions for performing the step of crediting said account according to said check data step further comprises computer-executable instructions for performing the step of:

    a)  when said financial institution is not the maker bank of said check, sending said processed check data to said maker bank for clearing said check.

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

- Page 46 -

Docket No. 7905.15

PPS-JHA000253

26. The computer-readable medium having computer-executable instructions, as recited in claim 25, wherein said computer-executable instructions for performing the step of sending said processed check data to said maker bank for clearing said check comprises computer-executable instructions for performing the steps of:

a) when said maker bank is electronic exchange-capable, electronically exchanging said processed check data with said maker bank; and when said maker bank is not electronic exchange-capable, printing a facsimile of said check from said processed check data; and forwarding said facsimile of said check to said maker bank.

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

- Page 47 -

Docket No. 7905.15

PPS-JHA000254

27. A system for processing a deposit of a check, said system comprising:

    a)  a remote site for converting said check into electronic check data;

    b)  a central site electronically accessible to said remote site, said central site capable of electronically exchanging said check data with financial institution; and

    c)  a maker site capable of electronically interfacing with said central site to obtain said check data and to credit an account according to said check data without having to physically receive the check at said financial institution.

28. The system for processing a deposit of a check, as recited in claim 27, wherein said remote site further comprises:

    a)  a scanner/reader/printer to receive said check for processing; and

    b)  a remote processor electronically and operably coupled to said scanner/reader/printer, said remote processor further comprising computer-executable instructions for interacting with said scanner/reader/printer, said computer-executable instructions in conjunction with said scanner/reader/printer for performing the steps of:

        i)  scanning said check to create image data, said image data representing an electronic image of said check;

        ii)  reading said image data to create informational data from said image data to aid in electronic processing of said depositing of said check; and

        iii)  sending said check data from said remote site to said central site over an electronic channel.

Docket No. 7905.15

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

PPS-JHA000255

29. The system for processing a deposit of a check, as recited in claim 27, wherein said central site further comprises:

    a) central site processor further comprising computer-executable instructions for performing the steps of:

    b) verifying said check data with account records accessible by said central site; and

    c) when said check data conforms to said account records, said central site confirming said check data to remote site including sending endorsement and voiding information to said remote site.

30. The system for processing a deposit of a check, as recited in claim 29, wherein said remote site further comprises computer-executable instructions for:

    a) in response to said central site confirming step, processing said check data into processed check data including

    b) endorsing said check using said endorsement information;

    c) voiding said check using said voiding information, said endorsing and voiding steps creating a processed check; and

    d) secondly converting said processed check into electronic processed check data by scanning said processed check to create image data, said image data representing an electronic image of said processed check and reading said image data to create information al data from said image data to aid in electronic processing of said depositing of said check.

Docket No. 7905.15

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

PPS-JHA000256

31. The system for processing a deposit of a check as recited in claim 27, wherein said account is credited according to said check data without having to receive the physical check at the maker site.

Docket No. 7905.15

PPS-JHA000257

1    32. A method for processing a check deposited at a financial institution, said

2    method comprising the steps of:

3            a)  converting said check into electronic check data;

4            b)  electronically  exchanging  said  check  data  with  said  financial

5    institution; and

6            c)  said financial institution crediting an account according to said check

7    data.

Docket No. 7905.15

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

PPS-JHA000258

### **ABSTRACT OF THE INVENTION**

A system that includes computer hardware, computer software, apparatus, and methodology that enables individuals, businesses, and all types of organizations (both for profit and non-profit) to capture and securely transmit check images (including, but not limited to, personal checks, business checks, travelers checks, money orders, merchant coupons, food coupons, line of credit checks, etc.), deposit information, and other information from remote locations (i.e., locations that could include the financial institution's remote locations, other financial institution's locations, businesses, private residences, etc.), for the purpose of having those checks credited to the depositing individual's or organization's bank account(s) and having the check images (and/or physical checks) entered into the  bank check clearing channels for ultimate delivery to the maker bank for payment out of the maker's account.

G:\DATA\PAT\WORDPAT\7905_15.doc

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

- Page 52 -

Docket No. 7905.15

PPS-JHA000259

1 / 15



FIG. 1



FIG. 2

PPS-JHA0000261



**FIG. 3**

4 / 15



FIG. 4



FIG. 5

6 / 15



FIG. 6

7 / 15



FIG. 7a

8 / 15



FIG. 7b

PPS-JHA000267

9 / 15



FIG. 7c

10 / 15



FIG. 7d

11 / 15



FIG. 7e

12 / 15



FIG. 7f

13 / 15



FIG. 7g

14 / 15



FIG. 7h

PPS-JHA000273

15 / 15



FIG. 7i

876
Communicate to central site processor.

877
Go to 764-is deposit complete.

811
Does payee bank need paper check ?

Yes

No

812
FRB prints paper check

813
FRB includes in check processing strem.

814
Go to 815-Payee bank receives check image.

815
Payee bank receives check or image.

816
Go to 861-is item payable.

Express Mail Label No. EL550340765US

PATENT APPLICATION
Docket No:  7905.15

## DECLARATION, POWER OF ATTORNEY, AND PETITION

We,

|        |                |                                                                             |
|--------|----------------|-----------------------------------------------------------------------------|
| (1)    | Name:          | Danne L. Buchanan                                                           |
|        | Address:       | 3362 East Oak Hollow Circle                                                |
|        |                | Sandy, Utah 84093                                                          |
|        | Citizenship:   | United States of America                                                   |
| (2)    | Name:          | William Ronald Titus                                                        |
|        | Address:       | 345 North Coventry Circle                                                  |
|        |                | Fruit Heights, Utah 84037                                                  |
|        | Citizenship:   | United States of America                                                   |

declare:  that our citizenship, residence address, and post office address are as set forth above; that we verily believe we are the original, first, and joint inventors of the subject matter of the invention or discovery entitled METHOD AND SYSTEM FOR PROCESSING FINANCIAL INSTRUMENT DEPOSITS PHYSICALLY REMOTE FROM A FINANCIAL INSTITUTION for which a patent is sought and which is described and claimed in the specification attached hereto; that we have reviewed and understand the contents of the above-identified specification, including the claims, as amended by any amendment specifically referred to herein; and that we acknowledge the duty to disclose information which is material to the patentability of this application in accordance with Section 1.56(a) of Title 37 of the Code of Federal Regulations.

We declare further that all statements made herein of our own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful, false statements and the like so made are

PPS-JHA000275

punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code, and that such willful, false statements may jeopardize the validity of the application or any patent issuing thereon.

We hereby appoint as our attorneys and/or patent agents: RICK D. NYDEGGER, Registration No. 28,651; DAVID O. SEELEY, Registration No. 30,148; JONATHAN W. RICHARDS, Registration No. 29,843; JOHN C. STRINGHAM, Registration No. 40,831; BRADLEY K. DeSANDRO, Registration No. 34,521; JOHN M. GUYNN, Registration No. 36,153; CHARLES L. ROBERTS, Registration No. 32,434; GREGORY M. TAYLOR, Registration No. 34,263; DANA L. TANGREN, Registration No. 37,246; KEVIN B. LAURENCE, Registration No. 38,219; ERIC L. MASCHOFF, Registration No. 36,596; C. J. VEVERKA, Registration No. 40,858; ROBYN L. PHILLIPS, Registration No. 39,330; RICHARD C. GILMORE, Registration No. 37,335; DAVID B. DELLENBACH, Registration No. 39,166; KEVIN K. JOHANSON, Registration No. 38,506; DAVID L. GRIFFIN, Registration No. 44,136; R. BURNS ISRAELSEN, Registration No. 42,685; DAVID R. TODD, Registration No. 41,348; FRASER D. ROY, Registration No. 45,666; CARL T. REED, Registration No. 45,454; JESÚS JUANÓS i TIMONEDA, Registration No. 43,332; STEPHEN D. PRODNUK, Registration No. 43,020; R. PARRISH FREEMAN, JR., Registration No. 42,556; PETER F. MALEN, JR., Registration No. 45,576; ADRIAN J. LEE, Registration No. 42,785; KYLE H. FLINDT, Registration No. 42,539; and ERIC M. KAMERATH, Registration No. 46,081, with full power of substitution and revocation, to prosecute this application and to transact all business in the Patent and Trademark Office connected therewith. All correspondence and telephonic communications should be directed to:

2

PPS-JHA000276

Kevin K. Johanson
WORKMAN, NYDEGGER & SEELEY
1000 Eagle Gate Tower
60 East South Temple
Salt Lake City, Utah  84111
Telephone:  (801) 533-9800
Facsimile:  (801) 328-1707

Wherefore, we pray that Letters Patent be granted to us for the invention or discovery described and claimed in the foregoing specification and claims, declaration, power of attorney, and this petition.

DATED this 28th day of April, 2000.

Inventor: _____
DANNE L. BUCHANAN
3362 East Oak Hollow Circle
Sandy, Utah 84093


DATED this 28th day of April, 2000.

Inventor: _____
WILLIAM RONALD TITUS
345 North Coventry Circle
Fruit Heights, Utah 84037

G:\DATA\WPDOCS2\CIA\KKJ\ZIONS\7905-15-powr.doc

3

BEST AVAILABLE COPY

PATENT NUMBER

**U.S. UTILITY Patent Application**

KW  O.I.P.E.
SCANNED ___  Q.A. ___

PATENT DATE

| APPLICATION NO. | CONT/PRIOR | CLASS | SUBCLASS | ART UNIT | EXAMINER |
|---|---|---|---|---|---|
| 09/560779 | | 705 | 42 | 3628 | |

**APPLICANTS**
Danne Buchanan
William Titus

**TITLE**
Method and system for processing financial instrument deposits
physically remote from a financial institution

PTO-2040
12/99

## ISSUING CLASSIFICATION

| ORIGINAL | | CROSS REFERENCE(S) | | |
|---|---|---|---|---|
| CLASS | SUBCLASS | CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) | |

**INTERNATIONAL CLASSIFICATION**

☐ Continued on Issue Slip Inside File Jacket

| ☐ TERMINAL DISCLAIMER | DRAWINGS | | | CLAIMS ALLOWED | |
|---|---|---|---|---|---|
| | Sheets Drwg. | Figs. Drwg. | Print Fig. | Total Claims | Print Claim for O.G. |

☐ The term of this patent
subsequent to _____ (date)
has been disclaimed.

(Assistant Examiner)          (Date)

**NOTICE OF ALLOWANCE MAILED**

☐ The term of this patent shall
not extend beyond the expiration date
of U.S Patent. No. _____

(Primary Examiner)          (Date)

**ISSUE FEE**

| Amount Due | Date Paid |
|---|---|

☐ The terminal _____ months of
this patent have been disclaimed.

(Legal Instruments Examiner)          (Date)

**ISSUE BATCH NUMBER**

**WARNING:**
The information disclosed herein may be restricted. Unauthorized disclosure may be prohibited by the United States Code Title 35, Sections 122, 181 and 368.
Possession outside the U.S. Patent & Trademark Office is restricted to authorized employees and contractors only.

FILED WITH:  ☐ DISK (CRF)   ☐ FICHE   ☐ CD-ROM
(Attached in pocket on right inside flap)

Form PTO-436A
(Rev. 6/99)

(FACE)

PPS-JHA000278



BEST AVAILABLE COPY

BEST AVAILABLE COPY

## SEARCHED

| Class | Sub. | Date | Exmr. |
|-------|------|------|-------|
| 705 | 40, 42, 43, 44, 45, 16, 18, 17 | 4/8/00 | mn |
| Updated above 235 | 379, 380, 361, | 4/10/002 | mn |
| Updated above | 3/10/03 | mn |
| Updated above | 10/17/03 | mn |
| Updated above | 3/19/04 | mn |

## SEARCH NOTES
### (INCLUDING SEARCH STRATEGY)

|  | Date | Exmr. |
|--|------|-------|
| STN & WEST | 4/8/00 | mn |
| Updated above | 4/10/02 | mn |
| WEST text sears (see att.) | 3/10/03 | mn |
| Updated above | 10/17/03 | mn |
| Updated above | 3/19/04 | mn |

## INTERFERENCE SEARCHED

| Class | Sub. | Date | Exmr. |
|-------|------|------|-------|
|       |      |      |       |

(RIGHT OUTSIDE)



ISSUE SLIP STAPLE AREA (for additional cross references)

| POSITION | INITIALS | ID NO. | DATE |
|---|---|---|---|
| FEE DETERMINATION | | 72192 | 5/9/00 |
| O.I.P.E. CLASSIFIER | RSB | | 5/10/00 |
| FORMALITY REVIEW | | | |
| RESPONSE FORMALITY REVIEW | | 40303 | 7-9 |

### INDEX OF CLAIMS

| ✓ | ................................. Rejected | N | ................................. Non-elected |
|---|---|---|---|
| = | ................................. Allowed | I | ................................. Interference |
| − | (Through numeral).. Canceled | A | ................................. Appeal |
| + | ................................. Restricted | O | ................................. Objected |

If more than 150 claims or 10 actions
staple additional sheet here

(LEFT INSIDE)

BEST AVAILABLE COPY

Form PTO-436
(Rev. 6/99)

PPS-JHA000280

Express Mail Label No.  EL550340765US

05-01-00

A

| UTILITY PATENT APPLICATION TRANSMITTAL **(Large Entity)** *(Only for new nonprovisional applications under 37 CFR 1.53(b))* | Docket No. **7905.15** |
|---|---|
| | Total Pages in this Submission |

### TO THE ASSISTANT COMMISSIONER FOR PATENTS
**Box Patent Application**
**Washington, D.C.  20231**

Transmitted herewith for filing under 35 U.S.C. 111(a) and 37 C.F.R. 1.53(b) is a new utility patent application for an invention entitled:

> **METHOD AND SYSTEM FOR PROCESSING FINANCIAL INSTRUMENT DEPOSITS PHYSICALLY REMOTE FROM A FINANCIAL INSTITUTION**

and invented by:

> **Danne L. Buchanan**
> **William Ronald Titus**

If a **CONTINUATION APPLICATION,** *check appropriate box and supply the requisite information:*

☐ **Continuation**   ☐ **Divisional**   ☐ **Continuation-in-part (CIP)**   of prior application No.: _____

Which is a:

☐ **Continuation**   ☐ **Divisional**   ☐ **Continuation-in-part (CIP)**   of prior application No.: _____

Which is a:

☐ **Continuation**   ☐ **Divisional**   ☐ **Continuation-in-part (CIP)**   of prior application No.: _____

Enclosed are:

### Application Elements

1.  ☒   Filing fee as calculated and transmitted as described below

2.  ☒   Specification having   **fifty-two (52)**   pages and including the following:

   a.  ☒   Descriptive Title of the Invention

   b.  ☐   Cross References to Related Applications *(if applicable)*

   c.  ☐   Statement Regarding Federally-sponsored Research/Development *(if applicable)*

   d.  ☐   Reference to Microfiche Appendix *(if applicable)*

   e.  ☒   Background of the Invention

   f.  ☒   Brief Summary of the Invention

   g.  ☒   Brief Description of the Drawings *(if drawings filed)*

   h.  ☒   Detailed Description

   i.  ☒   Claim(s) as Classified Below

   j.  ☒   Abstract of the Disclosure

P01ULRGR/REV04

U.S. PTO 09/560779 JC678 04/28/00

PPS-JHA0000281

| UTILITY PATENT APPLICATION TRANSMITTAL (Larg  Entity) *(Only for new nonprovisional applications under 37 CFR 1.53(b))* | Docket No. 7905.15 |
| --- | --- |
| | Total Pages in this Submission |

### Applicati n Elements (Continu d)

3. ☒  Drawing(s) *(when necessary as prescribed by 35 USC 113)*

   a. ☒  Formal     Number of Sheets     **fifteen (15)**

   b. ☐  Informal     Number of Sheets

4. ☒  Oath or Declaration

   a. ☒  Newly executed *(original or copy)*    ☐  Unexecuted

   b. ☐  Copy from a prior application (37 CFR 1.63(d)) *(for continuation/divisional application only)*

   c. ☒  With Power of Attorney    ☐  Without Power of Attorney

   d. ☐  *DELETION OF INVENTOR(S)*
       Signed statement attached deleting inventor(s) named in the prior application,
       see 37 C.F.R. 1.63(d)(2) and 1.33(b).

5. ☐  Incorporation By Reference *(usable if Box 4b is checked)*
    The entire disclosure of the prior application, from which a copy of the oath or declaration is supplied under Box 4b, is considered as being part of the disclosure of the accompanying application and is hereby incorporated by reference therein.

6. ☐  Computer Program in Microfiche *(Appendix)*

7. ☐  Nucleotide and/or Amino Acid Sequence Submission *(if applicable, all must be included)*

   a. ☐  Paper Copy

   b. ☐  Computer Readable Copy *(identical to computer copy)*

   c. ☐  Statement Verifying Identical Paper and Computer Readable Copy

### Accompanying Application Parts

8. ☒  Assignment Papers *(cover sheet & document(s))*

9. ☐  37 CFR 3.73(B) Statement *(when there is an assignee)*

10. ☐  English Translation Document *(if applicable)*

11. ☐  Information Disclosure Statement/PTO-1449    ☐  Copies of IDS Citations

12. ☐  Preliminary Amendment

13. ☒  Acknowledgment postcard

14. ☒  Certificate of Mailing

      ☐  First Class    ☒  Express Mail *(Specify Label No.):* **EL550340765US**

P01ULRG/REV04

PPS-JHA000282

# UTILITY PATENT APPLICATION TRANSMITTAL
## (Larg  Entity)
*(Only for new nonprovisional applications under 37 CFR 1.53(b))*

| Docket No. |
| --- |
| 7905.15 |

| Total Pages in this Submission |
| --- |
| |

### Acc mpanying Application Parts (C ntinued)

15. ☐   Certified Copy of Priority Document(s) *(if foreign priority is claimed)*

16. ☐   Additional Enclosures *(please identify below):*

### Fee Calculation and Transmittal

| CLAIMS AS FILED | | | | | |
| --- | --- | --- | --- | --- | --- |
| For | #Filed | #Allowed | #Extra | Rate | Fee |
| Total Claims | 32 | - 20 = | 12 | x   $18.00 | $216.00 |
| Indep. Claims | 4 | - 3 = | 1 | x   $78.00 | $78.00 |
| Multiple Dependent Claims (check if applicable)   ☐ | | | | | $0.00 |
| | | | | BASIC FEE | $690.00 |
| OTHER FEE *(specify purpose)* | | Assignment Recordation Fee | | | $40.00 |
| | | | | TOTAL FILING FEE | $1,024.00 |

☒   A check in the amount of        $1,024.00        to cover the filing fee is enclosed.
☒   The Commissioner is hereby authorized to charge and credit Deposit Account No.        23-3178
as described below.  A duplicate copy of this sheet is enclosed.
   ☐   Charge the amount of                        as filing fee.
   ☒   Credit any overpayment.
   ☒   Charge any additional filing fees required under 37 C.F.R. 1.16 and 1.17.
   ☐   Charge the issue fee set in 37 C.F.R. 1.18 at the mailing of the Notice of Allowance,
      pursuant to 37 C.F.R. 1.311(b).

*Signature*

Kevin K. Johanson
Registration No. 38,506
WORKMAN, NYDEGGER & SEELEY
60 East South Temple
1000 Eagle Gate Tower
Salt Lake City, Utah 84111
Telephone:  (801) 533-9800
Facsimile:  (801) 328-1707

Dated:    April 28, 2000

cc:

P01ULRG/REV04

PPS-JHA000283

| CERTIFICATE OF MAILING BY "EXPRESS MAIL" (37 CFR 1.10) | Docket No. |
|---|---|
| Applicant(s):  Danne L. Buchanan and William Ronald Titus | 7905.15 |

| Serial No. | Filing Date<br>April 28, 2000 | Examiner | Group Art Unit |
|---|---|---|---|

Invention:   **METHOD AND SYSTEM FOR PROCESSING FINANCIAL INSTRUMENT DEPOSITS PHYSICALLY REMOTE FROM A FINANCIAL INSTITUTION**

I hereby certify that this   <u>Utility Patent Application (including the items listed below)</u>
*(Identify type of correspondence)*

is being deposited with the United States Postal Service "Express Mail Post Office to Addressee" service under

37 CFR 1.10 in an envelope addressed to: The Commissioner of Patents and Trademarks, Washington, D.C.

20231-0001 on _____ **April 28, 2000**
*(Date)*

Kevin K. Johanson
*(Typed or Printed Name of Person Mailing Correspondence)*

*(Signature of Person Mailing Correspondence)*

**EL550340765US**
*("Express Mail" Mailing Label Number)*

**Note: Each paper must have its own certificate of mailing.**

Transmitted:   Utility Patent Application (52 pgs.)
Utility Patent Application Transmittal Letter (3 pgs.)
Formal Drawings (15 sheets)
Declaration, Power of Attorney, and Petition (3 pgs.)
Assignment including Recordation Form Cover Sheet (4 pgs.)
Check No. 115184   in the amount of $1,024.00
Certificate of Mailing by Express Mail Label No. EL550240765US
Postcard

Copyright 1995 Legalsoft

P06B/REV02

1 / 15



FIG. 1

2 / 15



FIG. 2

PPS-JHA000286

3 / 15



FIG. 3

4 / 15



FIG. 4

5 / 15



FIG. 5

6 / 15



FIG. 6

7 / 15



FIG. 7a

8 / 15



FIG. 7b

9 / 15



FIG. 7c

10 / 15



FIG. 7d

PPS-JHA000294

11 / 15



FIG. 7e

PPS-JHA000295

12 / 15



FIG. 7f

13 / 15



FIG. 7g

14 / 15



FIG. 7h

PPS-JHA000298

15 / 15



FIG. 7i

Express Mailing L No. EL417646426US

PATENT APPLICATION
Docket No.:  7905.15

<div style="writing-mode: vertical">WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE</div>

# UNITED STATES PATENT APPLICATION

of

**Danne L. Buchanan**

and

**William Ronald Titus**

for

**METHOD AND SYSTEM FOR PROCESSING FINANCIAL
INSTRUMENT DEPOSITS PHYSICALLY REMOTE
FROM A FINANCIAL INSTITUTION**

PPS-JHA000300

# BACKGROUND OF THE INVENTION

## 1.    The Field of the Invention

The present invention relates to physical financial instrument processing.  More particularly, the present invention relates to a method and system for remotely processing checks through electronic interaction between the physical location of the instrument and a financial institution.

## 2.    Related Applications

The act of depositing or otherwise converting a financial instrument such as a check, draft, or other instrument has generally required the physical presentment of the instrument by the bearer to a financial institution such as a bank, credit union, or other institution authorized to accept and process monetary instruments.  Indeed, the depositing and clearing of checks has heretofore involved individuals or organizations physically taking their deposit, such as in the form of a check, to financial institutions or trusted remote institutional branches, otherwise known as the bank of first deposit, where the deposit may be accepted, and credited to the bank customer's account, of course, subject to the check "clearing" with the maker financial institution.

Financial institutions have developed methods for reducing the amount of paper flow associated with checks within their organizations, however, their target has not been to reduce processing costs, improve the timeliness of the money collection from other financial institutions, and reduce costs associated with handling, storing and returning paper checks to the maker.  Therefore, it would be an advancement to provide a new system centered on electronic information that does not require the use of paper items for any purpose.

Docket No. 7905.15

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

PPS-JHA000301

1    Therefore, it would be advantageous to provide an electronic processing system

2  and method that could provide a bearer of a check the convenience to "deposit" a check

3  at a facility, such as a home or office, that is not a traditional bank or bank branch

4  facility.

5    It would also be advantageous to provide a method and system for allowing the

6  remote depositing and processing a check that does not require the physical routing of the

7  actual check in order to accomplish the various post-deposit processing of a check. It

8  would yet be a further advantage to provide a method and system for improving the

9  collection time involved with the funds represented by the check (i.e., reduce credit

10  "float").

11    It would be a benefit to provide a method and system for reducing expenses

12  associated with the transportation costs involved in sending the checks from the bank of

13  first deposit to the maker financial institution.

14    It would also be a benefit to provide a method and system for reducing the check

15  storage expenses incurred by the bank of first deposit.

16    It would be a further benefit to enable the bank of first deposit to reduce the

17  staffing, facilities (i.e., physical buildings), and equipment required to accept and process

18  physical checks.

19

20

21

22

23

24

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

- Page 3 -

Docket No. 7905.15

PPS-JHA000302

## SUMMARY AND OBJECTS OF THE INVENTION

The present invention has been designed to reduce the issues associated with the physical handling of paper items by financial institutions and to improve the collections of associated funds by processing electronic images of checks as opposed to the slower method of sending paper checks through the traditional check clearing routes. Not withstanding the premise for the inventive processes to use electronic images of items to facilitate processing and clearing of items, it would also be desirable for the present invention to accommodate the current use of paper items and all other commonly accepted methods for clearing checks until such time as the use of electronic images becomes a common accepted practice for clearing checks.

This new process involves inventive computer-based software that can be used at financial institution locations and locations remote from financial institution offices for capturing deposits, together herein referred to as remote locations. The remote capture system can be used by individuals and businesses (including the financial institution) to capture deposit information and images of the monetary items, such as checks, required for depositing the checks into their deposit accounts at the financial institution. Once this information is captured and validated at the remote site, it is transferred to the financial institution over telecommunications lines (leased lines, switched lines, Internet, etc.) to a receiving computer at the financial institution. The financial institution computer verifies the information received, stores the image of the items, and passes back to the remote site computer information that is used by the remote site computer to endorse, cancel, and item number, and otherwise mark, void, and identify the check. Another image of the check is then created at the remote location showing the endorsements information. This image is then sent to the central site of the financial institution for storage and to be used

- Page 4 -                    Docket No. 7905.15

1   for research and re-depositing of the check if this becomes necessary.  The depositor

2   retains the deposit slips and monetary item(s) at the remote site.

3        As an alternative to the interactive process of passing voiding, endorsing, unique

4   number information back and forth between the central site and the remote site, it will be

5   possible (based on parameters set in the inventive software) to do most of the decision-

6   making on the remote site processor before transmitting the check information to the

7   central site.  This can be done by pre-loading the endorsement, voiding, and item

8   numbering information on the remote site processor and/or updating on a regular basis.

9   This allows for checks to be endorsed, voided and item numbered and the image(s)

10  associated with a check deposit to be created and passed to the central site without the

11  need for interactive validation of data between the remote and central sites.

12       In addition to deposits, decisions based on remote site information, the present

13  invention also allows deposits of any number, combination, and dollar amounts of

14  deposit, and checks based upon decisions made regarding the customer by information

15  stored at the central site.  This information can be loaded onto the central site and

16  communicated to the remote processor as part of the interactive exchange of data during

17  the process of validating the deposit.  Additionally, this information while being pre-

18  loaded on the remote processor can also be updated on a regular basis.

19       Once complete deposit data is received by the central site processor at the bank of

20  first deposit's central site, it is passed to the central site's check processing, deposit, and

21  cash management, etc., systems for processing.  As an alternative, if the remote site or

22  central site is being used as a collection center for deposits from other institutions, the

23  deposit information can be passed to the other institutions check processing, deposit, and

24  cash management, etc., systems for processing.  The image of the checks can be used to

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

- Page 5 -

PPS-JHA000304

1  either print the customer statements (for items drawn on the bank of first deposit or

2  routed through the normal check clearing paths (i.e. directly to clearing and

3  correspondent banks or through the FRB electronic clearing process). If the maker or

4  maker bank(s) require physical checks for their internal purposes, a duplicate check is

5  printed by either the bank of first deposit's central site, or the maker bank or by the maker

6  banks FRB.

7      Once received by the maker bank, the check image or duplicate printed check is

8  processed by the maker bank through their computer systems and included as per their

9  policies in their customer statements.  Checks returned to the depositor for any reason

10 will take the reverse path back to the depositor.  Any re-depositing of items by the

11 original depositor is done using the either the printed duplicate paper item (if there is one)

12 or the original endorsed image created and stored at the bank of first deposit's central

13 site.

14     All transmission of data preferably undergoes digital signature verification and

15 certification and data encryption to ensure privacy and confidentiality of the data being

16 transmitted.  In addition, the check images will be stored on a document storage database

17 at the remote site or bank of first deposit as well as Internet enabled and accessible

18 database(s).  The information on these database(s) will be available to the depositor and

19 research personnel at the bank of first deposit's central site under security control through

20 remote access such as Internet access.

21     The system includes computer hardware, computer software, apparatus, and

22 methodology that enables individuals, businesses, and all types of organizations (both for

23 profit and non-profit) to capture and securely transmit check images (including, but not

24 limited to, personal checks, business checks, travelers checks, money orders, merchant

- Page 6 -

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

PPS-JHA000305

1   coupons, food coupons, line of credit checks, etc.), deposit information, and other

2   information from remote locations (i.e., locations that could include the financial

3   institution's remote locations, other financial institution's locations, businesses, private

4   residences, etc.), for the purpose of having those checks credited to the depositing

5   individual's or organization's bank account(s) and having the check images (and/or

6   physical checks) entered into the bank check clearing channels for ultimate delivery to

7   the maker bank for payment out of the maker's account.

8        These and other objects and features of the present invention will become more

9   fully apparent from the following description and appended claims, or may be learned by

10  the practice of the invention as set forth hereinafter.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

- Page 7 -

Docket No. 7905.15

## **BRIEF DESCRIPTION OF THE DRAWINGS**

A more extensive description of the present invention, including the above-recited features, advantages, and objects, will be rendered with reference to the specific embodiments that are illustrated in the appended drawings. Because these drawings depict only exemplary embodiments, the drawings should not be construed as imposing any limitation on the present invention's scope. As such, the present invention will be described and explained with additional specificity and detail through use of the accompanying drawings in which:

Figure 1 illustrates an overview of a process of capturing and processing deposits from financial institutions and their branches which can be adapted to incorporate some of the features of the present invention;

Figure 2 illustrates an overview of remotely capturing and processing deposits remote from a financial branch or bank, in accordance with a preferred embodiment of the present invention;

Figure 3 is a more detailed block diagram showing the capturing and processing at the remote site or point of check presentment, in accordance with a preferred embodiment of the present invention;

Figure 4 illustrates central site processing of image data as captured at the remote site, in accordance with a preferred embodiment of the present invention;

Figure 5 illustrates processing at the maker or payor institution site, in accordance with a preferred embodiment of the present invention;

Figure 6 illustrates a processing diagram of the interaction between entities of the present invention; and

Figure 7 is a process flowchart of check processing of the present invention.

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

- Page 8 -

Docket No. 7905.15

PPS-JHA000307

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

The invention is described below with reference to drawings. These drawings illustrate certain details of specific embodiments that implement the systems and methods of the present invention. However, describing the invention with drawings should not be construed as imposing, on the invention, any limitations that may be present in the drawings. The present invention contemplates both methods and systems for remotely accepting a check for deposit and electronically processing the deposit without physically routing the physical paper copy of the check. The embodiments of the present invention may comprise a special purpose or general purpose computer including various computer hardware, the execution unit portion of which may also be known herein as a "processor."

Embodiments within the scope of the present invention also include computer-readable media for carrying or having computer-executable instructions or data structures stored thereon and also known as software. Such computer-readable media can be any available media which can be accessed by a general purpose or special purpose computer. By way of example, and not limitation, such computer-readable media can comprise RAM, ROM, EPROM, EEPROM, CD-ROM or other optical disk storage, magnetic disk storage or other magnetic storage devices, or any other medium which can be used to carry or store desired program code means in the form of computer-executable instructions or data structures and which can be accessed by a general purpose or special purpose computer. When information is transferred or provided over a network or another communications connection (either hardwired, wireless, or a combination of hardwired or wireless) to a computer, the computer properly views the connection as a computer-readable medium. Thus, any such a connection is properly termed a computer-

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

Docket No. 7905.15

readable medium.   Combinations of the above should also be included within the scope of computer-readable media.   Computer-executable instructions comprise, for example, instructions and data which cause a general purpose computer, special purpose computer, or special purpose processing device to perform a certain function or group of functions. Computer-executable instructions may also be properly termed "software" as known by those of skill in the art.

Although not required, the invention will be described in the general context of computer-executable instructions, such as program modules, being executed by computers in network environments.   Generally, program modules include routines, programs, objects, components, data structures, etc. that perform particular tasks or implement particular abstract data types.   Computer-executable instructions, associated data structures, and program modules represent examples of the program code means for executing steps of the methods disclosed herein.   The particular sequence of such executable instructions or associated data structures represent examples of corresponding acts for implementing the functions described in such steps.

