IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| PPS DATA, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:18-CV-00007-JRG |
| | § | |
| JACK HENRY & ASSOCIATES, INC., | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Jack Henry & Associates, Inc.'s ("JHA") Rule 12(c) Motion for Judgment of Invalidity Under 35 U.S.C. § 101 (the "Motion"). (Dkt. No. 28.) Having considered the same, and for the reasons set forth herein, the Court finds that the Motion should be and hereby is **DENIED**.

**I.    BACKGROUND**

On January 10, 2018, Plaintiff PPS Data, LLC ("PPS Data") sued JHA for infringement of U.S. Patent Nos. 7,181,430 (the "'430 Patent"); 7,216,106 (the "'106 Patent"); 7,440,924 (the "'924 Patent"); 7,624,071 (the "'071 Patent"); and 8,660,956 (the "'956 Patent") (collectively, the "Asserted Patents"). (Dkt. No. 1 (Complaint).) PPS Data has asserted 22 claims of the '430 Patent, 13 claims of the '106 Patent, 16 claims of the '924 Patent, 8 claims of the '071 Patent, and certain claims of the '956 Patent against JHA.[1] (Dkt. No. 30 at 1.) The '430 Patent has the earliest priority

---

[1] Specifically, "PPS Data assert[s] the following claims against JHA: Claims **1**, 2, 3, 4, 5, 6, 7, 8, 12, 15, 18, **19**, 20, 21, 22, 23, 24, 25, 26, 30, 33, and 36 of the [']430 [P]atent; Claims **1**, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, and 15 of the [']106 [P]atent; Claims **1**, 2, 3, 4, 5, 6, 10, 11, **12**, 13, 14, 15, 16, 17, 21, and 22 of the [']924 [P]atent; Claims **1**, 2, 3, 4, 5, 6, 10 and **12** of the [']071 [P]atent . . . ." (Dkt. No. 30 n.1 (emphasis added) (independent claims in bold).)

date of the Asserted Patents. *Compare* '430 Patent at 1 *with* '106 Patent at 1; '924 Patent at 1, '071 Patent at 1; '956 Patent at 1. The '106, '924, '071, and '956 Patents each claim priority to the '430 Patent, and share a virtually identical specification to that of the '430 Patent.[2] *See* '106 Patent at 1; '924 Patent at 1, '071 Patent at 1; '956 Patent at 1. JHA subsequently filed counterclaims against PPS Data seeking, in part, a declaratory judgment that the Asserted Patents are invalid under 35 U.S.C. § 101. (*See* Dkt. No. 10 at 13, 15, 16.)

The '430 Patent generally relates to methods and systems for remotely processing financial instrument deposits through electronic interaction between the physical location of the instrument and a financial institution. *See* '430 Patent at Abstract, 1:10–13. Claim 1 of the '430 Patent[3] recites:

> 1. A method for deposit processing at a central system a plurality of checks deposited at a remote site with accompanying deposit information, comprising:
>
> > the central system receiving deposit information for a plurality of different deposit transactions, with the deposit information including for each of the different deposit transactions a deposit account designation, electronic check data and check image data for at least one check to be deposited, wherein the central system is separate from MICR capture, deposit accounting, cash management, and float processing systems for a bank of first deposit and wherein the deposit account designation for each of at least a subset of the plurality of the deposit transactions is to a different bank of first deposit;
> >
> > the central system transmitting the electronic deposit data and optionally the check image data for each different deposit transaction of the subset of the plurality of the deposit transactions to a respective different one of the banks of first deposit;
> >
> > the central system performing at least one of sorting the received deposit information and error checking the received deposit information before

---

[2] The '106 Patent sets forth the additional Figures 8–10. The portions of the '106 Patent's specification that discuss these figures likewise add additional disclosure to what is found in the other Asserted Patents.

[3] JHA contends that Claim 1 of the '430 Patent "is exemplary of all claims in the [A]sserted [P]atents" and thus demonstrates that the Asserted Patents fails both steps of *Alice*. (*See* Dkt. No. 28 at 9, 27.) The Court discusses the representative nature of Claim 1 of the '430 Patent below at Part III.A.

> transmission to any of the MICR capture, deposit accounting, cash management, and float processing systems of each of the different banks of first deposit designated in the respective deposit account designations in the deposit information; and
>
> the central system transmitting electronic check data and the check image data directly or indirectly to a maker bank or a Federal Reserve Bank or a correspondent bank in a transmission having a transmission path that bypasses the MICR capture, deposit accounting, cash management, and float processing systems of the bank of first deposit for that deposit transaction.

