**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| PPS DATA, LLC,<br><br>               Plaintiff,<br><br>    vs.<br><br>JACK HENRY & ASSOCIATES, INC.,<br><br>               Defendant. | Civil Action No. 2:18-cv-00007-JRG<br><br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT JACK HENRY & ASSOCIATES, INC.'S MOTION
FOR SUMMARY JUDGMENT OF INVALIDITY UNDER 35 U.S.C. § 101**

## TABLE OF CONTENTS

I.      STATEMENT OF ISSUES TO BE DECIDED BY THE COURT ............................... 1

II.     STATEMENT OF UNDISPUTED MATERIALS FACTS........................................... 2

III.    APPLICABLE LAW ...................................................................................................... 10

        A.      Abstract Ideas Are Not Patent-Eligible Subject Matter Under § 101............ 10

IV.     BACKGROUND OF THE TECHNOLOGY ................................................................ 13

V.      ANALYSIS ..................................................................................................................... 14

        A.      Independent Claim 1 of the '430 Patent is Representative of All the Asserted
                Claims........................................................................................................................ 15

        1.      Representative Method Claim – Claim 1 of the '430 Patent............................ 15

        B.      *Alice* Step One—The Claims of All Asserted Patents Are Drawn to an
                Abstract Idea. ........................................................................................................... 20

        C.      *Alice* Step Two—The Asserted Claims Are Not Limited by an Inventive
                Concept. ...................................................................................................................... 23

        D.      Post-*Alice,* the USPTO has rejected similar claims sought by PPS Data on the
                same subject matter. ................................................................................................. 25

VI.     CONCLUSION ............................................................................................................... 26

69048558.2

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
   890 F.3d 1354 (Fed. Cir. 2018).......................................................................10, 12

*Adickes v. S.H. Kress & Co.*,
   398 U.S. 144 (1970).................................................................................................12

*Affinity Labs of Tex., LLC v. Amazon.com Inc.*,
   838 F.3d 1266 (Fed. Cir. 2016), *cert denied*, 137 S. Ct. 1596................................15

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)............................................................................................12, 13

*Alice Corp. v. CLS Bank Int'l*,
   573 U.S. 208 (2014).....................................................................................10, 11, 23

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
   788 F.3d 1371 (Fed. Cir. 2015).................................................................................11

*Bancorp Serv., L.L.C. v. Sun Life Assur. Co. (U.S.)*,
   687 F.3d 1266 (Fed. Cir. 2012).................................................................................11

*Bascom Global Internet Services., Inc. v. AT&T Mobility LLC*,
   827 F.3d 1341 (Fed. Cir. 2016).................................................................................23

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018).................................................................................12

*Bilski v. Kappos*,
   561 U.S. 593 (2010).................................................................................................22

*BSG Tech LLC v. Buyseasons, Inc.*,
   899 F.3d 1281 (Fed. Cir. 2018)...........................................................................11, 12

*Celotex v. Catrett*,
   477 U.S. 317 (1986).................................................................................................13

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
   776 F.3d 1343 (Fed. Cir. 2014).................................................................16, 20, 22, 25

*CyberSource Corp. v. Retail Decisions, Inc.*,
   654 F.3d 1366 (Fed. Cir. 2011)...........................................................................12, 20, 21

69048558.2

*Dealertrack, Inc. v. Huber,*
   674 F.3d 1315 (Fed. Cir. 2012)..............................................................................20

*Diamond v. Diehr,*
   450 U.S. 175 (1981)................................................................................................22

*Digitech Image Technologies, LLC v. Electronics for Imaging, Inc.*(*Digitech*),
   758 F.3d 1344 (Fed. Cir. 2014)..............................................................................21

*Enfish, LLC v. Microsoft Corp.,*
   822 F.3d 1327 (Fed. Cir. 2016)..............................................................................20

*Fidelity Nat'l Info. Services, Inc. v. DataTreasury Corp.* (*DataTreasury I*),
   CBM2014-00020, Paper 34 (PTAB Apr. 29, 2015) ...............................................21

*Fidelity Nat'l Info. Services, Inc. v. DataTreasury Corp.* (*DataTreasury II*),
   CBM2014-00021, Paper 34 (PTAB Apr. 29, 2015) ...............................................21

*Gottschalk v. Benson,*
   409 U.S. 63 ............................................................................................................21

*In re Grams,*
   888 F.2d 835 (Fed. Cir. 1989)................................................................................20

*Image Processing Techs., LLC v. Samsung Elecs. Co.,*
   No. 2:16-CV-00505-JRG, 2017 WL 10185856 (E.D. Tex. Oct. 24, 2017)............25

*Integrated Tech. Sys., Inc. v. First Internet Bank of Indiana,*
   No. 2:16-CV-00417-JRG-RSP, 2017 WL 631195 (E.D. Tex. Jan. 30, 2017).................10, 20

*Intellectual Ventures v. Capital One Bank,*
   792 F.3d 1363 (Fed. Cir. 2015)........................................................................24, 25

*Internet Patents Corp. v. Active Network, Inc.,*
   790 F.3d 1343 (Fed. Cir. 2015)..............................................................................10

*Mayo Collaborative Services v. Prometheus Laboratories, Inc.,*
   566 U.S. 66 (2012).............................................................................................11, 22

*McRO, Inc. v. Bandai Namco Games Am. Inc.,*
   837 F.3d 1299 (Fed. Cir. 2016)..............................................................................10

*Network Architecture Innovations LLC v. CC Network Inc.,*
   No. 2:16-CV-00914-JRG, 2017 WL 1398276 (E.D. Tex. Apr. 18, 2017) .............20

*RecogniCorp, LLC v. Nintendo Co.,*
   855 F.3d 1322 (Fed. Cir. 2017)..............................................................................11

iii

*SiRF Tech., Inc. v. Int'l Trade Comm'n,*
   601 F.3d 1319 (Fed. Cir. 2010)...................................................................................23, 24

*Smart Sys. Innovations, LLC v. Chicago Transit Auth.,*
   873 F.3d 1364 (Fed. Cir. 2017).........................................................................................22

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC,*
   874 F.3d 1329 (Fed. Cir. 2017), *cert. denied*, 139 S. Ct. 378 (2018) ..............................10, 11

**Statutes**

35 U.S.C. § 101 .................................................................................................................. ibid.