Those skilled in the art will appreciate that the invention may be practiced in network computing environments with many types of computer system configurations, including personal computers, hand-held devices, multi-processor systems, microprocessor-based or programmable consumer electronics, network PCs, minicomputers, mainframe computers, and the like. The invention may also be practiced in distributed computing environments where tasks are performed by local and remote processing devices that are linked (either by hardwired links, wireless links, or by a combination of hardwired or wireless links) through a communications network.   In a

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

- Page 10 -

Docket No. 7905.15

PPS-JHA000309

1   distributed computing environment, program modules may be located in both local and

2   remote memory storage devices.

3       An exemplary system for implementing the portions of the invention includes a

4   general purpose computing device in the form of a conventional computer, including a

5   processing unit, a system memory, and a system bus that couples various system

6   components including the system memory to the processing unit. The system memory

7   may include read only memory (ROM) and random access memory (RAM). The

8   computer may also include a magnetic hard disk drive for reading from and writing to a

9   magnetic hard disk, a magnetic disk drive for reading from or writing to a removable

10  magnetic disk, and an optical disk drive for reading from or writing to removable optical

11  disk such as a CD-ROM or other optical media.   The drives and their associated

12  computer-readable media provide nonvolatile storage of computer-executable

13  instructions, data structures, program modules and other data for the computer.

14      Program code or software means comprising one or more program modules may

15  be stored on the hard disk, magnetic disk, optical disk, ROM or RAM, including an

16  operating system, one or more application or software programs, other program modules,

17  and program data.

18      The computer may operate in a networked environment using logical connections

19  to one or more remote computers having processors.  Logical connections may include a

20  local area network (LAN) and a wide area network (WAN) that are presented here by

21  way of example and not limitation.  Such networking environments are commonplace in

22  office-wide or enterprise-wide computer networks, intranets and the Internet.

23      It should also be pointed out that while the term "check" may be generically used

24  herein, it is contemplated by the inventors that other financial instruments are also

Docket No. 7905.15

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

PPS-JHA000310

1   contemplated within this meaning and therefore, the use of the term "check" is assumed

2   to have the broader meaning, both in the specification and the claims.

3         Additionally, the term "bank of first deposit" means the financial institution

4   sponsoring the remote site and which owns or employs a central site for processing

5   financial transactions.

6         Referring to Figure 1, a bank of first deposit 101 receives a check from the bearer

7   to begin processing the instrument.  Bank of first deposit 101 actually forwards, in step

8   113, the physical check(s) to a central site 102 for additional physical processing of the

9   actual check.  The physical check is processed at central site 102 using a reader/sorter

10  (not separately shown but included in 102) to acquire information such as the information

11  stored on the Magnetic Ink Character Recognition (MICR) line.  This information

12  includes the maker bank number, the account number, a check serial number, etc.  The

13  information from the check is then sent to an in-house computer system  (included in

14  102) for posting in steps 114, 115 to the appropriate bearer account(s) 103, 104 in the

15  bank of first deposit 101.  If the check is an on us item (i.e. an item that is drawn on the

16  bank that is processing it), the check is retained in a step 117 at storage 105 at bank of

17  first deposit 101, otherwise the check is sent in steps 116 and 119 or, alternatively in step

18  118 into a maker bank 108 for collection of funds.   The check(s) are either sent

19  physically in step 118 directly to maker bank 108 or routed in steps 116 and 119 through

20  a Federal Reserve Banks (FRB) 106 and107 check clearing processes to a maker bank

21  108.

22        The path taken by the check is determined by the working agreement that bank of

23  first deposit 101 has with maker bank 108.  If maker bank 108 is a member of the local

24  clearing-house association (thereby being a clearing bank), the checks can be exchanged

- Page 12 -

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

PPS-JHA000311

1  directly with maker bank 108. If the maker bank 108 is a correspondent bank (a bank

2  that has agreed to exchange checks directly with the bank of first deposit) the checks can

3  be sent directly to maker bank 108. All other checks are forwarded in steps 116 and 119

4  to the FRBS, 106 and 107 for exchange with maker bank 108. If a check is not paid by

5  maker bank 108 for any reason (i.e. it is a forgery, there are not sufficient funds in the

6  makers account to cover the amount of the check, etc.) the check is returned to the

7  depositor using the reverse path. Once the check is received by maker bank 108, the

8  check is processed in step 121 through the maker bank's check capture system 109.

9  Information from the check is then sent in steps 122 and 123 to the maker bank's

10  accounting systems 110 and 111 and the checks are either stored in step 124 at the maker

11  bank's check storage 112, or sent directly to the maker with their check statement.

12      Figure 2 depicts a high-level processing diagram of the various entities involved

13  in the overall financial processing of the present invention, in accordance with the

14  preferred embodiment. The present invention comprises three primary processing

15  entities: (i) a remote site 197, (ii) a central site 198, and (iii) a maker bank site 199. Each

16  of these sites enlists specific processing techniques which furthers the novel financial

17  instrument processing technique of the present invention.

18      In the present invention, a remote site processor 201 (further detailed in Figure 3)

19  either autonomously, or under operator/depositor control initially remotely "processes" a

20  check into electronic check data both in the form of image data and informational data

21  which can be further processed and approved at subsequent portions of the overall

22  process. In essence, the remote site provides a processing front-end that electronically

23  interacts via interface 202 with central site 198 through the transfer of electronic check

24  data for review and processing by electronic means at a central site. Remote site 197

- Page 13 -

Docket No. 7905.15

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

PPS-JHA000312

1   performs functions relating to the physical check including scanning, reading, and

2   printing on the checks.  Remote site 197 also exchanges image and/or authorization data

3   with the other entities as further described below.

4        Central site 198 of Figure 2 interacts via interfaces 207, 208 with maker bank site

5   199 for completing the clearing process relating to the check or related instrument.

6   Central site 198 is comprised of a central site processor 203 which coordinates

7   verification and account interaction.  Central site 198 also provides both electronic

8   storage of image and information data as well as providing an interface to maker bank

9   site 199.  Central site 198 provides image conversion technology for converting check

10  data from electronic form back to a hard copy check format for processing, printing, and

11  archiving when required by more traditional banking processes.  Otherwise, a system 205

12  may process the image of the check in image format.  System 205 prevents the need to

13  reprint the check and send the duplicate check through the check reader sorters.

14        Maker bank site 199 performs more traditional account processing of information

15  received from central site 198 such as from central site Federal Reserve Bank 106.

16  Maker bank site 199 is further comprised of maker bank FRB 107 and maker bank 108

17  and engages in account processing and statement generation.

18        Figure 3 depicts the remote site as well as the interaction by a depositor or

19  operator, in accordance with a preferred embodiment.  The present invention commences

20  with the presentation of a physical instrument such as a check by a bearer to remote site

21  197.   A remote scanner/reader/printer 309 provides the interface to the bearer for

22  presentment of the check.   Remote scanner/reader/printer 309, in the preferred

23  embodiment, is a multifunction device capable of independently performing each of the

24  functions of scanning, reading, and printing upon the check or physical financial

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

- Page 14 -

Docket No. 7905.15

1  instrument. It is also contemplated that individual devices for performing each of these

2  functions, scanning-reading-printing, may be integrated, whether automatically or

3  manually, to perform the combination of functions upon the check.

4      Remote scanner/reader/printer 309 is connected via an interface 310 to remote

5  processor 201.  Remote site processor 201, like each of the other processor elements in

6  the present invention, may be comprised of execution-capable devices, and is preferably

7  comprised of a computer, such as a personal, network, or general purpose computer.

8  Remote processor 201 is further coupled to central site processor 203 via an interface

9  transmission or network media 202, which may take the form of one or more of wired or

10  wireless media such as public switched lines, Internet or wide-area network connection,

11  microwave, satellite, digital phone, private leased lines, or any other current or future

12  acceptable communications facility and may further employ include encryption over the

13  interface.

14      Remote site processor 201 executes according to executable instructions such as

15  computer-executable instructions which are figuratively depicted in Figure 3 as software

16  313.  Software 313 is loaded or interfaces with remote processor 201 via a bus or other

17  physical interface depicted as interface 312.  Generally, software 313 is comprised of

18  executable instructions for (i) causing remote site processor 201 to instruct and execute

19  the necessary steps for capturing the check or financial instrument both physically and

20  electronically, (ii) performing requisite data processing on the electronic data from the

21  capturing step, and (iii) exchanging the captured data over interface or media 202 to

22  central site processor 203 when appropriate.

23      While details relating to the processing and method steps executed by remote site

24  processor 201 via software 313 are described below, remote site processor 201 further

- Page 15 -                                    Docket No. 7905.15

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

1   determines if remote processing decisional information such as comparison information

2   for making decisions on the number of deposits, dollar amount of deposits or dollar

3   amount of monetary items is available on remote site processor 201.  If such decisional

4   information is not available at remote site 197, then central site check processing may

5   require additional steps.   Remote site processor 201 also determines if the remote

6   processing information needed to void, endorse and itemize number each check 303 is

7   available to remote processor 201 for processing of check 303, according to the method

8   of the present invention.   If such remote processing information is available but not

9   current, the remote processing information may be updated by either having the updated

10   information manually entered, for example by way of an operator via a keyboard at

11   terminal 301 attached to remote processor 201, or the updated information may be

12   retrieved by remote processor 201, under the direction of software 313, from central site

13   processor 203.

14   In a preferred embodiment, the updated information may be housed in a data set

15   at central site processor 203 and updated by the bank of first deposit, affiliated with

16   remote site 197 prior to loading to remote site processor 201. Remote site processor 201,

17   executing software 313, then determines if all of the decisions concerning voiding,

18   endorsing, item numbering, number of deposits, number of checks or dollar sizes of

19   deposits or items can be made by remote site  processor 201 by checking the remote

20   processing information as pre-defined in remote site processor 201.

21   If the decisions on endorsing, voiding, item numbering, number of deposits,

22   number or dollar amounts of deposits or monetary items can be made by remote site

23   processor 201, then  to ensure proper account processing of check 303, a depositor at

24   terminal 301 is lead through a series of instructions to gather deposit information required

- Page 16 -

Docket No. 7905.15

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

1   to ensure credits are made to the appropriate deposit accounts(s).   In one preferred

2   embodiment, the deposit information is read, interpreted and entered automatically by

3   reader/scanner/printer 309.   In another embodiment, the deposit information is entered

4   manually on, for example, terminal 301 attached to remote site processor 201.

5   Additionally, during the practice of the invention, scanner/reader/printer 309 encodes

6   check 303 with endorsement and voiding information in order to physically "void" check

7   303, thereby keeping check 303 from being re-transmitted, for example over media 202,

8   or re-deposited at an actual financial institution location for an additional collection.   In

9   addition, a unique item identification number may be encoded on check 303 by remote

10  site processor 201 via scanner/reader/printer 309 to aid in tracking data resulting from

11. processing of check 303.

12      The process of the present invention continues when scanner/reader/printer 309

13  performs the functions of scanning check 303 to create electronic check data comprised

14  of image data, informational data including MICR encoding (using either MICR, Optical

15  Character Recognition (OCR) or other like techniques).   Scanner/reader/printer 309

16  "voids" check 303 by endorsing check 303 and printing tracking data thereon.   The

17  electronic image data and informational data such as MICR information of the voided

18  and endorsed check 303 is transferred over interface 310 to remote site processor 201 for

19  processing which includes image integrity verification.   When the image integrity is

20  suspect, the integrity is enhance by either rescanning check 303 or, alternatively, by

21  manual intervention by an operator at terminal 301.   If check 303 is rescanned,

22  scanner/reader/printer 309 does not reprint the endorsement, voiding and item numbering

23  information on check 303.

24

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

- Page 17 -

Docket No. 7905.15

PPS-JHA000316

1    Once the electronic image data and the MICR encoding for the first check 303 is

2    determined to be readable and accurate, remote site processor 201 determines if this

3    process should be repeated for additional deposits and/or monetary item(s).   When

4    remote site processor 201 determines that processing by scanner/reader/printer 309 of

5    individual check(s), under the direction of remote site processor 201 has ended and that

6    the information is complete and ready for transmission via interface/media 202, remote

7    site processor 201 formats the electronic image data and the MICR encoding and adds

8    any additional control information in preparation for transmission to central site

9    processor 203.   The physical check 305 is stored in file 305 at the remote site.   In

10   addition, the check image is stored on the remote site processor (*i.e.*, magnetic disk, cd

11   rom, etc. not shown on drawing.)  Communications between remote site processor 201

12   and   central   site   processor   203   preferably   incorporates   digital   signature

13   verification/certification performed by process 311 and data encryption performed by

14   process 313 to ensure confidentiality.

15    Figure 4 depicts the central site processor and the various processes and interfaces

16   associated   therewith,   in   accordance   with   a   preferred   embodiment   of   the   present

17   invention. While  the  accuracy  of  electronic  check  data  transferred  from  remote  site

18   processor 201 to central site processor 203 will generally retain its integrity through the

19   transmission,  when  electronic  check  data  received  by  central  site  processor  203,  as

20   evaluated and processed by computer-executable instructions or software loaded therein,

21   is incomplete or inaccurate, or if the image data is not readable, central site processor 203

22   communicates with remote processor 201 giving detailed information to an operator at

23   terminal 301 concerning the need for additional information to restore image information

24   or complete incomplete or inaccurate data. Depending upon the type of missing or

- Page 18 -

Docket No. 7905.15

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

PPS-JHA000317

1   otherwise incorrect information, corrected or supplemental information may be supplied

2   by an operator at terminal 301 at remote site 197.  It may even be necessary to re-scan

3   check(s) 303 and re-transmit at least portions of the check data including image and/or

4   MICR data to central site  processor 203.  If check 303 is re-scanned, then endorsement,

5   voiding and item number information are not reprinted on check 303.

6       Once central site processor 203 determines the new check data received for the

7   deposit is accurate and complete, central site processor 203 stores the check image and

8   MICR data of check(s) 303 along with any additional associated information such as time

9   that deposit was captured, who the customer was who captured the deposit, item number,

10  etc. as received from remote site 201.  Central site processor 203 confirms receipt of

11  accurate information by sending a notification reply to remote site processor 201 freeing-

12  up remote site processor 201 for further processing of subsequent remote check deposit

13  interactions.  In alternate embodiments, central site processor 203 may store image data

14  on an Internet-enabled check image document storage 405 thereby allowing access by the

15  depositor/operator from a terminal such as terminal 301, their designee, or the financial

16  institution of first deposit.  It should be pointed out that because of present banking

17  processes, the remote site should still be associated with a chartered financial institution

18  that is authorized to accept the checks from the remote site and process them through

19  normal check clearing paths.  The remote site may be a branch extension of the financial

20  institution or may be a person, or other entity with or without a legal relationship to the

21  financial institution that provides the access services to the financial institution.  Such an

22  affiliated financial institution is still known as the bank of first deposit.  The present

23  embodiment does not propose eliminating the bank of first deposit, only replacing the

24  method used to capture deposits.  Central site processor 203 maintains authentication and

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

Docket No. 7905.15

PPS-JHA000318



data integrity at check image document storage 405 through the use of digital signature

verification and certification, as well as via data encryption as shown in processes 314

and 315.

Referring back to Figure 3, in another embodiment, if the decisions of endorsing,

voiding, item numbering, number of deposits number or checks or dollar amounts of

deposits or monetary items cannot be made by remote site processor 201, for example,

when the telecommunications line goes down and the decision information cannot be

updated on the remote site processor, or when the central site processor is inoperable, or

the specific remote site is not authorized to make these decisions (i.e. we will determine

and pass that information to the remote site processor when the remote site processor

contacts the central site processor prior to accepting deposit information at the remote

site), then remote site processor 201 leads a depositor at for example terminal 301

through a series of instructions to gather deposit information required to ensure credits

are made to the appropriate deposit accounts(s) 104.  This can be done by either using the

reader/scanner/printer 309 or by entering the necessary information on the terminal 301

attached to remote processor 201.

Then, check 303 is placed into the scanner/reader/printer 309 where the item is

scanned, the MICR encoding is read preferably using either MICR or Optical Character

Recognition (OCR) techniques, and an electronic image is created of check 303.  The

electronic image data and informational data such as MICR information is transferred

from scanner/reader/printer 309 onto remote site processor 201 where remote site

processor 201 edits and confirms that the electronic check data is readable.  If the

electronic check data is not readable or correct, the check data is corrected at the direction

of remote site processor 201 by either re-scanning check 303 or having a remote site

- Page 20 -

Docket No. 7905.15

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

operator manually key the information in using terminal 301 or other interface device attached to remote site processor 201.

Once the check data is determined to be readable and accurate, remote site processor 201 then formats the scanned check data and adds additional control information in preparation for transmission to central site processor 203 and the alternate embodiment approach concludes.

Returning to Figure 4, after receipt of valid and accurate check data, if it is determined that the maker bank or maker of the check requires a physical item, the check image is printed in process 401 and then processed through the central site check image capture system 205.  If a physical item is not required, the image is sent to the check image capture system 205.  In either case, the check image capture system 205 interfaces with the central site 198 deposit systems 103, cash management systems 104, etc. for posting information.  The central site then forwards either the printed duplicate check or check image to the maker bank 108.  This can be done directly through path 208 if the bank of first deposit's central site 198 has an agreement with maker bank 108 to exchange checks directly, or if the maker bank and the central site bank of first deposit do not have an exchange agreement then through FRBs 106, 107 through path 207.

Figure 5 depicts the various component and processes of the maker bank site, in accordance with the preferred embodiments of the present invention.

The maker bank 108 receives either images of the original paper items 303 or printed duplicates of the original paper items 303 either directly from the bank of first deposit's central site through path 208 or from the central site Federal Reserve Bank (FRB) 106 clearing process through path 206 (Figure 4), 207, 120.

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

Docket No. 7905.15

PPS-JHA000320

1      Central site FRB 106 will process the check images or paper items through their

2    capture system and forward the images or paper items to the maker bank FRB 107

3    through path 207.  The maker bank FRB then processes the items or images through their

4    check capture system 504 through path 503 and if necessary, (*i.e.*, when paper duplicate

5    of item has not already been printed by the bank of first deposit), print a duplicate of the

6    original check 303 image if a paper item is required by maker bank 108.  A maker bank

7    FRB 107 will then forward the printed items or images to the maker bank 108 via

8    communications or transportation path depicted as path 120.  Maker bank 108 will then

9    process the image or paper item though their in-house application systems depicted by

10   deposit system 110, print check image process, 509, check system process, and customer

11   statement process 506 through paths 122, 507, 508, 121, 505, and 507.

12     These in house systems are not to be taken as systems that all banks will have or

13   use for this process.  They are meant to represent the in house processing by maker banks

14   to post monetary items to their accounting systems and to send the items (either image or

15   printed duplicate of original items) to the check maker.

16     Figure 6 is an interface diagram depicting a high level description of the

17   interactions between the various components of the present invention, in accordance with

18   a preferred embodiment.

19     In the preferred embodiment, the remote site operator enters deposit information

20   into the remote processor then inserts a draft in a step 601 at the scanner/reader/printer

21   located at the remote site.  The scanner/reader/printer reads the item, digitizes and

22   validates the check image information and passes it to the software on the remote site

23   processor in a step 602.  The remote site processor software receives the digitized data

24   from the scanner/reader/printer and validates data to ensure that the check information is

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

- Page 22 -    Docket No. 7905.15

PPS-JHA000321

1  readable and valid in a step 603.  When the image is ready for transmission to the central

2  site.  The remote site processor contacts the transmission facility and, incorporating

3  digital signature verification and certification and data encryption software to ensure

4  confidentiality, transmits in a step 604 the item image and control information to the

5  central site.  The central site receives the transmitted data and edits and in a step 611

6  verifies the check data for completeness and content.

7  When the central site has determined the check image and other associated data

8  (relating to both the check image and data, and the deposit information) is complete and

9  accurate and meets the deposit and/or item dollar limits, the central site stores the

10  electronic image of the check and any additional associated information received from

11  the remote site, and then confirms in a step 605 receipt of good information by sending to

12  the remote site information needed to endorse the physical check and to void the physical

13  item to keep it from being  re-transmitted or deposited at a physical financial institution

14  location for collection.  In addition, a unique item identification number can be

15  transmitted to the inventive software on the remote site processor for printing on the

16  physical checks as a tracking and research mechanism.  The invention allows for printing

17  of the unique item number if it is determined by the bank employing the present

18  invention that it is desirable to print the unique item number for tracking and research

19  purposes.

20  After the inventive software on the remote processor receives specific information

21  required to void, endorse, and print the unique item number, the remote site processor

22  and the scanner/reader/printer will pass the check again where the remote site will print in

23  a step 606 the information on the physical item at the locations required by the rules

24  governing automated check processing.  The item is also scanned in a step 607 again

- Page 23 -

Docket No. 7905.15

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

PPS-JHA000322

1   under the direction of the remote site inventive software and the new image (containing

2   endorsement, voiding and item number information), and associated additional

3   information required by the inventive software for tracking and control purposes, is

4   edited in a step 608 for accuracy and completeness and if correct is then transmitted in a

5   step 609 to the central site by the remote site using the transmission facility set up for this

6   purposes.

7        If the data is not readable or correct, the information is corrected at the direction

8   of the remote site by either re-scanning the item or having the remote site operator key

9   the information in using the terminal attached to the remote site processor.  If the item is

10  rescanned at this point, the endorsement, voiding and item number information is not

11  reprinted by the scanner/reader/printer.  When the image is ready for transmission to the

12  central site, the remote site processor contacts the transmission facility and, incorporating

13  digital signature verification and certification, and data encryption software to ensure

14  confidentiality, transmits in a step 609 the item image and control information to the

15  central site.

16       The central site receives the transmitted updated image data and edits in a step

17  613 for completeness and content.  If the data is incomplete or inaccurate, or if the image

18  data is not readable, the central site communicates, with the remote processor and gives

19  detailed information to the operator concerning the need for additional information to

20  complete the inaccurate data or image information.  Based on the specific need, this

21  information can be supplied using the terminal on the remote site processor or by re-

22  scanning the physical item and re-transmitting it to the central site.  In either case, this

23  information is supplied under the direction of the remote site processor.  Such additional

24  information is transmitted to the central site processor from the remote site processor.  If

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

- Page 24 -                                    Docket No. 7905.15

1    the physical item is rescanned at this point, the endorsement, voiding and item number

2    information is not reprinted by the scanner/reader/printer.

3        Once the central site determines the new data received for the deposit is accurate

4    and complete, the central site stores in a step 618 the updated image of the physical item

5    (on the database(s) maintained by the bank of first deposit's central site for this purpose)

6    along with any additional associated information received from the remote site, and then

7    confirms receipt in a step 610 of good information by sending a notification to the remote

8    site that the process for that specific deposit is complete unless more items are present in

9    a step 615 and allows for termination of the transmission of information or for the same

10   process to be followed for other items in a step 614 in that deposit or for another deposit

11   in a step 616.

12       In another embodiment of the invention, the central site stores the check image(s)

13   on an Internet enabled documents storage system allowing access by the depositor, their

14   designee, or the central site processing center of the bank of first deposit. The central site

15   for storing check images and associated information preferably employees incorporating

16   digital   signature   verification   and   certification,   and   data   encryption   to   ensure

17   confidentiality.

18       If the check is removed from the scanner/reader/printer prematurely, at any time

19   during the process of capturing and transmitting data from the remote site, the transaction

20   information associated with that check will be considered invalid and not part of the

21   deposit. The depositor will need to re-scan and re-enter data associated with that check.

22       The remote site operator will have the option at the remote site to release deposit

23   information to the central site for processing. This can be done after either a completion

24

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

- Page 25 -

Docket No. 7905.15

PPS-JHA000324

of single deposit in step 615 (containing one or more checks) or after completion of all deposits in step 616 (each containing one or more checks) from the remote site.

After the deposit(s) from a specific remote site are complete, the central site formats deposit information for processing in the accounting systems of the bank of first deposit's central site in a step 619, including sending the image and other appropriate information for application processing in step 620 (including deposit accounting systems, MICR capture, cash management processing, float processing, etc.,).

If an item is an "on us" item, the central site determines that a physical check is required by the maker, that information is relayed to the central site and an identical image or facsimile of the original item can be printed by either the central site processor or by the item capture system in step 619.

If the maker bank is a clearing or correspondent bank then the bank of first deposit  will determine if the maker bank requires a paper or image item.  If the maker bank requires a paper item, then the bank of first deposit's central site will print an exact duplicate of the paper item and route in step 621 the item to the maker bank.   The duplicate printed item will generally be as exact as possible based on the quality of the original image.  If the maker bank does not require a paper item then the bank of first deposit will route the check image to the maker bank.

If the maker bank is not a clearing or correspondent bank, the check data including image will be forwarded in step 621 using the FRB item clearing processes to route the item image to the FRB affiliated with the maker bank.  The maker bank FRB determines if the maker bank will accept check data including an image of the item.  If the maker bank requires a paper item, the maker bank FRB prints an identical image of the original item with information showing that it is a duplicate and that the bank of first

- Page 26 -

Docket No. 7905.15

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

1    deposit is central site guarantees the item.  This duplicated item is then sent in step 621 to

2    the maker bank for the collections of funds.

3        As an alternative, the check image or a printed reproduction of the check can be

4    sent in step 621 to the maker bank from either the bank of first deposit is central site or

5    the maker bank FRB using any other acceptable clearing method or process.

6        Check items that need to be returned, are done so in steps 624 and 625 to the bank

7    of first deposit to be routed back through the same route that was used to clear the item. If

8    a paper item has been created, that item will be returned along with information showing

9    the reason for return.  Otherwise, the image will be used for return item purposes until the

10   return item image is returned to the bank of first deposit's central site.  At that point, if

11   the remote site processor 201 is able to receive an item image, the image along with the

12   return reason will be passed to the remote site processor 201.  If the remote site processor

13   is not capable of receiving check data including an item image, a paper duplicate showing

14   the return reason will be printed either by the central site or by the item capture system

15   under the direction of the central site and sent to the remote site operator 301.  The

16   unique item number assigned at capture time by either the central site or the remote site

17   can a be included in all return images and/or returned paper items to enable complete and

18   accurate tracking of all return items

19       Re-deposit may be performed in steps 626, 627, 628 of items facilitated by the

20   remote site prompting the remote site operator with instructions on how to scan and

21   transmit the returned paper item or re-deposit the endorsed image previously captured

22   and stored.  The unique item number assigned at capture time by either the central site or

23   the remote site  facilitates both options.

24

- Page 27 -

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

PPS-JHA000326

1       Figure 7 is a detailed flowchart depicting the specific steps for carrying out the

2   invention in accordance with a preferred embodiment.

3       In a step 700, the software is loaded or otherwise made available to the remote

4   site processor for execution.  Those skilled in the art appreciate the various processes and

5   steps for performing loading of software into a processor such as the remote site

6   processor.  It is also contemplated within the scope of the present invention that the

7   software for execution on any of the processors may take the form of embedded

8   executable instructions.

9       Query step 900 determines if deposit processing criteria, (e.g., deposit limit and

10  endorsement information) are present at the remote site processor thereby enabling the

11  initial check deposit processing decisions to be performed locally at the remote site

12  processor or, alternatively, when the deposit processing criteria is not local on the remote

13  site processor, processing passes through path 906 to step 701.

14      When query step 900 determines that deposit processing criteria is present at the

15  remote site processor, a query step 910 determines if the information required to

16  determine deposit limits and endorse the item is current on the remote site processor.  If

17  this information is present and current on the remote site processor, processing passes

18  through path 911 to step 930 where the remote site operator enters deposit information, as

19  well as the endorsement voiding and item numbering information in process step 931

20  prior to reading the first monetary item in process step 932 and then proceeding to query

21  step 933. If this information is not present on the remote site processor or if it is not

22  current, then query step 920 determines if this information can be updated by the

23  operator.  If the operator cannot update this information, then process step 926 allows for

24  updating the deposit information from the central site processor and then proceeds to

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

- Page 28 -

Docket No. 7905.15

1  process step 930 where the operator begins the remote capture function by entering

2  deposit information. If the operator can update this information, then process step 921

3  allows for the operator to update the deposit limit and endorsement information and then

4  proceed to process query step 922.

5      Query step 922 determines if the remote site processor can make deposit limit

6  and/or endorsement decisions. If the decision can be made by the remote site processor,

7  then process step 930 allows for the remote operator to enter deposit information, as well

8  as the endorsement voiding and item numbering information in process step 931 prior to

9  reading the first monetary item in process step 932 and then proceeding to query step

10  933.

11      Query step 933 determines if the current item exceeds the item dollar limit or

12  makes the deposit exceed the deposit dollar limit.  If the limits are exceed then the

13  process of entering items for the given deposit in process end 934, and the remote site

14  operator has the option of beginning another deposit or ending the deposit process with

15  the central site processor.  If the limits are not exceeded, then process step 935 accounts

16  for the scanned item 932 being edited for accuracy and completeness at the remote

17  location prior to proceeding to query step 936 where it is determined if the data from the

18  scanned item is correct.

19      In query step 936, if the data is correct, then query step 937 determines if there are

20  more items to scan.  If there are more items to scan, then process step 940 passes back to

21  process step 930 to allow the remote operator to begin the item capture process over

22  again.  If query step 937 determines that there are no more items or deposits to process,

23  then process step 941 prepares the item image data or check data for transmission prior to

24  encrypting the data in process step 942 and digitally signing the data in process step 943.

- Page 29 -                                    Docket No. 7905.15

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

PPS-JHA000328

1   Process step 944 transmits the data image to the central site processor for editing in

2   process step 747.

3       In query step 936, if the data is not correct, then query step 938 determines if the

4   operator can correct the data using a data terminal connected to the remote site processor.

5   If the operator can correct the data, it is done in process step 946 prior to passing through

6   process step 947 and going back to query step 936 to test data image for correctness.  In

7   query step 938, if the scanned item image is not correct, process step 948 passes through

8   to process step 932 where the item is rescanned.

9       Stepping back to query step 922, if endorsement and deposit limit information

10  cannot be made by the remote site processor, then the remote site operator enters deposit

11  information in process step 701 before scanning the physical monetary item in process

12  step 702 after which the item image is edited in process step 703.

13      In query step 704, if the image data is not correct, the check is returned to process

14  step 702 where it is rescanned and re-edited in step 703.  If query step 704 determines the

15  image data is correct, then the data is passed successfully through process step 710 where

16  the image is prepared for transmission to process step 711 where the date is encrypted

17  and step 712 where the digital signature is added in preparation for transmitting the data

18  to the central site in process step 713.

19      Process step 714 receives the transmitted image data and passes it to query step

20  715 where it is edited for accuracy and completeness.  If the data is not accurate or

21  complete, it is passed to process step 720 where the data is corrected by requesting

22  updated information from the remote site processor.  If the remote site operator cannot

23  supply correct date via the terminal attached to the remote site processor in query step

24  721, then the check passes through process step 725 to process step 702 where it is

- Page 30 -

Docket No. 7905.15

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

PPS-JHA000329

1  scanned again in preparation for editing and transmitting the corrected image to the

2  central site processor.  If the remote site operator is able and authorized to correct the

3  data in query step 721, the data is entered in process step 722 and passed through path

4  723 to process step 711 where the data is encrypted in preparation for transmitting to the

5  central site processor.

6      If in query step 715 the check image data is complete and accurate, the data is

7  passed to process step 730 where the image is stored in data sets used by the bank for

8  document archival and research as well as in a database that is Internet enabled and

9  available for access and research purposes by the depositing customer and bank of first

10  deposit.  After the image is stored, a confirmation of good data receipt is created in

11  process step 731.  This confirmation contains necessary endorsement, item numbering

12  and voiding information, which is added to the confirmation record in process steps 732

13  and 733 prior to the confirmation being sent to the remote site processor.  The

14  confirmation record is then data encrypted in process step 734 and a digital signature is

15  added in process step 735 prior to the record being transmitted to the remote processor in

16  process step 736.  Upon receipt by the remote processor in process step 737, the

17  endorsement, item numbering and voiding information is printed on the physical check in

18  process step 738 prior to it being re-scanned in process step 739.

19      After a new check image is created showing the necessary endorsement and

20  voiding information in process step 740, the new check image is edited to ensure the

21  scanned check data is correct.  If in query step 742, it is determined that the image data is

22  not complete or accurate, the image is passed through process step 750 to process step

23  739 where the physical check is scanned again.  If the check is passed through the reader

24  again at this point, the endorsement information has already been printed and will not be

- Page 31 -

Docket No. 7905.15

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

1    printed again.  If in query step 742 it is determined that the check image data is good, the

2    data in prepared for transmission in process step 743 prior to the data being encrypted in

3    process step 743 and digitally signed in process step 745 prior to being transmitted to the

4    central site in process step 746.