'430 Patent at 18:17–51.

Magistrate Judge Payne issued an order construing disputed terms of the Asserted Claims on March 4, 2019, which this Court has adopted over JHA's objections. (Dkt. No. 55; Dkt. No. 68; see also Dkt. No. 62.) The following constructions are relevant to JHA's Motion:

| Term | Construction |
| --- | --- |
| "transmission having a transmission path that bypasses the MICR capture, deposit accounting, cash management, and float processing systems of the bank of first deposit for that deposit transaction"<br><br>('430 Patent at Claims 1, 19; '924 Patent at Claims 1, 12; '071 Patent at Claims 1, 12) | "a transmission that is not received by the magnetic ink character recognition capture, deposit accounting, cash management, or float processing systems of the bank of first deposit while en route from the central system to the maker bank, Federal Reserve Bank, or correspondent bank" |
| "transmission path that bypasses the MICR capture system of the bank of first deposit"<br><br>('956 Patent at Claim 1) | "a transmission that is not received by the magnetic ink character recognition capture system of the bank of first deposit" |
| "transmitting bypassing the MICR capture, deposit accounting, cash management, float processing or other systems of the bank of first deposit"<br><br>('106 Patent at Claim 1) | "transmitting that is not received by the magnetic ink character recognition capture, deposit accounting, cash management, float processing or other systems of the bank of first deposit while en route from the central system to the maker bank, Federal Reserve Bank, or correspondent bank" |

| | |
|---|---|
| "but not through the MICR capture, deposit accounting, cash management, and float processing systems of the bank of first deposit" ('430 Patent at Claims 4, 5, 22, and 23) | "not received by the magnetic ink character recognition capture, deposit accounting, cash management, or float processing systems of the bank of first deposit while en route from the central system to the maker bank, Federal Reserve Bank, or correspondent bank" |

(Dkt. No. 55 at 27, 39.)

## II. LEGAL STANDARD

### A. Judgment on the Pleadings

Rule 12(c) provides that a party may move for judgment on the pleadings, after pleadings are closed but early enough not to delay trial. FED. R. CIV. P. 12(c). The standard for determining a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss. *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is "plausible on its face" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). However, the Court need not accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. To be legally sufficient, the complaint must establish more than a "sheer possibility" that the plaintiff's claims are true. *Id.* The complaint must contain enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim. *Lormand*, 565 F.3d at 255–57. If it is apparent from the face of the complaint that an insurmountable bar to relief exists, and the plaintiff is not entitled to relief,

4

the court must dismiss the claim. *Jones v. Bock*, 549 U.S. 199, 215 (2007). Additionally, when a Rule 12(c) motion is based on a challenge to a patent's validity under 35 U.S.C. § 101, the Court may properly take note of "fundamental economic concepts and technological developments." *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1270 (Fed. Cir. 2016).

In considering a motion to dismiss for failure to state a claim, a court considers only the contents of the pleadings, including their attachments. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). A court may, at its discretion, exclude matters presented that are outside of the pleadings; however, if the court does not exclude these matters, it must treat the motion as one for summary judgment under Rule 56. FED. R. CIV. P. 12(d).

### B. Patent Eligibility Under 35 U.S.C. § 101

Anyone who "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" may obtain a patent. 35 U.S.C. § 101. Since patent protection does not extend to claims that monopolize the "building blocks of human ingenuity," claims directed to laws of nature, natural phenomena, and abstract ideas are not patent eligible. *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). The Supreme Court instructs courts to distinguish between claims that set forth patent ineligible subject matter and those that "integrate the building blocks into something more." *Id*.

First, the court "determine[s] whether the claims at issue are directed to a patent-ineligible concept." *Id*. at 2355. In doing so, the court must be wary not to over generalize the invention, as "all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Alice*, 134 S. Ct. at 2354 (omission in original). In other words, the court must distinguish between "ineligible 'abstract-idea-based solution[s] implemented with generic technical components in a conventional way' from the eligible 'technology-based solution' and

5

'software-based invention[] that improve[s] the performance of the computer system itself.'" *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1299 (Fed. Cir. 2016) (quoting *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1351 (Fed. Cir. 2016)) (alteration in original).