**Other Authorities**

Fed. R. Civ. P. 56(a) ............................................................................................................12

Pursuant to FRCP 56, Jack Henry & Associates, Inc. ("JHA") moves the Court to grant summary judgment of invalidity of the Asserted Claims of United States Patent Nos. 7,181,430 (the "'430 patent"); 7,216,106 (the "'106 patent"); 7,440,924 (the "'924 patent"); 7,624,071 (the "'071 patent"); and 8,660,956 (the "'956 patent") (collectively, the "asserted patents").   The Asserted Claims of the asserted patents are directed to deposit processing of checks—an abstract idea comprised of collecting, comparing, organizing, storing, and disseminating check information—and are not eligible for patent protection under 35 U.S.C. § 101.   Collecting, comparing, organizing, storing, and disseminating data is an exceedingly ancient and fundamental process that humans have conducted for centuries.   Implementing that abstract idea using well-known, generic, and conventional technology cannot transform an abstract idea into patentable subject matter.

JHA previously moved under Rule 12(c) to dismiss all of the Asserted Claims in the asserted patents for patent ineligibility under 35 U.S.C. § 101.   At the motion to dismiss stage, this Court declined to find that the '430 patent was directed to a patent-eligible idea, but rather found that such a determination "would benefit from a fuller factual record."   (Dkt. No. 69 at 12.)   Now that fact and expert discovery is closed, the summary judgment record demonstrates that all of the Asserted Claims in the asserted patents are patent ineligible and furthermore do not include any purported inventive concept.   For these reasons, as detailed further below, there is no genuine dispute of material fact that the Asserted Claims of the asserted patents fail to meet the requirements of patent eligibility under 35 U.S.C. § 101.

I.      STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

The Court is being requested to decide a single issue—whether the claims of the asserted patents are invalid under 35.U.S.C. § 101 for claiming unpatentable subject matter.   More specifically, the Court is being asked to decide whether PPS Data's asserted patents claim is an

abstract idea under the Supreme Court's *Alice* framework, and if so, whether the claims are limited by an inventive concept, such that they are otherwise patent eligible under § 101. Because the patents claim an abstract idea and are not limited by an inventive concept, JHA requests that the Court grant this motion and find that the patents asserted by PPS Data in this litigation are invalid under 35 U.S.C. § 101.

## II.    STATEMENT OF UNDISPUTED MATERIALS FACTS[1]

The following facts are undisputed by the parties:

1.      PPS Data asserts infringement of U.S. Patent Nos. 7,181,430; 7,216,106; 7,440,924; 7,624,071; and 8,660,956. (*See* Exhibits A—E, respectively.)

2.      The '430 patent was filed on April 28, 2000 and issued on February 20, 2007. (Plaintiff's Opening Claim Construction Brief, Dkt. No. 43, at 2.)

3.      The '106 patent was filed as a continuation-in-part of the application that resulted in the '430 patent and issued on May 8, 2007.  (*Id.*)

4.      The '924 patent was filed as a divisional of the application that resulted in the '430 patent and issued on October 21, 2008.  (*Id.*)

5.      The '071 patent was filed as a divisional of the application that resulted in the '430 patent and issued on November 24, 2009.  (*Id.*)

6.      The '956 patent resulted from multiple continuations and divisional applications originating from the application that resulted in the '430 patent and issued on February 25, 2014. (*Id.*)

7.      PPS Data asserts Claims 1, 4, 5, 7, 19, 22, 23, and 25 from the '430 patent; Claims 1–6 and 9–11 from the '106 patent; Claims 1, 5, 6, 12, 14, 16, and 17 from the '924

---

[1] Abbreviated and cited to herein as "SoUF."

patent; Claims 1, 5, 6, and 12 from the '071 patent; and claims 1, 5, and 6 from the '956 patent. (These will be referred to collectively herein as the "Asserted Claims.")

8.   Of these thirty-one (31) Asserted Claims, eight (8) are independent claims and are identified as follows:  Claims 1 and 19 of the '430 patent; Claim 1 of the '106 patent; Claims 1 and 12 of the '924 patent; Claims 1 and 12 of the '071 patent; and Claim 1 of the '956 patent. (*See* Exs. A–E.)

9.   The inventions claimed in the asserted patents include a system, a computer readable medium, and a physical process (i.e. method).  (Plaintiff's Response to Motion for Judgment of Invalidity Under 35 U.S.C. § 101, Dkt. No. 30, at 1).

10.   Of the eight (8) independent claims, one (1) is a system claim, three (3) are method claims using a system, and the remaining four (4) are computer-readable medium claims. (*Id*.)

11.   Specifically, of the eight (8) independent claims asserted: claim 1 of the '956 patent is sole system claim; claim 1 of the '430 patent, claim 1 of the '924 patent, and claim 1 of the '071 patent are all method claims; and claim 19 of the '430 patent, claim 1 of the '106 patent, claim 12 of the '924 patent, and claim 12 of the '071 patent are all computer-readable medium claims. (*Id*.)

12.   All of the Asserted Claims of the asserted patents claim a priority date from at least the filing date of April 28, 2000.  (Memorandum Opinion and Order, Dkt. No. 69, at 1–2.)

13.   All of the patents share the same title of "METHOD AND SYSTEM FOR PROCESSING FINANCIAL INSTRUMENT DEPOSITS PHYSICALLY REMOTE FROM A FINANCIAL INSTITUTION."  (*See* Exhibits A—E.)

69048558.2

14.     All of the asserted patents are directed to a "common theme"—"parties desiring to deposit financial instruments, typically paper checks, need not visit a financial institution (bank) to do so, and need not send a physical check to that institution, either." (Ex. F, Expert Report of Dr. Michael Shamos, Ph.D., J.D. Concerning Infringement, at ¶ 44)

15.     According to one of the inventors, each of the asserted patents is "significantly the same patent" and all deal with check processing. (Ex. G, Deposition of William Titus, dated April 3, 2019, at 25:18–26:21.)

16.     PPS Data's expert agrees that claim 1 of the '430 patent would be representative at a conceptual level. (Ex. R, Deposition of Michael Shamos, 78:06–78:15).

17.     Dr. Shamos further agrees that the Asserted Claims have many limitations in common and "many that are so similar they can barely be distinguished." (*Id.* at 211:05–212:04.

18.     Dr. Shamos further agrees that the subject matter of the asserted patents is identical and that "while the claims may not be identical, they all relate to the common set of inventions." *Id.*

19.     The inventions of the asserted patents are based on capturing information from checks, and images of checks, at locations remote from financial institutions. (Ex. F., Shamos Infringement Report at ¶ 47; *see also* Complaint for Patent Infringement (Dkt. No. 1) at ¶ 6 (characterizing the Plaintiff's patents as covering its "check imaging, processing, clearing, and other remote deposit capture technology."); Ex. G, at 25:18–26:21 (stating that each of the asserted patents is "significantly the same patent," and deals with "the process of capturing MICR images" or check processing.).)