5         As the central site receives the transmitted image data in process step 747, the

6    image is edited by the central site software in process step 748 to ensure completeness

7    and accuracy of data.  Query step 756 determines quality of data and if the data is not

8    complete or accurate, it is sent to query step 791 where it is determined if the deposit

9    limit and or endorsement information is available on the remote site processor.  If this

10   information is available on the remote site processor then the central site processor

11   communicates with the remote site processor through path 794 to determine if the remote

12   site operator can supply the correct image data in query step 938.  The process involved

13   in query step 938 was discussed above.  If query step 791 determines that the deposit

14   limit and endorsement information is not on the remote processor then query step 795

15   determines if the remote operator can supply the correct image information.  If the

16   operator can supply the correct image information, it is entered in process step 796 and

17   the check image is prepared for transmission in process step 797 and passed to process

18   step 744 (previously discussed) for digital signature and transmission.  If in query step

19   795 the operator cannot correct/update the image information, the check is processed

20   through path 798 to process step 739 (previously discussed) where it is scanned again in

21   preparation for transmitting to central site processor.

22        Stepping back to query step 756, if the data image is complete and accurate the

23   endorsed image of the check is stored in process step 760 in datasets used by the bank for

24   document archival and research as well as in a database in process step 762 that is

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

Docket No. 7905.15

PPS-JHA000331

1   Internet enabled and available for the depositing customer and bank of first deposit to be

2   able to access for research purposes.

3       The central processor site then sends confirmation of good receipt of data in

4   process step 762 to the remote processor in process step 763. At this point query step 764

5   at the remote processor determines if the deposit currently being worked on is complete.

6   If the deposit is not complete, then process step 780 returns control to the previously

7   discussed process step 702 where the next item is scanned. If the deposit is complete

8   query step 764 asks the operator in query step 765 if there is another deposit. If there is

9   another deposit to be processed, process step 766 passes through to previously discussed

10  process step 701 where the new deposit process is initiated. If there is not another

11  deposit as determined in query step 765, the remote entry process is completed and the

12  captured deposit and image information is entered into application processing for the

13  bank of first deposit's central site item capture system in process step 771, the deposit

14  systems in process step 772 and the cash management systems in process step 773.

15      In the course of processing a deposit, it is integral to the decision making to

16  understand which banks the deposited items are drawn (i.e. who is the maker bank).

17  Query step 774 determines if the monetary items in the deposit are "on us" items (*i.e.*

18  items drawn on the bank of first deposit). If the items are "on us," the system determines,

19  in query step 850, if the check maker requires a paper check. If they do, then a

20  duplicate of the original check is printed in process step 851 and the paper item is sent to

21  the maker of the check. In addition, the image of the item is sent to process step 860

22  (discussed below) for processing on internal computer accounting systems. In query step

23  850, if the maker of the check does not require a paper duplicate of the original item,

24  process step 860 passes the checks image through the internal accounting systems to

Docket No. 7905.15

PPS-JHA000332

1  query step 861 where it is determined if the item is payable (*i.e.*, does the check maker

2  have sufficient funds in their account to cover the check, is the maker account still open,

3  etc.).

4      If query step 861 determines the item is payable, the check data is posted to the

5  maker's account and the process ends for that check item in step 863.  If query step 861

6  determines the item is not payable, then process step 870 returns either the printed

7  duplicate of the check or the check image to the original depositor at the remote location.

8  In query step 871, a remote site operator determines if they want to re-deposit the item or

9  return it.  If they decide to return the item, this is done in process step 880 and path 881

10  sends control to previously discussed process end step 863.  If query step 871 determines

11  that the item should be re-deposited for collection, query step 872 determines if this is to

12  be done using the duplicate paper item or the original check image.

13      If the return from query step 872 is to be done using the duplicate paper item, then

14  this is done in path 873 where control is sent back to previously discussed process step

15  764 where the item is deposited using the scanner/reader/printer.  If the check return from

16  query step 872 is to be done using the original captured check image for the item, process

17  step 875 allows for the remote operator to initiate this process in a step 875 by entering

18  the unique number assigned to the original check at capture time.  This information is

19  sent to the central site processor via process step 876 and control is then passed through

20  path 877 to process step 764 where the item is deposited using the check original check

21  image.

22      Stepping back to query step 774 where it is determined if the item is an on us

23  item,  if query step 774 determines that the item in not an "on us" item then query step

24  800 determines if the maker bank is a clearing bank or a correspondant bank.  If the

Docket No. 7905.15

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

PPS-JHA000333

maker bank is a clearing bank or a correspondant bank, then query step 801 determines if the maker bank requires a paper copy of the original check item.  If they require a paper duplicate, then a paper duplicate of the original item is printed in process step 802 and sent to the maker bank in path 803 which passes control to process step 805 discussed below.  If query step 801 determines that the maker bank does not require a printed duplicate check, the image of the original item drawn on the maker bank is sent to the maker bank in process step 805 and the maker bank sends the item through path 806 to previously discussed process step 861 to determine if the item is payable at the maker bank.

Stepping back to query step 800, if the payee bank is not a clearing bank or correspondent bank, process step 810 sends the check image to the Federal Reserve Bank (FRB) serving as the clearing entity for the bank of first deposit.  That branch of the Federal Reserve Bank forwards the check image to the Federal Reserve Bank serving as the clearing agent for the maker bank.  That Federal Reserve Bank determines in query step 811 if the maker bank requires a paper duplicate of the original paper check.  If the maker bank requires a paper item, the FRB prints the paper item in process step 812, incorporates the duplicate check in their processing systems as depicted in process step 813 where the item is sent in path 814 to process step 815 where the maker bank receives the paper item.  If in query step 811 the maker bank does not require a paper check, the FRB sends the image to the maker bank that receives the image in process step 815 and passes, via path 816, either the check image or printed duplicate of the original check to previously discussed query step 861 to determine if the item is payable by the maker.

The present invention may be embodied in other forms without departing from its spirit or essential characteristics. As properly understood, the preceding description of

- Page 35 -

Docket No. 7905.15

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

specific embodiments is illustrative only and in no way restrictive.   The scope of the

invention is, therefore, indicated solely by the appended claims as follows.

What is claimed and desired to be secured by United States Letters Patent is:

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

- Page 36 -

Docket No. 7905.15

PPS-JHA000335



1.   A method for processing a check deposited at a remote location, said remote locations including financial institutions and other locations capable of interfacing with said financial institutions, said method comprising the steps of:

   a)   converting said check into electronic check data;

   b)   electronically exchanging said check data with said financial institution; and

   c)   said financial institution crediting an account according to said check data.

2.   The method as recited in claim 1, wherein converting step comprises the steps of:

   a)   scanning said check to create image data, said image data representing an electronic image of said check; and

   b)   reading said image data to create informational data from said image data to aid in electronic processing of said deposited check.

3.   The method as recited in claim 2, wherein said converting step further comprises the step of:

   a)   reading at least a portion of said check to determine additional informational data stored in a Magnetic Ink Character Recognition (MICR) line.

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

- Page 37 -

Docket No. 7905.15

PPS-JHA000336



4.  The method as recited in claim 1, wherein said electronically exchanging said check data step comprises the step of:

a)  sending said check data from said non-financial institution location to said financial institution over an electronic channel;

b)  said financial institution verifiying said check data with account records accessible by said financial institution;

c)  when said check data conforms to said account records, said financial institution confirming said check data to said remote location; and

d)  said non-financial institution location processing said check data into processed check data in response to said confirming step.


5.  The method as recited in claim 4, wherein said financial institution confirming said check data step comprises the steps of:

a)  said financial institution acknowledging to said remote location receipt and accuracy of said check data; and

b)  said financial institution sending endorsement and voiding information to said remote location.

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

Docket No. 7905.15

PPS-JHA000337

6.  The method as recited in claim 5, wherein said remote location processing said check data into processed check data step comprises the steps of:

a)  endorsing said check using said endorsement information; and

b)  voiding said check using said voiding information, said endorsing and voiding steps creating a processed check.

7.  The method as recited in claim 6, wherein said endorsing and voiding steps are further comprised of the step of:

a)  printing on said endorsement and voiding information on said check.

8.  The method as recited in claim 4, further comprising the step of:

a)  following said processing said check data into processed check data step, said remote location secondly converting said processed check data into electronic processed check data.

9.  The method as recited in claim 8, wherein said secondly converting step comprises the steps of:

a)  scanning said processed check to create image data, said image data representing an electronic image of said processed check; and

b)  reading said image data to create informational data from said image data to aid in electronic processing of said depositing of said check.

- Page 39 -

Docket No. 7905.15

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

PPS-JHA0000338

10. The method as recited in claim 9, further comprising the steps of:

a)  secondly electronically exchanging said processed check data with said financial institution.

11. The method as recited in claim 10, wherein said secondly electronically exchanging said check data step comprises the step of:

a)  sending said processed check data from said remote location to said financial institution over an electronic channel;

b)  said financial institution verifying said processed check data with account records accessible by said financial institution; and

c)  when said processed check data conforms to said account records, said financial institution secondly confirming said processed check data to said remote location.

12. The method as recite in claim 4, wherein said crediting said account according to said check data step further comprises the step of:

a)  when said financial institution is not the maker bank of said check, sending said processed check data to said maker bank for clearing said check.

- Page 40 -

Docket No. 7905.15

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

13. The method as recited in claim 12, wherein said sending said processed check data to said maker bank for clearing said check step comprises the steps of:

a)  when said maker bank is electronic exchange-capable, electronically exchanging said processed check data with said maker bank; and

b)  when said maker bank is not electronic exchange-capable, printing a facsimile of said check from said processed check data; and forwarding said facsimile of said check to said maker bank.

Docket No. 7905.15

PPS-JHA000340



14. A computer-readable medium having computer-executable instructions for performing a method for processing a check deposited at a location remote from a financial institution, said computer-executable instructions for performing the steps of:

    a)  converting said check into electronic check data;

    b)  electronically exchanging said check data with said financial institution; and

    c)  said financial institution crediting an account according to said check data.

15. The computer-readable medium having computer executable instructions, as recited in claim 14, wherein said computer-executable instructions for performing the step of converting comprises computer-executable instructions for performing the steps of:

    a)  scanning said check to create image data, said image data representing an electronic image of said check; and

    b)  reading said image data to create informational data from said image data to aid in electronic processing of said depositing of said check.

16. The computer-readable medium having computer executable instructions, as recited in claim 15, wherein said computer-executable instructions for performing the step of converting further comprises computer-executable instructions for performing the step of:

    a)  reading at least a portion of said check to determine additional informational data stored in a Magnetic Ink Character Recognition (MICR) line.

- Page 42 -

Docket No. 7905.15

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

PPS-JHA000341

17. The computer-readable medium having computer executable instructions, as recited in claim 14, wherein said computer-executable instructions for performing said electronically exchanging said check data step comprises computer-executable instructions for performing the step of:

a)  sending said check data from said non-financial institution location to said financial institution over an electronic channel;

b)  said financial institution verifying said check data with account records accessible by said financial institution;

c)  when said check data conforms to said account records, said financial institution confirming said check data to said non-financial institution location; and

d)  said non-financial institution location processing said check data into processed check data in response to said confirming step.

18. The computer-readable medium having computer executable instructions, as recited in claim 17, wherein said computer-executable instructions for performing the step of said financial institution confirming said check data step comprises computer-executable instructions for performing the steps of:

a)  said financial institution acknowledging to said non-financial institution location receipt and accuracy of said check data; and

b)  said financial institution sending endorsement and voiding information to said non-financial institution location.

- Page 43 -

Docket No. 7905.15

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

PPS-JHA000342



19. The computer-readable medium having computer executable instructions, as recited in claim 18, wherein said computer-executable instructions for performing the step of said non-financial institution location processing said check data into processed check data step comprises computer-executable instructions for performing the steps of:

    a)  endorsing said check using said endorsement information; and

    b)  voiding said check using said voiding information, said endorsing and voiding steps creating a processed check.

20. The computer-readable medium having computer executable instructions, as recited in claim 18, wherein said computer-executable instructions for performing the steps of endorsing and voiding are further comprised of computer-executable instructions for performing the step of:

    a)  printing on said endorsement and voiding information on said check.

21. The computer-readable medium having computer executable instructions, as recited in claim 17, wherein said computer-readable medium further comprise computer-executable instructions for performing the step of:

    a)  following said processing said check data into processed check data step, said non-financial institution location secondly converting said processed check data into electronic processed check data.

- Page 44 -

Docket No. 7905.1S

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

22. The computer-readable medium having computer executable instructions, as recited in claim 21, wherein said computer-executable instructions for performing the step of secondly converting comprises computer-executable instructions for performing the steps of:

    a) scanning said processed check to create image data, said image data representing an electronic image of said processed check; and

    b) reading said image data to create informational data from said image data to aid in electronic processing of said depositing of said check.

23. The computer-readable medium having computer executable instructions, as recited in claim 22, wherein said computer-readable medium further comprise computer-executable instructions for performing the steps of:

    a) secondly electronically exchanging said processed check data with said financial institution.

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

Docket No. 7905.15

PPS-JHA000344

24. The computer-readable medium having computer executable instructions, as recited in claim 23, wherein said computer-executable instructions for performing the step of secondly electronically exchanging said check data comprises computer-executable instructions for performing the steps of:

    a)  sending said processed check data from said non-financial institution location to said financial institution over an electronic channel;

    b)  said financial institution verifying said processed check data with account records accessible by said financial institution; and

    c)  when said processed check data conforms to said account records, said financial institution secondly confirming said processed check data to said non-financial institution location.

25. The computer-readable medium having computer executable instructions, as recited in claim 17, wherein said computer-executable instructions for performing the step of crediting said account according to said check data step further comprises computer-executable instructions for performing the step of:

    a)  when said financial institution is not the maker bank of said check, sending said processed check data to said maker bank for clearing said check.

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

Docket No. 7905.15

PPS-JHA000345

26. The computer-readable medium having computer-executable instructions, as recited in claim 25, wherein said computer-executable instructions for performing the step of sending said processed check data to said maker bank for clearing said check comprises computer-executable instructions for performing the steps of:

a) when said maker bank is electronic exchange-capable, electronically exchanging said processed check data with said maker bank; and when said maker bank is not electronic exchange-capable, printing a facsimile of said check from said processed check data; and forwarding said facsimile of said check to said maker bank.

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

- Page 47 -

Docket No. 7905.15

27. A system for processing a deposit of a check, said system comprising:

      a) a remote site for converting said check into electronic check data;

      b) a central site electronically accessible to said remote site, said central site capable of electronically exchanging said check data with financial institution; and

      c) a maker site capable of electronically interfacing with said central site to obtain said check data and to credit an account according to said check data without having to physically receive the check at said financial institution.

28. The system for processing a deposit of a check, as recited in claim 27, wherein said remote site further comprises:

      a) a scanner/reader/printer to receive said check for processing; and

      b) a remote processor electronically and operably coupled to said scanner/reader/printer, said remote processor further comprising computer-executable instructions for interacting with said scanner/reader/printer, said computer-executable instructions in conjunction with said scanner/reader/printer for performing the steps of:

      i)      scanning said check to create image data, said image data representing an electronic image of said check;

      ii)     reading said image data to create informational data from said image data to aid in electronic processing of said depositing of said check; and

      iii)    sending said check data from said remote site to said central site over an electronic channel.

Docket No. 7905.15

PPS-JHA000347

29. The system for processing a deposit of a check, as recited in claim 27, wherein said central site further comprises:

    a) central site processor further comprising computer-executable instructions for performing the steps of:

    b) verifying said check data with account records accessible by said central site; and

    c) when said check data conforms to said account records, said central site confirming said check data to remote site including sending endorsement and voiding information to said remote site.

30. The system for processing a deposit of a check, as recited in claim 29, wherein said remote site further comprises computer-executable instructions for:

    a) in response to said central site confirming step, processing said check data into processed check data including

    b) endorsing said check using said endorsement information;

    c) voiding said check using said voiding information, said endorsing and voiding steps creating a processed check; and

    d) secondly converting said processed check into electronic processed check data by scanning said processed check to create image data, said image data representing an electronic image of said processed check and reading said image data to create information al data from said image data to aid in electronic processing of said depositing of said check.

Docket No. 7905.15

WORKMAN, NYDEGGER & SEELE
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

PPS-JHA000348

1    31. The system for processing a deposit of a check as recited in claim 27, wherein

2    said account is credited according to said check data without having to receive the

3    physical check at the maker site.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

- Page 50 -                                    Docket No. 7905.15

PPS-JHA000349



32. A method for processing a check deposited at a financial institution, said method comprising the steps of:

    a)  converting said check into electronic check data;

    b)  electronically exchanging said check data with said financial institution; and

    c)  said financial institution crediting an account according to said check data.



WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

- Page 51 -

Docket No. 7905.15

PPS-JHA000350



## ABSTRACT OF THE INVENTION

A system that includes computer hardware, computer software, apparatus, and methodology that enables individuals, businesses, and all types of organizations (both for profit and non-profit) to capture and securely transmit check images (including, but not limited to, personal checks, business checks, travelers checks, money orders, merchant coupons, food coupons, line of credit checks, etc.), deposit information, and other information from remote locations (i.e., locations that could include the financial institution's remote locations, other financial institution's locations, businesses, private residences, etc.), for the purpose of having those checks credited to the depositing individual's or organization's bank account(s) and having the check images (and/or physical checks) entered into the bank check clearing channels for ultimate delivery to the maker bank for payment out of the maker's account.

G:\DATA\PAT\WORDPAT\7905_15.doc

WORKMAN, NYDEGGER & SEELEY
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE

- Page 52 -

Docket No. 7905.15

PPS-JHA0000351



Express Mail Label No. EL550340765US

PATENT APPLICATION
Docket No: 7905.15

## DECLARATION, POWER OF ATTORNEY, AND PETITION

We,

| | | |
|---|---|---|
| (1) | Name: | Danne L. Buchanan |
| | Address: | 3362 East Oak Hollow Circle |
| | | Sandy, Utah 84093 |
| | Citizenship: | United States of America |
| (2) | Name: | William Ronald Titus |
| | Address: | 345 North Coventry Circle |
| | | Fruit Heights, Utah 84037 |
| | Citizenship: | United States of America |

declare:  that our citizenship, residence address, and post office address are as set forth above;

that we verily believe we are the original, first, and joint inventors of the subject matter of the

invention or discovery entitled METHOD AND SYSTEM FOR PROCESSING FINANCIAL

INSTRUMENT DEPOSITS PHYSICALLY REMOTE FROM A FINANCIAL INSTITUTION

for which a patent is sought and which is described and claimed in the specification attached

hereto; that we have reviewed and understand the contents of the above-identified specification,

including the claims, as amended by any amendment specifically referred to herein; and that we

acknowledge the duty to disclose information which is material to the patentability of this

application in accordance with Section 1.56(a) of Title 37 of the Code of Federal Regulations.

We declare further that all statements made herein of our own knowledge are true and

that all statements made on information and belief are believed to be true; and further that these

statements were made with the knowledge that willful, false statements and the like so made are

punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code, and that such willful, false statements may jeopardize the validity of the application or any patent issuing thereon.

We hereby appoint as our attorneys and/or patent agents:  RICK D. NYDEGGER, Registration No. 28,651; DAVID O. SEELEY, Registration No. 30,148; JONATHAN W. RICHARDS, Registration No. 29,843; JOHN C. STRINGHAM, Registration No. 40,831; BRADLEY K. DeSANDRO, Registration No. 34,521; JOHN M. GUYNN, Registration No. 36,153; CHARLES L. ROBERTS, Registration No. 32,434; GREGORY M. TAYLOR, Registration No. 34,263; DANA L. TANGREN, Registration No. 37,246; KEVIN B. LAURENCE, Registration No. 38,219; ERIC L. MASCHOFF, Registration No. 36,596; C. J. VEVERKA, Registration No. 40,858; ROBYN L. PHILLIPS, Registration No. 39,330; RICHARD C. GILMORE, Registration No. 37,335; DAVID B. DELLENBACH, Registration No. 39,166; KEVIN K. JOHANSON, Registration No. 38,506; DAVID L. GRIFFIN, Registration No. 44,136; R. BURNS ISRAELSEN, Registration No. 42,685; DAVID R. TODD, Registration No. 41,348; FRASER D. ROY, Registration No. 45,666; CARL T. REED, Registration No. 45,454; JESÚS JUANÓS i TIMONEDA, Registration No. 43,332; STEPHEN D. PRODNUK, Registration No. 43,020; R. PARRISH FREEMAN, JR., Registration No. 42,556; PETER F. MALEN, JR., Registration No. 45,576; ADRIAN J. LEE, Registration No. 42,785; KYLE H. FLINDT, Registration No. 42,539; and ERIC M. KAMERATH, Registration No. 46,081, with full power of substitution and revocation, to prosecute this application and to transact all business in the Patent and Trademark Office connected therewith. All correspondence and telephonic communications should be directed to:

2

PPS-JHA000353



Kevin K. Johanson
WORKMAN, NYDEGGER & SEELEY
1000 Eagle Gate Tower
60 East South Temple
Salt Lake City, Utah  84111
Telephone:  (801) 533-9800
Facsimile:  (801) 328-1707

Wherefore, we pray that Letters Patent be granted to us for the invention or discovery described and claimed in the foregoing specification and claims, declaration, power of attorney, and this petition.

DATED this _____ day of _____, 2000.

Inventor: _____
DANNE L. BUCHANAN
3362 East Oak Hollow Circle
Sandy, Utah 84093

DATED this _____ day of _____, 2000.

Inventor: _____
WILLIAM RONALD TITUS
345 North Coventry Circle
Fruit Heights, Utah 84037

G:\DATA\WPDOCS2\CIA\KKJ\ZIONS\7905-15-pow.doc

3

 

PATENT APPLICATION SERIAL NO. _____

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
FEE RECORD SHEET

05/10/2000 AHAYES   00000006 09560779
01 FC:101                    690.00 OP
02 FC:103                    216.00 OP
03 FC:102                     78.00 OP

PTO-1556
(5/87)

*U.S. GPO: 1999-459-082/19144

PPS-JHA000355

*581-410*

| PATENT APPLICATION FEE DETERMINATION RECORD | Application or Docket Number |
|---|---|
| Effective December 29, 1999 | *09/500779* |

### CLAIMS AS FILED - PART I

| | (Column 1) | (Column 2) | SMALL ENTITY TYPE ☐ | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | RATE | FEE | OR | RATE | FEE |
| BASIC FEE | | | | 345.00 | OR | | 690.00 |
| TOTAL CLAIMS | 32 minus 20= | * 12 | X$ 9= | | OR | X$18= | 216 |
| INDEPENDENT CLAIMS | 4 minus 3 = | * 1 | X39= | | OR | X78= | 78 |
| MULTIPLE DEPENDENT CLAIM PRESENT | | | +130= | | OR | +260= | |
| * If the difference in column 1 is less than zero, enter "0" in column 2 | | | TOTAL | | OR | TOTAL | 984 |

### CLAIMS AS AMENDED - PART II

|  |  | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|---|---|
| AMENDMENT A | | | | | | RATE | ADDI-TIONAL FEE | | RATE | ADDI-TIONAL FEE |
| | Total | * 118 | Minus | ** 32 | = 86 | X$ 9= | | OR | X$18= | 1584 |
| | Independent | * 13 | Minus | *** 4 | = 9 | X39= | | OR | X78= | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | | +130= | | OR | +260= | |
| | | | | | | | TOTAL ADDIT. FEE | OR | | TOTAL ADDIT. FEE |

|  |  | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | | | OR | | |
|---|---|---|---|---|---|---|---|---|---|---|
| AMENDMENT B | | | | | | RATE | ADDI-TIONAL FEE | | RATE | ADDI-TIONAL FEE |
| | Total | * 133 | Minus | ** 118 | = 15 | X$ 9= | | OR | X$18= | 234 |
| | Independent | * 13 | Minus | *** 13 | = | X39= | | OR | X78= | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | | +130= | | OR | +260= | |
| | | | | | | | TOTAL ADDIT. FEE | OR | | TOTAL ADDIT. FEE 234 |

|  |  | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | | | OR | | |
|---|---|---|---|---|---|---|---|---|---|---|
| AMENDMENT C | | | | | | RATE | ADDI-TIONAL FEE | | RATE | ADDI-TIONAL FEE |
| | Total | * 139 | Minus | ** 133 | = 6 | X$ 9= | | OR | X$18= | 108 |
| | Independent | * 13 | Minus | *** 13 | = | X39= | | OR | X78= | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | | +130= | | OR | +260= | |
| | | | | | | | TOTAL ADDIT. FEE | OR | | TOTAL ADDIT. FEE |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20."
***If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3."
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

FORM PTO-875 (Rev. 12/99)

Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE
*U.S. GPO: 2000-463-433/29044

PPS-JHA000356

GAU - $270

| **TRANSMITTAL LETTER**<br>**(General - Patent Pending)** | Docket No.<br>**7905.15** |
|---|---|

In Re Application of:   **Buchanan et al.**

| Serial No.<br>**09/560,779** | Filing Date<br>**April 28, 2000** | Examiner<br>**Not Yet Assigned** | Group Art Unit |
|---|---|---|---|

Title:   **METHOD AND SYSTEM FOR PROCESSING FINANCIAL INSTRUMENT DEPOSITS PHYSICALLY FROM A FINANCIAL INSTITUTION**

### TO THE COMMISSIONER OF PATENTS AND TRADEMARKS:

RECEIVED
AUG -7 2000
TECH CENTER 2700

Transmitted herewith is:

  Petition to Make Special Under 37 C.F.R. Section 102(d)
  Transmittal Letter
  Certificate of Mailing by "Express Mail" Label No. EL550340601US
  Copies of sixteen (16) references
  Check No. 116836 in the amount of  $130

in the above identified application.

☐   No additional fee is required.
☒   A check in the amount of   **$130.00**          is attached.
☒   The Commissioner is hereby authorized to charge and credit Deposit Account No.          **23-3178**
      as described below.  A duplicate copy of this sheet is enclosed.
    ☐   Charge the amount of
    ☒   Credit any overpayment.
    ☒   Charge any additional fee required.

_Kevin K. Johanson_
               Signature                                Dated:   **July 28, 2000**

**Kevin K. Johanson**
**Registration No. 38,506**

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
**022913**

PATENT TRADEMARK OFFICE

I certify that this document and fee is being deposited on July 28, 2000          with the U.S. Postal Service as first class mail under 37 C.F.R. 1.8 and is addressed to the Commissioner of Patents and Trademarks, Washington, D.C. 20231.

_Kevin K. Johanson_
Signature of Person Mailing Correspondence

Kevin K. Johanson
Typed or Printed Name of Person Mailing Correspondence

cc:

Copyright 1995 Legalsoft                                    P16B/REV01

PPS-JHA000357



| CERTIFICATE OF MAILING BY "EXPRESS MAIL" (37 CFR 1.10) | Docket No. |
|---|---|
| Applicant(s):  Buchanan et al. | 7905.15 |

| Serial No. | Filing Date | Examiner | Group Art Unit |
|---|---|---|---|
| 09/560,779 | April 28, 2000 | Not Yet Assigned | Not Yet Assigned |

Invention:   **METHOD AND SYSTEM FOR PROCESSING FINANCIAL INSTRUMENT DEPOSITS PHYSICALLY REMOTE FROM A FINANCIAL INSTITUTION**

I hereby certify that this   <u>Petition to Make Special (including the items listed below)</u>
*(Identify type of correspondence)*

is being deposited with the United States Postal Service "Express Mail Post Office to Addressee" service under

37 CFR 1.10 in an envelope addressed to: The Commissioner of Patents and Trademarks, Washington, D.C.

20231-0001 on _____ **July 28, 2000** _____
*(Date)*

Kevin K. Johanson
*(Typed or Printed Name of Person Mailing Correspondence)*

*(Signature of Person Mailing Correspondence)*

EL550340601US
*("Express Mail" Mailing Label Number)*

Note: Each paper must have its own certificate of mailing.

Transmitted:   Petition to Make Special Under 37 C.F.R. § 102(d) (20 pgs.)
Transmittal Letter in triplicate (1 pg.s)
Check No. 116836 in the amount of $130.00 for filing fee of Petition
Form PTO-1449
Copies of sixteen (16) prior references
Certificate of Mailing by Express Mail Label No. EL550340601US
Postcard

Copyright 1995 Legalsoft                                        P06B/REV02

PPS-JHA000358



Express Mail Label No. EL550340601US

PATENT APPLICATION
Docket No: 7905.15

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| In re application of: | )  |
|---|---|
| | ) |
| Buchanan et al. | ) |
| | ) |
| Title: METHOD AND SYSTEM FOR PROCESSING | ) |
| FINANCIAL INSTRUMENT DEPOSITS | ) |
| PHYSICALLY REMOTE FROM A FINANCIAL | ) |
| INSTITUTION | ) |
| | ) |
| Serial No: 09/560,779 | ) |
| | ) |
| Filed: April 28, 2000 | ) |

Art Unit: 2700

RECEIVED
AUG - 7 2000
TECH CENTER 2700

PETITION TO MAKE SPECIAL UNDER 37 C.F.R. § 102 (d)

Honorable Commissioner of
    Patents and Trademarks
Washington, D.C. 20231

Sir:

Applicants hereby respectfully requests that examination of the above-referenced patent application be advanced out of turn and requests that the prosecution thereof be performed in an expedited manner. In conformance with 37 C.F.R. § 102 (d), Applicants submit this written petition accompanied by the filing fee set forth in 37 C.F.R. § 1.17 (i) (2).

Should a restriction requirement be thought necessary, Applicants request that prompt telephonic notice be given to Kevin K. Johanson at the following telephone number at which time Applicants will make an election without traverse ((801) 533-9800).

08/03/2000 CNGUYEN 00000058 09560779
01 FC:122                    130.00 OP

Void date: 08/03/2000 CNGUYEN
08/08/2000 CNGUYEN 00000058   09560790 OP

130.00 OP
09560779 00000060 CNGUYEN 08/03/2000
01 FC:122

Applicants have caused to be made two careful and thorough pre-examination searches of the prior art.  One search was performed by Roger Flagg, a professional searcher with Express Search. Examiners MacDonald and Tkacs, in Art Unit 2761 were consulted regarding the field of search. Mr. Flagg searched Class 705, subclasses 35, 39 and 42; Class 235, subclass 379.  The other search was performed by Applicants.

The following references were discovered in the above-referenced pre-examination search and will be discussed in detail below:

U.S. Patent No. 6,032,137 (Ballard)
U.S. Patent No. 5,999,624 (Hopkins)
U.S. Patent No. 5,930,778 (Geer)
U.S. Patent No. 5,895,455 (Bellinger et al.)
U.S. Patent No. 5,832,463 (Funk)
U.S. Patent No. 5,787,403 (Randle)
U.S. Patent No. 5,691,524 (Josephson)
U.S. Patent No. 5,583,759 (Geer)
U.S. Patent No. 5,412,190 (Josephson et al.)
U.S. Patent No. 5,373,550 (Campbell et al.)
U.S. Patent No. 5,326,959 (Perazza)
U.S. Patent No. 5,321,816 (Rogan et al.)
U.S. Patent No. 5,237,159 (Stephens et al.)
U.S. Patent No. 4,358,671 (Case)
U.S. Patent No. 4,321,672 (Braun et al.)
U.S. Patent No. 4,264,808 (Owens et al.)

2

PPS-JHA000360

<u>DETAILED DISCUSSION OF THE REFERENCES AS SPECIFIED<br>IN 37 C.F.R.§ 1.111 (b) AND (c)</u>

I.    <u>NATURE OF THE PRESENT INVENTION</u>

A system that includes computer hardware, computer software, apparatus, and methodology that enables individuals, businesses, and all types of organizations (both for profit and non-profit) to capture and securely transmit check images (including, but not limited to, personal checks, business checks, travelers checks, money orders, merchant coupons, food coupons, line of credit checks, etc.), deposit information, and other information from remote locations (i.e., locations that could include the financial institution's remote locations, other financial institution's locations, businesses, private residences, etc.), for the purpose of having those checks credited to the depositing individual's or organization's bank account(s) and having the check images (and/or physical checks) entered into the bank check clearing channels for ultimate delivery to the maker bank for payment out of the maker's account.

II.    <u>DESCRIPTION OF REFERENCES FOUND IN PRE-EXAMINATION SEARCH</u>

A.    **<u>Ballard Patent</u>**

United States Patent No. 6,032,137, REMOTE IMAGE CAPTURE WITH CENTRALIZED PROCESSING AND STORAGE, issued on February 29, 2000 to Claudio R. Ballard. The referenced patent is intended for the automated storage and retrieval of all kinds of remotely captured transaction data from a variety of sources including credit card transactions, smart card transactions, automated teller machine (ATM) transactions, consumer purchases, business forms, W2 forms, birth certificates, deeds and insurance documents.