If the challenged claims recite a patent-ineligible concept, the court then "consider[s] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent eligible application." *Alice*, 134 S. Ct. at 2355 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78–79 (2012)). This step is satisfied when the claim limitations "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014) (quoting *Alice*, 134 S. Ct. at 2359). The Federal Circuit has explained that "[w]hile the ultimate determination of eligibility under § 101 is a question of law, like many legal questions, there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018). As such, "[t]he question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact" that must be "proven by clear and convincing evidence." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

Something is not necessarily well-understood, routine, and conventional simply because it is disclosed in a prior art reference. *Exergen Corp. v. KAZ USA, Inc.*, No. 2016-2315, 2018 WL 1193529, at *4 (Fed. Cir. March 8, 2018). There are many obscure references that may qualify as prior art but are insufficient to establish something is "well-understood, routine, and conventional

activit[ies] previously engaged in by scientists who work in the field." *Mayo*, 566 U.S. at 79. Additionally, specific improvements described in a patent specification, "to the extent they are captured in the claims, create a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities." *Berkheimer*, 881 F.3d at 1369. However, "[w]hen there is no genuine issue of material fact regarding whether the claim element or claimed combination is well-understood, routine, conventional to a skilled artisan in the relevant field, [patent eligibility] can be decided on summary judgment as a matter of law." *Berkheimer*, 881 F.3d at 1368.

### III. DISCUSSION

To prevail on a § 101 challenge, the movant must show that the challenged claims first fail the "ineligible concept" step and then also fail the "inventive concept" step of the *Alice* test. The Court will first address the scope of JHA's § 101 challenge and then address the substance of JHA's § 101 challenge.

#### A. Claim 1 of the '430 Patent is Representative

JHA argues that Claim 1 of the '430 Patent "is exemplary of all claims in the [A]sserted [P]atents" and thus demonstrates that the Asserted Patents fail both steps of *Alice*. (*See* Dkt. No. 28 at 9, 27.) "Each of the claims is analogous in scope to the 'system' claims recited in each of the . . . [A]sserted [P]atents." (*Id.* at 9 (citing Dkt. Nos. 28-1 ('430 Patent comparison claim chart), 28-2 ('106 Patent comparison claim chart), 28-3 ('924 Patent comparison claim chart), 28-4 ('071 Patent comparison claim chart)).) In response, PPS Data argues that JHA overgeneralizes Claim 1, but "for the purposes of opposing JHA's [M]otion . . . PPS Data will address JHA's allegations regarding [C]laim 1 of the '430 [P]atent." (Dkt. No. 30 at 3; *see also id.* at ("JHA's

reliance on the 'exemplary' [C]laim 1 of the [']430 [P]atent simply ignores . . . substantive claim limitations that require physical printing, processing, and handling of hard copy of check.").)[4]

Having considered the parties' submissions, the Court is persuaded that JHA has not met its burden to demonstrate that Claim 1 of the '430 Patent is representative of the '106, '924, '071, and '956 Patents. *See Perdiemco, LLC v. Industrack LLC*, No. 2:15-CV-1216-JRG-RSP, 2016 WL 5719697, at *7 (E.D. Tex. Sept. 21, 2016) ("Whe[re] the movant relies on a representative claim in its § 101 analysis, it bears the burden of showing that the other asserted claims are 'substantially similar and linked to the same abstract idea.'"); *Versata Software, Inc. v. NetBrain Techs., Inc.*, No. 13-676-LPS-CJB, 2015 WL 5768938, at *4 (D. Del. Sept. 30, 2015) ("[A]s the moving party, Defendants bear the burden to demonstrate that their asserted Section 101 defense is well taken as to each claim."). Although JHA's patent comparison claim charts (Dkt. Nos. 28-1, 28-2, 28-3, 28-4) may be sufficient to demonstrate that Claim 1 of each Asserted Patent is representative of the other independent claims within the *same* Asserted Patent, the charts do not automatically demonstrate that Claim 1 of the '430 Patent is representative of the claims in the *other* Asserted Patents. In fact, JHA did not provide the Court with a comparison chart for the '956 Patent. (*Compare* Dkt. No. 28 at 9 ("[T]he '956 patent provides 11 claims, with a single independent 'system' claim. Each of the claims is analogous in scope to the 'system' claims recited in each of the other [A]sserted [P]atents.") *with Intellectual Ventures II LLC v. Sprint Spectrum,*

---

[4] Although PPS Data does not lodge a fulsome objection to JHA's assertions that Claim 1 of the '430 Patent is representative, the Court has discretion whether to treat Claim 1 of the '430 Patent as representative for purposes of this Motion. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) ("Courts *may* treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative.") (emphasis added).