20.     The '430 patent, '924 patent, '071 patent and '956 patent share a common specification. (Ex. F, Shamos Infringement Report at ¶ 45)

4

21.     There are slight differences in the specification of the '106 patent compared to the other asserted patents, but none of those differences are relevant to any of the disputed claim terms.[2] (PPS Opening Claim Construction Br., Dkt. No. 43, at 2–3.)

22.     Check processing has been performed for as long as there have been checks.  It has been performed at least since the 1970's.  (Ex. G at 29:5–23.)

23.     The "Summary and Objects of the Invention" section of the specifications of the asserted patents teach that the premise of the inventive process is the "use of electronic images of items to facilitate the processing and clearing of items" to "reduce the issues associated with the physical handling of paper items [i.e. checks] by financial institutions and to improve the collections of associated funds by processing electronic images of checks as opposed to the slower method of sending paper checks through the traditional check clearing routes."  (Ex. A, '430 pat. at col. 1, l. 67–col. 2, l. 4.)

24.     Depositing and clearing checks has been done by individuals since long before the April 2000 priority date of the asserted patents.  (*See*, *e.g.*, *id*. at col. 1, ll. 15–34.)

25.     In the 1970's checks were "processed" by humans who sorted the checks using a MICR reader/sorter machine or by hand, and transported the checks between banks.  (Ex. G at pp. 32–33.)

26.     In the 1970's if one didn't have a MICR reader/sorter, someone could still process the check by simply reading the information that was on the check.  (*Id.* at pp. 36–38.)

27.     The asserted patents and the claimed processes specifically contemplate processes or operations performed by human operators.  (Ex. A., '430 pat. at col. 6, ll. 49–54; col. 8, ll. 6–13, 24–35; col. 9, ll. 15–33; col. 10, ll. 4–22; ll. 31–36.)

---

[2] For the reasons stated in SoUF ¶¶ 14–21, references herein to the patent specification will cite to the '430 patent specification.

28.     The asserted patents describe the purported "advancement" as implementing known physical check depositing and clearing operations in an electronic process using conventional computer systems and components.  (Ex. A, '430 pat. at col. 1, ll. 28–61; col. 4, ll. 29–32.)

29.     The purported invention described in the asserted patents may be carried out using only a "general purpose computer."  (*Id*. at col. 4, ll. 32–64; col. 5, ll. 25–53; col. 7, ll. 33–46.)

30.     The alleged invention described in the asserted patents utilized known programming code and known transmission lines. (*Id.* at col. 5, ll. 1–53; *see also* Ex. G at pp. 98–99.)

31.     Mr. Titus acknowledged that the claimed invention of the asserted patents did not include inventive hardware.  (Ex. G, at pp. 55–56.)  Mr. Titus also acknowledged that the claimed invention did not involve any new methods of transmission, but instead used known transmission methods over existing transmission lines.  (*Id.* at pp. 98–99.)

32.     Consistent with Mr. Titus, the asserted patents describe how the central site/system routes electronic check data to correspondent banks or to the Federal Reserve Bank using then-existing "normal check clearing paths (i.e., *directly* to clearing and corresponding banks or through the FRB electronic clearing process)."  (Ex. A, '430 pat. at col. 3, ll. 2–6.)

33.     If one is knowledgeable, then check data that is electronically captured can be transmitted wherever one wishes. (Ex. G. 65:10–67:5.)

34.     During prosecution of the '106 patent, the USPTO issued a Non-Final Office Action double patenting rejection because the claims were not "patentably distinct" from the claims of the '430 patent.  (Ex. H, Excerpt of '106 patent prosecution history, Dkt. 43-15, pp. 153–65.)

6

35.     In the double patenting rejection, the Examiner stated that the subject matter in the '106 patent was fully disclosed by the '430 patent.  (*Id*. at pp.156–57.)

36.     On October 11, 2006, Applicants filed a Response to the Non-Final Office Action and also a Terminal Disclaimer to overcome the non-statutory double patenting rejection. (*Id*. at pp. 161–65.)

37.     The application which eventually became the '924 patent was also subject to a double patenting rejection from the USPTO. (*See* Ex. I, Excerpt of '924 patent prosecution history, Dkt. No. 43-18, pp. 156–68 and Dkt. No. 43-19, p. 2)

38.     On May 5, 2008, Applicants conducted an Examiner Interview to discuss the double patenting rejection.  (Ex. I at p. 168.)  In the Interview Summary, the Examiner stated, "Examiner Subramanian explained the Double Patenting rejection in the instant application w.r.t. US Patent 7,181,430.  Attorney Ellis agreed to consider the Examiner['s] explanation and file a Terminal Disclaimer." (*Id.*)

39.     On May 9, 2009, Applicants filed a Terminal Disclaimer to overcome the double patenting rejection of the '924 patent.  (*Id. at* pp. 156–58.)

40.     The application which would become the '071 Patent was also subject to a double patenting rejection from the USPTO.  (*See* Ex. J, Excerpt of '071 patent prosecution history, Dkt. No. 43-20, pp. 118–28.)

41.     On July 8, 2009, Applicants conducted an Examiner Interview to discuss a double patenting rejection.  On July 9, 2009, the USPTO issued an Interview Summary regarding the same.  (*Id*. at pp. 118–19.   In the Interview Summary, the Examiner stated, "Examiner Subramanian explained the potential double patenting rejection with respect to US Patent

69048558.2

7,440,924.  Attorney Ellis agreed to file a response after consulting [with] his client." (*Id*. at p.119.)

42.     On August 11, 2009, Applicants filed a Terminal Disclaimer to overcome the double patenting rejection. (*Id*. at 120–28).

43.     The application which would become the '956 Patent was also subject to a double patenting rejection from the USPTO.  (*See* Ex. K, Excerpt of '956 patent prosecution history, Dkt. No. 43-23, pp. 17, 35.)

44.     On August 20, 2013, Applicants conducted an Examiner Interview to discuss the double patenting rejection, the content of which was summarized in an Interview Summary that issued on October 7, 2013.  (*Id*. at p. 35.)

45.     In the Interview Summary, the Examiner stated, "Examiner Subramanian suggested that filing a terminal disclaimer w.r.t. the Patents identified above would overcome potential double patenting rejections."  (*Id*.)  The Interview Summary specifically referenced the '071 patent, the '924 patent, the '106 patent, and the '430 patent as part of the potential double patenting rejection. (*Id*.)