3

PPS-JHA0000361

The inventive patent is directed at enabling customers to deposit checks remotely (at a home, place of business, bank branch, or bank location) which includes crediting their account (checking, savings, etc.), creating and storing an electronic image of the checks so the original can be destroyed and using the image of the checks to present an image to the maker bank for payment. This process involves storage and retrieval of data and images captured from at the remote check capture locations. However, the storage and retrieval of data is a by-product of the invention and will use commonly accepted commercially available storage and retrieval hardware and software.

B.    **Hopkins Patent**

United States Patent No. 5,999,624, REMOTE FINANCIAL TRANSACTION SYSTEM, issued on December 7, 1999 to W. Dale Hopkins. The reference allows for remote payments of financial obligations using a payment module over communications link and incorporating password security. The reference uses credit card magnetic stripe information to identify what accounts the payments should be transferred from.

The inventive patent is directed at enabling customers to deposit checks remotely (at a home, place of business, bank branch, or bank location), which includes crediting their account (checking, savings, etc.). creating and storing an electronic image of the checks so the original can be destroyed and using the image of the checks to present an image to the maker bank for payment. This process involves the transmission of information and check images associated with a particular deposit and/or depositor. The invention has no purpose or design associated with transmitting data from remote locations for the purpose of payment of financial obligations.

4

PPS-JHA000362

C.   **Geer Patent**

United States Patent No. 5,930,778, SYSTEM FOR EXPEDITING THE CLEARING OF FINANCIAL INSTRUMENTS AND COORDINATING THE SAME WITH INVOICE PROCESSING AT THE POINT OF RECEIPT, issue on July 27, 1999 to Terry L. Geer.  This reference includes the capture of financial information at locations created for lock box processing.  The lock box process allows for checks or other financial instruments to be captured along with a payment coupon as part of the payment process.  The check images are captured as well as the MICR line.  The checks can either be sent to a central site for capture and presentment through the normal check clearing paths or the MICR line information is captured at the lock box site and sent to the central site for further electronic sorting and processing both with regard to the introduction of the checks into the payment system and the crediting of funds represented by the checks to the payee's account at the bank.  When the image is captured it is retained for research purposes.  Once at the central site the checks or electronic totals are credited to the account of the sender and the check information is forwarded through the electronic channels.

The current patentable process differs in that it contains nothing related to payment processing.  The process is designed to capture images and MICR line information of the checks that are going to be credited to the payee's account and processed as an image through the check clearing channels.  Once the check is captured it is voided and can be retained, destroyed by the depositor, or returned to the person who gave it to the depositor, or destroyed.

The primary differences are that the inventive process is not a lock box process, and the process to be patented is based on using check images for the clearing process as compared to bank information from the checks as in the referenced patent.  In addition, the patent is designed to

5

PPS-JHA000363

scrutinize the check data at the remote site as it is being captured through an interactive process with

a central site to ensure the data and depositor information is complete and correct.  Any check not

passing this scrutiny may either be rejected for manual processing, or the data may be changed with

interactive direction from the central site, and the image is processed.  The checks are also endorsed

and voided (to keep them from being re-deposited) at the direction of the central computers or check

processing personnel.  At this point the physical check can either be filed, returned to the person who

gave it to the depositor, or destroyed  by the depositor.

### D.   <u>Bellinger et al. Patent</u>

United States Patent No. 5,895,455, DOCUMENT IMAGE DISPLAY SYSTEM AND

METHOD, issued on April 20, 1999 to David T. Bellinger et al.  The reference is a method for

providing user access to a selected group of document images of all kinds including check images.

The traditional high-speed image capture is used to acquire and store the image of the checks.  Once

the image is created additional reference data is added to it (by the reference patent) and it is stored

for retrieval (CD, print, and on-line viewing, etc.).  This system is first and foremost an image

storage, retrieval and view system with the traditional check processing and collection methodology

continuing and "feeding" this system to enable it to store and retrieve images for later reference.

This system does not deal with check depositing, rather it is the beneficiary of traditional check

depositing and processing.

The inventive patent is directed at enabling customers to deposit checks remotely (at a home,

place of business, bank branch, or bank location) which includes crediting their account (checking,

6

PPS-JHA000364

savings, etc.), creating an electronic image of the checks so the original can be destroyed and using the image of the checks to present an image to the maker bank for payment.

E.    **Funk Patent**

United States Patent No. 5,832,463, AUTOMATED SYSTEM AND METHOD FOR CHECKLESS CHECK TRANSACTION, issued on November 3, 1998 to Wade L. Funk.  The reference deals with capturing check image and other information associated with a point of sale transaction.  The focus of point of sale transactions is to transfer funds out of the accounts of the purchaser(s) for the purpose of paying for a monetary transaction at a place of business.  This allows for a check-less transaction for payment of monetary obligations.  Images of checks are not used for creating the information required to transfer money out of the purchaser's account, the check image created is used for research purposes only.  The MICR line information is used by the vendor to create the information required to transfer funds out of the check maker's account into the vendor's account in payment of the financial obligation.

The inventive patent is directed at enabling customers to deposit checks remotely (at a home, place of business, bank branch, or bank location) which includes crediting their account (checking, savings, etc.), creating and storing an electronic image of the checks so the original can be destroyed and using the image of the checks to present an image to the maker bank for payment.  While the reference deals with check information to transfer funds out of the purchasers account to pay for a monetary transaction, the invention deals with depositing funds into a depositor's account from check(s) given to them as settlement of an obligation, and to present the deposited checks through the check collections processes and systems to transfer funds from the accounts of the check makers

7

PPS-JHA000365

into the account of the depositor.  The invention does not have any reference or purpose of transferring funds out of accounts for settling monetary transactions.

F.   **Randle Patent**

United States Patent No.5,787,403, BANK–CENTRIC SERVICE PLATFORM, NETWORK AND SYSTEM, issued on July 28, 1998 to William M. Randle.  This invention relates to a bank-centric network identifying a bank as a central service provider to a customer and is designed to provide user access, presentation and gateway functions that permit a customer to communicate with product providers through a financial institution. .The network is customer-accessed and associated with a conventional bank or financial institution and provides conventional information, products and services offered by a bank and is a gateway to other "non-bank" information.

The inventive patent is directed at enabling customers to deposit checks remotely (at a home, place of business, bank branch, or bank location) which includes crediting their account (checking, savings, etc.), creating and storing an electronic image of the checks so the original can be destroyed and using the image of the checks to present an image to the maker bank for payment.  This process involves storage and retrieval of data and images captured from at the remote check capture locations.  However, the storage and retrieval of data is a by-product of the invention and will use commonly accepted commercially available storage and retrieval hardware and software.  The information created and stored by the invention would be the type of information that the reference could make available through it's processes.  However, the invention will have the ability to store and make available information also using conventional storage and retrieval hardware and software.

8

PPS-JHA000366

The exact presentation of the retrieved data will be directed by the inventive software to meet the needs of the institution owning the software.

G.   **Josephson Patent**

United States Patent No. 5,691,524, ELECTRONIC CHECK PRESENTMENT SYSTEM HAVING A NON-ECP EXCEPTIONS NOTIFICATION SYSTEM INCORPORATED THEREIN, issued on November 25, 1997 to Stanley M. Josephson. The reference deals with transmitting check MICR information after the capture of said information using the normally accepted methods of capturing check information. The transmitted MICR uses an improved Electronic Check Presentment (ECP) system and the information is used by the recipient financial institution to determine if the check is payable out of the makers account. If the check is not payable information is sent to the capturing institution to not send the paper check. The check is instead returned to the depositor for return to the maker or redeposit. This process does not deal with in any way with the remote deposit of checks. It also does not eliminate the processing of checks using paper checks from the point of first capture, etc. Is specifically used to pre-notify the maker bank of checks being processed for them by the bank of first deposit so that the maker bank can determine if the checks are all going to be payable at their bank. If they are not going to be payable, the bank of first deposit will return the check to the payee instead of routing the check to the maker bank and receiving it back from the maker bank when it is determined by the maker bank that it is not payable.

The inventive patent is directed at enabling customers to deposit checks remotely (at a home, place of business, bank branch, or bank location) which includes crediting their account (checking, savings, etc.), creating an electronic image of the checks so the original can be destroyed and using

9

PPS-JHA000367

the image of the checks to present an image to the maker bank for payment. This process does not involve any transfer of MICR information for the sole purpose of pre-determining return items to preclude the paper checks from initially being sent to the maker bank for checks that will be returned. It uses the inventive process to move images of checks electronically and have funds moved into the depositor's accounts as a result of the check collection processes. As a result of this processing it may be determined at anytime that a check will not be payable by the maker. If so this determination will be made based on the image data that is created from the original check. Return decisions will be made using image and MICR data associated with the capture of the check. If return decisions are made on the image data it is incidental to the overall purpose of remote image capture and processing of the invention and does not follow the same procedures or notification paths, as does the reference.

H.   **Geer Patent**

United States Patent No. 5,583,759, MECHANISM FOR EXPEDITING THE DEPOSIT, TRANSPORT AND SUBMISSION OF CHECKS INTO THE PAYMENT SYSTEM, issued on December 10, 1996 to Terry L. Geer. This reference includes the capture of financial information at locations created for lock box processing. The lock box process allows for checks or other financial instruments to be captured along with a payment coupon as part of the payment process. The check images are captured as well as the MICR line. The checks can either be sent to a central site for capture and presentment through the normal check clearing paths or the MICR line information is captured at the lock box site and sent to the central site for further electronic sorting and processing both with regard to the introduction of the checks into the payment system and the crediting of funds

10

PPS-JHA000368

represented by the checks to the payee's account at the bank.. When the image is captured it is retained for research purposes. Once at the central site the checks or electronic totals are credited to the account of the sender and the check information is forwarded through the electronic channels.

The current patentable process differs in that it contains nothing related to payment processing. The process is designed to capture images and MICR line information of the checks that are going to be credited to the payee's account and processed as an image through the check clearing channels. Once the check is captured it is voided and can be retained, destroyed by the depositor, or returned to the person who gave it to the depositor, or destroyed.

The primary differences are that the inventive process is not a lock box process, and the process to be patented is based on using check images for the clearing process as compared to bank information from the checks as in the referenced patent. In addition, the patent is designed to scrutinize the check data at the remote site as it is being captured through an interactive process with a central site to ensure the data and depositor information is complete and correct. Any check not passing this scrutiny will either reject for manual processing, or the data will be changed with interactive direction from the central site, and the image is processed. The checks are also endorsed and voided (to keep them from being re-deposited) at the direction of the central computers or check processing personnel. At this point the physical check can either be filed, returned to the person who gave it to the depositor, or destroyed by the depositor.

11

PPS-JHA000369

I.     **Josephson et al. Patent**

United States Patent No. 5,412,190, ELECTRONIC CHECK PRESSENTMENT SYSTEM

HAVING A RETURN ITEM NOTIFICATION SYSTEM INCORORATED THEREIN, issued on

May 2, 1995 to Stanley M. Josephson, et al. The reference deals with transmitting check MICR

information after the capture of said information using the normally accepted methods of capturing

check information. The transmitted MICR uses an improved Electronic Check Presentment (ECP)

system and the information is used by the recipient financial institution to determine if the check is

payable out of the makers account. If the check is not payable information is sent to the capturing

institution to not send the paper check. The check is instead returned to the depositor for return to

the maker or redeposit. This process does not deal in any way with the remote deposit of checks, or

eliminating the processing of checks using paper checks from the point of first capture, etc.

The inventive patent is directed at enabling customers to deposit checks remotely (at a home,

place of business, bank branch, or bank location) which includes crediting their account (checking,

savings, etc.), creating and storing an electronic image of the checks so the original can be destroyed

and using the image of the checks to present an image to the maker bank for payment. This process

does not involve any transfer of MICR information for the sole purpose of pre-determining return

items to preclude the paper checks from initially being sent to the maker bank for checks that will be

returned. It uses the inventive process to move images of checks electronically and have funds

moved into the depositor's accounts as a result of the check collection processes. As a result of this

processing it may be determined at anytime that a check will not be payable by the maker. If so this

determination will be made based on the image data that is created from the original check. Return

decisions will be made using image data and not the MICR data associated with the capture of the

12

PPS-JHA000370

check.  If return decisions are made on the image data it is incidental to the overall purpose of remote image capture and processing of the invention and does not follow the same procedures or notification paths, as does the reference.

J.    **Campbell et al. Patent**

United States Patent No. 5,373,550, TRANSMISSION OF CHECK IMAGES BY WAY OF A PUBLIC SWITCHED TELEPHONE NETWORK, issued on December 13, 1994 to Walter G. Campbell et al.  The reference deals with the hardware and network required to transmit images of checks.  It does not deal with the processes or purposes used to capture and process checks – only the physical transmission of such information.

The inventive patent is directed at enabling customers to deposit checks remotely (at a home, place of business, bank branch, or bank location) which includes crediting their account (checking, savings, etc.), creating and storing an electronic image of the checks so the original can be destroyed and using the image of the checks to present an image to the maker bank for payment.  This process involves the transmission of information and check images associated with a particular deposit and/or depositor.  However, the transmission of such data will be done using commonly accepted commercially available transmission facilities and/or hardware.

K.    **Perazza Patent**

United States Patent No. 5,326,959, AUTOMATED CUSTOMER INITIATED ENTRY REMITTANCE PROCESSING SYSTEM, issued on July 5, 1994 to Justin J. Perazza.  The reference is designed to pay bills through the automatic transfer of funds from an individuals/businesses

13

PPS-JHA000371

accounts. This process uses the traditional funds transfer processes (ACH, ATM, Teller Transfers, etc.) that are initiated by a process utilizing an inventive "Customer Payment Instruction" sheet that is filed out by the bill payer and given to their financial institution bank or branch location. This is designed to be a manual process for tellers to do in their quiet periods. If the volume is great enough the reference alludes to using automatic envelope opening equipment and/or manual or semi-automatic equipment for reading the CPI's. There is no specific reference as to if this equipment currently exists or if it would need to be invented.

The inventive patent is directed at enabling customers to deposit checks remotely (at a home, place of business, bank branch, or bank location) which includes crediting their account (checking, savings, etc.), creating an electronic image of the checks so the original can be destroyed and using the image of the checks to present an image to the maker bank for payment. This process does not involve any transfer of funds through the normal funds transfer processes for the purpose of payment processing. It uses the inventive process to move images of checks electronically and have funds moved into the depositor's accounts as a result of the check deposit and collection processes.

L.    **Rogan et al. Patent**

United States Patent No. 5,321,816, LOCAL-REMOTE APPARATUS WITH SPECIALIZED IMAGE STORAGE MODULES, issued on June 14, 1994 to James D. Rogan et al. This reference is for a storage system for high speed, high volume data storage. This patent does not deal with the physical handling and/or editing of the check capture process. It is an apparatus that "provides a network combining a local site having a host computer and a specialized storage and retrieval module for storing image information which is connected to a remote site having document

14

PPS-JHA000372

processing equipment working with remote specialized storage retrieval modules for storage of image and information data. While the system uses imaging technology to capture and process images of documents for item processing it is not specifically concerned with the traditional processes of capturing check, posting them to payee accounts and presenting the checks at the payor bank for collection. Rather it deals with the hardware and software to allow for the capture and storage of such.

The inventive patent is directed at enabling customers to deposit checks remotely (at a home, place of business, bank branch, or bank location) which includes crediting their account (checking, savings, etc.), creating an electronic image of the checks so the original can be destroyed and using the image of the checks to present an image to the maker bank for payment. The invention is not specifically concerned with the hardware and software used for the storage. It will use whatever is appropriate and available on the market for this. The specific focus of the invention is the process involved in eliminating checks and using their images for processing and collection.

M.    **Stephens et al. Patent**

United States Patent No. 5,237,159, ELECTRONIC CHECK PRESENTMENT SYSTEM, issued on August 17, 1993 to Stephens et al. The reference is based on traditional check capture in central locations. The depositor takes their deposit to a bank or branch and the deposit is forwarded to the central capture site. The checks are captured on check sorters and forwarded to the maker bank for collection of funds. The bank of first deposit extracts MICR data from the captured information and forwards that information to the maker bank where the maker bank matches the electronic information to the paper items when they arrive.

15

PPS-JHA000373

The inventive patent is directed at enabling customers to deposit checks remotely (at a home, place of business, bank branch, or bank location) which includes crediting their account (checking, savings, etc.), creating and storing an electronic image of the checks so the original can be destroyed and using the image of the checks to present an image to the maker bank for collection.  The reference deals with the sorting and routing of physical checks at centralized locations while the invention deals with capturing check images at remote locations and using the check images to present to the maker bank for collection.  The invention further eliminates the ongoing need for the physical so they can be destroyed by the depositor or returned to the check maker, while the reference depends on the physical items for the collection process.

N.   **Case Patent**

United States Patent No. 4,358,671, CHECK PROCESSING SYSTEM, issued on November 9, 1982 to John M. Case.  The reference relies on a specially designed check to collect funds.  The check is designed such that it can be processed through the normal paper check collection channels.  It also has special characteristics that mark it as a check that can be processed through the EFT processes.  In either circumstance the check is presented at a bank or branch of the bank of first deposit and it is sent to a central site for capture.  Once presented at the central site the check is proof encoded with the check amount and processed through the bank of first deposit's check capture system.  If the check is marked for EFT collection the appropriate MICR information is loaded into a data file for processing through the EFT process.

The inventive patent is directed at enabling customers to deposit checks remotely (at a home, place of business, bank branch, or bank location) which includes crediting their account (checking,

16



savings, etc.), creating and storing an electronic image of the checks so the original can be destroyed and using the image of the checks to present an image to the maker bank for collection.  The reference deals with the sorting and routing of physical checks from into a central site for collection and the method of collection is either the normal paper check collection path or through the EFT path.  The reference does not use image data in any way to identify, process or clear checks to the drawer bank.  The patent is designed specifically to use images of the checks captured at remote locations for processing and collection.

O.    **Braun et al. Patent**

United States Patent No. 4,321,672, FINANCIAL DATA PROCESSING SYSTEM, issued on March 23, 1982 to Edward L. Braum.  The reference is a method for providing user access to a selected group of document images of all kinds including check images.  The traditional high-speed image capture is used to acquire and store the image of the checks.  Once the image is created additional reference data is added to it (by the reference patent) and it is stored for retrieval (CD, print, and on-line viewing, etc.).  This system is first and foremost an image storage, retrieval and view system with the traditional check processing and collection methodology continuing and "feeding" this system to enable it to store and retrieve images for later reference.  This system does not deal with check depositing, rather it is the beneficiary of traditional check depositing and processing.

The inventive patent is directed at enabling customers to deposit checks remotely (at a home, place of business, bank branch, or bank location) which includes crediting their account (checking,

17

PPS-JHA000375



savings, etc.), creating an electronic image of the checks so the original can be destroyed and using the image of the checks to present an image to the maker bank for payment.

P.   **Owens et al. Patent**

United States Patent No. 4,264,808, METHOD AND APPARATUS FOR ELECTRONIC IMAGE PROCESSING OF DOCUMENTS FOR ACCOUNTING PURPOSES, issued on April 28, 1981 to Clifford J. Owens et al. The reference patent allows for remote capture of documents (some of which may be checks) for accounting purposes. In the preferred embodiemant, the system is referred to as a banking system. Checks are taken to a teller location as per column 9 line 7 of Patent 4,264,808. The documents are manually prepared and control documents inserted prior to the checks being read by a machine designed to read an image of the check. Once an image is taken it is electronically transmitted to a processing site (for preprocessing the image date) and the checks are physically routed to the same site where the physical items are matched to the electronic pre-processed data. The physical checks are then matched to the electronic image data, the check amount is encoded in MICR ink on the physical checks, and the checks are then routed to the maker banks while the imaged data is used for interfacing appropriated date to the accounting systems.

The inventive process allows for capturing images for accounting purposes as well as for check clearing purposes using only the image rather than the physical item. The checks can be captured at any location that has a physical device required for reading images and identifying MICR line information.. It is not necessary to present the checks for deposit at a bank or bank branch location as in the referenced patent. Once imaged the physical item can either be filed, returned to the person who gave it to the depositor, or destroyed by the depositor. The physical item is not

18

PPS-JHA000376



required by the inventive process as is the case in the reference patent. Another difference is that the patent is designed to scrutinize the check data at the remote site as it is being captured through an interactive process with a central site to ensure the data and depositor information is complete and correct. Any check not passing this scrutiny will either reject for manual processing, or the data will be changed with interactive direction from the central site, and the image is processed. The checks are also endorsed and voided (to keep them from being re-deposited) at the direction of the central computers or check processing personnel. At this point the physical check can either be filed, returned to the person who gave it to the depositor, or destroyed by the depositor.

19

PPS-JHA000377

## CONCLUSION

While general discussions of the differences between the references as located in the patent search and the invention as disclosed in the patent application at hand have been freely and openly produced, it should be appreciated that the actual scope of the invention is defined by the claims of the invention. The claims of the present invention are readily distinguishable from the teachings of each of the references cited and discussed herein. Thus, Applicants respectfully submit that the claims are neither anticipated nor rendered obvious by any of the references cited herein. Prompt allowance is expected and appreciated. Should the Examiner find any impediments to prompt allowance, they are invited to contact the attorney of record below.

DATED this _28_ day of July, 2000.

Respectfully submitted,

Kevin K. Johanson
Attorney for Applicant
Registration No. 38,506

**022913**

G:\DATA\wpdocs2\CIA\KKJ\ZIONS\PET-SPECIAL-15.doc

PATENT TRADEMARK OFFICE

20

PPS-JHA000378



 

**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office

ASSISTANT SECRETARY AND COMMISSIONER
OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

## CHANGE OF ADDRESS/POWER OF ATTORNEY     2163

·FILE LOCATION     27C1     SERIAL NUMBER 09560779     ·PATENT NUMBER

THE CORRESPONDENCE ADDRESS HAS BEEN CHANGED TO CUSTOMER #  22913

THE PRACTITIONERS OF RECORD HAVE BEEN CHANGED TO CUSTOMER #  22913

THE FEE ADDRESS HAS BEEN CHANGED TO CUSTOMER #  22913

ON 08/31/00 THE ADDRESS OF RECORD FOR CUSTOMER NUMBER  22913 IS:

WORKMAN NYDEGGER & SEELEY
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE
SALT LAKE CITY UT 84111

*RECEIVED*
*NOV 3 0 2000*
*Technology Center 2100*

AND THE PRACTITIONERS OF RECORD FOR CUSTOMER NUMBER  22913 ARE:

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 28651 | 29843 | 30148 | 32434 | 34263 | 34521 | 36153 | 36596 | 37246 | 37335 |
| 38219 | 38506 | 39166 | 39330 | 40831 | 40858 | 41348 | 42539 | 42556 | 42685 |
| 42785 | 43332 | 44136 | 44515 | 45454 | 45576 | 45666 | 46081 | | |

PTO INSTRUCTIONS: PLEASE TAKE THE FOLLOWING ACTION WHEN THE
CORRESPONDENCE ADDRESS HAS BEEN CHANGED TO CUSTOMER NUMBER:
RECORD, ON THE NEXT AVAILABLE CONTENTS LINE OF THE FILE JACKET,
'ADDRESS CHANGE TO CUSTOMER NUMBER'.  LINE THROUGH THE OLD
ADDRESS ON THE FILE JACKET LABEL AND ENTER ONLY THE 'CUSTOMER
NUMBER' AS THE NEW ADDRESS.  FILE THIS LETTER IN THE FILE JACKET.
WHEN ABOVE CHANGES ARE ONLY TO FEE ADDRESS AND/OR PRACTITIONERS
OF RECORD, FILE LETTER IN THE FILE JACKET.
THIS FILE IS ASSIGNED TO GAU 2765.

PTO-FMD
TALBOT-1/97

PPS-JHA000379

| TRANSMITTAL OF INFORMATION DISCLOSURE STATEMENT (Under 37 CFR 1.97(b) or 1.97(c)) | Docket No. 7905.15 |
|---|---|

In Re Application Of:   Buchanan et al.

| Serial No. 09/560,779 | Filing Date 4/28/00 | Examiner Not Yet Assigned | Group Art Unit 2761 |
|---|---|---|---|

Title:   **METHOD AND SYSTEM FOR PROCESSING FINANCIAL INSTRUMENT DEPOSITS PHYSICALLY REMOTE FROM A FINANCIAL INSTITUTION**

Address to:
**Assistant Commissioner for Patents**
**Washington, D.C.  20231**

### 37 CFR 1.97(b)

1. ☒   The Information Disclosure Statement submitted herewith is being filed within three months of the filing of a national application; within three months of the date of entry of the national stage as set forth in 37 CFR 1.491 in an international application; or before the mailing date of a first Office Action on the merits, whichever event occurs last.

### 37 CFR 1.97(c)

2. ☐   The Information Disclosure Statement submitted herewith is being filed after three months of the filing of a national application, or the date of entry of the national stage as set forth in 37 CFR 1.491 in an international application; or after the mailing date of a first Office Action on the merits, whichever occurred last but before the mailing date of either:

   1.   a Final Action under 37 CFR 1.113, or

   2.   a Notice of Allowance under 37 CFR 1.311,

   whichever occurs first.

Also submitted herewith is:

☐   a certification as specified in 37 CFR 1.97(e);

### OR

☐   the fee set forth in 37 CFR 1.17(p) for submission of an Information Disclosure Statement under 37 CFR 1.97(c).

RECEIVED
JUN  5 2001
Technology Center 2100

Copyright 1996 Legalsoft

P10A/REV01

| TRANSMITTAL OF INFORMATION DISCLOSURE STATEMENT (Under 37 CFR 1.97(b) or 1.97(c)) | Docket No. 7905.15 |
|---|---|

In Re Application Of:   Buchanan et al.

| Serial No. 09/560,779 | Filing Date 4/28/00 | Examiner Not Yet Assigned | Group Art Unit 2761 |
|---|---|---|---|

Title:   **METHOD AND SYSTEM FOR PROCESSING FINANCIAL INSTRUMENT DEPOSITS PHYSICALLY REMOTE FROM A FINANCIAL INSTITUTION**

**Payment of Fee**
(Only complete if Applicant elects to pay the fee set forth in 37 CFR 1.17(p))

☐ A check in the amount of                      is attached.
☒ The Assistant Commissioner is hereby authorized to charge and credit Deposit Account No.  23-31
   as described below.  A duplicate copy of this sheet is enclosed.
   ☐ Charge the amount of
   ☐ Credit any overpayment.
   ☒ Charge any additional fee required.

**Certificate of Transmission by Facsimile***

I certify that this document and authorization to charge deposit account is being facsimile transmitted to the United States Patent and Trademark Office (Fax. No.                 ) on

(Date)

_____
Signature

_____
Typed or Printed Name of Person Signing Certificate

**Certificate of Mailing by First Class Mail**

I certify that this document and fee is being deposited on *May 29, 2001* with the U.S. Postal Service as first class mail under 37 C.F.R. 1.8 and is addressed to the Assistant Commissioner for Patents, Washington, D.C. 20231.

*Kevin K Johanson*
Signature of Person Mailing Correspondence

Kevin K. Johanson
Typed or Printed Name of Person Mailing Correspondence

*This certificate may only be used if paying by deposit account.

*Kevin K Johanson*
Signature

**KEVIN K. JOHANSON, Reg. No. 38,506**

Dated: *May 29, 2001*

022913

PATENT TRADEMARK OFFICE

CC:

Copyright 1996 Legalsoft

P10A/REV01

PATENT APPLICATION
Docket No: 7905.15

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of                                          )
                                                             )
                    Buchanan, et al.                         )
                                                             ) Art Unit
Serial No.          09/560,779                               ) 2761
                                                             )
Filed:              April 28, 2000                           )
                                                             )
For:                METHOD AND SYSTEM FOR PROCESSING         )
                    FINANCIAL INSTRUMENT DEPOSITS            )
                    PHYSICALLY REMOTE FROM A FINANCIAL       )
                    INSTITUTION                              )

SUPPLEMENTAL INFORMATION DISCLOSURE STATEMENT
UNDER 37 CFR § 1.97

Assistant Commissioner for Patents
Washington, DC  20231

Dear Sir:

Please find, pursuant to 37 CFR § 1.98(a)(1), enclosed Form PTO-1449 that contains a list of

all patents, publications, or other items that have come to the attention of one or more of the

individuals designated in 37 CFR § 1.56(c).  While no representation is made that any of these

references may be "prior art" within the meaning of that term under 37 CFR §§ 102 or 103, the

enclosed list of references is disclosed to fully comply with the duty of disclosure set forth in 37 CFR

§ 1.56.

Pursuant to 37 CFR § 1.97(g) and (h), Applicant makes no representation that a search has

been made or that the information cited is considered to be material to patentability.  Additionally,

Applicant makes no representation regarding the completeness of this list nor represents that other art

does not exist.

PPS-JHA000382

In accordance with 37 CFR §§ 1.97 and 1.98, a copy of each of the listed references or relevant portion thereof is also enclosed.

DATED this _29_ day of May 2001.

Respectfully submitted,

KEVIN K. JOHANSON
Attorney for Applicant
Registration No.  38,506

WORKMAN, NYDEGGER & SEELEY
1000 Eagle Gate Tower
60 East South Temple
Salt Lake City, Utah 84111
Telephone: (801) 533-9800
Facsimile:  (801) 328-1707

G:\DATA\WPDOCS\DF\ZIONS\15 SUPP IDS.DOC
Docket No.: 7905.15

PPS-JHA000383

03/12/2002 17:06 FAX 703 305 3719          DIRECTOR OFFICE                    ☑001

```
                          ********************
                          ***   RX REPORT   ***
                          ********************

           RECEPTION OK

           TX/RX NO            5495
           CONNECTION TEL                  18013281707
           CONNECTION ID
           ST. TIME           03/12 16:56
           USAGE T            09'56
           PGS.                26
           RESULT             OK
```

PPS-JHA000384

# WORKMAN, NYDEGGER & SEELEY

*60 East South Temple, Suite 1000*
*Salt Lake City, Utah 84111*
*(801) 533-9800*
*Fax: (801) 328-1707*

### FAX TRANSMISSION COVER SHEET

*Date:*   March 12, 2002

*To:*   Norma Watson
*PETITIONS BRANCH*
*United States Patent and Trademark Office*

*Fax:*   **(703) 305-3719**

*Re:*   7905.15

*Sender:*   Dianne Freedman, Paralegal for Fraser D. Roy

**Attached is a copy of the Petition to Make Special for Application
Serial No. 09/560,779, as filed on July 28, 2000.**

*YOU SHOULD RECEIVE **26 PAGES**, INCLUDING THIS COVER SHEET.  IF YOU
DO NOT RECEIVE ALL THE PAGES, PLEASE CALL (801) 533-9800.*

PPS-JHA000385

MAR-12-02 TUE 02:57 PM   WORKMAN NYDEGGER &SEELEY    FAX NO. 18013281707          P. 03/26

| CERTIFICATE OF MAILING BY "EXPRESS MAIL" (37 CFR 1.10) | Docket No. |
|---|---|
| Applicant(s):  Buchanan et al. | 7905.15 |

| Serial No. 09/560,779 | Filing Date April 28, 2000 | Examiner Not Yet Assigned | Group Art Unit Not Yet Assigned |
|---|---|---|---|

Invention:  **METHOD AND SYSTEM FOR PROCESSING FINANCIAL INSTRUMENT DEPOSITS PHYSICALLY REMOTE FROM A FINANCIAL INSTITUTION**

I hereby certify that this   <u>Petition to Make Special (including the items listed below)</u>
                                                            *(Identify type of correspondence)*

is being deposited with the United States Postal Service "Express Mail Post Office to Addressee" service under

37 CFR 1.10 in an envelope addressed to: The Commissioner of Patents and Trademarks, Washington, D.C.

20231-0001 on _____**July 28, 2000**_____
                                        *(Date)*

                                                          Kevin K. Johanson
                                                *(Typed or Printed Name of Person Mailing Correspondence)*

                                                *(Signature of Person Mailing Correspondence)*

                                                          EL550340601US
                                                *("Express Mail" Mailing Label Number)*

                        **Note: Each paper must have its own certificate of mailing.**

Transmitted:       Petition to Make Special Under 37 C.F.R. § 102(d) (20 pgs.)
                        Transmittal Letter in triplicate (1 pg.s)
                        Check No. 11683b  in the amount of $130.00 for filing fee of Petition
                        Form PTO-1449
                        Copies of sixteen (16) prior references
                        Certificate of Mailing by Express Mail Label No. EL550340601US
                        Postcard

Copyright 1995 Legalsoft                                                                                      P068/REV02

PPS-JHA000386

MAR-12-02 TUE 02:58 PM   WORKMAN NYDEGGER &SEELEY   FAX NO. 18013281707          P. 04/26

| **TRANSMITTAL LETTER**<br>**(General - Patent Pending)** | Docket No.<br>**7905.15** |
|---|---|

In Re Application Of:   **Buchanan et al.**

| Serial No.<br>**09/560,779** | Filing Date<br>**April 28, 2000** | Examiner<br>**Not Yet Assigned** | Group Art Unit |
|---|---|---|---|

Title:   **METHOD AND SYSTEM FOR PROCESSING FINANCIAL INSTRUMENT DEPOSITS PHYSICALLY FROM A FINANCIAL INSTITUTION**

<u>TO THE COMMISSIONER OF PATENTS AND TRADEMARKS:</u>

Transmitted herewith is:

    **Petition to Make Special Under 37 C.F.R. Section 102(d)**
    **Transmittal Letter**
    **Certificate of Mailing by "Express Mail" Label No. EL550340601US**
    **Copies of sixteen (16) references**
    **Check No. 116836 in the amount of  $130**

in the above identified application.