*L.P.*, No. 2:17-CV-00661-JRG, 2018 WL 6804804, at *3 (E.D. Tex. Sept. 24, 2018) ("[H]igh-level, conclusory statements can hardly be considered 'analysis.'").)

Although the Asserted Patents in large part share the same specification, Defendants make no argument that the '430 Patent and the other Asserted Patents claim the *same* invention.[5] Accordingly, the Court finds that Defendants have not met their burden to show that Claim 1 of the '430 Patent is representative of the other Asserted Patents.

### B. Patent Eligibility of the '430 Patent

As an initial matter, JHA and PPS Data have both attached matters outside the pleadings to the Motion to support their respective positions. (*See* Dkt. No. 28 at 22–24 (citing U.S. Patent Application No. 14/185,667); Dkt. Nos. 28-9 (Notice of Abandonment of U.S. Patent Application No. 14/185,667)[6]; *see also* Dkt. No. 30-1 (Expert Declaration of Dr. Michael Shamos on behalf of PPS Data).) The Court exercises its discretion to exclude those matters. *See* FED. R. CIV. P. 12(d).

JHA assert that the claims in the '430 Patent fail at both the "ineligible concept" step and the "inventive concept" step of the *Alice* test. As to the "ineligible concept" step of *Alice*, JHA argues that the Asserted Patents are "directed to the abstract idea of check data processing, including receiving and transmitting electronic check information and images of paper checks, and storing financial information extracted from the checks at a central facility, all using a combination of known, conventional computer components." (Dkt. No. 28 at 18.) The Asserted Claims "cover nothing more than the manipulation of financial data, i.e. duplicating checks in image form and moving them from one place to another." (Dkt. No. 28 at 15.) The independent and dependent

---

[5] Despite the '924, '071, and '956 Patents being subject to terminal disclaimers, JHA has neither identified this issue as relevant nor explained how this issue affects the scope of the '924, '071, and '956 Patents with respect to either the '430 or '106 Patents.
[6] While U.S. Patent Application No. 14/185,667 may be related to the Asserted Patents, it is not part of the prosecution history of the Asserted Patents.

claims of the '430 Patent "recite the general computing steps of receiving and transmitting information," along with conventional and abstract processing steps. (*See* Dkt. No. 28 at 11.) Additionally, JHA argues that the aforementioned steps set forth in the '430 Patent "could easily be done by, for instance, a bank teller who mails copies of checks to banks and who sorts and reviews those checks." (*See id.* at 16.) JHA also argues that "the claims of the [A]sserted [P]atents are purely functional, and do not teach *how* to do anything," and any "[s]elective data transmission, conventional or otherwise, is still data transmission, and still abstract." (Dkt. No. 31 at 5, 6 (emphasis in original).)

For the "inventive concept" step of *Alice*, JHA argues that since the '430 Patent "contemplate[s] the computerization of known check clearing practices, using conventional hardware, in order to reduce paperwork and expedite processing," the '430 Patent "implicitly concede[s]" that the "underlying check clearing processes . . . were 'well-understood, routine and conventional' as of the April 2000 priority date." (*See* Dkt. No. 28 at 17, 26 (citing e.g., '430 Patent at 1:66–2:4).) Although the '430 Patent "purport[s] that the claimed check processing solution provides increased efficiencies, the purported improvements come from the use of known technologies." (*Id.* at 22.)

In response, PPS Data argues that the '430 Patent is not directed to an abstract idea but is instead "directed to a remote capture system that enables the capture of deposit information and images of physical checks and processing the check image and deposit information without actually transferring the check physically." (Dkt. No. 30 at 9.) Check image and data are routed "to different locations (including a central system, specific locations within a bank of first deposit, Federal Reserve Bank, maker bank, or correspondent bank) in a particular sequence" that "bypasses the MICR capture, deposit accounting, cash management and float processing systems

of the bank of first deposit." (Dkt. No. 30 at 10, 11; *see also id.* at 14.) The U.S. Patent and Trademark Office ("PTO") determined that "the transmission path bypassing limitation . . . distinguished the ['430 Patent] from the prior art." (Dkt. No. 32 at 5; *see also id.* at 6 ("The advance is a *novel* system where the transmission path bypasses MICR capture, deposit accounting, cash management, and float processing systems of the bank of first deposit.") (emphasis added).)[7] Since "the claims in the ['430 Patent] require[s] that checks be transmitted in a specific sequence and path," PPS Data argues that Claim 1 of the '430 Patent is not directed to an abstract idea. (Dkt. No. 32 at 5 (citing *Solutran, Inc. v. U.S. Bancorp*, 291 F. Supp. 3d 877, 889 (D. Minn. 2017)[8]).)