46.     On September 24, 2013, Applicants filed a Terminal Disclaimer with a Supplemental Amendment – "Terminal Disclaimer to Obviate a Double Patenting Rejection of a "Prior" Patent.  (*Id*. at p. 17.)  The Terminal Disclaimer specifically referenced the '071 patent, the '924 patent, the '106 patent, and the '430 patent.  (*Id*.)

47.     On February 20, 2014, PPS Data filed U.S. Pat. App. Serial No. 14/185,667 ("'the 667 application") which claimed priority to the '956 patent, the '071 patent, the '924 patent, and the '430 patent.  (*See* Ex. L, William Michaelson Expert Report, Exhibit 4 (patent portfolio of asserted patents.)

48.     On February 2, 2016 the UPSTO issued its first and only Non-Final Office Action for the '667 application. (Ex. M, '667 Application, Feb. 2, 2016 Office Action.)

49.     The Non-Final Office Action rejected the elected claims as being directed to non-statutory subject matter under 35 U.S.C. § 101. (*Id*. at pp.2–8.)

50.     In finding the claims to be directed to an abstract idea, the Non-Final Office Action stated, "[a]ll of the steps of the claim, collectively or as an ordered combination, correspond to bank deposit processing a plurality of checks which were deposited through at least one remote site, which is considered to be an abstract idea inasmuch as such activity involves obtaining and comparing intangible data, comparing new and stored information and using rules to identify options and using categories to organize, store and transmit information (which are examples of abstract idea[s]...Hence the steps of the claim, taken individually or as an ordered combination, correspond to abstract ideas." (*Id*. at p. 4.)

51.     The Non-Final Office Action also issued a double patenting rejection.  (*Id*. at pp.8–10.)  The USPTO specifically stated the patent-ineligible claims of the '667 application are not patentably distinct from the asserted patents because the claims of the instant application essentially recite all of the features recited in the asserted patents. (*Id.*)

52.     On October 12, 2016, the USPTO issued a Notice of Abandonment due to Applicants' failure to further prosecute the '667 application.  (Ex. N, '667 Application, Oct. 12, 2016 Abandonment.)

53.     Nothing in the asserted patents claims to improve the functionality of a computer. (*See generally* Exhibits A–E.)

54.     Generally, whether one sends an electronic copy of a check or the physical check, the same information is conveyed to process the check. (Ex. G at 42:19–43:18).

9

55.     As to the claimed invention, a maker bank can still process a check regardless if it receives a paper copy of the check or an electronic image of the check through the claimed invention.  (Ex. G. at 109:13–110:5.)

## III.     APPLICABLE LAW

### A.     Abstract Ideas Are Not Patent-Eligible Subject Matter Under § 101

In *Alice*, the Supreme Court provided a two-step framework for determining whether claims are patent eligible. 573 U.S. 208, 217–18 (2014).  *Alice* directs courts to first "determine whether the representative claims are 'directed to' a judicial exception, such as an abstract idea." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017), *cert. denied*, 139 S. Ct. 378 (2018) (citing *Alice*, 573 U.S. at 217). Fundamental economic and conventional business practices are "claims most susceptible to conquest by § 101.  *Integrated Tech. Sys., Inc. v. First Internet Bank of Indiana*, No. 2:16-CV-00417-JRG-RSP, 2017 WL 631195, at *4 (E.D. Tex. Jan. 30, 2017), *report and recommendation adopted*, No. 2:16-CV-00417-JRG-RSP, 2017 WL 617673 (E.D. Tex. Feb. 15, 2017), *aff'd*, 712 F. App'x 1007 (Fed. Cir. 2018), *cert. denied,* 139 S. Ct. 105, 202 L. Ed. 2d 30 (2018). "Patent law does not protect claims to an 'asserted advance in the realm of abstract ideas . . . no matter how groundbreaking the advance.'" *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1359 (Fed. Cir. 2018). "[T]he claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1312 (Fed. Cir. 2016) (citing *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)). "Claims directed to generalized steps to be performed on a computer using conventional computer activity are not patent eligible." *Two-Way Media*, 874 F.3d at 1337 (citing *Internet Patents*, 790 F.3d at 1348–49).

69048558.2

If the claims are determined to be directed to an abstract idea, then *Alice* Step Two requires courts to next consider "whether the claims contain an 'inventive concept' sufficient to 'transform the nature of the claim into a patent-eligible application.'" *Id*. at 1337 (citing *Alice*, 573 U.S. at 217–18).   *Alice* directs courts to "consider the elements of each claim both individually and 'as an ordered combination' . . . ." *Alice*, 573 U.S. at 217 (citing *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. 66, 79 (2012)).

The Federal Circuit has recently reaffirmed that "[t]o save a patent at step two, an inventive concept must be evident in the claims." *Two-Way Media*, 874 F.3d at 1338 (citing *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017)).   Claim limitations that recite "conventional, routine and well understood applications in the art" are insufficient to "supply an inventive concept." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018) (citing *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1378 (Fed. Cir. 2015)).   Indeed, "[s]imply appending conventional steps, specified at a high level of generality," implementing an idea on a "general-purpose computer," or "limiting the use of an abstract idea 'to a particular technological environment'" does not meet the bar of supplying an inventive concept. *Alice*, 573 U.S. at 222–23 (citations omitted).

"[G]eneric computer implementation is not generally the sort of 'additional featur[e]' that provides any 'practical assurance that the process is more than a drafting effort designed to monopolize the [abstract idea] itself.'" *Alice*, 573 U.S. at 223–224. (citations omitted).   Rather, "[t]o salvage an otherwise patent-ineligible process, a computer must be integral to the claimed invention, facilitating the process in a way that a person making calculations or computations could not." *Bancorp Serv., L.L.C. v. Sun Life Assur. Co. (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012).   In other words, using a computer to more efficiently carry out tasks that "can be

11

performed in the human mind, or by a human using a pen and paper," does not constitute an inventive concept. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011).

"Whether a combination of claim limitations supplies an inventive concept that renders a claim 'significantly more' than an abstract idea to which it is directed is a question of law," and "[u]nderlying factual determinations may inform this legal determination." *BSG*, 899 F.3d at 1290 (citing *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018)). It may be a question of fact requiring the weighing of evidence to determine if the additional limitations beyond the abstract idea were well known, routine and conventional. But "[i]n a situation where the specification admits the additional claim elements are well-understood, routine, and conventional, it will be difficult, if not impossible, for a patentee to show a genuine dispute." *Aatrix*, 890 F.3d at 1356. And "When there is no genuine issue of material fact regarding whether the claim element or claimed combination is well-understood, routine, conventional to a skilled artisan in the relevant field, this issue can be decided on summary judgment as a matter of law." *Berkheimer*, 881 F.3d at 1368. In particular, *Berkheimer* provides that where the specification of an asserted patent is clear, and the claims plainly pertain to known processes implemented through the utilization of known computer components, there is no fact question to be determined and the claims are invalid as a matter of law. *See id*. at 1366–70.

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any evidence must be viewed in the light most favorable to the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when there is no genuine

dispute of material fact. *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine [dispute] of material fact." *Anderson*, 477 U.S. at 247–48. The substantive law identifies the material facts, and disputes over facts that are irrelevant or unnecessary will not defeat a motion for summary judgment. *Id.* at 248. A dispute about a material fact is "genuine" when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party must identify the basis for granting summary judgment and evidence demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323.

## IV.    BACKGROUND OF THE TECHNOLOGY

The asserted patents share nearly identical specifications and concern the same invention—"check imaging, processing, clearing, and other remote deposit capture technology" as it relates to check data processing. (*See* SoUF ¶¶ 14–21.) The "Summary and Objects of the Invention" section of the specifications of the asserted patents teach that the premise of the alleged inventive process is to "reduce the issues associated with the physical handling of paper items [i.e. checks] by financial institutions and to improve the collections of associated funds by processing electronic images of checks as opposed to the slower method of sending paper checks through the traditional check clearing routes." (*See* SoUF ¶ 23.). Stated differently, the claimed invention attempts to apply known computer components to routine and conventional check processing.

However, not only was check processing routine and conventional at the time of the invention, the specifications indicate, that the concepts of electronic check imaging, outsourcing, electronic transmission of data, or electronic processing of check information were also not new.

13

As a specific example, Figure 1 "illustrates an overview of a process of capturing and processing deposits from financial institutions and their branches which can be adapted to incorporate some of the features of the present invention."  (Ex. A, '430 pat. at col. 3, ll. 64-67.)  Thus, Figure 1 is prior art, and depicts a bank of first deposit, a central site, a bank of first deposit check capture system, and a maker bank site.  Notably, the specifications also contain over nine pages of prior art citations relating to the electronic processing of checks, financial documents, and data.

It is undisputed that check processing has been done by humans since at least the 1970's. (SoUF ¶ 22.)  The information used to process checks that are electronically captured is the same information used to process checks by hand. (SoUF ¶¶ 24–27.)  A bank can process a check if it receives an electronic copy of the information through the claimed invention or if the check is physically presented.  (SoUF ¶ 55.)  Therefore the invention relates merely to conventional computing steps related to data processing—i.e. sending, receiving, reading, and storing data— known long before the alleged invention of the asserted patents.

## V.    ANALYSIS

The claims of the asserted patents are drawn to patent-ineligible subject matter under *Alice's* two-step analysis.  First, the claims of the asserted patents are directed to the abstract idea of deposit processing of checks which merely involves collecting, comparing, organizing, storing, and disseminating check information.  Second the claims' use of generic computer components to perform the abstract idea does not provide an "inventive concept."

Prior to the application of the two-step analysis, JHA first considers the representative nature of all of the Asserted Claims to show the substantial similarity that links the Asserted Claims to the same abstract subject matter—deposit processing of checks.

14

A. **Independent Claim 1 of the '430 Patent is Representative of All the Asserted Claims**

Each of the Asserted Claims is directed to the same claimed invention and has no discernable difference for the purpose of determining patent eligibility.  Indeed, Plaintiff's expert and one of the inventors of the asserted patents agree as to the similarity among the patents.  (*See* SoUF ¶¶ 14–15.)  Plaintiff's expert acknowledges that all of the asserted patents are directed to a "common theme."  (SoUF ¶ 14.)  During the deposition of co-inventor William Titus, he admitted that each of the asserted patents is "significantly the same patent," and deals with "the process of capturing MICR images" or check processing."  (SoUF ¶ 15.)

Additionally, all of the asserted patents that issued after the '430 Patent are subject to Terminal Disclaimers which the applicants submitted in order to overcome double patenting rejections over the '430 patent. (SoUF ¶¶ 34–46.)

1. **Representative Method Claim – Claim 1 of the '430 Patent**

While the Asserted Claims involve system, method, and software claims, there is no meaningful distinction between them for purposes of analyzing their eligibility under 35 U.S.C. § 101.  Claims that are grounded by the same meaningful limitations will generally rise and fall together, and claim drafting strategies that attempt to circumvent § 101 using, for instance, highly stylized language, hollow field-of-use instructions, or the recitation of token processing activity should not be credited.  For example, where, as here, system claims recite a handful of computer components in generic, functional terms that would encompass any device capable of performing the same ubiquitous receiving, sending and storage functions required by the method claims, those system claims do not provide any substantial limitations beyond the abstract idea itself sufficient to render the application of the abstract idea patentable.  *See*, *e.g.*, *Affinity Labs of*

15

*Tex., LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016), *cert denied*, 137 S. Ct. 1596 (2017).

Each of the Asserted claims describes a central system (construed as a "processing system located at a central site") receiving, processing, analyzing and transmitting data. The claims may slightly differ with respect to where the data is sent, or where the data is not sent; as well as whether the data includes electronic check data, check image data, or both.  But these differences do not change the fact that all of the Asserted claims are "substantially similar and linked to the same abstract idea" of deposit processing of checks. *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348–49 (Fed. Cir. 2014). Claim 1 of the '430 patent, reproduced below, is representative of this approach.

> 1. A method for deposit processing at a central system a plurality of checks deposited at a remote site with accompanying deposit information, comprising:
>
>> the central system receiving deposit information for a plurality of different deposit transactions, with the deposit information including for each of the different deposit transactions a deposit account designation, electronic check data and check image data for at least one check to be deposited, wherein the central system is separate from MICR capture, deposit accounting, cash management, and float processing systems for a bank of first deposit and wherein the deposit account designation for each of at least a subset of the plurality of the deposit transactions is to a different bank of first deposit;
>>
>> the central system transmitting the electronic deposit data and optionally the check image data for each different deposit transaction of the subset of the plurality of the deposit transactions to a respective different one of the banks of first deposit;
>>
>> the central system performing at least one of sorting the received deposit information and error checking the received deposit information before transmission to any of the MICR capture, deposit accounting, cash management, and float processing systems of each of the different banks of first deposit designated in the respective deposit account designations in the deposit information; and

16

the central system transmitting electronic check data and the check image data directly or indirectly to a maker bank or a Federal Reserve Bank or a correspondent bank in a transmission having a transmission path that bypasses the MICR capture, deposit accounting, cash management, and float processing systems of the bank of first deposit for that deposit transaction.

(Ex. A, '430 pat. at col. 18, ll. 17–51.)

The other claims in the asserted patents do not differ from Claim 1 of the '430 Patent for purposes of determining subject matter eligibility.  Claims 4 and 5 of the '430 Patent are dependent upon Claim 1 and add an additional limitation of the central system determining what data is required by the Federal Reserve, and transmitting that data to the Federal Reserve based on that determination.  (*See id*. at col. 18, l. 62–col. 19, l. 25.)  Claim 7 is dependent upon Claim 1 and merely adds a notification sent to the remote site.  (*See id*. at col. 19, ll. 33–35.)

Independent Claim 19 provides for "computer-readable medium" that performs the method steps recited by Claim 1 which causes a machine to perform almost identical steps as Claim 1.  (*See id*. at col. 20, l. 42–col. 21, l. 15.)  Claims 22 and 23 are dependent upon Claim 19 and add an additional limitation of determining what data is required by the maker bank and transmitting that data to the maker bank.  (*See id*. at col. 21, ll. 28–61.)  Claim 25 is dependent upon Claim 19 and adds a notification sent to the remote site.  (*See id*. at col. 22, ll. 1–4.)

a.   The '106 Patent:

Independent Claim 1 of the '106 Patent is similar to Claim 1 of the '430 patent.  (*See* Ex. B, '106 pat. at col. 24, ll. 15–56.)  It describes a general computer readable medium at a central system performing the receipt, processing, analyzing and transmission of electronic data that was already acquired from a physical check.  (*Id*.)  Claims 2, 3, 4, 5 and 6 are all dependent on Claim 1. Claims 2-5 add an additional limitation defining what constitutes the "deposit parameter"

17

stated in Claim 1.  (*See id.* at col. 24, l. 57–col. 25, l. 5.)  Claim 6 adds a limitation where the

deposit parameter is compared against customer deposit limits.  (*See id.* at col. 25, ll. 6–18.)

Claim 9 is dependent on Claim 1 and adds a limitation of program code receiving and

sending information from and to different banks of first deposit.  (*See id.* at col. 25, ll. 46–55.)

Claims 10 and 11 are dependent on Claim 1 and add a limitation that describes program code

determining if a printed copy of the check is needed by the maker bank and transmitting either

the printed or electronic copy of the check.  (*See id.* at col. 25, l. 56–col. 26, l. 3.)

   b. The '924 Patent:

Claim 1 of the '924 patent is similar in scope to claim 1 of both the '430 and '106

patents.  (*See* Ex. C, '924 pat. at col. 17, l. 60–col. 18, l. 21.)  The claim describes the same

operations by a central system, including receiving, processing, analyzing, and transmitting data

that was already acquired from a physical check.  (*Id.*)  Claims 5 and 6 are dependent upon

Claim 1 and add an additional limitation of determining what data is required by the maker bank

and transmitting that data for printing or sending directly to the maker bank.  (*See id.* at col. 18,

ll. 33–46.)

Independent claim 12 is similar to claim 1 of the '924 patent.  (*See id.* at col. 19, ll. 17–

50.)  It describes a computer-readable medium for deposit processing at a central system.  (*Id.*)

Claim 14 is dependent upon claim 12 and states that the computer-readable medium includes

program code for sending check image data.  (*See id.* at col. 19, ll. 55–57.)  Claims 16 and 17 are

dependent upon claim 12 and add an additional limitation of program code that determines what

data is required by the maker bank and transmitting that data for printing or directly to the maker

bank.  (*See id.* at col. 19, l. 62–col. 20, l. 6.)

c.    The '071 Patent:

Claim 1 of the '071 patent is similar in scope to claim 1 of the '430, '106, and '924 patents.  (*See* Ex. D, '071 pat. at col. 18, ll. 8–29.)  The claim describes a method for deposit processing at a central system where computers are used to perform the operations of receiving, processing, analyzing, and transmitting data that was already acquired from a physical check. (*Id*.)  Claims 5 and 6 are dependent upon claim 1 and add an additional limitation of the central system determining what data is required by the maker bank and transmitting that data for printing or directly to the maker bank.  (*See id*. at col. 18, ll. 39–52.)

Independent claim 12 is similar to claim 1 of the '071 patent.  (*See id*. at col. 19, ll. 23–49.)  It too describes a computer-readable medium for deposit processing at a central system using computers to perform the operations of receiving, processing, analyzing, and transmitting data that was already acquired from a physical check.  (*Id*.)

d.    The '956 Patent:

Claim 1 of the '956 patent is similar in scope to claim 1 of the '430, '106, '924, and '071 patents as it also describes deposit processing at a central system using computers to perform the operations of receiving, processing, analyzing, and transmitting data that was already acquired from a physical check. (*See* Ex. E, '956 pat. at col. 18, ll. 8–31.)  Claims 5 and 6 are dependent upon claim 1 add an additional limitation of one or more computers determining what data is required by the maker bank and transmitting that data for printing or directly to the maker bank. (*See id*. at col. 18, ll. 45–55.)

The substantial overlap in the claim subject matter among the independent method claims, as purported by Plaintiff's own expert (SoUF ¶¶ 14, 16–18), the agreement to terminal disclaimers by the inventors to overcome double patenting rejections (SoUF ¶¶ 34–46), the statements by Inventor Titus (SoUF ¶¶ 15, 19), and the above analysis demonstrated that all of

19

the Asserted Claims are "substantially similar and linked to the same abstract idea" of check processing. *Content Extraction*, 776 F.3d at 1348–49.  As such, the Court need only consider the independent method Claim 1 of the '430 patent as representative of all Asserted Claims.

    **B.**    *Alice* **Step One—The Claims of All Asserted Patents Are Drawn to an Abstract Idea.**

    In determining if a claim is directed to an abstract idea, it is appropriate for the Court to compare the claims at issue to those claims already found to be directed to abstract ideas. *Enfish, LLC v. Microsoft Corp.,* 822 F.3d 1327, 1334 (Fed. Cir. 2016).  And as noted by the Federal Circuit, "fundamental economic and conventional business practices are often found to be abstract ideas, even if performed on a computer." *Id.*  This Court and others have held true to this proposition. *See supra* Section III.A (citing *Integrated Tech. Sys,* 2017 WL 631195, at \*4 (holding that claims directed to transfer of money were abstract); *Network Architecture Innovations LLC v. CC Network Inc.*, No. 2:16-CV-00914-JRG, 2017 WL 1398276, at \*5 (E.D. Tex. Apr. 18, 2017) ("The concept of pairing advertisements with content requested by the user over the Internet is not new, and is an idea that the Federal Circuit has repeatedly found as abstract."); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012) (holding that "the basic concept of processing information through a clearinghouse," i.e. steps of receiving data from one source, selectively forwarding that data, and then forwarding reply data to the first source, were not patentable subject matter); *see also CyberSource Corp.*, 654 F.3d at 1370 (finding the "mere collection and organization of data" insufficient to satisfy § 101); *In re Grams*, 888 F.2d 835, 840 (Fed. Cir. 1989) (holding that "data-gathering" steps cannot make an otherwise nonstatutory claim statutory). The Federal Circuit has also recognized that processes that can be completed by human actions are abstract ideas. *See, Content Extraction*, 776 F.3d at 1347; *CyberSource Corp.*, 654 F.3d at 1372–73.

Likewise, the Federal Circuit has consistently rejected claims that recite the abstract ideas of manipulating or reordering data, or generating additional data. *Digitech Image Technologies, LLC v. Electronics for Imaging, Inc.*(*Digitech*), 758 F.3d 1344, 1350–51 (Fed. Cir. 2014) (finding claims directed to "taking existing information . . . and organizing this information into a new form," without more, were abstract); *see also Gottschalk v. Benson*, 409 U.S. 63, 68 (1972) (holding that a process for converting signals from one form to another was ineligible because it is "so abstract and sweeping as to cover both known and unknown uses" of that conversion technique); *CyberSource Corp.*, 654 F.3d at 1373–75 (finding patent ineligible a claim to a device "for detecting fraud in a credit card transaction" because "[t]he mere manipulation or reorganization of data" is insufficient to confer patent eligibility.)

The Patent Trial and Appeal Board (PTAB) issued two instructive Final Written Decisions in 2015 which are particularly instructive. *See* Ex. O, *Fidelity Nat'l Info. Services, Inc. v. DataTreasury Corp.* (*DataTreasury I*), CBM2014-00020, Paper 34 (PTAB Apr. 29, 2015), *aff'd*, *DataTreasury Corp. v. Fidelity Nat'l Info. Services, Inc.*, 669 Fed. Appx. 572, 573 (Fed. Cir. 2016) (Rule 36 affirmance); Ex. P, *Fidelity Nat'l Info. Services, Inc. v. DataTreasury Corp.* (*DataTreasury II*), CBM2014-00021, Paper 34 (PTAB Apr. 29, 2015), *aff'd*, *DataTreasury Corp.*, 669 Fed. Appx. at 573 (Rule 36 affirmance).  The patents at issue in the *DataTreasury I* and *II* Covered Business Method Reviews, involved United States Patent Nos. 5,910,988 (the '988 patent) and 6,032,137 (the '137 patent), respectively. Both patents were entitled "Remote Image Capture with Centralized Processing and Storage," and both patents were "directed to a system for remote data acquisition, and centralized processing and storage of the acquired data," with the object of providing "an automated system to manage and store captured electronic and paper transactions from various activities including banking and

21

consumer applications."  (Ex. P at 3; Ex. O at 2–3.)  Significantly, the '137 patent specifically addressed check processing much like the asserted patents here.

The PTAB determined that the claims of the '137 patent were directed to the abstract idea of transferring information from one location to another using encryption.  (Ex. O at 15.)  In finding that the steps of the claims did not limit the claims beyond the abstract idea, the PTAB held that the claim limitations were "merely an attempt to limit the use of the abstract idea to a particular field of use or add token post solution components, which has long been held insufficient to save a claim."  (*Id.* at 20 (citing *Alice*, 573 U.S. at 222; *Mayo*, 533 U.S. 72–73; *Bilski*, 561 U.S. 593, 610–11 (2010); *Diamond v. Diehr*, 450 U.S. 175, 191 (1981).)

In addition to *DataTreasury*, the Federal Circuit recognized that claims directed to check processing were an abstract idea in *Content Extraction*, 776 F.3d at 1347.  In that matter, the plaintiff contended that Diebold's ATM machines infringed on its patents by depositing checks at ATM's.  In conducting the two step *Alice* analysis, the Court noted that the humans have always performed the functions of data collection, recognition, and storage.  "And banks have, for some time, recognized relevant data such as the amount, account number, and identity of account holder, and stored that information in their records." *Id.*

Just like *DataTreasury, Content Extraction*, and the myriad above cited cases, the asserted patents are directed to the abstract fundamental business process of check processing which is nothing more than organizing, processing, and transmitting data that is contained on a physical copy of a check.  The Asserted Claims do not identify a new type of information that can be utilized to process checks but merely describe a way to process, organize and transmit that information using already known components.  This is abstract.  *Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, 873 F.3d 1364, 1372–73 (Fed. Cir. 2017) ("The Asserted Claims

are not directed to a new type of bankcard, turnstile, or database, nor do the claims provide a method for processing data that improves existing technological processes. Rather, the claims are directed to the collection, storage, and recognition of data.")

It is undisputed that check processing was known and practiced long before the claimed invention and has historically been performed by humans.  (SoUF ¶¶ 22, 24–27.) The asserted patents describe traditional check depositing and processing as requiring a physical presentation of a check to the financial institution, and further characterize the claimed inventions as an improvement to traditional check processing procedures.  (*See, e.g.*, Ex. A, '430 Patent. at col. 1, ll. 16–61.)  The claimed invention is therefore directed to the abstract fundamental business concept of check processing that has been historically been performed by humans and can be performed by humans.

### C.   *Alice* Step Two—The Asserted Claims Are Not Limited by an Inventive Concept.

After identifying the abstract idea, the second step of the *Alice* test requires the Court to "examine the elements of the claim [, both individually and as an ordered combination,] to determine whether it contains an inventive concept sufficient to transform the claims abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566 U.S. at 79) (internal quotations omitted).  It is well-established that claims directed to an abstract idea are not made patentable by calling for performance "on a set of generic computer components." *Bascom Global Internet Services., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016). Rather, "[i]n order for the addition of a machine to impose a meaningful limit on the scope of a claim, it must play a significant part in permitting the claimed method to be performed, rather than function solely as an obvious mechanism for permitting a solution to be achieved more quickly." *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1333 (Fed. Cir. 2010).  Neither

23

"[a] simple instruction to apply an abstract idea on a computer," nor "claiming the improved speed or efficiency inherent with applying the abstract idea on a computer" satisfies the requirement of an "inventive concept." *Intellectual Ventures v. Capital One Bank*, 792 F.3d 1363, 1367 (Fed. Cir. 2015).

The asserted patents claim the use of general computers to expedite performance of the same routine and conventional deposit processing tasks previously performed by humans. (SoUF at ¶¶ 19, 21–23.)  But even with this expedited performance, the invention does not change the deposit processing process and does not provide any information to the maker bank that is not already present on the check.  As testified to by inventor William Titus, a maker bank can still process a check regardless if it receives a paper copy of the check through traditional means, or an electronic image of the check through the claimed invention. (Ex. G at 106–10.)  In fact, several of the dependent claims allow for the printing and delivery of a physical copy of the check.  (*See* Ex. A at claims 4, 5, 22; Ex. B at claims 10, 11; Ex. C at claims 5, 6, 16, 17; Ex. D at claims 5, 6; Ex. E at claims 5, 6.)  Therefore, the claimed invention merely involves transmission of the same information that is present on a physical check and, in some cases, actually requires delivery of a physical copy of the same check.  As such, the computer components do not provide an inventive concept, as required to transform the nature of the claims into patent-eligible subject matter. *See SiRF Tech.*, 601 F.3d at 1333.  They merely perform tasks that were routinely and conventionally performed by humans at the time of the invention using only generic computer components.

To perform these conventional tasks, the Asserted Claims contain purely functional language of limitations performed by conventional computer processors to receive, process, and transmit data. The only computer component recited in the claims–the "central system"–has been

construed by the Court as nothing more than a "processing system at the central site."  (Dkt. No. 55 at 22.)  And the specifications for each of the asserted patents explicitly discloses that "[a]n exemplary system for implementing the portions of the invention includes a general purpose computing device in the form of a conventional computer, including a processing unit, a system memory, and a system bus."  (Ex. A, '430 pat. at col. 5, ll. 25–29; Ex. B, '106 pat. at col. 6, ll. 39–43; Ex. C, '924 pat. at col. 5, ll. 20–25; Ex. D, '071 pat. at col. 5, ll. 32–35; Ex. E, '956 pat. at col. 5, ll. 33–36.)

Recycling conventional computer equipment and using known technologies in their customary fashion to implement the abstract objective of reducing the time and cost associated with routine and conventional check data processing, does not qualify for patent protection under § 101.  *See Mayo*, 566 U.S. at 79 (the claims in no way purport to improve the functioning of the computer itself); *Image Processing Techs., LLC v. Samsung Elecs. Co.*, No. 2:16-CV-00505-JRG, 2017 WL 10185856, at *5 (E.D. Tex. Oct. 24, 2017), quoting, *Intellectual Ventures I*, 792 F.3d at 1370 ("As discussed above, our precedent is clear that merely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea.") *Content Extraction*, 776 F.3d, at 1348 (holding that the abstract idea of recognizing and storing information from hard copy documents using a scanner and computer to a particular technological environment was not patentable).

> **D.**     **Post-*Alice*, the USPTO has rejected similar claims sought by PPS Data on the same subject matter.**

It is important to remember that all of the asserted patents were issued prior to the Supreme Court deciding *Alice*.  On February 2, 2016, after the Supreme Court decided *Alice*, the USPTO issued an Office Action in connection with United States Patent Application No. 14/185,667 (the '667 application).  (SoUF ¶ 48.)  The '667 application claimed priority to the

asserted patents, and has a virtually identical claim scope to the asserted patents.  (*See* Ex. Q, '667 patent application.)  In fact, the USPTO issued a Final Office Action rejecting the claims on the basis of double patenting.  (SoUF ¶ 51.)

In addition to double patenting, the USPTO also rejected all of the then pending claims in the '667 application under 35 U.S.C. § 101 as being directed to non-statutory subject matter pursuant to the *Alice* decision.  (SoUF ¶ 49.)  In doing so the examiner stated:

> All of the steps of the claim, collectively as an ordered combination, correspond to bank deposit processing a plurality of checks which were deposited through at least one remote site, which is considered to be an abstract idea inasmuch as such activity involves obtaining and comparing intangible data, comparing new and stored information and using rules to identify options and using categories to organize, store and transmit information (which are examples of abstract idea[s] in the July 2015 *Update of Interim Guidance Identifying Abstract Ideas*).  Hence the steps of the claim, taken individually or as an ordered combination, correspond to abstract ideas.").

(SoUF ¶ 50.)

In the face of the § 101 rejection, the applicants failed to file a response and allowed the application to go abandoned.  (SoUF ¶ 52.)  The applicants' failure to respond and the subsequent abandonment is prima facie evidence of the unpatentable nature of the claims as acknowledged by the USPTO, and a tacit acknowledgement by the applicants that the claims presented in the '667 application were unpatentable under *Alice*. In line with the USPTO's determination of unpatentability, the claims of the asserted patents should likewise be found to be unpatentable.

## VI.   CONCLUSION

JHA prays that this motion be granted, that all of the claims of the asserted patents be found invalid under 35 U.S.C. § 101, and for all other relief to which it may be entitled.

26

Dated:  June 7, 2019.

Respectfully submitted,

By:  s/Jason A. Wietjes
Jason A. Wietjes
Texas Bar No. 24042154
jwietjes@polsinelli.com

POLSINELLI PC
2950 N. Harwood St., Ste. 2100
Dallas, TX 75201
Telephone:  (214) 661-5519
Facsimile:  (214) 594-5540

Russell S. Jones
Kansas Bar No. 26636
Missouri Bar No. 30814
rjones@polsinelli.com
Jay E. Heidrick
Kansas Bar No. 20770
Missouri Bar No. 54699
jheidrick@polsinelli.com

POLSINELLI PC
900 W. 48th Place
Kansas City, MO 64112
Telephone:  (816) 753-1000
Facsimile:  (816) 753-1356

Adam Daniels
California Bar No. 296466
adaniels@polsinelli.com

POLSINELLI LLC
2049 Century Park E., Ste. 2900
Los Angeles, CA 90067
Telephone:  (310) 556-6754
Facsimile:  (310) 556-1802

Randal S. Alexander
Illinois Bar No. 6298199
ralexander@polsinelli.com

POLSINELLI PC
150 N. Riverside Plaza, Ste. 3000
Chicago, Illinois 60606
Telephone:  (312) 819-1900
Facsimile:  (312) 819-1910

27

Jason D. Mazingo
Texas Bar No. 24055925
jason@mazingofirm.com

The Mazingo Firm, P.C.
102 N. College, Ste. 1033
Tyler, TX 75702
Telephone:  (903) 630 7123
Facsimile:  (903) 218-7849

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically on June 7, 2019 in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A).  Pursuant to Federal Rule Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by e-mail on June 7, 2019.

By:  s/Jason A. Wietjes
Jason A. Wietjes

28