☐  No additional fee is required.
☒  A check in the amount of  $130.00          is attached.
☒  The Commissioner is hereby authorized to charge and credit Deposit Account No.          **23-3178**
    as described below.  A duplicate copy of this sheet is enclosed.
    ☐  Charge the amount of
    ☒  Credit any overpayment.
    ☒  Charge any additional fee required.

_Signature_          Dated:   **July 28, 2000**

**Kevin K. Johanson**
**Registration No. 38,506**

**022913**

PATENT TRADEMARK OFFICE

I certify that this document and fee is being deposited on July 28, 2000          with the U.S. Postal Service as first class mail under 37 C.F.R. 1.8 and is addressed to the Commissioner of Patents and Trademarks, Washington, D.C. 20231.

_Signature of Person Mailing Correspondence_

Kevin K. Johanson
_Typed or Printed Name of Person Mailing Correspondence_

cc:

Copyright 1995 Legalsoft          P1EB/REV01

PPS-JHA000387

Express Mail Label No. EL550340601US                    PATENT APPLICATION
                                                        Docket No: 7905.15

### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re application of: | ) |
| | ) |
| Buchanan et al. | ) |
| | )    Art Unit |
| Title:  METHOD AND SYSTEM FOR PROCESSING | ) |
| FINANCIAL INSTRUMENT DEPOSITS | ) |
| PHYSICALLY REMOTE FROM A FINANCIAL | ) |
| INSTITUTION | ) |
| | ) |
| Serial No:  09/560,779 | ) |
| | ) |
| Filed:  April 28, 2000 | ) |

### PETITION TO MAKE SPECIAL UNDER 37 C.F.R. § 102 (d)

Honorable Commissioner of
    Patents and Trademarks
Washington, D.C. 20231

Sir:

Applicants hereby respectfully requests that examination of the above-referenced patent application be advanced out of turn and requests that the prosecution thereof be performed in an expedited manner. In conformance with 37 C.F.R. § 102 (d), Applicants submit this written petition accompanied by the filing fee set forth in 37 C.F.R. § 1.17 (i) (2).

Should a restriction requirement be thought necessary, Applicants request that prompt telephonic notice be given to Kevin K. Johanson at the following telephone number at which time Applicants will make an election without traverse ((801) 533-9800).

PPS-JHA000388

Applicants have caused to be made two careful and thorough pre-examination searches of the prior art. One search was performed by Roger Flagg, a professional searcher with Express Search. Examiners MacDonald and Tkacs, in Art Unit 2761 were consulted regarding the field of search. Mr. Flagg searched Class 705, subclasses 35, 39 and 42; Class 235, subclass 379. The other search was performed by Applicants.

The following references were discovered in the above-referenced pre-examination search and will be discussed in detail below:

U.S. Patent No. 6,032,137 (Ballard)
U.S. Patent No. 5,999,624 (Hopkins)
U.S. Patent No. 5,930,778 (Geer)
U.S. Patent No. 5,895,455 (Bellinger et al.)
U.S. Patent No. 5,832,463 (Funk)
U.S. Patent No. 5,787,403 (Randle)
U.S. Patent No. 5,691,524 (Josephson)
U.S. Patent No. 5,583,759 (Geer)
U.S. Patent No. 5,412,190 (Josephson et al.)
U.S. Patent No. 5,373,550 (Campbell et al.)
U.S. Patent No. 5,326,959 (Perazza)
U.S. Patent No. 5,321,816 (Rogan et al.)
U.S. Patent No. 5,237,159 (Stephens et al.)
U.S. Patent No. 4,358,671 (Case)
U.S. Patent No. 4,321,672 (Braun et al.)
U.S. Patent No. 4,264,808 (Owens et al.)

2

PPS-JHA000389

## DETAILED DISCUSSION OF THE REFERENCES AS SPECIFIED IN 37 C.F.R. § 1.111 (b) AND (c)

### I.    NATURE OF THE PRESENT INVENTION

A system that includes computer hardware, computer software, apparatus, and methodology that enables individuals, businesses, and all types of organizations (both for profit and non-profit) to capture and securely transmit check images (including, but not limited to, personal checks, business checks, travelers checks, money orders, merchant coupons, food coupons, line of credit checks, etc.), deposit information, and other information from remote locations (i.e., locations that could include the financial institution's remote locations, other financial institution's locations, businesses, private residences, etc.), for the purpose of having those checks credited to the depositing individual's or organization's bank account(s) and having the check images (and/or physical checks) entered into the bank check clearing channels for ultimate delivery to the maker bank for payment out of the maker's account.

### II.    DESCRIPTION OF REFERENCES FOUND IN PRE-EXAMINATION SEARCH

#### A.    **Ballard Patent**

United States Patent No. 6,032,137, REMOTE IMAGE CAPTURE WITH CENTRALIZED PROCESSING AND STORAGE, issued on February 29, 2000 to Claudio R. Ballard.  The referenced patent is intended for the automated storage and retrieval of all kinds of remotely captured transaction data from a variety of sources including credit card transactions, smart card transactions, automated teller machine (ATM) transactions, consumer purchases, business forms, W2 forms, birth certificates, deeds and insurance documents.

3

PPS-JHA000390

The inventive patent is directed at enabling customers to deposit checks remotely (at a home, place of business, bank branch, or bank location) which includes crediting their account (checking, savings, etc.), creating and storing an electronic image of the checks so the original can be destroyed and using the image of the checks to present an image to the maker bank for payment. This process involves storage and retrieval of data and images captured from at the remote check capture locations. However, the storage and retrieval of data is a by-product of the invention and will use commonly accepted commercially available storage and retrieval hardware and software.

B.    **Hopkins Patent**

United States Patent No. 5,999,624, REMOTE FINANCIAL TRANSACTION SYSTEM, issued on December 7, 1999 to W. Dale Hopkins. The reference allows for remote payments of financial obligations using a payment module over communications link and incorporating password security. The reference uses credit card magnetic stripe information to identify what accounts the payments should be transferred from.

The inventive patent is directed at enabling customers to deposit checks remotely (at a home, place of business, bank branch, or bank location), which includes crediting their account (checking, savings, etc.). creating and storing an electronic image of the checks so the original can be destroyed and using the image of the checks to present an image to the maker bank for payment. This process involves the transmission of information and check images associated with a particular deposit and/or depositor. The invention has no purpose or design associated with transmitting data from remote locations for the purpose of payment of financial obligations.

4

PPS-JHA0000391

**C.    Geer Patent**

United States Patent No. 5,930,778, SYSTEM FOR EXPEDITING THE CLEARING OF FINANCIAL INSTRUMENTS AND COORDINATING THE SAME WITH INVOICE PROCESSING AT THE POINT OF RECEIPT, issue on July 27, 1999 to Terry L. Geer. This reference includes the capture of financial information at locations created for lock box processing. The lock box process allows for checks or other financial instruments to be captured along with a payment coupon as part of the payment process. The check images are captured as well as the MICR line. The checks can either be sent to a central site for capture and presentment through the normal check clearing paths or the MICR line information is captured at the lock box site and sent to the central site for further electronic sorting and processing both with regard to the introduction of the checks into the payment system and the crediting of funds represented by the checks to the payee's account at the bank. When the image is captured it is retained for research purposes. Once at the central site the checks or electronic totals are credited to the account of the sender and the check information is forwarded through the electronic channels.

The current patentable process differs in that it contains nothing related to payment processing. The process is designed to capture images and MICR line information of the checks that are going to be credited to the payee's account and processed as an image through the check clearing channels. Once the check is captured it is voided and can be retained, destroyed by the depositor, or returned to the person who gave it to the depositor, or destroyed.

The primary differences are that the inventive process is not a lock box process, and the process to be patented is based on using check images for the clearing process as compared to bank information from the checks as in the referenced patent. In addition, the patent is designed to

5

PPS-JHA000392

scrutinize the check data at the remote site as it is being captured through an interactive process with a central site to ensure the data and depositor information is complete and correct. Any check not passing this scrutiny may either be rejected for manual processing, or the data may be changed with interactive direction from the central site, and the image is processed. The checks are also endorsed and voided (to keep them from being re-deposited) at the direction of the central computers or check processing personnel. At this point the physical check can either be filed, returned to the person who gave it to the depositor, or destroyed by the depositor.

D.   **Bellinger et al. Patent**

United States Patent No. 5,895,455, DOCUMENT IMAGE DISPLAY SYSTEM AND METHOD, issued on April 20, 1999 to David T. Bellinger et al. The reference is a method for providing user access to a selected group of document images of all kinds including check images. The traditional high-speed image capture is used to acquire and store the image of the checks. Once the image is created additional reference data is added to it (by the reference patent) and it is stored for retrieval (CD, print, and on-line viewing, etc.). This system is first and foremost an image storage, retrieval and view system with the traditional check processing and collection methodology continuing and "feeding" this system to enable it to store and retrieve images for later reference. This system does not deal with check depositing, rather it is the beneficiary of traditional check depositing and processing.

The inventive patent is directed at enabling customers to deposit checks remotely (at a home, place of business, bank branch, or bank location) which includes crediting their account (checking,

6

MAR-12-02 TUE 03:00 PM   WORKMAN NYDEGGER &SEELEY   FAX NO. 18013281707   P. 11/26

savings, etc.), creating an electronic image of the checks so the original can be destroyed and using the image of the checks to present an image to the maker bank for payment.

E.   **Funk Patent**

United States Patent No. 5,832,463, AUTOMATED SYSTEM AND METHOD FOR CHECKLESS CHECK TRANSACTION, issued on November 3, 1998 to Wade L. Funk. The reference deals with capturing check image and other information associated with a point of sale transaction. The focus of point of sale transactions is to transfer funds out of the accounts of the purchaser(s) for the purpose of paying for a monetary transaction at a place of business. This allows for a check-less transaction for payment of monetary obligations. Images of checks are not used for creating the information required to transfer money out of the purchaser's account, the check image created is used for research purposes only. The MICR line information is used by the vendor to create the information required to transfer funds out of the check maker's account into the vendor's account in payment of the financial obligation.

The inventive patent is directed at enabling customers to deposit checks remotely (at a home, place of business, bank branch, or bank location) which includes crediting their account (checking, savings, etc.), creating and storing an electronic image of the checks so the original can be destroyed and using the image of the checks to present an image to the maker bank for payment. While the reference deals with check information to transfer funds out of the purchasers account to pay for a monetary transaction, the invention deals with depositing funds into a depositor's account from check(s) given to them as settlement of an obligation, and to present the deposited checks through the check collections processes and systems to transfer funds from the accounts of the check makers

7

PPS-JHA000394

into the account of the depositor.  The invention does not have any reference or purpose of transferring funds out of accounts for settling monetary transactions.

F.     **Randle Patent**

United States Patent No.5,787,403, BANK-CENTRIC SERVICE PLATFORM, NETWORK AND SYSTEM, issued on July 28, 1998 to William M. Randle.  This invention relates to a bank-centric network identifying a bank as a central service provider to a customer and is designed to provide user access, presentation and gateway functions that permit a customer to communicate with product providers through a financial institution.  The network is customer-accessed and associated with a conventional bank or financial institution and provides conventional information, products and services offered by a bank and is a gateway to other "non-bank" information.

The inventive patent is directed at enabling customers to deposit checks remotely (at a home, place of business, bank branch, or bank location) which includes crediting their account (checking, savings, etc.), creating and storing an electronic image of the checks so the original can be destroyed and using the image of the checks to present an image to the maker bank for payment.  This process involves storage and retrieval of data and images captured from at the remote check capture locations.  However, the storage and retrieval of data is a by-product of the invention and will use commonly accepted commercially available storage and retrieval hardware and software.  The information created and stored by the invention would be the type of information that the reference could make available through it's processes.  However, the invention will have the ability to store and make available information also using conventional storage and retrieval hardware and software.

8

The exact presentation of the retrieved data will be directed by the inventive software to meet the needs of the institution owning the software.

### G.   Josephson Patent

United States Patent No. 5,691,524, ELECTRONIC CHECK PRESENTMENT SYSTEM HAVING A NON-ECP EXCEPTIONS NOTIFICATION SYSTEM INCORPORATED THEREIN, issued on November 25, 1997 to Stanley M. Josephson. The reference deals with transmitting check MICR information after the capture of said information using the normally accepted methods of capturing check information.   The transmitted MICR uses an improved Electronic Check Presentment (ECP) system and the information is used by the recipient financial institution to determine if the check is payable out of the makers account.  If the check is not payable information is sent to the capturing institution to not send the paper check.  The check is instead returned to the depositor for return to the maker or redeposit.  This process does not deal with in any way with the remote deposit of checks.  It also does not eliminate the processing of checks using paper checks from the point of first capture, etc. Is specifically used to pre-notify the maker bank of checks being processed for them by the bank of first deposit so that the maker bank can determine if the checks are all going to be payable at their bank. If they are not going to be payable, the bank of first deposit will return the check to the payee instead of routing the check to the maker bank and receiving it back from the maker bank when it is determined by the maker bank that it is not payable.

The inventive patent is directed at enabling customers to deposit checks remotely (at a home, place of business, bank branch, or bank location) which includes crediting their account (checking, savings, etc.), creating an electronic image of the checks so the original can be destroyed and using

9

PPS-JHA000396

the image of the checks to present an image to the maker bank for payment. This process does not involve any transfer of MICR information for the sole purpose of pre-determining return items to preclude the paper checks from initially being sent to the maker bank for checks that will be returned. It uses the inventive process to move images of checks electronically and have funds moved into the depositor's accounts as a result of the check collection processes. As a result of this processing it may be determined at anytime that a check will not be payable by the maker. If so this determination will be made based on the image data that is created from the original check. Return decisions will be made using image and MICR data associated with the capture of the check. If return decisions are made on the image data it is incidental to the overall purpose of remote image capture and processing of the invention and does not follow the same procedures or notification paths, as does the reference.

## H.    **Geer Patent**

United States Patent No. 5,583,759, MECHANISM FOR EXPEDITING THE DEPOSIT, TRANSPORT AND SUBMISSION OF CHECKS INTO THE PAYMENT SYSTEM, issued on December 10, 1996 to Terry L. Geer. This reference includes the capture of financial information at locations created for lock box processing. The lock box process allows for checks or other financial instruments to be captured along with a payment coupon as part of the payment process. The check images are captured as well as the MICR line. The checks can either be sent to a central site for capture and presentment through the normal check clearing paths or the MICR line information is captured at the lock box site and sent to the central site for further electronic sorting and processing both with regard to the introduction of the checks into the payment system and the crediting of funds

10

PPS-JHA000397

represented by the checks to the payee's account at the bank.. When the image is captured it is retained for research purposes. Once at the central site the checks or electronic totals are credited to the account of the sender and the check information is forwarded through the electronic channels.

The current patentable process differs in that it contains nothing related to payment processing. The process is designed to capture images and MICR line information of the checks that are going to be credited to the payee's account and processed as an image through the check clearing channels. Once the check is captured it is voided and can be retained, destroyed by the depositor, or returned to the person who gave it to the depositor, or destroyed.

The primary differences are that the inventive process is not a lock box process, and the process to be patented is based on using check images for the clearing process as compared to bank information from the checks as in the referenced patent. In addition, the patent is designed to scrutinize the check data at the remote site as it is being captured through an interactive process with a central site to ensure the data and depositor information is complete and correct. Any check not passing this scrutiny will either reject for manual processing, or the data will be changed with interactive direction from the central site, and the image is processed. The checks are also endorsed and voided (to keep them from being re-deposited) at the direction of the central computers or check processing personnel. At this point the physical check can either be filed, returned to the person who gave it to the depositor, or destroyed by the depositor.

11

PPS-JHA000398

### I.   Josephson et al. Patent

United States Patent No. 5,412,190, ELECTRONIC CHECK PRESSENTMENT SYSTEM HAVING A RETURN ITEM NOTIFICATION SYSTEM INCORORATED THEREIN, issued on May 2, 1995 to Stanley M. Josephson, et al. The reference deals with transmitting check MICR information after the capture of said information using the normally accepted methods of capturing check information. The transmitted MICR uses an improved Electronic Check Presentment (ECP) system and the information is used by the recipient financial institution to determine if the check is payable out of the makers account. If the check is not payable information is sent to the capturing institution to not send the paper check. The check is instead returned to the depositor for return to the maker or redeposit. This process does not deal in any way with the remote deposit of checks, or eliminating the processing of checks using paper checks from the point of first capture, etc.

The inventive patent is directed at enabling customers to deposit checks remotely (at a home, place of business, bank branch, or bank location) which includes crediting their account (checking, savings, etc.), creating and storing an electronic image of the checks so the original can be destroyed and using the image of the checks to present an image to the maker bank for payment. This process does not involve any transfer of MICR information for the sole purpose of pre-determining return items to preclude the paper checks from initially being sent to the maker bank for checks that will be returned. It uses the inventive process to move images of checks electronically and have funds moved into the depositor's accounts as a result of the check collection processes. As a result of this processing it may be determined at anytime that a check will not be payable by the maker. If so this determination will be made based on the image data that is created from the original check. Return decisions will be made using image data and not the MICR data associated with the capture of the

12

check. If return decisions are made on the image data it is incidental to the overall purpose of remote image capture and processing of the invention and does not follow the same procedures or notification paths, as does the reference.

### J.    Campbell et al. Patent

United States Patent No. 5,373,550, TRANSMISSION OF CHECK IMAGES BY WAY OF A PUBLIC SWITCHED TELEPHONE NETWORK, issued on December 13, 1994 to Walter G. Campbell et al. The reference deals with the hardware and network required to transmit images of checks. It does not deal with the processes or purposes used to capture and process checks — only the physical transmission of such information.

The inventive patent is directed at enabling customers to deposit checks remotely (at a home, place of business, bank branch, or bank location) which includes crediting their account (checking, savings, etc.), creating and storing an electronic image of the checks so the original can be destroyed and using the image of the checks to present an image to the maker bank for payment. This process involves the transmission of information and check images associated with a particular deposit and/or depositor. However, the transmission of such data will be done using commonly accepted commercially available transmission facilities and/or hardware.

### K.    Perazza Patent

United States Patent No. 5,326,959, AUTOMATED CUSTOMER INITIATED ENTRY REMITTANCE PROCESSING SYSTEM, issued on July 5, 1994 to Justin J. Perazza. The reference is designed to pay bills through the automatic transfer of funds from an individuals/businesses

PPS-JHA000400

accounts. This process uses the traditional funds transfer processes (ACH, ATM, Teller Transfers, etc.) that are initiated by a process utilizing an inventive "Customer Payment Instruction" sheet that is filed out by the bill payer and given to their financial institution bank or branch location. This is designed to be a manual process for tellers to do in their quiet periods. If the volume is great enough the reference alludes to using automatic envelope opening equipment and/or manual or semi-automatic equipment for reading the CPI's. There is no specific reference as to if this equipment currently exists or if it would need to be invented.

The inventive patent is directed at enabling customers to deposit checks remotely (at a home, place of business, bank branch, or bank location) which includes crediting their account (checking, savings, etc.), creating an electronic image of the checks so the original can be destroyed and using the image of the checks to present an image to the maker bank for payment. This process does not involve any transfer of funds through the normal funds transfer processes for the purpose of payment processing. It uses the inventive process to move images of checks electronically and have funds moved into the depositor's accounts as a result of the check deposit and collection processes.

L.   **Rogan et al. Patent**

United States Patent No. 5,321,816, LOCAL-REMOTE APPARATUS WITH SPECIALIZED IMAGE STORAGE MODULES, issued on June 14, 1994 to James D. Rogan et al. This reference is for a storage system for high speed, high volume data storage. This patent does not deal with the physical handling and/or editing of the check capture process. It is an apparatus that "provides a network combining a local site having a host computer and a specialized storage and retrieval module for storing image information which is connected to a remote site having document

14

PPS-JHA000401

processing equipment working with remote specialized storage retrieval modules for storage of image and information data. While the system uses imaging technology to capture and process images of documents for item processing it is not specifically concerned with the traditional processes of capturing check, posting them to payee accounts and presenting the checks at the payor bank for collection. Rather it deals with the hardware and software to allow for the capture and storage of such.

The inventive patent is directed at enabling customers to deposit checks remotely (at a home, place of business, bank branch, or bank location) which includes crediting their account (checking, savings, etc.), creating an electronic image of the checks so the original can be destroyed and using the image of the checks to present an image to the maker bank for payment. The invention is not specifically concerned with the hardware and software used for the storage. It will use whatever is appropriate and available on the market for this. The specific focus of the invention is the process involved in eliminating checks and using their images for processing and collection.

M.   **Stephens et al. Patent**

United States Patent No. 5,237,159, ELECTRONIC CHECK PRESENTMENT SYSTEM, issued on August 17, 1993 to Stephens et al. The reference is based on traditional check capture in central locations. The depositor takes their deposit to a bank or branch and the deposit is forwarded to the central capture site. The checks are captured on check sorters and forwarded to the maker bank for collection of funds. The bank of first deposit extracts MICR data from the captured information and forwards that information to the maker bank where the maker bank matches the electronic information to the paper items when they arrive.

15

PPS-JHA000402

The inventive patent is directed at enabling customers to deposit checks remotely (at a home, place of business, bank branch, or bank location) which includes crediting their account (checking, savings, etc.), creating and storing an electronic image of the checks so the original can be destroyed and using the image of the checks to present an image to the maker bank for collection. The reference deals with the sorting and routing of physical checks at centralized locations while the invention deals with capturing check images at remote locations and using the check images to present to the maker bank for collection. The invention further eliminates the ongoing need for the physical so they can be destroyed by the depositor or returned to the check maker, while the reference depends on the physical items for the collection process.

### N.    Case Patent

United States Patent No. 4,358,671, CHECK PROCESSING SYSTEM, issued on November 9, 1982 to John M. Case. The reference relies on a specially designed check to collect funds. The check is designed such that it can be processed through the normal paper check collection channels. It also has special characteristics that mark it as a check that can be processed through the EFT processes. In either circumstance the check is presented at a bank or branch of the bank of first deposit and it is sent to a central site for capture. Once presented at the central site the check is proof encoded with the check amount and processed through the bank of first deposit's check capture system. If the check is marked for EFT collection the appropriate MICR information is loaded into a data file for processing through the EFT process.

The inventive patent is directed at enabling customers to deposit checks remotely (at a home, place of business, bank branch, or bank location) which includes crediting their account (checking,

16

PPS-JHA000403

savings, etc.), creating and storing an electronic image of the checks so the original can be destroyed and using the image of the checks to present an image to the maker bank for collection. The reference deals with the sorting and routing of physical checks from into a central site for collection and the method of collection is either the normal paper check collection path or through the EFT path. The reference does not use image data in any way to identify, process or clear checks to the drawer bank. The patent is designed specifically to use images of the checks captured at remote locations for processing and collection.

O.   **Braun et al. Patent**

United States Patent No. 4,321,672, FINANCIAL DATA PROCESSING SYSTEM, issued on March 23, 1982 to Edward L. Braum. The reference is a method for providing user access to a selected group of document images of all kinds including check images. The traditional high-speed image capture is used to acquire and store the image of the checks. Once the image is created additional reference data is added to it (by the reference patent) and it is stored for retrieval (CD, print, and on-line viewing, etc.). This system is first and foremost an image storage, retrieval and view system with the traditional check processing and collection methodology continuing and "feeding" this system to enable it to store and retrieve images for later reference. This system does not deal with check depositing, rather it is the beneficiary of traditional check depositing and processing.

The inventive patent is directed at enabling customers to deposit checks remotely (at a home, place of business, bank branch, or bank location) which includes crediting their account (checking,

17

PPS-JHA000404

savings, etc.), creating an electronic image of the checks so the original can be destroyed and using the image of the checks to present an image to the maker bank for payment.

### P.      Owens et al. Patent

United States Patent No. 4,264,808, METHOD AND APPARATUS FOR ELECTRONIC IMAGE PROCESSING OF DOCUMENTS FOR ACCOUNTING PURPOSES, issued on April 28, 1981 to Clifford J. Owens et al. The reference patent allows for remote capture of documents (some of which may be checks) for accounting purposes. In the preferred embodiemant, the system is referred to as a banking system. Checks are taken to a teller location as per column 9 line 7 of Patent 4,264,808. The documents are manually prepared and  control documents inserted prior to the checks being read by a machine designed to read an image of the check. Once an image is taken it is electronically transmitted to a processing site (for preprocessing the image date) and the checks are physically routed to the same site where the physical items are matched to the electronic pre-processed data. The physical checks are then matched to the electronic image data, the check amount is encoded in MICR ink on the physical checks, and the checks are then routed to the maker banks while the imaged data is used for interfacing appropriated date to the accounting systems.

The inventive process allows for capturing images for accounting purposes as well as for check clearing purposes using only the image rather than the physical item. The checks can be captured at any location that has a physical device required for reading images and identifying MICR line information.. It is not necessary to present the checks for deposit at a bank or bank branch location as in the referenced patent. Once imaged the physical item can either be filed, returned to the person who gave it to the depositor, or destroyed by the depositor. The physical item is not

18

PPS-JHA000405

required by the inventive process as is the case in the reference patent.  Another difference is that the patent is designed to scrutinize the check data at the remote site as it is being captured through an interactive process with a central site to ensure the data and depositor information is complete and correct.  Any check not passing this scrutiny will either reject for manual processing, or the data will be changed with interactive direction from the central site, and the image is processed.  The checks are also endorsed and voided (to keep them from being re-deposited) at the direction of the central computers or check processing personnel.  At this point the physical check can either be filed, returned to the person who gave it to the depositor, or destroyed  by the depositor.

19

PPS-JHA000406

## CONCLUSION

While general discussions of the differences between the references as located in the patent search and the invention as disclosed in the patent application at hand have been freely and openly produced, it should be appreciated that the actual scope of the invention is defined by the claims of the invention. The claims of the present invention are readily distinguishable from the teachings of each of the references cited and discussed herein. Thus, Applicants respectfully submit that the claims are neither anticipated nor rendered obvious by any of the references cited herein. Prompt allowance is expected and appreciated. Should the Examiner find any impediments to prompt allowance, they are invited to contact the attorney of record below.

DATED this _28_ day of July, 2000.

Respectfully submitted,

Kevin K. Johanson
Attorney for Applicant
Registration No. 38,506

**022913**

G:\DATA\wpdocs2\CIA\KKJ\ZIONS\PET-SPECIAL-15.doc

PATENT TRADEMARK OFFICE

20

PPS-JHA000407

MAR-12-02 TUE 03:05 PM   WORKMAN NYDEGGER &SEELEY   FAX NO. 18013281707                    P. 25/26

Form PTO-1449                                                              Sheet 1 of 2
Applicant:        Buchanan et al.
Serial No.:       09/560,779                               Att'y Docket No. 7905.15
Filing Date:      April 28, 2000                                 Group: _____
For:              METHOD AND SYSTEM FOR PROCESSING FINANCIAL
                  INSTRUMENT DEPOSITS PHYSICALLY REMOTE FROM
                  A FINANCIAL INSTITUTION

## SUPPLEMENTAL INFORMATION DISCLOSURE CITATIONS MADE BY APPLICANT

### U.S. Patent Documents

| Examiner Initial* | Patent Number | Issue Date | Name | Class | Sub Class | Filing Date |
|---|---|---|---|---|---|---|
| _____ A1 | 6,032,137 | *Feb. 29, 2000 | Ballard | H04L | 9/00 | May 19, 1998 |
| _____ A2 | 5,999,624 | *Dec. 7, 1999 | Hopkins | H04K | 1/00 | Dec. 24, 1996 |
| _____ A3 | 5,930,778 | Jul. 27, 1999 | Geer | G06F | 17/60 | Jul. 11, 1996 |
| _____ A4 | 5,895,455 | Apr. 20, 1999 | Bellinger et al. | G06F | 157/00 | Aug. 14, 1996 |
| _____ A5 | 5,832,463 | Nov. 3, 1998 | Funk | G06F | 17/60 | Mar. 28, 1996 |
| _____ A6 | 5,787,403 | Jul. 28, 1998 | Randle | G06F | 17/60 | Mar. 8, 1995 |
| _____ A7 | 5,691,524 | *Nov. 25, 1997 | Josephson | G06F | 17/60 | May 15, 1996 |
| _____ A8 | 5,583,759 | Dec. 10, 1996 | Geer | G06F | 17/00 | Jul. 27, 1995 |
| _____ A9 | 5,412,190 | *May 2, 1995 | Josephson et al. | G06F | 15/30 | Feb. 26, 1993 |
| _____ A10 | 5,373,550 | Dec. 13, 1994 | Campbell et al. | H04M | 11/00 | Oct. 13, 1992 |
| _____ A11 | 5,326,959 | Jul. 5, 1994 | Perazza | G06F | 15/30 | Aug. 4, 1992 |
| _____ A12 | 5,321,816 | Jun. 14, 1994 | Rogan et al. | G06F | 13/00 | Dec. 9, 1992 |
| _____ A13 | 5,237,159 | Aug. 17, 1993 | Stephens et al. | G06F | 15/30 | Aug. 17, 1993 |
| _____ A14 | 4,358,671 | Nov. 9, 1982 | Case | G06K | 1/14 | Jun. 24, 1979 |
| _____ A15 | 4,321,672 | Mar. 23, 1982 | Braun et al. | G06F | 15/30 | Nov. 26, 1979 |
| A16 | 4,264,808 | Apr. 28, 1981 | Owens et al. | G06F | 15/00 | Oct. 6, 1978 |

PPS-JHA000408

(*Patent is subject to Terminal Disclaimer)

## References Cited by Applicants

While the filing of Information Disclosure Statements is voluntary, the procedure is governed by the guidelines of Section 609 of the Manual of Patent Examining Procedure and 37 C.F.R. §§ 1.97 and 1.98.   To be considered a proper Information Disclosure Statement, Form PTO-1449 shall be accompanied by a copy of each listed patent or publication or other item of information and a translation of the pertinent portions of foreign documents (if an existing translation is readily available to the applicant), an explanation of relevance of each reference not in the English language, and should be submitted in a timely manner as set out in MPEP Sec. 609.

| Examiner: | Date Considered: |
|---|---|

*EXAMINER:  Initial if reference considered, whether or not citation is in conformance with MPEP 609; draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

PPS-JHA000409

Form PTO-1449                                                        Sheet 2 of 2

Applicant:        Buchanan et al.
Serial No.:       09/560,779                        Att'y Docket No. 7905.15
Filing Date:      April 28, 2000                        Group: _____
For:              METHOD AND SYSTEM FOR PROCESSING FINANCIAL
                  INSTRUMENT DEPOSITS PHYSICALLY REMOTE FROM
                  A FINANCIAL INSTITUTION

---

Examiners will consider all citations submitted in conformance with 37 C.F.R. § 1.98 and MPEP Sec. 609 and place their initials adjacent the citations in the spaces provided on this form. Examiners will also initial citations not in conformance with the guidelines which may have been considered. A reference may be considered by the Examiner for any reason whether or not the citation is in full conformance with the guidelines. A line will be drawn through a citation if it is not in conformance with the guidelines AND has not been considered. A copy of the submitted form, as reviewed by the Examiner, will be returned to the applicant with the next communication. The original of the form will be entered into the application file.

Each citation initialed by the Examiner will be printed on the issued patent in the same manner as references cited by the Examiner on Form PTO-892.

The reference designations "A1," "A2," etc. (referring to Applicant's reference 1, Applicant's reference 2, etc.) will be used by the Examiner in the same manner as Examiner's reference designations "A," "B," "C," etc. on Office Action Form PTO-1142.

G:\DATA\WP\DOCS\2\C1A9002\DNS\1905-15.149

| Examiner: | Date Considered: |
|---|---|

*EXAMINER:  Initial if reference considered, whether or not citation is in conformance with MPEP 609; draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

PPS-JHA000411



UNITED STATES PATENT AND TRADEMARK OFFICE

.MAILED

MAR 2 6 2002

DIRECTOR'S OFFICE
TECHNOLOGY CENTER 2100

Commissioner for Patents
United States Patent and Trademark Office
Washington, D.C. 20231
www.uspto.gov

Paper No. 6

Kevin K. Johanson
WORKMAN, NYDEGGER & SEELY
1000 Eagle Gate Tower
60 East South Temple
Salt Lak City, UT 84111

| | |
|---|---|
| In re Application of: Danne L. Buchanan et al. ) | **DECISION ON PETITION** |
| Application No. 09/560,779 ) | **FOR ACCELERATED** |
| Filed:  April 28, 2000 ) | **EXAMINATION UNDER** |
| For:   METHOD AND SYSTEM FOR ) | **M.P.E.P. §708.02(VIII)** |
| PROCESSING FINANCIAL ) | |
| INSTRUMENT DEPOSITS ) | |
| PHYSICALLY REMOTE FROM A ) | |
| FINANCIAL INSTITUTION ) | |

This is a decision on the petition, filed July 28, 2000 under 37 C.F.R. §1.102(d) and M.P.E.P. §708.02(VIII), Accelerated Examination, to make the above-identified application special.

M.P.E.P. §708.02, Section VIII which sets out the prerequisites for a grantable petition for Accelerated Examination under 37 C.F.R. §1.102(d) states in relevant part:

A new application (one which has not received any examination by the examiner) may be granted special status provided that applicant (and this term includes applicant's attorney or agent) complies with each of the following items:

(a) Submits a petition to make special accompanied by the fee set forth in 37 CFR 1.17(i);

(b) Presents all claims directed to a single invention, or if the Office determines that all the claims presented are not obviously directed to a single invention, will make an election without traverse as a prerequisite to the grant of special status.

(c) Submits a statement(s) that a pre - examination search was made, listing the field of search by class and subclass, publication, Chemical Abstracts, foreign patents, etc. A search made by a foreign patent office satisfies this requirement;

(d) Submits one copy each of the references deemed most closely related to the subject matter encompassed by the claims if said references are not already of record; and

PPS-JHA000412

 

Serial No. 09/560,779                                                                    - 2 -
Decision on Petition to Make Special

     (e) Submits a detailed discussion of the references, which discussion points out, with the particularity required by 37 CFR 1.111(b) and (c), how the claimed subject matter is patentable over the references.

In those instances where the request for this special status does not meet all the prerequisites set forth above, *applicant will be notified and the defects in the request will be stated*. The application will remain in the status of a new application awaiting action in its regular turn. In those instances where a request is defective in one or more respects, applicant will be given one opportunity to perfect the request in a renewed petition to make special. If perfected, the request will then be granted. If not perfected in the first renewed petition, any additional renewed petitions to make special may or may not be considered at the discretion of the Group Special Program Examiner.

Applicant's submission is deficient in that there is no detailed discussion of the references as required by section (e) to the extent required by 37 CFR 1.111(b) and (c). Applicant's submission merely presents a general description for each of the sixteen references purported to be "most closely related" followed by what *appears* to be a description of the claimed invention. The discussion does not clearly point out the patentable novelty which the claims present in view of the references cited with the particularity required by 37 CFR 1.111(b) and (c).

Accordingly, the Petition is **DISMISSED**. The application file is being forwarded to Central Files to await examination in its proper turn based on its effective filing date.

Any request for reconsideration must be filed within two months of the mailing date of this decision.

Vincent N. Trans
Special Programs Examiner
Technology Center 2100
Computer Architecture, Software, and Electronic Commerce
(703) 305-9750

PPS-JHA000413



### UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/560,779 | 04/28/2000 | Danne L. Buchanan | 7905-15 | 5156 |

22913     7590     04/19/2002

WORKMAN NYDEGGER & SEELEY
1000 EAGLE GATE TOWER
60 EAST SOUTH TEMPLE
SALT LAKE CITY, UT  84111

| EXAMINER |
|---|
| NGUYEN, NGA B |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2164 | |

DATE MAILED: 04/19/2002

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 07-01)

Cd

| **Office Action Summary** | Application No. 09/560,779 | Applicant(s) Buchanan et al. |
|---|---|---|
| | Examiner Nga B. Nguy n | Art Unit 2164 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE _three_ MONTH(S) FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136 (a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If the period for reply specified above is less than thirty (30) days, a reply within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
- Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☒ Responsive to communication(s) filed on _Apr 28, 2000_

2a) ☐ This action is **FINAL.**    2b) ☒ This action is non-final.

3) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11; 453 O.G. 213.

**Disposition of Claims**

4) ☒ Claim(s) _1-32_ is/are pending in the applica

    4a) Of the above, claim(s) _____ is/are withdrawn from considera

5) ☐ Claim(s) _____ is/are allowed.

6) ☒ Claim(s) _1-32_ is/are rejected.

7) ☐ Claim(s) _____ is/are objected to.

8) ☐ Claims _____ are subject to restriction and/or election requirem

**Application Papers**

9) ☐ The specification is objected to by the Examiner.

10) ☐ The drawing(s) filed on _____ is/are objected to by the Examiner.

11) ☐ The proposed drawing correction filed on _____ is: a)☐ approved b)☐disapproved.

12) ☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119**

13) ☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

    a)☐ All  b) ☐ Some*  c) ☐None of:

      1. ☐ Certified copies of the priority documents have been received.

      2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

      3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    *See the attached detailed Office action for a list of the certified copies not received.

14) ☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

**Attachment(s)**

15) ☒ Notice of References Cited (PTO-892)

16) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

17) ☒ Information Disclosure Statement(s) (PTO-1449) Paper No(s). _2, 4_

18) ☐ Interview Summary (PTO-413) Paper No(s). _____

19) ☐ Notice of Informal Patent Application (PTO-152)

20) ☐ Other: _____

PPS-JHA000415

Application/Control Number: 09/560,779                                      Page 2

Art Unit: 2164

### DETAILED ACTION

1.      This Office Action is the answer to the communication filed on April 28, 2000 , which

paper has been placed of record in the file.

2.      Claims 1-32 are pending in this application.

### *Claim Rejections - 35 USC § 112*

3.      The following is a quotation of the second paragraph of 35 U.S.C. 112:

> The specification shall conclude with one or more claims particularly pointing out and
> distinctly claiming the subject matter which the applicant regards as his invention.

4.      Claims 4-13 are rejected under 35 U.S.C. 112, second paragraph, as being indefinite for

failing to particularly point out and distinctly claim the subject matter which applicant regards as

the invention. The limitation "said non-financial institution location" in claim 4 is lack of

antecedent basis.

### *Claim Rejections - 35 USC § 102*

5.      The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the

basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless --
>
> (a) the invention was known or used by others in this country, or patented or described in a printed publication in
> this or a foreign country, before the invention thereof by the applicant for a patent.

PPS-JHA000416

Application/Control Number: 09/560,779                                            Page 3

Art Unit: 2164

6.      Claims 1-3, 27, 28, 31, and 32 are rejected under 35 U.S.C. 102(a) as being anticipated by

Geer, U.S. Patent No. 5,930,778.

        Regarding to claim 1, Geer discloses a method for processing a check deposited at a

remote location, remote locations including financial institutions and other locations capable of

interfacing with financial institutions, method comprising the steps of:

        converting check into electronic check data (column 7, lines 37-60);

        electronically exchanging check data with financial institution (column 9, lines 1-10); and

        financial institution crediting an account according to check data (column 9, lines 15-18).

        Regarding to claim 2, Geer further discloses converting step comprises the steps of:

scanning check to create image data, image data representing an electronic image of check and

reading image data to create informational data from image data to aid in electronic processing of

deposited check (column 8, lines 10-25).

        Regarding to claim 3, Geer further discloses converting step further comprises the step of:

reading at least a portion of check to determine additional informational data stored in a Magnetic

Ink Character Recognition (MICR) line (column 7, lines 44-50).

        Regarding to claim 27, Geer discloses a system for processing a deposit of check, system

comprising:

        a remote site for converting check into electronic check data (column 7, lines 4-25,

"check payee");

Application/Control Number: 09/560,779                                Page 4

Art Unit: 2164

a central site electronically accessible to remote site, central site capable of electronically

exchanging check data with financial institution (column 9, lines 10-25, "depository bank"); and

a maker site capable of electronically interfacing with central site to obtain check data and

to credit an account according to check data without having to physically receive the check at

financial institution (column 9, lines 41-50, "payor bank").

Regarding to claim 28, Geer discloses remote site further comprises:

a scanner/reader/printer to receive check for processing (column 7, lines 38-41); and

a remote processor electronically and operably couple to scanner/reader/printer, remote

processor further comprising computer-executable instructions for interfacing with

scanner/reader/printer, computer-executable instructions in conjunction with

scanner/reader/printer for performing the steps of (figure 1, item 5):

scanning check to create image data, image data representing an electronic image of

check (column 7, lines 38-41);

reading image data to create informational data from image data to aid in electronic

processing of depositing of check (column 7, lines 38-61); and

sending check data from remote site to central site over an electronic channel (column

9, lines 1-10).

Regarding to claim 31, Geer further discloses account is credited according to check data

without having to receive the physical check at the maker site (column 9, lines 10-18).

PPS-JHA000418

Application/Control Number: 09/560,779                                    Page 5

Art Unit: 2164

Regarding to claim 32, Geer discloses a method for processing a check deposited at a

financial institution, method comprising:

converting check into electronic check data (column 7, lines 37-60);

electronically exchanging check data with financial institution (column 9, lines 1-10); and

financial institution crediting an account according to check data (column 9, lines 15-18).

### Claim Rejections - 35 USC § 103

7.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness

rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in
> section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are
> such that the subject matter as a whole would have been obvious at the time the invention was made to a person
> having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the
> manner in which the invention was made.

8.      Claims 4-13, 29, and 30 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Geer, U.S. Patent No. 5,930,778 in view of Official notice taken by Examiner.

Regarding to claims 4, 5 and 29, Geer further discloses electronically exchanging check

data step comprises the steps of: sending check data from non-financial institution location to

financial institution over an electronic channel (column 9, lines 10-12). However, Geer does not

teach: financial institution verifying check data with account records accessible by financial

institution, when check data conforms to account records, financial institution confirming check

data to remote location, non-financial institution location processing check data into processed

check data in response to confirming step, financial institution acknowledging to remote location

PPS-JHA000419

receipt and accuracy of check data, and financial institution sending endorsement and voiding

information to remote location. Official notice taken by Examiner that communicating between

remote location and financial institution to verify the check data and financial institution sends

endorsement and voiding information to remote location are old and well-known in the art of

processing checks. Therefore, it would have been obvious to one with ordinary skill in the art at

the time the invention was made to include these features above with Geer's for the purpose of

verifying the check data at financial institution and remote location can process the check by

printing endorsement and voiding information on the check based on endorsement information

received from financial institution.

Regarding to claim 6, Geer further discloses remote location processing check data into

processed check data step comprises the steps of: endorsing check using endorsement

information; and voiding check using voiding information, endorsing and voiding steps creating a

processed check (column 11, lines 20-28).

Regarding to claim 7, Geer further discloses endorsing and voiding steps are further

comprises of the step of: printing on endorsement and voiding information on check (column 11,

lines 38-44).

Regarding to claims 8-11, Official notice is taken that remote location secondly

converting processed check data into electronic processed check data by scanning processed

check to create image data, image data representing an electronic image of processed check and

reading image data to create informational data from image data to aid in electronic processing of

Application/Control Number: 09/560,779                                          Page 7

Art Unit: 2164

depositing of check, secondly electronically exchanging processed check data with financial

institution by sending processed check data from remote location to financial institution over an

electronic channel, financial institution verifying processed check data with account records

accessible by financial institution; and when processed check data conforms to account records,

financial institution secondly confirming processed check data to remote location, are well-known

in the art. Remote location such as payer bank must maintain millions upon million  copies of

checks in their files, and the payor may be required to produce a copy of a check as proof of

payment. Thus, it exists a system in some payor banks for storing and electronic exchanging with

other financial institutions the electronic image of the processed checks. The process of verifying

the received check data at financial institution is also well-known in the art as discussed in claim

4. Therefore, it would have been obvious to one with ordinary skill in the art at the time the

invention was made to include the features above with Geer's for the purpose of reducing the

costs of processing checks in which the images of checks may completely replace conventional

check clearance procedures involving the physical transfer of checks between institutions.

Regarding to claim 12, Geer further discloses crediting account according to check data

step further comprises the step of: when financial institution is not the maker bank of check,

sending processed check data to maker bank for clearing check (column 9, lines 37-50).

Regarding to claim 13, Geer further discloses sending processed check data to maker

bank for clearing check step comprises the steps of: when maker bank is electronic exchange-

capable, electronically exchanging processed check data with maker bank (column 9, lines 37-50).

PPS-JHA000421

Application/Control Number: 09/560,779                                          Page 8

Art Unit: 2164

Geer does not disclose when maker bank is not electronic exchange-capable, printing a facsimile

of check from processed check data; and forwarding facsimile of check to maker bank. Official

notice is taken that sending the facsimile of a processed check to maker bank is old and well-

known in the art. Therefore, it would have been obvious to one with ordinary skill in the art at the

time the invention was made to include the feature above with Geer's for the purpose of allowing

the maker bank still to receive the processed checks via facsimile when the maker bank does not

have the electronic exchange capability such as electronic mail exchange or Internet connection.

   Regarding to claim 30, Geer further discloses remote site further comprises computer-

executable instructions for: in response to central site confirming step, processing check data into

processed check data including: endorsing check using endorsement information; voiding check

using voiding information, endorsing and voiding steps creating a processed check (column 11,

lines 20-28). Official notice is taken that secondly convert processed check into electronic

processed check data by scanning processed check to create image data, image data representing

an electronic image of processed check and reading image data to create information al data from

image data to aid in electronic processing of depositing of check are well-known in the art.

Remote location such as payer bank must maintain millions upon million  copies of checks in their

files, and the payor may be required to produce a copy of a check as proof of payment. Thus, it

exists a system in some payor banks for storing and electronic exchanging with other financial

institutions the electronic image of the processed checks. Therefore, it would have been obvious

to one with ordinary skill in the art at the time the invention was made to include the features

PPS-JHA000422

Application/Control Number: 09/560,779                                    Page 9

Art Unit: 2164

above with Geer's for the purpose of reducing the costs of processing checks in which the images

of checks may completely replace conventional check clearance procedures involving the physical

transfer of checks between institutions.

9.      Claims 14-26 are written in computer-readable medium, that parallel limitation as found in

claims 1-13 discussed above, therefore are rejected by the same rationale.


### *Conclusion*

10.     Claims **1-32** are rejected.

11.     The prior arts made of record and not relied upon is considered pertinent to applicant's

disclosure:

        Carlson et al. (US 5,053,607) discloses check processing device for processing paper

checks at point of sale terminal.

        Braun et al. (US 4,321,672) discloses methods and system for effecting electronic funds

transfer transaction based upon the use of unit records.

        Campbell et al. (5,373,550) discloses the method of transmitting of check images via

public switched telephone network.

        Cahill et al. (US 5,940,844) discloses method and apparatus for displaying electronic

image of a check.

PPS-JHA000423

Application/Control Number: 09/560,779                               Page 10

Art Unit: 2164

12.     Any inquiry concerning this communication or earlier communications from the examiner

should be directed to examiner Nga B. Nguyen, whose telephone number is (703)306-2901.  The

examiner can normally be reached on Monday-Thursday from 7:30 AM-5:00 PM.

        If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor,

Vincent A. Millin, can be reached on (703)308-1065.

13.     **Any response to this action should be mail to:**

                        Commissioner of Patents and Trademarks

                        c/o Technology Center 2700

                        Washington, D.C. 20231

**or faxed to:**

                        (703) 308-9051, (for formal communications intended for entry)

**or:**

                        (703) 308-5397  (for informal or draft communications, please label

                        "PROPOSED" or "DRAFT")

                        Hand-delivered responses should be brought to Crystal Park II,

                        2121 Crystal Drive, Arlington.

                        VA., Sixth Floor  (Receptionist).


        Any inquiry of a general nature or relating to the status of this application or proceeding

should be directed to the Group receptionist whose telephone number is (703)305-3900.

PPS-JHA000424

Application/Control Number: 09/560,779                                   Page 11

Art Unit: 2164

Nga B. Nguyen
April 10, 2002

VINCENT MILLIN
SUPERVISORY PATENT EXAMINER
TECHNOLOGY CENTER 2100



Form PTO-1449

Applicant:   Buchanan et al.
Serial No.:   09/560,779
Filing Date:   April 28, 2000
For:   METHOD AND SYSTEM FOR PROCESSING FINANCIAL
INSTRUMENT DEPOSITS PHYSICALLY REMOTE FROM
A FINANCIAL INSTITUTION

Sheet 1 of 2

Att'y Docket No. 7905.15
Group:

**BEST AVAILABLE COPY**

**SUPPLEMENTAL INFORMATION DISCLOSURE CITATIONS MADE BY APPLICANT**

U.S. Patent Documents

| Examiner Initial* | Patent Number | Issue Date | Name | Class | Sub Class | Filing Date |
|---|---|---|---|---|---|---|
| A1 | 6,032,137 | *Feb. 29, 2000 | Ballard | H04L | 9/00 | May 19, 1998 |
| A2 | 5,999,624 | *Dec. 7, 1999 | Hopkins | H04K | 1/00 | Dec. 24, 1996 |
| A3 | 5,930,778 | Jul. 27, 1999 | Geer | G06F | 17/60 | Jul. 11, 1996 |
| A4 | 5,895,455 | Apr. 20, 1999 | Bellinger et al | G06F | 157/00 | Aug. 14, 1996 |
| A5 | 5,832,463 | Nov. 3, 1998 | Funk | G06F | 17/60 | Mar. 28, 1996 |
| A6 | 5,787,403 | Jul. 28, 1998 | Randle | G06F | 17/60 | Mar. 8, 1995 |
| A7 | 5,691,524 | *Nov. 25, 1997 | Josephson | G06F | 17/60 | May 15, 1996 |
| A8 | 5,583,759 | Dec. 10, 1996 | Geer | G06F | 17/00 | Jul. 27, 1995 |
| A9 | 5,412,190 | *May 2, 1995 | Josephson et al | G06F | 15/30 | Feb. 26, 1993 |
| A10 | 5,373,550 | Dec. 13, 1994 | Campbell et al | H04M | 11/00 | Oct. 13, 1992 |
| A11 | 5,326,959 | Jul. 5, 1994 | Perazza | G06F | 15/30 | Aug. 4, 1992 |
| A12 | 5,321,816 | Jun. 14, 1994 | Rogan et al | G06F | 13/00 | Dec. 9, 1992 |
| A13 | 5,237,159 | Aug. 17, 1993 | Stephens et al | G06F | 15/30 | Aug. 17, 1993 |
| A14 | 4,358,671 | Nov. 9, 1982 | Case | G06K | 1/14 | Jun. 24, 1979 |
| A15 | 4,321,672 | Mar. 23, 1982 | Braun et al | G06F | 15/30 | Nov. 26, 1979 |
| A16 | 4,264,808 | Apr. 28, 1981 | Owens et al | G06F | 15/30 | Oct. 6, 1978 |

(*Patent is subject to Terminal Disclaimer)

**References Cited by Applicants**

While the filing of Information Disclosure Statements is voluntary, the procedure is governed by the guidelines of Section 609 of the Manual of Patent Examining Procedure and 37 C.F.R. §§ 1.97 and 1.98.  To be considered a proper Information Disclosure Statement, Form PTO-1449 shall be accompanied by a copy of each listed patent or publication or other item of information and a translation of the pertinent portions of foreign documents (if an existing translation is readily available to the applicant), an explanation of relevance of each reference not in the English language, and should be submitted in a timely manner as set out in MPEP Sec. 609.

Examiner:   NGA B. NGUYEN

Date Considered:   11/8/2000

*EXAMINER:  Initial if reference considered, whether or not citation is in conformance with MPEP 609, draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.



Form PTO-1449                                                                 Sheet 2 of 2
Applicant:          Buchanan et al.
Serial No.:         09/560,779                          Att'y Docket No. 7905.15
Filing Date:        April 28, 2000                      Group: _____
For:                METHOD AND SYSTEM FOR PROCESSING FINANCIAL
                    INSTRUMENT DEPOSITS PHYSICALLY REMOTE FROM
                    A FINANCIAL INSTITUTION

JUL 2 8 2000

Examiners will consider all citations submitted in conformance with 37 C.F.R. § 1.98 and MPEP Sec. 609 and place their initials adjacent the citations in the spaces provided on this form. Examiners will also initial citations not in conformance with the guidelines which may have been considered. A reference may be considered by the Examiner for any reason whether or not the citation is in full conformance with the guidelines. A line will be drawn through a citation if it is not in conformance with the guidelines AND has not been considered. A copy of the submitted form, as reviewed by the Examiner, will be returned to the applicant with the next communication. The original of the form will be entered into the application file.

Each citation initialed by the Examiner will be printed on the issued patent in the same manner as references cited by the Examiner on Form PTO-892.

The reference designations "A1," "A2," etc. (referring to Applicant's reference 1, Applicant's reference 2, etc.) will be used by the Examiner in the same manner as Examiner's reference designations "A," "B," "C," etc. on Office Action Form PTO-1142.

G:\DATA\WPDOCS\CASES\KGONS\1570-1349

**BEST AVAILABLE COPY**

| NGA B. NGUYEN | 11/8/2000 |
|---|---|
| Examiner | Date Considered: |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

Form PTO-1449                                                          Sheet 1 of 2
Applicant:          Buchanan, et al.
Serial No.:         09/560,779                      Att'y Docket No.: 7905.15
Filing Date:        April 28, 2000
For:   METHOD AND SYSTEM FOR PROCESSING FINANCIAL INSTRUMENT
       DEPOSITS PHYSICALLY REMOTE FROM A FINANCIAL INSTITUTION

INFORMATION DISCLOSURE CITATIONS MADE BY APPLICANT

U.S. Patent Documents

| Examiner Initial* | Patent Number | Issue Date | Name | Class | Sub Class | Filing Date |
|---|---|---|---|---|---|---|
| A1 | 5,175,682 | 12/29/92 | Higashiyama et al. | 364 | 408 | 12/14/90 |
| A2 | 5,532,464 | 07/02/96 | Josephson et al. | 235 | 379 | 04/25/95 |
| A3 | 5,677,955 | 10/14/97 | Doggett et al. | 380 | 24 | 04/07/95 |
| A4 | 5,717,868 | 02/10/98 | James | 395 | 235 | 03/07/95 |
| A5 | 5,819,236 | 10/06/98 | Josephson | 705 | 35 | 06/12/95 |
| A6 | 5,930,778 | 07/27/99 | Geer | 705 | 45 | 07/11/96 |
| A7 | 5,940,813 | 08/17/99 | Hutchings | 705 | 43 | 07/26/96 |
| A8 | 6,036,344 | 03/14/00 | Goldenberg | 364 | 408 | 06/10/98 |
| A9 | 6,038,553 | 03/14/00 | Hyde, Jr. | 705 | 45 | 09/19/97 |
| A10 | 6,105,011 | 08/15/00 | Morrison, Jr. | 705 | 45 | 03/19/98 |
| A11 | 6,164,528 | 12/26/00 | Hills et al. | 235 | 379 | 12/31/96 |

Foreign Patent Documents

| Examiner Initial* | Document Number | Publ. Date | Country or Patent Office | Class | Sub Class | Trans-lation |
|---|---|---|---|---|---|---|
| NONE | | | | | | |

Examiner: _Nga Nguyen_                    Date Considered: _6/18/01_

*EXAMINER:  Initial if reference considered, whether or not citation is in conformance with
MPEP 609, draw line through citation if not in conformance and not considered.  Include copy of
this form with next communication to applicant.

PPS-JHA000428

Form PTO-1449  Sheet 2 of 2
Applicant:    Buchanan, et al.
Serial No.:    09/560,779             Att'y Docket No.: 7905.15
Filing Date:   April 28, 2000
For:   METHOD AND SYSTEM FOR PROCESSING FINANCIAL INSTRUMENT
       DEPOSITS PHYSICALLY REMOTE FROM A FINANCIAL INSTITUTION

<u>Other Documents</u>

(including author (if listed), title, relevant pages, date of publication including at least month and year).

Examiner
Initial*

NONE

OIPE
JC157
JUN 01 2001
PATENT & TRADEMARK OFFICE

Technology Center 2100
JUN 5 2001
RECEIVED

<u>References Cited by Applicants</u>

     While the filing of Information Disclosure Statements is voluntary, the procedure is governed by the guidelines of Section 609 of the Manual of Patent Examining Procedure and 37 C.F.R. §§ 1.97 and 1.98.  To be considered a proper Information Disclosure Statement, Form PTO-1449 shall be accompanied by a copy of each listed patent or publication or other item of information and a translation of the pertinent portions of foreign documents (if an existing translation is readily available to the applicant), an explanation of relevance of each reference not in the English language, and should be submitted in a timely manner as set out in MPEP Sec. 609.

     Examiners will consider all citations submitted in conformance with 37 C.F.R. § 1.98 and MPEP Sec. 609 and place their initials adjacent the citations in the spaces provided on this form. Examiners will also initial citations not in  conformance with the guidelines which may have been considered.  A reference may be considered by the Examiner for any reason whether or not the citation is in full conformance with the guidelines.  A line will be drawn through a citation if it is not in conformance with the guidelines AND has not been considered.  A copy of the submitted form, as reviewed by the Examiner, will be returned to the applicant with the next communication. The original of the form will be entered into the application file.

     Each citation initialed by the Examiner will be printed on the issued patent in the same manner as references cited by the Examiner on Form PTO-892.

     The reference designations "A1," "A2," etc. (referring to Applicant's reference 1, Applicant's reference 2, etc.) will be used by the Examiner in the same manner as Examiner's reference designations "A," "B," "C," etc. on Office Action Form PTO-1142.

G:\DATA\WPDOCS\DF\zions\15 ids 1449.doc

Examiner: *Ngan Nguyen*           Date Considered: 6/18/01

*EXAMINER:  Initial if reference considered, whether or not citation is in conformance with MPEP 609, draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

## Notice of References Cited

| Applicant/Patent | Application/Control No. |
|---|---|
| Buchanan et al. | 09/560,779 |

| Examiner | Art Unit | |
|---|---|---|
| Nga B. Nguyen | 2164 | Page 1 of 1 |

### U.S. PATENT DOCUMENTS

| | Document Number Country Code-Number-Kind Code | Date MM-YYYY [1] | Name | Classification [2] | |
|---|---|---|---|---|---|
| A | 5,930,778 | 7/1999 | Geer | 705 | 45 |
| B | 5,053,607 | 10/1991 | Carlson et al. | 235 | 379 |
| C | 4,321,672 | 3/1982 | Braun et al. | 235 | 379 |
| D | 5,373,550 | 12/1994 | Campbell et al. | 235 | 379 |
| E | 5,940,844 | 8/1999 | Cahill et al. | 705 | 45 |
| F | | | | | |
| G | | | | | |
| H | | | | | |
| I | | | | | |
| J | | | | | |
| K | | | | | |
| L | | | | | |
| M | | | | | |

### FOREIGN PATENT DOCUMENTS

| | Document Number Country Code-Number-Kind Code | Date MM-YYYY [1] | Country | Name | Classification [2] |
|---|---|---|---|---|---|
| N | | | | | |
| O | | | | | |
| P | | | | | |
| Q | | | | | |
| R | | | | | |
| S | | | | | |
| T | | | | | |

### NON-PATENT DOCUMENTS

| | Include, as applicable: Author, Title, Date, Publisher, Edition or Volume, Pertinent Pages |
|---|---|
| U | |
| V | |
| W | |
| X | |

* A copy of this reference is not being furnished with this Office action.  See MPEP § 707.05(a).      [1] Dates in MM-YYYY format are publication dates.      [2] Classifications may be U.S. or foreign.

PPS-JHA000430

Atty. Dkt. No. 057898-0102

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

Applicant:       Danne L. Buchanan, et al.

Title:            METHOD AND SYSTEM FOR
                  PROCESSING FINANCIAL
                  INSTRUMENT DEPOSITS
                  PHYSICALLY REMOTE FROM A
                  FINANCIAL INSTITUTION

Appl. No.:       09/560,779

Filing Date:     04/28/2000

Examiner:        Nga B. Nguyen

Art Unit:        2164

**RECEIVED**

**SEP 0 5 2002**

**GROUP 3600**

<u>**REVOCATION OF PRIOR POWERS OF ATTORNEY BY ASSIGNEE**</u>
<u>**APPOINTMENT OF NEW POWER OF ATTORNEY BY ASSIGNEE**</u>
<u>**CHANGE OF CORRESPONDENCE ADDRESS**</u>

Commissioner for Patents
Washington, D.C. 20231

Sir:

ZIONS BANCORPORATION is the assignee of Application No. 09/560,779 filed
April 28, 2000, and all continuing applications thereof, as evidenced by an Assignment
included with the filed application and attached hereto.

ZIONS BANCORPORATION, through its duly-delegated representative, hereby
revokes all prior Powers of Attorney submitted in this application, and hereby appoints the
registered attorneys and agents at Customer Number 22428

## *22428*

## 22428

PATENT TRADEMARK OFFICE

as its principal attorneys to have full power to prosecute this application and any
continuations, divisions, reissues, and reexaminations thereof, to receive the patent, to
transact all business in the United States Patent and Trademark Office connected
therewith, and to have full power of substitution, association, and revocation, including the
power to revoke the power of attorney of any associate attorney.

-1-

Atty. Dkt. No. 057898-0102

Please direct all future correspondence concerning this application to:

William T. Ellis
FOLEY & LARDNER
Customer Number: 22428

\*22428\*

22428
PATENT TRADEMARK OFFICE

Telephone:  (202) 672-5485
Facsimile:  (202) 672-5399

Executed this _23_ day of _August_, 2002.

ZIONS BANCORPORATION

By: _____

_____ (Signature)

_____
Danne Buchanan

_____
Executive Vice President

-2-

FORM PTO-1595 (Modified)
V. 6-93)
B. No. 0651-0011 (exp.4/94)
yright 1994-97 LegalStar
/REV02

ab settings ▶ ▼ ▲ ▼

## RECORDATION FORM COVER SHEET
## PATENTS ONLY

[  ket No   7905.15

U.S. DEPARTMENT OF COMMERCE
Patent and Trademark Office

AUG 3 0 2002

To the Honorable Commissioner of Patents and Trademarks: Please record the attached original documents or copy thereof.

| Nam  of conveying party(ies): | 2. Name and address of receiving party(ies): |
|---|---|
| Danne L. Buchanan | Name: **ZIONS BANCORPORATION** |
| William R nald Titus | Internal Address: |

Additional names(s) of conveying party(ies)  ☐ Yes ☒ No

Nature of conveyance:

☒ Assignment           ☐ Merger

☐ S curity Agreement   ☐ Change of Name

☐ Oth r _____

x cution Dat : **April 28, 2000**

Street Address: **One South Main Street**

City: **Salt Lake City**   State: **UT__**   ZIP: **84111**

Additional name(s) & address(es) attached?  ☐ Yes ☒ No

Application number(s) or registration numbers(s):

If this document is being filed together with a new application, the execution date of the application is:  **April 28, 2000**

| A. Patent Application No.(s) | B. Patent No.(s) |
|---|---|

RECEIVED
SEP 0 5 2002
GROUP 3600

Additional numbers attached?  ☐ Yes ☒ No

| Name and address of party to whom correspondence concerning document should be mailed: | 6. Total number of applications and patents involved:  [ 1 ] |
|---|---|
| Nam :  **Kevin K. Johanson** | 7. Total fee (37 CFR 3.41):.................$  **40.00** |
| Internal Addr ss:  **WORKMAN, NYDEGGER & SEELEY** | ☒ Enclosed - Any excess or insufficiency should be credited or debited to deposit account |
| | ☐ Authorized to be charged to deposit account |
| Stre t Address:  **60 East South Temple** | 8. Deposit account number: |
| **1000 Eagle Gate Tower** | **23-3178** |
| City: **Salt Lake City**   State: **UT**   ZIP: **84111** | |

DO NOT USE THIS SPACE

Statement and signature.
*To the best of my knowledge and belief, the foregoing information is true and correct and any attached copy is a true copy of the original document.*

| Kevin K. Johans n | _(signature)_ | April 28, 2000 |
|---|---|---|
| Name of P rson Signing | Signature | Date |

Total number of pages including cover sheet, attachments, and document:  [ 4 ]

PPS-JHA000433

WHEN RECORDED RETURN TO:

Workman, Nydegger & Seeley
1000 Eagle Gate Tower
60 East South Temple
Salt Lake City, Utah  84111

PATENT APPLICATION
Docket No:  7905.15
Express Mail Label No. 550340765US

## A S S I G N M E N T

We, Danne L. Buchanan of 3362 East Oak Hollow Circle, Sandy, Utah 84093 and

William Ronald Titus of 345 North Coventry Circle, Fruit Heights, Utah 84037, respectively,

have invented a method and apparatus entitled METHOD AND SYSTEM FOR PROCESSING

FINANCIAL INSTRUMENT DEPOOSITS PHYSICALLY REMOTE FROM A FINANCIAL

INSTITUTION hereinafter called the "invention."

Preferred embodiments of said invention are disclosed in a United States patent

application executed concurrently herewith by us and now identified as File No. 7905.15 of the

law firm of Workman, Nydegger & Seeley, 1000 Eagle Gate Tower, 60 East South Temple, Salt

Lake City, Utah 84111, and filed in the United States Patent and Trademark Office as Serial No.

_____ on _____. (We hereby authorize the attorneys of Workman,

Nydegger & Seeley to insert said serial number and filing date when known.)

The Assignee, ZIONS BANCORPORATION, a corporation of the State of Utah, having

a principal place of business at One South Main Street, Salt Lake City, Utah 84111, desires to

secure the entire right, title and interest in said invention.

In consideration of One Dollar ($1.00) and other good and valuable consideration paid to

us by the Assignee, the receipt and sufficiency of which we hereby acknowledge, WE HEREBY

ASSIGN TO THE ASSIGNEE:

The entire right, title and interest in said invention in the above-identified
United States patent application and in all divisions, continuations and
continuations-in-part of said application, or reissues or extensions of Letters

BEST AVAILABLE COPY

PPS-JHA000434

Patent or Patents granted thereon, and in all corresponding applications filed in countries foreign to the United States, and in all patents issuing thereon in the United States and foreign countries.

The right to file foreign patent applications on said invention in its own name, wherever such right may be legally exercised, including the right to claim the benefits of the International Convention for such applications.

We hereby authorize and request the United States Commissioner of Patents and Trademarks, and such Patent Office officials in foreign countries as are duly authorized by their patent laws to issue patents, to issue any and all patents on said invention to the Assignee as the owner of the entire interest, for the sole use and behoof of the said Assignee, its successors, assigns and legal representatives.

We hereby agree, without further consideration and without expense to us, to sign all lawful papers and to perform all other lawful acts which the Assignee may request of us to make this Assignment fully effective, including, by way of example but not of limitation, the following:

Prompt execution of all original, divisional, substitute, reissue, and other United States and foreign patent applications on said invention, and all lawful documents requested by the Assignee to further the prosecution of any of such patent applications.

Cooperation to the best of our ability in the execution of all lawful documents, the production of evidence, nullification, reissue, extension, or infringement proceedings involving said invention.

This assignment and agreement shall be binding upon our heirs and legal representatives.

DATED this 28ᵗʰ day of _Abril_ 2000.

_____
DANNE L. BUCHANAN
3362 East Oak Hollow Circle
Sandy, Utah 84093

BEST AVAILABLE COPY

2

This assignment and agreement shall be binding upon our heirs and legal representatives.

DATED this _28th_ day of _April_ 2000.

_W. R. Titus_
WILLIAM RONALD TITUS
345 North Coventry Circle
Fruit Heights, Utah 84037

G:\DATA\WPDOCS2\CIA\KKAZIONS\7905-15-asg.doc

BEST AVAILABLE COPY

3



21647

Atty. Dkt. No. 057898-0102

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant:    Danne L. Buchanan, et al.

Title:        METHOD AND SYSTEM FOR
              PROCESSING FINANCIAL
              INSTRUMENT DEPOSITS
              PHYSICALLY REMOTE FROM A
              FINANCIAL INSTITUTION

Appl. No.:    09/560,779

Filing Date:  04/28/2000

Examiner:     Nga B. Nguyen

Art Unit:     2164

**RECEIVED**
SEP 1 1 2002
**GROUP 3600**

### AMENDMENT TRANSMITTAL

Commissioner for Patents
Washington, D.C.  20231

Sir:

    Transmitted herewith is an amendment in the above-identified application.

[  ]   Small Entity status under 37 C.F.R. § 1.9 and § 1.27 has been established by a
       Small Entity statement previously submitted.

[  ]   Small Entity statement is enclosed.

[ X ]  The fee required for additional claims is calculated below:

|  | Claims as Amended | | Previously Paid For | | Extra Claims Present | | Rate | | Additional Claims Fee |
|---|---|---|---|---|---|---|---|---|---|
| Total Claims: | 120 | — | 32 | = | 88 | x | $18.00 | = | $1584.00 |
| Independents: | 12 | — | 4 | = | 8 | x | $84.00 | = | $672.00 |
| First presentation of any Multiple Dependent Claims: | | | | | | + | $280.00 | = | $0.00 |
| | | | | | | CLAIMS FEE TOTAL: | | = | $2256.00 |

[ X ]  Applicant hereby petitions for an extension of time under 37 C.F.R. §1.136(a) for
       the total number of months checked below:

-1-

002.885615.1

PPS-JHA000437

Atty. Dkt. No. 057898-0102

| | | | |
|---|---|---|---|
| [ ] | Extension for response filed within the first month: | $110.00 | $0.00 |
| [ X ] | Extension for response filed within the second month: | $400.00 | $400.00 |
| [ ] | Extension for response filed within the third month: | $920.00 | $0.00 |
| [ ] | Extension for response filed within the fourth month: | $1,440.00 | $0.00 |
| [ ] | Extension for response filed within the fifth month: | $1,960.00 | $0.00 |
| | EXTENSION FEE TOTAL: | | $400.00 |
| | CLAIMS AND EXTENSION FEE TOTAL: | | $2656.00 |
| [ ] | Small Entity Fees Apply (subtract ½ of above): | | $0.00 |
| | TOTAL FEE: | | $2656.00 |

[ ]    Please charge Deposit Account No. 19-0741 in the amount of $2656.00.  A
       duplicate copy of this transmittal is enclosed.

[ X ]  A check in the amount of $2656.00 is enclosed.

[ X ]  The Commissioner is hereby authorized to charge any additional fees which may
       be required regarding this application under 37 C.F.R. §§ 1.16-1.17, or credit
       any overpayment, to Deposit Account No. 19-0741.  Should no proper payment
       be enclosed herewith, as by a check being in the wrong amount, unsigned, post-
       dated, otherwise improper or informal or even entirely missing, the Commissioner
       is authorized to charge the unpaid amount to Deposit Account No. 19-0741.

       Please direct all correspondence to the undersigned attorney or agent at the
address indicated below.

Respectfully submitted,

Date September 4, 2002                    By _____

FOLEY & LARDNER                           William T. Ellis
Customer Number: 22428                    Attorney for Applicant
                                          Registration No. 26,874
22428
PATENT TRADEMARK OFFICE
Telephone:    (202) 672-5485
Facsimile:    (202) 672-5399

-2-

002.885615.1



*#9A w*
*9-17-02*

Atty. Dkt. No. 057898-0102

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant:    Danne L. Buchanan, et al.

Title:         METHOD AND SYSTEM FOR
               PROCESSING FINANCIAL
               INSTRUMENT DEPOSITS
               PHYSICALLY REMOTE FROM A
               FINANCIAL INSTITUTION

Appl. No.:     09/560,779

Filing Date:   04/28/2000

Examiner:      Nga B. Nguyen

Art Unit:      2164

RECEIVED

SEP 1 1 2002

GROUP 3600

<u>AMENDMENT AND REPLY UNDER 37 C.F.R. §1.111</u>

Commissioner for Patents

Washington, D.C. 20231

Sir:

    This communication is responsive to the Office Action dated April 19, 2002, concerning the above-referenced patent application.

    Please amend the application as follows:

**In the Claims:**

    In accordance with 37 C.F.R. 1.121, please substitute for original claims 1-3, 5, 7 and 12, the following rewritten versions of the same claims, as amended.   The changes to the claims are shown explicitly in the attached "Version with Markings to Show Changes Made."

1.     [Amended] A method for processing a deposit by a depositor of one or more original checks and deposit information at a remote location, said remote location being capable of interfacing with a financial institution, said method comprising the steps of:

-1-

002.877432.1

PPS-JHA000439

Atty. Dkt. No. 057898-0102

obtaining at said remote location deposit account information from the deposit information, and electronic check data and original check image data from each of the one or more checks;

electronically exchanging said check data with said financial institution and obtaining an accuracy confirmation of said deposit account information from the financial institution based upon account information associated with the depositor; and

upon the deposit account information being verified as accurate, endorsing and/or voiding the one or more original checks, and creating at the remote location second image data of the one or more original checks that have been endorsed and/or voided; and

sending the second images and said deposit account information to said financial institution.



2.    [Amended] The method as recited in claim 1, wherein said obtaining step comprises the steps of:

a) scanning said one or more original checks to create image data, said image data representing an electronic image of each of said one or more checks; and

b) reading said image data to create informational data from said image data to aid in electronic processing of said deposited check.

3.    [Amended] The method as recited in claim 2, wherein said obtaining step further comprises the step of:

a) reading at least a portion of said one or more original checks to determine additional informational data stored in a Magnetic Ink Character Recognition (MICR) line.

5.    [Amended] The method as recited in claim 1, wherein said endorsing and/or voiding step comprises the step of:

receiving endorsement and/or voiding information.

7.    [Amended] The method as recited in claim 5, wherein said endorsing and/or voiding steps are further comprised of the step of:

a) printing said endorsement and/or voiding information on said check.

-2-

PPS-JHA000440

Atty. Dkt. No. 057898-0102

12.    [Amended] The method as recite in claim 1, further comprising the step of:

a) when said financial institution is not the maker bank of said check, sending one of said original check image data or second image data to said maker bank for clearing said check.

**PLEASE ADD THE FOLLOWING NEW CLAIMS:**

33.    A method for processing at a remote site one or more original checks deposited at the remote site, comprising the steps of:

obtaining electronic deposit data for the one or more original checks;

converting data for each of the one or more original checks into electronic check data;

creating an image of the one or more original checks to obtain original check image data;

receiving endorsement and/or voiding authorization from an external site after receipt of the one or more checks;

endorsing and/or voiding the original one or more checks to obtain endorsed and/or voided checks;



creating an image of the endorsed and/or voided checks to obtain endorsed and/or voided check image data;

electronically associating the electronic deposit data, the electronic check data and the original check image data and the endorsed check image data; and .

transmitting the electronically associated electronic check data and the original check image data and/or the endorsed and/or voided check image data directly or indirectly to a maker bank or a print site associated therewith.

34.    The method as defined in claim 33, wherein the endorsing and/or voiding step comprises

sending the electronic deposit data, the electronic check data, and the original check image data to a first processing location;

receiving a notice from the first processing location that selected errors were not found in the electronic deposit data and/or electronic check data; and

-3-

PPS-JHA000441

Atty. Dkt. No. 057898-0102

printing said endorsement and/or voiding information on the original check to obtain the endorsed check.

35.    The method as defined in claim 33, wherein the transmitting step comprises transmitting both the original check image data and the endorsed and/or voided check image data.

36.    The method as defined in claim 33, further comprising the step of storing at least one of the original check image data and the endorsed and/or voided check image data on a server accessible from the Internet.

37.    The method as defined in claim 33, wherein the receiving authorization to endorse and/or void the check includes receiving endorsement information to print on the check from a first processing location.

38.    The method as defined in claim 33, further comprising:
       determining if endorsement information at the remote site for printing on the check is up-to-date; and
        if the endorsement information at the remote site is not up-to-date, then downloading updated endorsement information from a first processing location.

39.    The method as defined in claim 33, further comprising the step of comparing an amount of a deposit or an amount of one or more checks against a deposit maximum, and providing a rejection notice if the deposit exceeds the deposit maximum.

40.    The method as defined in claim 33, further comprising adding control information to the transmission of the original check image data and/or the endorsed and/or voided check image data preparatory to the transmission step.

41.    The method as defined in claim 33, further comprising the step of storing of the original check image data at the remote site.

-4-

PPS-JHA000442

Atty. Dkt. No. 057898-0102

42.    The method as defined in claim 33, wherein the step of creating an image of the one or more original checks comprises

scanning each original check; and

if the original check is removed before completion of the scanning, then designating the electronic check data associated with the original check image data as invalid.

43.    The method as defined in claim 33, further comprising

receiving return check image data for a return check coupled with a reference key for an original deposit transaction and a return reason.

44.    The method as defined in claim 43, further comprising

sending the return check image data with the reference key directly or indirectly to the maker bank for re-presentment.



45.    The method as defined in claim 33, further comprising determining errors in the electronic deposit data or the electronic check data at the remote site and obtaining correction of the determined errors at the remote site.

46.    The method as defined in claim 33, further comprising printing on the original check a reference key prior to creating endorsed and/or voided check image data.

47.    A method for processing at a central site an original check deposited at a remote site, comprising the steps of:

receiving electronic deposit data, electronic check data and original check image data for a plurality of checks to be deposited;

identifying errors in the electronic check data;

if no errors are identified, sending endorsement and/or voiding authorization to the remote site;



receiving endorsed and/or voided check image data;

sorting the received data; and

-5-

PPS-JHA000443

Atty. Dkt. No. 057898-0102

transmitting associated electronic check data and the original check image data and/or the endorsed and/or voided check image data directly or indirectly to a maker bank or a print site associated therewith.

48.     The method as defined in claim 47, further comprising the step of
sending the electronic deposit data, the electronic check data and the original check image data and/or the voided check image data to a bank of first deposit.

49.     The method as defined in claim 47, wherein the receiving step comprises
receiving electronic deposit data, electronic check data and original check image data and/or endorsed and/or voided check image data for a plurality of different deposit transactions, the checks for each one of the plurality of different deposit transactions to be deposited at a different bank of first deposit; and
sending each one of a plurality of the different deposit transactions to a respective different bank of first deposit.

50.     The method as defined in claim 47, further comprising:
reading said original check image data to create image information data; and comparing the image information data to the electronic check data.

51.     The method as defined in claim 47, further comprising the step of storing at least one of the original check image data and the endorsed and/or voided check image data on a server accessible from the Internet.

52.     The method as defined in claim 47, further comprising the steps of:
determining if the maker bank requires a hard copy of the original check; and
if it does, sending the original check image data to a print site for printing and sending directly or indirectly to the maker bank; and
if it does not, sending the original check image data directly or indirectly to the maker bank.

53.     The method as defined in claim 47, further comprising the steps of:
determining if the maker bank requires a hard copy of the original check;

-6-

PPS-JHA000444

Atty. Dkt. No. 057898-0102

if it does, printing a copy of the original check from the original check image data and forwarding directly or indirectly the printed check to the maker bank; and

if not, sending the original check image data directly or indirectly to the maker bank.

54.    The method as defined in claim 47, further comprising the steps:

sending a notice to the remote site if the original check image data and/or the endorsed check image data is inaccurate or unreadable; and

receiving corrected original check image data and/or corrected endorsed check image data.

55.    The method as defined in claim 47, further comprising after receiving the endorsed and/or voided check image data, sending an electronic notification to the remote site that a deposit is complete.

56.    The method as defined in claim 47, further comprising formatting the electronic check data and the original check image data for processing in an accounting system of the bank of first deposit.

57.    The method as defined in claim 47, further comprising the step of determining if a bank of first deposit is a maker bank for the original check; and

if it is the maker bank, then determining if the maker bank requires a hard copy of the original check;

if the maker bank does require a hard copy of the original check, then causing a copy of the original check to be printed; and

if the maker bank does not require a hard copy of the original check, then sending the original check image data to the maker bank.

58.    The method as defined in claim 47, further comprising

receiving return check image data for a return check coupled with a reference key for an original deposit transaction.

59.    The method as defined in claim 58, further comprising

-7-

PPS-JHA000445

Atty. Dkt. No. 057898-0102

sending the return check image data with the reference key directly or indirectly to the maker bank for re-presentment.

 60.   The method as defined in claim 59, further comprising

determining if a re-presentment of the returned check requires a duplicate hard copy of the return check or if the original check data image is acceptable for the re-presentment; and

if the original check image is acceptable, obtaining a reference key associated with an original deposit transaction; and

sending directly or indirectly the original check image data and the reference key to the maker bank.

61.   A program product for processing at a remote site one or more original checks deposited at the remote site, the program product comprising machine readable program code for causing a machine to perform the following method steps:

obtaining electronic deposit data for the one or more original checks;

converting data for each of the one or more original checks into electronic check data;

creating an image of the one or more original checks to obtain original check image data;

receiving endorsement and/or voiding authorization from an external site after receipt of the one or more checks;

endorsing and/or voiding the original one or more checks to obtain endorsed and/or voided checks;

creating an image of the endorsed and/or voided checks to obtain endorsed and/or voided check image data;

electronically associating the electronic deposit data, the electronic check data and the original check image data and the endorsed check image data; and .

transmitting the electronically associated electronic check data and the original check image data and/or the endorsed and/or voided check image data directly or indirectly to a maker bank or a print site associated therewith.

-8-

PPS-JHA000446

Atty. Dkt. No. 057898-0102

62.    The program product as defined in claim 61, wherein the endorsing and/or voiding step comprises

sending the electronic deposit data, the electronic check data, and the original check image data to a first processing location;

receiving a notice from the first processing location that selected errors were not found in the electronic deposit data and/or electronic check data; and

printing said endorsement and/or voiding information on the original check to obtain the endorsed check.

63.    The program product as defined in claim 61, wherein the transmitting step comprises transmitting both the original check image data and the endorsed and/or voided check image data.

64.    The program product as defined in claim 61, further comprising the step of storing at least one of the original check image data and the endorsed and/or voided check image data on a server accessible from the Internet.



65.    The program product as defined in claim 61, wherein the receiving authorization to endorse and/or void the check step includes receiving endorsement information to print on the check from a first processing location.

66.    The program product as defined in claim 61, further comprising program code to cause the machine to perform the following method steps:

determining if endorsement information at the remote site for printing on the check is up-to-date; and

if the endorsement information at the remote site is not up-to-date, then sending updated endorsement information to the remote site.

67.    The program product as defined in claim 61, further comprising program code for causing the machine to perform the following step of comparing an amount of a deposit or an amount of one or more checks against a deposit maximum, and providing a rejection notice if the deposit exceeds the deposit maximum.

-9-

PPS-JHA000447

Atty. Dkt. No. 057898-0102

68.   The program product as defined in claim 61, further comprising program code for causing the machine to perform the step of adding control information to the original check image data and/or the endorsed and/or voided check image data preparatory to the transmission step.

69.   The program product as defined in claim 61, further comprising program code for causing the machine to perform the step of storing of the original check image data at the remote site.

70.   The program product as defined in claim 61, wherein the step of creating an image of the one or more original checks comprises
      scanning each original check; and
      if the original check is removed before completion of the scanning, then designating the electronic check data associated with the original check image data as invalid.



71.   The program product as defined in claim 61, further comprising program code for causing the machine to perform the following method step of
      receiving return check image data for a return check coupled with a reference key for an original deposit transaction and a return reason.

72.   The program product as defined in claim 71, further comprising program code for causing the machine to perform the following method step of
      sending the return check image data with the reference key directly or indirectly to the maker bank for re-presentment.

73.   The program product as defined in claim 61, further comprising program code for causing the machine to perform the method step of determining errors in the electronic deposit data or the electronic check data at the remote site and obtaining correction of the determined errors at the remote site.

-10-

PPS-JHA000448

Atty. Dkt. No. 057898-0102

74.    The program product as defined in claim 61, further comprising program code for causing the machine to perform the step of printing on the original check a reference key prior to creating endorsed and/or voided check image data.



75.    A program product for processing at a central site an original check deposited at a remote site, the program product comprising machine readable program code for causing a machine to perform the following method steps:

receiving electronic deposit data, electronic check data and original check image data for a plurality of checks to be deposited;

identifying errors in the electronic check data;

if no errors are identified, sending endorsement and/or voiding authorization to the remote site;

receiving endorsed and/or voided check image data;

sorting the received data; and

transmitting associated electronic check data and the original check image data and/or the endorsed and/or voided check image data directly or indirectly to a maker bank or a print site associated therewith.

76.    The program product as defined in claim 75, further comprising program code for causing the machine to perform the step of

sending the electronic deposit data, the electronic check data and the original check image data to a bank of first deposit.

77.    The program product as defined in claim 75, wherein the receiving step comprises

receiving electronic deposit data, electronic check data and original check image data and/or endorsed and/or voided check image data for a plurality of different deposit transactions, the checks for each one of the plurality of different deposit transactions to be deposited at a different bank of first deposit; and

sending each one of a plurality of the different deposit transactions to a respective different bank of first deposit.

-11-

PPS-JHA000449

Atty. Dkt. No. 057898-0102

78.    The program product as defined in claim 75, further comprising program code for causing the machine to perform the following method steps:

    reading said original check image data to create image information data; and

    comparing the image information data to the electronic check data.

79.    The program product as defined in claim 75, further comprising program code for causing the machine to perform the step of storing at least one of the original check image data and the endorsed and/or voided check image data on a server accessible from the Internet.

80.    The program product as defined in claim 75, further comprising program code for causing the machine to perform the steps of:

    determining if the maker bank requires a hard copy of the original check; and

    if it does, sending the original check image data to a print site for printing and sending directly or indirectly to the maker bank; and

    if it does not, sending the original check image data directly or indirectly to the maker bank.

81.    The program product as defined in claim 75, further comprising program code for causing the machine to perform the steps of:

    determining if the maker bank requires a hard copy of the original check;

    if it does, printing a copy of the original check from the original check image data and forwarding directly or indirectly the printed check to the maker bank; and

    if not, sending the original check image data directly or indirectly to the maker bank.

82.    The program product as defined in claim 75, further comprising program code for causing a machine to perform the steps of:

    sending a notice to the remote site if the original check image and/or the endorsed check image data is inaccurate or unreadable; and

    receiving corrected original check image data and/or corrected endorsed check image data.

-12-

PPS-JHA000450

Atty. Dkt. No. 057898-0102

83.     The program product as defined in claim 75, further comprising program code for causing the machine to perform the step of after receiving the endorsed and/or voided check image data, sending an electronic notification to the remote site that a deposit is complete.

84.     The program product as defined in claim 75, further comprising program code for causing the machine to perform the step of formatting the electronic check data and the original check image data for processing in an accounting system of the bank of first deposit.



85.     The program product as defined in claim 75, further comprising program code for causing the machine to perform the step of determining if a bank of first deposit is a maker bank for the original check; and

        if it is the maker bank, then determining if the maker bank requires a hard copy of the original check;

        if the maker bank does require a hard copy of the original check, then causing a copy of the original check to be printed; and



        if the maker bank does not require a hard copy of the original check, then sending the original check image data to the maker bank.

86.     The program product as defined in claim 75, further comprising program code for causing the machine to perform the step of

        receiving return check image data for a return check coupled with a reference key for an original deposit transaction.

87.     The program product as defined in claim 86, further comprising program code for causing the machine to perform the step of

        sending the return check image data with the reference key directly or indirectly to the maker bank for re-presentment.



88.     The program product as defined in claim 87, further comprising program code for causing the machine to perform the step of

-13-

PPS-JHA000451

Atty. Dkt. No. 057898-0102

determining if a re-presentment of the returned check requires a duplicate hard copy of the return check or if the original check data image is acceptable for the re-presentment; and

if the original check image is acceptable, obtaining a reference key associated with an original deposit transaction; and

sending directly or indirectly the original check image data and the reference key to the maker bank.

89.   A system for processing at a remote site one or more original checks deposited at the remote site, comprising:

a component for obtaining electronic deposit data for the one or more original checks;

a component for converting data for each of the one or more original checks into electronic check data;

a component for creating an image of the one or more original checks to obtain original check image data;

a component receiving endorsement and/or voiding authorization from an external site after receipt of the one or more checks;



a component for endorsing and/or voiding the original one or more checks to obtain endorsed and/or voided checks;

a component for creating an image of the endorsed and/or voided checks to obtain endorsed and/or voided check image data;

a component for electronically associating the electronic deposit data, the electronic check data and the original check image data and the endorsed check image data; and .

a transmitter for transmitting the electronically associated electronic check data and the original check image data and/or the endorsed and/or voided check image data directly or indirectly to a maker bank or a print site associated therewith.

90.   The system as defined in claim 89, wherein the component for endorsing and/or voiding sends the electronic deposit data, the electronic check data, and the original check image data to a first processing location, receives a notice from the first processing location that selected errors were not found in the electronic deposit data

-14-

PPS-JHA000452

Atty. Dkt. No. 057898-0102

and/or electronic check data and prints said endorsement and/or voiding information on the original check to obtain the endorsed check.

91.    The system as defined in claim 89, wherein the transmitter is programmed to transmit both the original check image data and the endorsed and/or voided check image data.

92.    The system as defined in claim 89, further comprising a component for storing at least one of the original check image data and the endorsed and/or voided check image data on a server accessible from the Internet.

93.    The system as defined in claim 89, wherein the component for receiving authorization to endorse and/or void the check receives endorsement information to print on the check from a first processing location.

94.    The system as defined in claim 89, further comprising:
       a component for determining if endorsement information at the remote site for printing on the check is up-to-date; and
       a component for, if the endorsement information at the remote site is not up-to-date, then downloading updated endorsement information from a first processing location.

95.    The system as defined in claim 89, further comprising a component for comparing an amount of a deposit or an amount of one or more checks against a deposit maximum, and providing a rejection notice if the deposit exceeds the deposit maximum.

96.    The system as defined in claim 89, further comprising a component for adding control information to the transmission of the original check image data and/or the endorsed and/or voided check image data preparatory to the transmission step.

97.    The system as defined in claim 89, further comprising a component for storing of the original check image data at the remote site.

-15-

PPS-JHA000453

Atty. Dkt. No. 057898-0102

98.    The system as defined in claim 89, wherein the component for creating an image of the one or more original checks scans each original check; and if the original check is removed before completion of the scanning, then designates the electronic check data associated with the original check image data as invalid.

99.    The system as defined in claim 90, further comprising
    a component for receiving return check image data for a return check coupled with a reference key for an original deposit transaction and a return reason.

100.    The system as defined in claim 99, further comprising
    a component for sending the return check image data with the reference key directly or indirectly to the maker bank for re-presentment.

101.    The system as defined in claim 89, further comprising a component for determining errors in the electronic deposit data or the electronic check data at the remote site and obtaining correction of the determined errors at the remote site.

102.    The system as defined in claim 89, further comprising a component for printing on the original check a reference key prior to creating endorsed and/or voided check image data.

103.    A system for processing at a central site an original check deposited at a remote site, comprising:
    a component for receiving electronic deposit data, electronic check data and original check image data for a plurality of checks to be deposited;
    a component for identifying errors in the electronic check data;
    a component for, if no errors are identified, sending endorsement and/or voiding authorization to the remote site;
    a component for receiving endorsed and/or voided check image data;
    a component for sorting the received data; and

-16-

PPS-JHA000454

Atty. Dkt. No. 057898-0102

a transmitter for transmitting associated electronic check data and the original check image data and/or the endorsed and/or voided check image data directly or indirectly to a maker bank or a print site associated therewith.

104.    The system as defined in claim 103, further comprising
a component for sending the electronic deposit data electronic check data and original check image data to a bank of first deposit.

105.    The system as defined in claim 103, wherein the component for receiving receives electronic deposit data, electronic check data and original check image data and/or endorsed and/or voided check image data for a plurality of different deposit transactions, the checks for each one of the plurality of different deposits to be deposited at a different bank of first deposit; and includes a component for sending the checks for each one of a plurality of the different deposit transactions to a respective different bank of first deposit.

106.    The system as defined in claim 103, further comprising:
a component for reading said original check image data to create image information data; and
a component for comparing the image information data to the electronic check data.

107.    The system as defined in claim 103, further comprising the a component for storing at least one of the original check image data and the endorsed and/or voided check image data on a server accessible from the Internet.

108.    The system as defined in claim 103, further comprising:
a component for determining if the maker bank requires a hard copy of the check, and, if it does, sending the original check image data to a print site for printing and sending directly or indirectly to the maker bank, and if it does not, sending the original check image data directly or indirectly to the maker bank.

109.    The system as defined in claim 103, further comprising:

-17-

PPS-JHA000455

a component for determining if the maker bank requires a hard copy of the original check, if it does, printing a copy of the original check from the original check image data and forwarding directly or indirectly the printed check to the maker bank, and if not, sending the original check image data directly or indirectly to the maker bank.

110.   The system as defined in claim 103, further comprising:

a component for sending a notice to the remote site if the original check image data and/or the endorsed check image data is inaccurate or unreadable; and

a component for receiving corrected original check image data and/or corrected endorsed check image data.

111.   The system as defined in claim 103, further comprising a component for, after receiving the endorsed and/or voided check image data, sending an electronic notification to the remote site that a deposit is complete.

112.   The system as defined in claim 103, further comprising a component for formatting the electronic check data and the original check image data for processing in an accounting system of the bank of first deposit.

113.   The system as defined in claim 103, further comprising a component for determining if a bank of first deposit is a maker bank for the original check; and if it is the maker bank, then determining if the maker bank requires a hard copy of the original check; if the maker bank does require a hard copy of the original check, then causing a copy of the original check to be printed; and  if the maker bank does not require a hard copy of the original check, then sending the original check image data to the maker bank.

114.   The system as defined in claim 103, further comprising

a component for receiving return check image data for a return check coupled with a reference key for an original deposit transaction.

115.   The system as defined in claim 114, further comprising

-18-

Atty. Dkt. No. 057898-0102

a component for sending the return check image data with the reference key directly or indirectly to the maker bank for re-presentment.

116.    The system as defined in claim 115, further comprising

a component for determining if a re-presentment of the returned check requires a duplicate hard copy of the original check or if the original check data image is acceptable for the re-presentment; and if the original check image is acceptable, obtaining a reference key associated with an original deposit transaction and sending directly or indirectly the original check image data and the reference key to the maker bank.

117.    A program product for processing a deposit by a depositor of one or more original checks and deposit information at a remote location, said remote location being capable of interfacing with a financial institution, said program product comprising machine readable program code for causing a machine to perform the following method steps of:

obtaining at said remote location deposit account information from the deposit information, and electronic check data and original check image data from each of the one or more checks;

electronically exchanging said check data with said financial institution and obtaining an accuracy confirmation of said deposit account information from the financial institution based upon account information associated with the depositor;

upon the deposit account information being verified as accurate, endorsing and/or voiding the one or more original checks, and creating at the remote location second image data of the one or more original checks that have been endorsed and/or voided; and

sending the second images and said deposit account information to said financial institution.

118.    A system for processing a deposit by a depositor of one or more original checks and deposit information at a remote location, said remote location being capable of interfacing with a financial institution, comprising:

-19-

002.877432.1

PPS-JHA000457

Atty. Dkt. No. 057898-0102

a remote processor for obtaining at said remote location deposit account information from the deposit information, and electronic check data and original check image data from each of the one or more checks;

a communications system for electronically exchanging said check data with said financial institution;

a financial institution processor for verifying accuracy of said deposit account information at the financial institution based upon account information associated with the depositor;

 the remote processor, upon the deposit account information being verified as accurate, endorsing and/or voiding the one or more original checks, and creating at the remote location second image data of the one or more original checks that have been endorsed and/or voided; and

the remote processor causing the second images and said deposit account information to be sent to said financial institution.

-20-

002.877432.1

PPS-JHA000458

Atty. Dkt. No. 057898-0102

## REMARKS

Applicant respectfully requests reconsideration of the present application in view of the foregoing amendments and the reasons which follow.

Claims 1-3, 5, 7 and 12 have been amended and claims 4, 6, 8-11 and 13-32 have been cancelled.  New claims 117 and 118 represent the program product and system implementations of amended claim 1.  Additionally, new claims directed to the operations at a remote site, and new claims directed to the operations at a central site have been added to further protect applicants invention.  The invention in a method format is claimed in claims 33-60.  The invention in a program product format is claimed in claims 61-88.  The invention in a system format is claimed in claims 89-116. Accordingly claims 1-3, 5, 7, 12, and 33-118 are presented for examination.

The present invention is focused on a unique set of operations, electronic queries, and steps creating, using and manipulating check images in order to speed the operation of depositing checks, as well as to reduce the amount of paper flow, handling, storage and returns used in current banking systems.  The use of an original check image file and an endorsed check image file in a unique sequence of process steps, a substantial majority of which are implemented by electronic queries and responses in a claimed communication operation, facilitates transactional operations and/or verification and for ultimate transfer throughout the banking system (as contrasted to archival purposes), and is new, unique, and revolutionary in banking circles.

Newly amended claim 1 recites the step of converting at the remote location deposits into electronic data including both deposit information and image data for one or more monetary items associated with the deposit; the step of obtaining an accuracy confirmation of the deposit information and the image data from a financial institution based upon account information associated with the depositor of the deposit; and the step of upon the electronic data being verified as accurate, creating a second image of each of the one or more monetary items associated with the deposits at the remote location, with each of these second images having at least one of endorsement

-21-

PPS-JHA000459

Atty. Dkt. No. 057898-0102

information and voiding information included thereon, and finally crediting an account according to the electronic data.

Likewise, a new claim 33 has been added to focus on the operations of the remote site. This claim includes the steps of obtaining electronic deposit data for one or more original checks; converting data for each of the one or more original checks into electronic check data; creating an image of the original checks to obtain original check image data; receiving at least one of endorsement and voiding authorization from an external site after receipt of the original check by the external site; endorsing and/or voiding the original check to obtain an endorsed check; creating an image of the endorsed and/or voided check to obtain endorsed and/or voided check image data; electronically associating the electronic deposit data, the electronic check data and the original check data and/or the endorsed check image data; and transmitting the electronically associated electronic check data and the original check image data and/or the endorsed check image data directly or indirectly to a maker bank or a print site associated therewith.

Likewise, a set of claims for operations at the central processing site has been provided. Claim 47 comprises the steps of receiving electronic check data and original check image data; identifying errors in the electronic check data; if no errors are identified, sending endorsement and/or voiding authorization to the remote site; receiving endorsed and/or voided check image data; sorting the check data; and transmitting electronically associated electronic deposit data, electronic check data and the original check image data and/or endorsed and/or voided check image data directly or indirectly to a maker bank or a print site associated therewith.

It can be seen that these amended and new claims are directed to transactional and sending operations based on endorsed check image data or original check image data or both.

Referring now to the Examiner's rejection, the Examiner has rejected the claims under both 35 U.S.C. §102(a) or §103 over the Geer Patent Number 5,930,778. This rejection, as it may be applied to the amended and new claims, is respectfully traversed.

-22-

PPS-JHA000460

Geer is directed to effecting the expedited submission of checks into a payment system for collection of funds received by a payee such as a telephone company at a remote item capture facility of the telephone company, and then submitting financial information from these items into the payment system to be received by the payee's depository bank. Thus Geer describes a typical lockbox operation for such payees as telephone companies which receive checks associated with a payment stub. See column 6, lines 40-58. As described at column 7, beginning at line 40, a check received at this remote site is scanned by a suitable reader. The step may include a verification by a human operator comparing the electronic data obtained from the scan with the physical check and the payment stub. The data collected from the scan typically will include the MICR data from the MICR lines of the check. In the practice of the Geer patent, the electronic endorsements on behalf of the payee and the depository bank are applied to the electronic record of the check, and a document identification number is generated and added to the electronic record of the check to aid in subsequent location and retrieval of the information. It is noted at column 8, line 10 that it is contemplated to create an image of the check for archival storage 8 prior to possible disposition of the paper instrument 9. It is noted that this image of the check is capable of later retrieval. See column 8, line 23. At column 9, lines 1-4, it is stated that the image of the check may also be transmitted electronically to the depository bank along with other information extracted from the check. It is noted at column 10, lines 1-6 that the image 7 is transferred via the communication link 11 from the payee to 2 to the depository bank 10 for financial information processing and archival storage. Finally, it is stated that the payee's account is credited with the appropriate amounts as such are compiled by the payee. See column 9, lines 14-18. It is stated that the depository bank may sort the various depository information it receives and then send batches of this information into the payment system 12. It is stated at column 9, lines 41-45 that the check information from the payment system reaches the appropriate payor bank 16 for proper debiting the accounts of the checkwriters 1, thus completing the payment cycle.

Referring now to amended claim 1, Geer does not disclose creating a second image of the one or more monetary items associated with the deposit at the remote location, with each of the second images having at least one of endorsement

-23-

PPS-JHA000461

Atty. Dkt. No. 057898-0102

information and voiding information included therein.  Additionally, Geer does not disclose electronically exchanging the second images with the financial institution. Additionally, Geer does not disclose verifying the accuracy of the deposit information and the image data at a financial institution based upon account information associated with the depositor of the deposit.

Likewise, referring to claim 33 directed to processing at a remote site, Geer does not disclose the combination of steps with the step included in the combination of receiving at least one of endorsements and voiding authorization from an external site after the receipt of the deposit information by that external site.  This step points up the fact that the claimed aspect of the remote site does not independently endorse and void checks in a deposit transaction.  Additionally the unique combination of steps includes the step of after endorsing and/or voiding the original check to obtain an endorsed check, "creating an image of the endorsed and/or voided check to obtain endorsed and/or voided check image data" and then "electronically associating the electronic deposit data, the electronic check data and the original check image data and the endorsed check image data."  Finally and importantly, there is no step of "transmitting the electronically associated electronic check data and the original check image data and/or the endorsed and/or voided check image data directly or indirectly to a maker bank or a print site associated therewith."  This last step clarifies further that the image flow of the check all the way to the <u>maker bank</u> or a printer site associated therewith is a critical component of the inventive banking system.  Geer does not disclose any of these steps.

Referring to claim 34, the endorsing and/or voiding step comprises sending the electronic deposit data, the electronic check data, and the original check image data to a first processing location; receiving a notice from the first processing location that selected errors were not found in the electronic deposit data and/or electronic check data; and printing endorsement and/or voiding information on the original check to obtain the endorsed check.  Geer does not disclose this process.

Additionally, with respect to claim 36 the step is provided of storing at least one of the original check image data and the endorsed check image data on a server

-24-

002.877432.1

Atty. Dkt. No. 057898-0102

accessible from the Internet.  See page 25, lines 13 and page 33, line 1.  This concept is not disclosed or suggested by Geer.

The interrelationship of the operation of the remote site with a first processing site is further emphasized in claim 38 wherein it is determined if endorsement information at the remote site for printing on the check is up-to-date; and if the endorsement information at the remote site is not up-to-date, then downloading updated endorsement information from a first processing location.  In this regard, see page 16, lines 5-20 and page 17, lines 17-19 of the specification.

Additionally, claim 39 further describes the step of comparing an amount of a deposit or an amount of one or more checks against a deposit maximum, and providing a rejection notice if the deposit exceeds the deposit maximum.  In this regard, see the specification at page 16, lines 1-20 and page 29, lines 11-12.

Additionally, referring to claim 40 the step is provided of adding control information to the transmission of the original check image data and/or the endorsed and/or voided check image date preparatory to the transmission step.  In this regard, see page 18, lines 7-8 and page 21, lines 4-5.

Referring to claim 41, the step is disclosed of storing the original check image data at the remote site.

Referring to claim 42, the step of creating an image of the original check is defined as comprising scanning the original check and if the original check is removed before completion of the scanning, then designating the electronic check data associated with the original check image data as invalid.  In this regard, see the specification at page 25, lines 18-21.

Referring to new claim 43, a further step is provided of receiving return check image data for a returned check coupled with a reference key for an original deposit transaction.  In this regard, see the specification at page 27, lines 6-18.

Referring to new claim 44, the step is provided of sending the return check image data with the reference key directly or indirectly to the maker bank for re-

-25-

002.877432.1

PPS-JHA000463

Atty. Dkt. No. 057898-0102

presentment. In this regard, see applicant's specification at page 27, lines 19-23 and page 34, lines 4-21.

The foregoing operations and electronic query and response sequences of the remote site within an overall banking system in accordance with the present invention are not disclosed or suggested by the Geer reference.

Referring to new claim 47, this claim is directed to processing at a central site a check deposited at a remote site. Note that Geer does not disclose the concept of using a central processing site. In particular, Geer does not disclose a method sequence of receiving electronic check data and original check image data for a plurality of checks to be deposited, identifying errors in the electronic check data, if no errors are identified, sending endorsement and/or voiding authorization to the remote site; receiving endorsed and/or voided check image data; sorting the received data; and transmitting electronically associated electronic check data and the original check data and/or the endorsed and/or voided check image data directly or indirectly to a maker bank or a print site associated therewith. Geer simply does not disclose this sequence of operations.

Referring to claim 49, the receiving step is further defined to comprise receiving electronic check data and original check image data for a plurality of different deposits, each one of the plurality of different deposits to be deposited at a different bank of first deposit; and sending each one of the plurality of different deposits to a respective different bank of first deposit. This claim further clarifies a clearinghouse nature of the central site because of the fact that it operates with a plurality of different bank of first deposits. This aspect is not disclosed in Geer.

Referring to claim 51, a further step is provided in the sequence of storing at least one of the original check image data and the endorsed and/or voided check image data on a server accessible from the Internet. In this regard, see page 19, line 14; page 25, line 13; and page 31, lines 6-10.

In a further embodiment of the present invention, claim 52 includes the steps of determining if the maker bank requires a hardcopy of the check; and if it does, sending the original image data to a print site; and if not, sending the original check image data directly or indirectly to the maker bank.

-26-

PPS-JHA000464

Atty. Dkt. No. 057898-0102

Referring to claim 53, a further embodiment is described that includes the additional steps of determining if the maker bank requires a hardcopy of the check; if it does, printing a copy of the check from the original check image data and forwarding directly or indirectly the printed check to the maker bank; and if it does not, sending the original check image data directly or indirectly to the maker bank.

In new claim 54, a further step is provided of sending a notice to the remote site if the original check image and/or the endorsed and/or voided check image data is inaccurate or unreadable. In this regard, see page 18, lines 21-22.

Referring to new claim 55, an embodiment of the invention is disclosed comprising the sequence of steps including after receiving the endorsed check image data, sending an electronic notification to the remote site that a deposit is complete. In this regard, see page 25, lines 3-8 and page 31, line 10.

Referring to new claim 56, an embodiment of the invention is disclosed including the step of formatting the electronic check data and the original check image data for processing in an accounting system of the bank of first deposit. In this regard, see page 26, lines 3-7.

Referring to claim 57, an embodiment of the present invention is disclosed comprising a sequence of steps including the step of determining if a bank of first deposit is a maker bank for the original check; and if it is the maker bank, then determining if the maker bank requires a hardcopy of the original check; if the maker bank does require a hardcopy of the original check, then causing a copy of the original check to be printed; and if the maker bank does not require a hardcopy of the original check, then sending the original check image data to the maker bank. In this regard, see applicant specification at page 26, lines 8-11 and page 33, line 20.

Referring to new claim 60, the method further includes the steps of determining if a re-presentment of the returned check requires a duplicate hardcopy of the check or if the original check image data is acceptable for the re-presentment, and if the original check image data is acceptable, obtaining a reference key associated with an original deposit transaction, and sending directly or indirectly the original check image data and the reference key to the maker bank.

-27-

PPS-JHA000465

The Geer reference does not disclose the concept of the use of a central site much less the various electronic query and response sequence embodiments of the central site disclosed in the claims dependent on independent claim 47.

It is noted that the Examiner has taken official notice of a number of limitations including the verifying check data step and the converting process check data into the electronic check data by scanning to create check image data and image data representing an electronic image of the processed check, and the Examiner has also taken official notice regarding verifying processed check data with account records, printing a facsimile of a check from processed check data when a maker bank is not electronic exchange-capable, and forwarding the facsimile of the check to the maker bank.  In accordance with MPEP 2144.03, applicants traverse/challenge these official notice statements based on personal knowledge and request that each point of official notice be supported by a citation to a reference, as set forth by the MPEP Office requirements.  This traverse of the official notice is made insofar as these statements of official notice are applied to the claims as amended.

In view of the foregoing amendments and remarks, the application is ready for allowance.

Applicant believes that the present application is now in condition for allowance. Favorable reconsideration of the application as amended is respectfully requested.

PPS-JHA000466

Atty. Dkt. No. O57898-0102

The Examiner is invited to contact the undersigned by telephone if it is felt that a telephone interview would advance the prosecution of the present application.

Respectfully submitted,

Date <u>September 4, 2002</u>                By _____

FOLEY & LARDNER                         William T. Ellis
Washington Harbour                      Attorney for Applicant
3000 K Street, N.W., Suite 500          Registration No. 26,874
Washington, D.C. 20007-5143
Telephone:   (202) 672-5485
Facsimile:   (202) 672-5399

---

Should additional fees be necessary in connection with the filing of this paper, or if a petition for extension of time is required for timely acceptance of same, the Commissioner is hereby authorized to charge Deposit Account No. 19-0741 for any such fees; and applicant(s) hereby petition for any needed extension of time.

---

-29-

002.877432.1

Atty. Dkt. No. 057898-0102

**Version with Markings to Show Changes Made**

1.      [Amended] A method for processing a [check] deposit by a depositor of one or more original checks and deposit information[deposited] at a remote location, said remote [locations including financial institutions and other locations] location being capable of interfacing with [said] a financial [institutions]institution, said method comprising the steps of:

        [a) converting] obtaining at said remote location deposit account information from the deposit information, and [said check into ]electronic check data and original check image data from each of the one or more checks;

        [b)]electronically exchanging said check data with said financial institution and obtaining an accuracy confirmation of said deposit account information from the financial institution based upon account information associated with the depositor; and

        [c) said financial institution crediting an account according to said check data]upon the deposit account information being verified as accurate, endorsing and/or voiding the one or more original checks, and creating at the remote location second image data of the one or more original checks that have been endorsed and/or voided; and

sending the second images and said deposit account information to said financial institution.

2.      [Amended] The method as recited in claim 1, wherein [converting] said obtaining step comprises the steps of:

        a) scanning said [check]one or more original checks to create image data, said image data representing an electronic image of each of said [check]one or more checks; and

        b) reading said image data to create informational data from said image data to aid in electronic processing of said deposited check.

3.      [Amended] The method as recited in claim 2, wherein said [converting]obtaining step further comprises the step of:

-30-

002.877432.1

PPS-JHA000468

Atty. Dkt. No. O57898-O1O2

a) reading at least a portion of said [check]one or more original checks to determine additional informational data stored in a Magnetic Ink Character Recognition (MICR) line.

5.     [Amended] The method as recited in claim [4]1, wherein said endorsing and/or voiding [financial institution confirming said check data] step comprises the [steps]step of:

[a] said financial institution acknowledging to said remote location receipt and accuracy of said check data; and]

[b] said financial institution sending]receiving endorsement and/or voiding information[ to said remote location].

7.     [Amended] The method as recited in claim 5[6], wherein said endorsing and/or voiding steps are further comprised of the step of:

a) printing [on] said endorsement and/or voiding information on said check.

12.     [Amended] The method as recite in claim [4]1, [wherein said crediting said account according to said check data step further comprises ]further comprising the step of:

a) when said financial institution is not the maker bank of said check, sending one of said original check image data or second image data[said processed check data] to said maker bank for clearing said check.

-31-

PPS-JHA000469



2164

#10

Atty. Dkt. No. 057898-0102

9.07.02

**THE UNITED STATES PATENT AND TRADEMARK OFFICE**

Applicants:   Danne L. Buchanan et al.

Title:   METHOD AND SYSTEM FOR PROCESSING
FINANCIAL INSTRUMENT DEPOSITS
PHYSICALLY REMOTE FROM A FINANCIAL
INSTITUTION

Appl. No.:   09/560,779

Filing Date:   04/28/2000

Examiner:   Nga B. Nguyen

Art Unit:   2164

RECEIVED
SEP 1 6 2002
GROUP 3600

## INFORMATION DISCLOSURE STATEMENT
## UNDER 37 CFR §1.56

Commissioner for Patents
Washington, D.C. 20231

Sir:

Submitted herewith on Form PTO/SB/08 is a listing of documents known to Applicants in order to comply with Applicants' duty of disclosure pursuant to 37 CFR §1.56.  A copy of each listed document is being submitted to comply with the provisions of 37 CFR §1.97 and §1.98.

The submission of any document herewith, which is not a statutory bar, is not intended as an admission that such document constitutes prior art against the claims of the present application or that such document is considered material to patentability as defined in 37 CFR §1.56(b).  Applicants do not waive any rights to take any action which would be appropriate to antedate or otherwise remove as a competent reference any document which is determined to be a *prima facie* art reference against the claims of the present application.

09/09/2002 NGEBREM1 00000013 09560779          **TIMING OF THE DISCLOSURE**
01 FC:126                    180.00 OP

The listed documents are being submitted in compliance with 37 CFR §1.97(c), before the mailing date of either a final action under 37 CFR §1.113, a notice of allowance under 37 CFR §1.113, or an action that otherwise closes prosecution in the application.

002.886967.1

PPS-JHA000470

Atty. Dkt. No. 057898-0102

## RELEVANCE OF EACH DOCUMENT

All of the documents are in English.

Applicants respectfully request that any listed document be considered by the Examiner and be made of record in the present application and that an initialed copy of Form PTO/SB/08 be returned in accordance with MPEP §609.

## FEE

A fee in connection with submission of an information disclosure statement under 37 CFR §1.97(c) in the amount of $180.00 in accordance with 37 CFR §1.17(p) is attached.

The Commissioner is hereby authorized to charge any additional fees which may be required regarding this application under 37 CFR §§ 1.16-1.17, or credit any overpayment, to Deposit Account No. 19-0741. Should no proper payment be enclosed herewith, as by a check being in the wrong amount, unsigned, post-dated, otherwise improper or informal or even entirely missing, the Commissioner is authorized to charge the unpaid amount to Deposit Account No. 19-0741.

Respectfully submitted,

Date September 6, 2002

By _____

FOLEY & LARDNER
Customer Number: 22428

22428
PATENT TRADEMARK OFFICE

Telephone:    (202) 672-5485
Facsimile:    (202) 672-5399

William T. Ellis
Attorney for Applicants
Registration No. 26,874

002.886967.1

PTO/SB/08  (08-00)
Approved for use through 10/31/2002. OMB 0651-0031
U.S. Patent and Trademark Office:  U.S. DEPARTMENT OF COMMERCE

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449B/PTO | | | Complete if Known | |
|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | | Application Number | 09/560,779 |
| | | | Filing Date | 04/28/2000 |
| Date Submitted: September 6, 2002 | | | First Named Inventor | Danne L. BUCHANAN et al. |
| | | | Group Art Unit | 2164 |
| *(use as many sheets as necessary)* | | | Examiner Name | Nga B. Nguyen |
| Sheet | 1 | of | 1 | Attorney Docket Number | 057898-0102 |

**U.S. PATENT DOCUMENTS**

| Examiner Initials* | Cite No.¹ | U.S. Patent Document | | Name of Patentee or Applicant of Cited Document | Date of Publication of Cited Document MM-DD-YYYY | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | | Number | Kind Code² (if known) | | | |
| | A1 | 4,027,142 | | PAUP ET AL. | 05/31/1977 | |
| | A2 | 4,264,808 | | OWENS ET AL. | 04/28/1981 | |
| | A3 | 4,650,978 | | HUDSON ET AL. | 03/17/1987 | |
| | A4 | 4,730,767 | | GENDRON | 03/15/1988 | |
| | A5 | 4,731,524 | | BROOKS | 03/15/1988 | |
| | A6 | 4,948,174 | | THOMSON ET AL. | 08/14/1990 | |
| | A7 | 4,974,878 | | JOSEPHSON | 12/04/1990 | |
| | A8 | 5,121,945 | | THOMSON ET AL. | 06/16/1992 | |
| | A9 | 5,237,159 | | STEPHENS ET AL. | 08/17/1993 | |
| | A10 | 5,265,007 | | BARNHARD, JR. ET AL. | 11/23/1993 | |
| | A11 | 5,412,190 | | JOSEPHSON ET AL. | 05/02/1995 | |
| | A12 | 5,532,464 | | JOSEPHSON ET AL. | 07/02/1996 | |
| | A13 | 5,689,579 | | JOSEPHSON | 11/18/1997 | |
| | A14 | 5,783,808 | | JOSEPHSON | 07/21/1998 | |
| | A15 | 5,784,610 | | COPELAND, III ET AL. | 07/21/1998 | |
| | A16 | 5,793,302 | | STAMBLER | 08/11/1998 | |
| | A17 | 5,802,498 | | COMESANAS | 09/01/1998 | |
| | A18 | 5,819,236 | | JOSEPHSON | 10/06/1998 | |
| | A19 | 5,864,871 | | KITAIN ET AL. | 01/26/1999 | |
| | A20 | 5,893,078 | | PAULSON | 04/06/1999 | |
| | A21 | 5,895,453 | | COOK | 04/20/1999 | |
| | A22 | 5,904,844 | | STONE | 05/18/1999 | |
| | A23 | 5,917,965 | | CAHILL ET AL. | 06/29/1999 | |
| | A24 | 5,936,541 | | STAMBLER | 08/10/1999 | |
| | A25 | 5,963,659 | | CAHILL ET AL. | 10/05/1999 | |
| | A26 | 5,974,148 | | STAMBLER | 10/26/1999 | |
| | A27 | 6,019,282 | | THOMPSON ET AL. | 02/01/2000 | |
| | A28 | 6,029,172 | | JORNA ET AL. | 02/22/2000 | |
| | A29 | 6,181,837 | B1 | CAHILL ET AL. | 01/30/2001 | |
| | A30 | 5,619,524 | | LING ET AL. | 04/08/1997 | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER:  Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

¹ Unique citation designation number. ²See attached Kinds of U.S. Patent Documents. ³Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). ⁴For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. ⁵Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST. 16 if possible. ⁶Applicant is to place a check mark here if English language Translation is attached.

Burden Hour Statement:  This form is estimated to take 2.0 hours to complete.  Time will vary depending upon the needs of the individual case.  Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, Washington, D.C. 20231.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS.  SEND TO: Assistant Commissioner for Patents, Washington, D.C. 20231.

PPS-JHA000472

 

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/560,779 | 04/28/2000 | Danne L. Buchanan | 7905-15 | 5156 |

22428      7590      12/04/2002

FOLEY AND LARDNER
SUITE 500
3000 K STREET NW
WASHINGTON, DC  20007

| EXAMINER |
|---|
| NGUYEN, NGA B |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3628 | |

DATE MAILED: 12/04/2002

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 07-01)

| *Office Action Summary* | Application No. 09/560,779 | Applicant(s) Buchanan et al. |
| | Examiner Nga B. Nguyen | Art Unit 3628 |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE ___one___ MONTH(S) FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136 (a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If the period for reply specified above is less than thirty (30) days, a reply within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
- Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☒ Responsive to communication(s) filed on _Aug 30, 2002_____ .

2a) ☐ This action is **FINAL**.     2b) ☒ This action is non-final.

3) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11; 453 O.G. 213.

**Disposition of Claims**

4) ☒ Claim(s) _1-118_____ is/are pending in the application.

    4a) Of the above, claim(s) _____ is/are withdrawn from consideration.

5) ☐ Claim(s) _____ is/are allowed.

6) ☐ Claim(s) _____ is/are rejected.

7) ☐ Claim(s) _____ is/are objected to.

8) ☒ Claims _1-118_____ are subject to restriction and/or election requirement.

**Application Papers**

9) ☐ The specification is objected to by the Examiner.

10) ☐ The drawing(s) filed on _____ is/are objected to by the Examiner.

11) ☐ The proposed drawing correction filed on _____ is: a) ☐ approved b) ☐ disapproved.

12) ☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119**

13) ☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

    a) ☐ All b) ☐ Some* c) ☐ None of:

        1. ☐ Certified copies of the priority documents have been received.

        2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

        3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    *See the attached detailed Office action for a list of the certified copies not received.

14) ☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

**Attachment(s)**

15) ☒ Notice of References Cited (PTO-892)

16) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

17) ☐ Information Disclosure Statement(s) (PTO-1449) Paper No(s). _____

18) ☐ Interview Summary (PTO-413) Paper No(s). _____

19) ☐ Notice of Informal Patent Application (PTO-152)

20) ☐ Other: _____

PPS-JHA000474

Serial Number: 09/560,779                                              Page 2

Art Unit: 3628

## DETAILED ACTION

1.    This Office Action is the answer to the Amendment filed on August 30, 2002, which

paper has been placed of record in the file.

2.     Claims 33-118 are added. Claims 1-118 are pending in this application.

### *Restriction/Election*

3.     Restriction to one of the following inventions is required under 35 U.S.C. 121:

     I.      Claims 1-46, 61-74, 89-102, 117, and 118, drawn to a method for processing

        checks at a remote location, classified in class 705, subclass 16.

     II.     Claims 47-60, 75-88, and 103-116, drawn to a method for processing checks at a

        central site, classified in class 705, subclass 42.

4.     The inventions are distinct, each from the other because of the following reasons:

    Inventions  are related as subcombinations disclosed as usable together in a single

combination.  The subcombinations are distinct from each other if they are shown to be

separately usable.  See MPEP § 806.05(d). In the instant case, invention  has separate utility such

as:

    Inventions I and II have separate utility such as: the invention I drawn to a method for

processing checks at a remote location, in contrast, the invention II drawn to a method for

processing checks at a central site. Therefore, the invention I and II are shown to be separately

usable.

PPS-JHA000475

Serial Number: 09/560,779                                          Page 3

Art Unit: 3628

5.      Because these inventions are distinct for the reasons given above and have acquired a

separate status in the art as shown by their different classification, restriction for examination

purposes as indicated is proper.

6.      Applicant is advised that the reply to this requirement to be complete must include an

election of the invention to be examined even though the requirement be traversed (37

CFR 1.143).

7.      Any inquiry concerning this communication or earlier communications from the examiner

should be directed to examiner Nga B. Nguyen, whose telephone number is (703)306-2901. The

examiner can normally be reached on Monday-Thursday from 8:30 AM-6:00 PM.

        If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Hyung S. Sough, can be reached on (703)308-0505.

        Any inquiry of a general nature or relating to the status of this application or proceeding

should be directed to the Group receptionist whose telephone number is (703)308-1113.

8.      **Any response to this action should be mail to:**

                        Commissioner of Patents and Trademarks

                        c/o Technology Center 3600

                        Washington, D.C. 20231

**or faxed to:**

                        (703) 305-7687, (for formal communications intended for entry)

**or:**

Serial Number: 09/560,779                                          Page 4

Art Unit: 3628


(703) 308-3961  (for informal or draft communications, please label

"PROPOSED" or "DRAFT")

Hand-delivered responses should be brought to Crystal Park 5, 2451 Crystal Drive,

Arlington, VA, Seventh Floor  (Receptionist).


Nga B. Nguyen
November 22, 2002

Hyung-Sub Sough
Primary Examiner

Atty. Dkt. No. 057898-0102

*C P / 362*

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

Applicant:     Danne L. Buchanan, et al.

Title:         METHOD AND SYSTEM FOR
               PROCESSING FINANCIAL
               INSTRUMENT DEPOSITS
               PHYSICALLY REMOTE FROM A
               FINANCIAL INSTITUTION

Appl. No.:     09/560,779

Filing Date:   04/28/2000

Examiner:      Nga B. Nguyen

Art Unit:      3628

**RECEIVED**
**DEC 2 6 2002**
**GROUP 3600**

**AMENDMENT TRANSMITTAL**

Commissioner for Patents
Washington, D.C.  20231

Sir:

Transmitted herewith is an amendment in the above-identified application.

[  ]   Small Entity status under 37 C.F.R. § 1.9 and § 1.27 has been established by a
       Small Entity statement previously submitted.

[  ]   Small Entity statement is enclosed.

[ X ]  The fee required for additional claims is calculated below:

| | Claims as Amended | | Previously Paid For | | Extra Claims Present | | Rate | | Additional Claims Fee |
|---|---|---|---|---|---|---|---|---|---|
| Total Claims: | 133 | — | 120 | = | 13 | x | $18.00 | = | $234.00 |
| Independents: | 12 | — | 12 | = | 0 | x | $84.00 | = | $0.00 |
| First presentation of any Multiple Dependent Claims: | | | | | | + | $280.00 | = | $0.00 |
| | | | | | | CLAIMS FEE TOTAL: | | = | $234.00 |

[  ]   Applicant hereby petitions for an extension of time under 37 C.F.R. §1.136(a)
       for the total number of months checked below:

-1-

002.942341.1

Atty. Dkt. No. 057898-0102

| | | | | |
|---|---|---|---|---|
| [ ] | Extension for response filed within the first month: | $110.00 | | $0.00 |
| [ ] | Extension for response filed within the second month: | $400.00 | | $0.00 |
| [ ] | Extension for response filed within the third month: | $920.00 | | $0.00 |
| [ ] | Extension for response filed within the fourth month: | $1,440.00 | | $0.00 |
| [ ] | Extension for response filed within the fifth month: | $1,960.00 | | $0.00 |
| | | EXTENSION FEE TOTAL: | | $0.00 |
| | | CLAIMS AND EXTENSION FEE TOTAL: | | $234.00 |
| [ ] | | Small Entity Fees Apply (subtract ½ of above): | | $0.00 |
| | | TOTAL FEE: | | $234.00 |

[ ]   Please charge Deposit Account No. 19-0741 in the amount of $234.00. A duplicate copy of this transmittal is enclosed.

[ X ]   A check in the amount of $234.00 is enclosed.

[ X ]   The Commissioner is hereby authorized to charge any additional fees which may be required regarding this application under 37 C.F.R. §§ 1.16-1.17, or credit any overpayment, to Deposit Account No. 19-0741. Should no proper payment be enclosed herewith, as by a check being in the wrong amount, unsigned, post-dated, otherwise improper or informal or even entirely missing, the Commissioner is authorized to charge the unpaid amount to Deposit Account No. 19-0741.

Please direct all correspondence to the undersigned attorney or agent at the address indicated below.

Respectfully submitted,

Date December 20, 2002

By _____

FOLEY & LARDNER
Customer Number: 22428

William T. Ellis
Attorney for Applicant
Registration No. 26,874

**22428**
PATENT TRADEMARK OFFICE
Telephone:   (202) 672-5485
Facsimile:   (202) 672-5399

-2-

002.942341.1

#12 cw
1-2-03
7ueO p

Atty. Dkt. No. 057898-0102

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

Applicant:     Danne L. BUCHANAN, et al.

Title:          METHOD AND SYSTEM FOR
                PROCESSING FINANCIAL
                INSTRUMENT DEPOSITS
                PHYSICALLY REMOTE FROM A
                FINANCIAL INSTITUTION

Appl. No.:      09/560,779

Filing Date:    04/28/2000

Examiner:       Nga B. Nguyen

Art Unit:       3628

<u>RESPONSE TO RESTRICTION AND AMENDMENT</u>

Commissioner for Patents
Washington, D.C. 20231

RECEIVED

DEC 2 6 2002

GROUP 3600

Sir:

This communication is responsive to the Office Action dated December 4,
2002, concerning the above-referenced patent application.

Applicants hereby elect the claims of Group II, claims 47-60, 75-88, 103-116,
for prosecution in the subject application.

Applicants, of course, reserve the right to file a divisional application covering
the subject matter of the non-elected claims.

Please amend the application as follows:

**In the Claims:**

Please add the following new claims:

-1-

002.941627.1

Atty. Dkt. No. 057898-0102

119.   (New) The method as defined in claim 49, further comprising a system with a plurality of different remote sites, the following steps being performed at each of the plurality of remote sites:

obtaining electronic deposit data for the one or more original checks;

converting data for each of the one or more original checks into electronic check data;

creating an image of the one or more original checks to obtain original check image data;

receiving endorsement and/or voiding authorization from an external site after receipt of the one or more checks;

endorsing and/or voiding the original one or more checks to obtain endorsed and/or voided checks;

creating an image of the endorsed and/or voided checks to obtain endorsed and/or voided check image data;

electronically associating the electronic deposit data, the electronic check data and the original check image data and the endorsed and/or voided check image data; and

transmitting the electronically associated electronic check data and the original check image data and/or the endorsed and/or voided check image to the central site.

120.   (New) The method as defined in claim **119**, wherein the transmitting to the central site step comprises transmitting both the original check image data and the endorsed and/or voided check image data.

121.   (New) The method as defined in claim **119**, further comprising:

determining if endorsement information at one of the remote sites for printing on the check is up-to-date; and

-2-

PPS-JHA000481

Atty. Dkt. No. 057898-0102

if the endorsement information at the remote site is not up-to-date, then downloading updated endorsement information from the central site.

122.   (New) The method as defined in claim **119**, further comprising the step of comparing an amount of a deposit or an amount of one or more checks against a deposit maximum, and providing a rejection notice if the deposit exceeds the deposit maximum.

123.   (New) The method as defined in claim **119**, further comprising

receiving return check image data for a return check coupled with a reference key for an original deposit transaction and a return reason.

124.   (New) The program product as defined in claim **77**, comprising program code at a plurality of different remote sites for causing when executed a machine at the respective remote site to perform the following method steps:

obtaining electronic deposit data for the one or more original checks;

converting data for each of the one or more original checks into electronic check data;

creating an image of the one or more original checks to obtain original check image data;

receiving endorsement and/or voiding authorization from an external site after receipt of the one or more checks;

endorsing and/or voiding the original one or more checks to obtain endorsed and/or voided checks;

creating an image of the endorsed and/or voided checks to obtain endorsed and/or voided check image data;

electronically associating the electronic deposit data, the electronic check data and the original check image data and the endorsed and/or voided check image data; and

-3-

PPS-JHA000482