As to the "inventive concept" step of *Alice*, PPS Data argues that the PTO expressly identified the claimed "bypassing" limitation set forth in the '430 Patent as novel in the patent's Notice of Allowance. (Dkt. No. 32 at 6.) "Prior to the invention, depositing and clearing checks required individuals and businesses to take checks and physically deposit them at a financial institution" to be routed to processing centers for magnetic ink character recognition ("MICR") capture. (Dkt. No. 30 at 17.) However, by using imaging devices to capture check and image data and routing the same along a specific path to clear the check, "the present invention makes [traditional] MICR capture unnecessary." (*Id.* at 18.)

The Court is persuaded that it would benefit from a more developed factual record before determining whether Claim 1 of the '430 Patent is patent-eligible. Courts often deny motions

---

[7] However, the Court notes that "any novelty in implementation of the idea is a factor to be considered only in the second step of the *Alice* analysis." *Ultramercial, Inc. v. Hulu*, LLC, 772 F.3d 709, 715 (Fed. Cir. 2014).
[8] In view of the pending appeal of *Solutran*'s patent-eligibility decision, *see* Brief for Appellant at 34–55, *Solutran, Inc. v. U.S. Bancorp*, No. 19-1345 (Fed. Cir. Jan. 18, 2019), ECF No. 37, the Court refrains from considering PPS Data's arguments in view of *Solutran*.

seeking dismissal on the pleadings without prejudice to refiling the motion in order to obtain a more complete understanding of the claimed invention. *See Data Distribution Technologies, LLC v. BRER Affiliates, Inc.*, No. 12-4878 JBS/KMW, 2014 WL 4162765, at *7 (D. NJ Aug. 19, 2014) ("Defendants may resubmit their abstractness arguments at a later date, when there is a more complete record before the Court."); *Autumn Cloud LLC v. TripAdvisor, Inc.*, No. 2:16-CV-853-JRG-RSP, 2017 WL 1856232, at *1 (E.D. Tex. Apr. 3, 2017), *report and recommendation adopted*, No. 2:16-CV-853-JRG-RSP, 2017 WL 1838145 (E.D. Tex. May 6, 2017). For example, in *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, the Federal Circuit significantly relied on its prior construction of the claim term "enhance" as meaning "to apply a number of field enhancements in a distribute fashion" in the process of concluding that the asserted claim was patent eligible. 841 F.3d at 1292.

The Court finds that the determination of whether Claim 1 of the '430 Patent is valid under § 101 would benefit from a fuller factual record.[9] In particular, a more developed record would help the Court resolve the parties' dispute over whether the limitations set forth in Claim 1 of the '430 Patent constitute a non-abstract application, is unconventional, and whether the claimed invention relies on this arrangement, among other issues. *See Bascom*, 827 F.3d at 1350 ("[A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces."); *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1316 (Fed. Cir. 2016) (A "process specifically designed to achieve an improved technological result in conventional industry practice.").

---

[9] Judge Payne's claim construction order, which this Court has adopted, demonstrates that a fuller factual record would assist the Court in determining the patent-eligibility of Claim 1 of the '430 Patent. (*See* Dkt. No. 55; Dkt. No. 68.) Additionally, one-sided expert declarations (e.g., the excluded declaration of Dr. Shamos) are not helpful to the Court in determining whether Claim 1 of the '430 Patent is patent-eligible. *See supra* p. 9.

For all of these reasons, the Court cannot find, as a matter of law, that Claim 1 of the '430 Patent is directed to a patent-ineligible abstract idea and invalid at this time. This Court has been confronted with motions under § 101 that would not materially benefit from claim construction and the related development of the record. On the other hand, this Court, as here, has also been confronted with motions under § 101 where the opposite is true. Each motion and each case must be evaluated within the unique context of what the Court finds before it, from all sources and avenues. In this situation, more is needed than the Court has before it today.

## IV. CONCLUSION

JHA's Rule 12(c) Motion for Judgment of Invalidity Under 35 U.S.C. § 101 (Dkt. No. 28) is **DENIED**. However, this denial is without prejudice to JHA raising this issue under Federal Rule of Civil Procedure 56 with the benefit of the Court's ultimate claim construction, the development of a fuller factual record, and a more rigorous analysis on the representative nature of Claim 1 of the '430 Patent.

**So Ordered this**
**Mar 21, 2019**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE