```
 1              IN THE UNITED STATES DISTRICT COURT

 2             FOR THE EASTERN DISTRICT OF TEXAS

 3                     MARSHALL DIVISION

 4  PPS DATA, LLC              )(

 5                             )(    CIVIL ACTION NO.

 6                             )(    2:18-CV-07-JRG

 7  VS.                        )(    MARSHALL, TEXAS

 8                             )(

 9  JACK HENRY & ASSOCIATES,   )(    AUGUST 13, 2019

10  ET AL.                     )(    1:04 P.M.

11                     PRE-TRIAL HEARING

12         BEFORE THE HONORABLE JUDGE RODNEY GILSTRAP

13              UNITED STATES CHIEF DISTRICT JUDGE

14

15  APPEARANCES:

16  FOR THE PLAINTIFF: (See Attorney Attendance Sheet docketed
                        in minutes of this hearing.)
17

18  FOR THE DEFENDANTS:(See Attorney Attendance Sheet docketed
                        in minutes of this hearing.)
19

20  COURT REPORTER:    Shelly Holmes, CSR, TCRR
                       Official Reporter
21                     United States District Court
                       Eastern District of Texas
22                     Marshall Division
                       100 E. Houston Street
23                     Marshall, Texas  75670
                       (903) 923-7464
24

25  (Proceedings recorded by mechanical stenography, transcript
    produced on a CAT system.)
```

```
 1                         I N D E X

 2

 3   August 13, 2019

 4                                                  Page

 5        Appearances                                 1

 6        Hearing                                     3

 7        Court Reporter's Certificate              105

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                 COURT SECURITY OFFICER:  All rise.

2                 THE COURT:  Be seated, please.

3                 All right.  Counsel, this is the time set for

4    pre-trial matters to be taken up with the Court in the case

5    of PPS Data versus Jack Henry & Associates.  This is Civil

6    Case No. 2:18-CV-007.

7                 Let me call for announcements at this time.

8                 What says the Plaintiff?

9                 MR. MADDOX:  Appearances?

10                THE COURT:  Yes, I want an announcement, who you

11   are and are you ready to proceed?

12                MR. MADDOX:  Yes, we are.

13                THE COURT:  Give me your names.

14                MR. MADDOX:  Steven Maddox for the Plaintiffs.

15                THE COURT:  Introduce your co-counsel.

16                MR. MADDOX:  Anthony Son for the Plaintiffs, Kaveh

17   Saba for Plaintiffs, and Matt Ruedy.  We're from the firm

18   Maddox Edwards.

19                THE COURT:  All right.  And you're ready to

20   proceed with pre-trial?

21                MR. MADDOX:  Yes, we are.

22                THE COURT:  What says the Defendant?

23                MR. MAZINGO:  Your Honor, Jason Mazingo here on

24   behalf of Jack Henry & Associates, along with Jay Heidrick

25   and Adam Daniels, Jason Wietjes, and Randy Alexander.  And

1  our client rep, Your Honor, today is Andy Wimmer.  And we

2  are present and ready.

3       THE COURT:  All right.  Counsel, I have some

4  housekeeping matters to go over with you which I'll do in

5  just a moment, but as a part of those and before I go into

6  the typical housekeeping instructions with counsel, I have

7  a couple additional things that are not typical I want to

8  cover.

9       First of all, on the Plaintiff's side, it appears

10 that Jon Bentley Hyland appeared in this case as counsel --

11 co-counsel for Plaintiffs.  Mr. Hyland hasn't filed

12 anything in the case since February.  He has not withdrawn.

13 He either needs to appear, or he needs to withdraw.  And

14 somebody on the Plaintiff's side needs to get a message to

15 him that I'll expect him at trial or I'll expect him to

16 withdraw formally before trial.

17      Can somebody on the Plaintiff's side address

18 Mr. Hyland's status with -- for me, please?

19      MR. SON:  Yes, Your Honor.  Mr. Hyland actually

20 has withdrawn, and Your Honor did enter an order for his

21 withdrawal.  I noticed -- excuse me -- I noticed that, as

22 well, when the Court clerk sent us an email yesterday and

23 saw that his name was on that email -- email address, but

24 in the notice of -- in the motion for withdrawal of

25 Mr. Vital, it included both Mr. Vital and Jon Hyland in

1  there.

2          So if they need to be filed separately, we'll

3  certainly file that promptly, Your Honor.  But my

4  understanding is that both of them have been withdrawn,

5  Mr. Vital and Jon -- Jon Hyland.

6          THE COURT:  Do you have a docket number reference

7  to that order?

8          MR. SON:  I don't have that right with me, but I

9  can certainly look it up, Your Honor.

10          THE COURT:  All right.  Well, we need to get to

11  the bottom of that.  And if -- if I'm mistaken and he's

12  been formally allowed to withdraw by prior order, then I'm

13  satisfied, whether it's coupled with something else or

14  whether it's on a stand-alone basis.  If for some reason

15  that's not correct, we need to get that taken care of

16  promptly.

17          MR. SON:  We will, Your Honor.

18          THE COURT:  Okay.  All right.  Second thing, both

19  sides in this case have filed motions with the Court

20  seeking those motions and other matters to be sealed.  And

21  the Court has ordered their sealing.  The rules of this

22  Court require that you file a redacted public version of

23  those sealed documents.  Nobody on either side of this case

24  has filed any redacted public versions of the documents

25  that you've asked me to seal.  You'll do that by 9:00

1  o'clock tomorrow, or I will unseal every sealed document in

2  the case.  All right?

3        Thirdly, the Defendants have not formally, that I

4  can see, designated lead counsel in the case.  Under the

5  local rules, you are required -- both sides are required to

6  designate lead counsel formally and filing a designation of

7  such on the record.

8        You'll do that by 9:00 o'clock in the morning, or

9  I'll pick the youngest lawyer that's appeared, and I will

10 designate him as lead counsel for the Defendants, okay?

11       MR. MAZINGO:  Understood, Your Honor.

12       THE COURT:  All right.  As you are aware, this

13 case is set for jury selection and the beginning of trial

14 on September 9th of this year at 9:00 a.m.

15       The Court intends for the Clerk to play the FJC's

16 patent video to the venire panel before jury selection

17 begins.

18       During jury selection, I'm going to afford each

19 side 30 minutes to examine the venire panel.

20       As is the typical practice in this court, of those

21 30 minutes, each side is afforded the option of using up to

22 three of their 30 minutes for a non-argumentative,

23 high-level factual statement of what's at issue in the

24 case.  In other words, counsel, I -- I will permit you to

25 give a very high-level, barebones, non-argumentative

1    overview of what's before the jury or the jury panel.

2           If it becomes argumentative in the least, I will

3    call you on it in front of the panel, which is something

4    you don't want me to do.  So make sure if you do it, that

5    it stays non-argumentative and very high level.

6           I intend to seat eight jurors in this case, and

7    each side will be afforded four peremptory challenges.

8           Each side will be given and afforded 12 hours per

9    side to present your case-in-chief -- your evidence.  That

10   does not include opening statements or closing arguments or

11   jury selection.

12          Each side will be given 30 minutes per side for

13   opening statements.  Each side will be given 30 minutes per

14   side for closing arguments.

15          Plaintiff may reserve a portion of their 30

16   minutes for their final closing argument.  The only

17   requirement there is that you must use at least 50 percent

18   of your total time in your first closing argument.  You

19   can't take 30 minutes and give a two-minute opening/closing

20   and a 28-minute final closing.  You've got to use at least

21   15 minutes of it in your first closing argument.

22          During the course of the trial and beginning on

23   September the 9th, the Court will endeavor to be in

24   chambers by at least 7:30 each morning.  It's my intention

25   after the jury is selected and we begin the trial to bring

1  the jury in each day at about 8:30.  That intervening hour,

2  from 7:30 to 8:30, is there for counsel to use in the event

3  there are unresolved disputes regarding demonstratives or

4  other issues that arise where you can seek and obtain the

5  Court's guidance before I bring the jury in.

6          That also will maximize the effect of your

7  designated trial time by not wasting your time on the

8  record taking up issues that I can help you with from 7:30

9  to 8:30 each morning.

10          As a part of that, in your pre-trial order, you've

11  laid out a process by which you will disclose

12  demonstratives and witnesses the night before.  You'll meet

13  and confer.  And if there are unresolved disputes, you'll

14  notify the Court staff.  And those are the things I can

15  take up at 7:30 with you the next morning.

16          You need to make sure that my -- my staff -- my

17  law clerks are advised of any surviving and unresolved

18  disputes from that process not later than 10:00 p.m. on the

19  night before you come in to see me the next morning.

20          Now, the fact that you've reached those disputes

21  and you haven't resolved them doesn't mean you don't have a

22  continuing obligation to continue to discuss them between

23  the time you notify the Court's staff and the time you show

24  up the next morning at 7:30.

25          Consequently, I've experienced several

1  circumstances where at 10:00 o'clock, my staff's advised

2  that we have six remaining disputes we can't work out.  And

3  then everybody shows up at 7:30, and we're down to two, and

4  four of them have been resolved.  The problem is I've spent

5  time looking at those four that are resolved that's been

6  wasted.

7          So what I'm going to add to your list of things to

8  do is by 7:00 o'clock the next morning, you should deliver

9  a three-ring binder to chambers that has a written

10 statement of where you are, what's still at issue, and the

11 competing proposals on any disputed issue between the two

12 parties.  That way I'll know not to waste my time on

13 something that's been resolved over the remainder of the

14 evening.

15         Also, with regard to any disputed deposition

16 clips, designations and counter-designations, I don't

17 typically take those up all in advance as a part of

18 pre-trial.  I do that on a rolling basis throughout the

19 trial.

20         The only requirement is if you have a dispute on

21 designation -- excuse me, deposition designations to play

22 before the jury, I need to know about that dispute not

23 later than the day before the day you intend to present

24 them.  I don't want to have to delay the trial because the

25 tape has got to be recut and edits have to be put in, and

1  we can't go forward with the deposition witness because of

2  that.

3          So make sure I know about any disputes on

4  designations and counter-designations with regard to

5  depositions that you're going to present to the jury not

6  later than the day before you're going to present them.

7          It's my practice, as the rules allow, to take up

8  any motions under Rule 50(a) after all the evidence is

9  presented.  I won't hear motions under Rule 50(a) when the

10  Plaintiff rests its case-in-chief.  I will hear those

11  motions after the Defendant has rested its case-in-chief

12  and the Plaintiff has rested any rebuttal case they may put

13  on.  When all the evidence has been presented, then I'll

14  hear motions under Rule 50(a) from both Plaintiffs and

15  Defendants at one time.

16          After I've heard motions under Rule 50(a) and

17  ruled on those, I'll then conduct an informal charge

18  conference in chambers with counsel where we can have an

19  open and informal and free-flowing discussion of the

20  current status of the proposed final jury instructions and

21  verdict form where I can get complete and open input from

22  both sides.

23          Having heard that and taken that into account,

24  having an opportunity to query counsel about their

25  respective positions, I'll then take all of that

1 information from the informal charge conference, and I'll

2 generate what the Court believes to be the appropriate

3 final jury instructions and verdict form.  I'll give you

4 those, and then after you've had an opportunity to review

5 them, I'll conduct a formal charge conference on the record

6 where any issues that you think are appropriate can be

7 raised by objection on the record.

8         You should understand that by the time you get

9 those from me in advance of the formal charge conference, I

10 have pretty well decided that's what I think the charge and

11 the verdict form should say.  I'm not telling you I can't

12 be persuaded in the formal objections, but it's important

13 for me to have everybody's full input in the informal

14 charge conference for this process to be as efficient as it

15 can be.

16         During the course of the trial and at any time

17 we're on the record, you are instructed not to refer to any

18 individual by first name only.  That's your co-counsel,

19 that's your IT person, that's any witness, that's anybody

20 anywhere.

21         The Court believes that referencing individuals by

22 first name only on the record is inherently confusing in

23 the transcript, and it does not maintain the requisite

24 decorum necessary for a United States District Court.

25 Don't refer to anybody by first name only.  Instruct your

1  witnesses to follow that same practice.

2          If your witnesses don't, then you'll get credit

3  for having not instructed them, okay?

4          It's perfectly fine to use complete names.  It's

5  perfectly fine to use appropriate titles where they've been

6  earned.  Dr. John Smith, Mrs. Alice Jones.  Just don't

7  refer to Alice, Jim, Bob, Sally, and Betty.  That's

8  confusing.  That's not appropriate.

9          I refer you to the Court's standing order on

10 sealing the courtroom as a means to protect proprietary and

11 confidential information that's going to be presented

12 during the course of the trial.  That is my practice.  It's

13 laid out in that standing order.  You should make sure

14 you're familiar with that standing order.

15         It goes without saying you should make sure you're

16 familiar with all the Court's standing orders and the local

17 rules of this district, but in this particular instance, I

18 want to draw your attention to my standing order on sealing

19 the courtroom.

20         Even if there are not people in the courtroom who

21 would orally overhear what's going to be presented, if you

22 do not ask me to seal the courtroom, then the testimony is

23 public in the transcript, and anybody can read it.  And I

24 do not intend to have a wide-ranging redaction process

25 after the trial.  You protect the transcript by sealing the

1   courtroom or asking the Court to seal the courtroom during

2   the course of the trial.

3          The redaction process should be limited only to

4   such things as dates of birth, Social Security numbers,

5   driver's license numbers, particular personal identifiers

6   that might otherwise have found their way into the record.

7          But for the protection of proprietary and

8   confidential information, you should comply with the

9   Court's standing order on requesting that the Court seal

10  the courtroom.

11         The Court routinely allows a juror questionnaire

12  to be used by counsel in the case.  It -- it enhances the

13  jury selection process and maximizes the designated time

14  I've given you to query the jury panel.

15         I do not find that there's been a juror

16  questionnaire submitted in this case.  I will still permit

17  it, but I've checked with the deputy in charge, and she is

18  right at the deadline for sending out the summons to

19  summons our jury panel.  Jury questionnaires are sent with

20  the summons, so when people are summonsed, they also get

21  the juror questionnaire, and they're instructed to fill it

22  out and send it back.

23         If you want to use a juror questionnaire in this

24  case, you need to give it to me by 2:00 p.m. tomorrow, so

25  that I can review it and approve it.  And then you'll need

1   to coordinate with Ms. Clendening, our deputy in charge,

2   and make sure that she has everything she needs so that

3   when she sends the summons, she can send the approved juror

4   questionnaire with them.  I'll review it promptly, but I

5   need to have it not later than 2:00 p.m. tomorrow if you

6   want me to review it and approve it before she would send

7   it out with the summons.

8           I'm going to direct and require that both sides

9   work together jointly to prepare 10 juror notebooks for use

10  during this trial.  Those juror notebooks should be

11  comprised of simple three-ring binders which each include a

12  complete copy of each of the patents-in-suit.  It should

13  include a side-by-side chart showing the actual terms that

14  have been construed by the Court as a part of the Markman

15  or claim construction process.

16          I do not intend for you to include the Court's

17  Markman order.  I do not want any analysis.  I simply want

18  on the left-hand column the term that was at issue and in

19  the right-hand column the construction the Court's adopted

20  so that the jury can have an easy side-by-side reference in

21  those juror notebooks.

22          Also, you are to include a single page for each

23  possible witness in the trial, either live or by

24  deposition.  Each witness page should have a head and

25  shoulders photograph of the witness superimposed at the top

1   of the page.  Underneath the photograph should be a proper

2   name identifying the witness.  I do not want you to

3   characterize the witness.  For example, there should be a

4   page with a photograph, and it may say Dr. John Jones.  It

5   should not say Dr. John Jones, Plaintiff's expert on

6   infringement or technical expert or damages expert or

7   whatever, just their complete name identifying them.

8          The remainder of those pages should be single

9   lined -- single-ruled lines for note taking.  And those

10  witness pages should be tabbed with the witness's name so

11  that it's easy for the jury to find each respective page

12  when the witnesses are called.

13         They're not often called in the exact order

14  they're put in the notebooks, so I don't want the jury

15  having to fumble for those witness pages.

16         Then in addition to the witness pages, those

17  notebooks should each include a new three-hole punched

18  legal pad for additional note taking.  And in the front

19  flap of each notebook, there should be a non-clicking

20  ballpoint pen that they can use for note taking, as well.

21         Those 10 notebooks should be delivered to chambers

22  not later than noon on September the 5th.

23         All right.  Are there questions about those

24  instructions from either Plaintiff or Defendant?

25         MR. MADDOX:  Yes, Your Honor.  With respect to

1    the -- the 10:00 p.m. notifying the Court of issues and the

2    7:00 a.m. providing the binder with the remaining issues,

3    the notice to the Court at or before 10:00 p.m. the night

4    before, what is the nature of that?  Should that be --

5            THE COURT:  That's an email.

6            MR. MADDOX:  That's an email saying we have issues

7    or an email saying these are the issues?

8            THE COURT:  It's an email that says, we've met and

9    conferred, the following issues are still in dispute, and

10   we haven't resolved them.  The Plaintiff's position is A.

11   The Defendants' position is B.  We'll update you by 7:00

12   o'clock as to which of these have been resolved before we

13   meet with you tomorrow morning.

14           MR. MADDOX:  Thank you.

15           THE COURT:  Then at 7:00 o'clock, I get a binder

16   that says of those six items referred to in our 10:00

17   o'clock email, four of them have been resolved, two remain,

18   those two are A and B, and the Plaintiff's position on each

19   is as follows, and the Defendants' position on each is as

20   follows.

21           MR. MADDOX:  Thank you.

22           THE COURT:  All right.  Any questions from

23   Defendants?

24           MR. MAZINGO:  No questions, Your Honor.

25           THE COURT:  All right.  All right.  Counsel, let's

1   move to the disputed pre-trial matters before the Court.

2   And let's first take up the 101 motion, which is

3   Defendants' motion for summary judgment regarding patent

4   ineligible subject matter.  That's Docket No. 81.

5          Let me hear from the moving Defendant first.

6          MR. MAZINGO:  Your Honor, Mr. Heidrick will be

7   offering argument on our behalf of that motion.

8          THE COURT:  That's fine.

9          Let me just ask this, too.  Given that we have

10  quite a few lawyers in the room, I understand different

11  ones on each trial team will argue different matters.

12  That's perfectly fine and typical.  Just make sure when you

13  go to the podium, even if it's your third trip, the first

14  thing you do is introduce yourself for the record so it's

15  completely clear who's arguing what.

16         MR. HEIDRICK:  Yes, Your Honor.

17         THE COURT:  Go ahead, Defendant.

18         MR. HEIDRICK:  Thank you, Your Honor.  My name is

19  Jay Heidrick, Polsinelli, on behalf of Jack Henry &

20  Associates, the Defendant.

21         May it please the Court.

22         All issues of -- all asserted claims that remain

23  in this case are abstract ideas that should be invalidated

24  under 35 U.S.C. Section 101.  They're all directed to the

25  abstract idea of check processing which is nothing more

1   than collecting, comparing, organizing, storing, and

2   disseminating check information.

3          In our briefing, we've laid out how each claim has

4   a central system and how each central system of each

5   asserted claim does nothing more than the collection,

6   organizing, comparing, storing of data.

7          We've compared that to Claim 1 of the '430 patent,

8   which, again, shows the central system doing nothing more

9   than these routine conventional abstract ideas.

10         THE COURT:  Well, let's talk about Step 2 of the

11  Mayo/Alice analysis.  That's really where the fight is

12  here.

13         MR. HEIDRICK:  Okay.  Do you have a question, or

14  do you want me to just focus on that?

15         THE COURT:  Let's go on to Step 2.

16         MR. HEIDRICK:  Okay.  The main issue with Step 2

17  is is there inventive concept.  And the only thing that --

18  with the inventive concept that the Plaintiff has pointed

19  to is the bypassing function, that this was a new invention

20  that -- that -- because it bypasses certain systems of a

21  bank of first deposit on the transmission step.

22         That's not a sufficient structure to -- to create

23  a patentable idea, Your Honor.  If I send you an email,

24  Your Honor, I have bypassed every other person in the world

25  simply because I've sent it directly to you.  That's --

1  that's the claimed inventive concept.

2          So the fact that they have decided that we're

3  going to send information in a particular way is not --

4  is -- is not patentable because all -- that's traditional

5  transmission of information of sending it from one place to

6  another and not to any other place.  That's just

7  transmitting data.

8          On the routine and conventional aspect, Your

9  Honor, they submit the affidavit of Dr. Michael Shamos, who

10  opines that this is not a routine and conventional

11  arrangement of components, and, therefore, it's a fact

12  question for the jury.

13          On summary judgment, as you well know, Your Honor,

14  the question is where -- is there any disputed fact?  There

15  is no disputed fact that these are routine conventional

16  computer components, that these are known transmission

17  lines, that there's nothing unique in the programming or

18  anything that goes along with this, that these are just

19  generic computer components operating in their known and

20  expected manner.  That's all undisputed.

21          As far as the routine and conventional -- and

22  Berkheimer says this -- that if the specification says that

23  the claimed invention is routine and conventional, then

24  that is strong evidence that it was routine and

25  conventional at the time.

1          As for Dr. Shamos, Dr. Shamos does not say that
2     this is new technology.  He doesn't say that this is a new
3     type of information that's being used to process checks.
4     He doesn't say that this is some inventive concept.

5          His point as to why this is not routine and
6     conventional and novel is that the check processing that
7     goes along at banks doesn't have to perform at the bank of
8     first deposit.

9          THE COURT:  In contrast to the situation in the
10    Solutran case where the patent and the extrinsic evidence
11    expressly disclaimed any novelty, isn't it true that the
12    intrinsic record here does just the opposite and it says
13    that this is -- as of 2000 or the appropriate date, this is
14    new and novel and inventive?

15         MR. HEIDRICK:  I don't believe so, Your Honor.  It
16    says that this is -- and that's where we get into
17    conflating 102 with 101.  And if you have an improvement on
18    an abstract idea, it's still an abstract idea.

19         So -- they may have been able to get a patent on
20    this as of April of 2000, but it is still utilizing known
21    computer components to operate in routine known ways.  And
22    that's exactly what Dr. Shamos says in his affidavit is
23    he's not saying that these are new components or that
24    improves the functionality of a computer, he just says that
25    the known process of check processing is being done

1  somewhere else, and that's it.

2          And so when you look at -- so -- so the technology

3  of check processing, which is what this is, is the -- is

4  not an -- an improvement.  It's the same information that's

5  being -- if I was to process a check by hand and look at

6  the check and -- and take that information -- and this is

7  undisputed, as well, I can process that check, as well, by

8  hand using -- in addition to their -- their -- the same way

9  that their claimed invention does, Your Honor.

10         THE COURT:  I want to go back a minute.

11         Obviously, this Solutran decision has been to some

12  extent the 800-pound gorilla in the room on the 101 issue,

13  and the Court delayed its ruling while that case went up to

14  the Federal Circuit, and I've seen the Federal Circuit's

15  opinion.

16         But in that case -- in that case, the Circuit

17  relied on a disclaimer in the patent saying that the steps

18  were conventional.  But I do not find that the patents at

19  issue here include that kind of disclaimer as to

20  conventionality.

21         And, in fact, it seems to me that the patents at

22  issue here affirmatively note that this electronic check

23  proc -- processing functionality was unconventional at the

24  time the patent was issued.

25         Do you not agree with that?  Do you think that's

1   wrong?

2         MR. HEIDRICK:  I -- I don't agree with that, Your

3   Honor.  And because the -- the patent itself has nine pages

4   of prior references that detail electronic check processing

5   issues.

6         For example, the prosecution history itself talks

7   about the Geer reference that -- that -- that was an

8   initial rejection that deal with check processing issues.

9         The -- so the -- the issue is that it was check

10  processing in a different way that -- that allowed them to

11  get a patent on it, but it's still the abstract idea of

12  check processing.

13        And their -- and their claimed -- and their

14  claimed inventive concept with it is that they bypass the

15  various -- what I call the prohibited systems of the

16  asserted claims, Your Honor.

17        THE COURT:  Now, you said that the only issue

18  regarding inventive concepts was the potential bypass of

19  the magnetic ink character recognition, the MICR.  Isn't

20  there a potential inventive concept issue on the '106

21  patent regarding the real-time monitoring issue?

22        MR. HEIDRICK:  No, Your Honor.  And the Federal

23  Circuit said -- the Federal Circuit has rejected that the

24  real-time monitoring, the comparing, those types of things

25  are unpatentable, as well -- as well under 101 because it

1  goes to the -- again, the business practice idea of

2  comparing data.

3       And we cited the Joao Bock decision with that, as

4  well, that -- that that was a real-time monitoring decision

5  that was held invalid under 101.

6       At the end of the day, the patents simply do

7  something that has been done by hand for decades and use

8  general computer components to do that.

9       And every check processing patent that has gone up

10  to the Federal Circuit has been invalidated under 101 with

11  Data Treasury, with Solutran, and with Content Extraction,

12  because they simply claim inventions on known abstract

13  ideas and improvements on known and abstract ideas.  And

14  the Federal Circuit has repeatedly argued -- or repeatedly

15  held that an improvement to an abstract idea is just still

16  an abstract idea.

17       THE COURT:  What else, counsel?

18       MR. HEIDRICK:  I would ask that the Court -- let

19  me check my notes, Your Honor, if I could real quick.

20       THE COURT:  That's fine.

21       MR. HEIDRICK:  And I would -- I would also direct

22  the Court's attention to Page 5 of the Solutran decision,

23  Your Honor, where the Court -- and this is -- it goes to

24  Dr. Shamos's opinion of routine and conventional -- where

25  the same process is being done that has always been done

1   at -- at banks.  The MICR capture, all the stuff that's

2   been done at banks, it's just being done at a different

3   location now.  And that's -- that's the -- one of the --

4   the -- the advancement over prior art that he claims.

5         And as Solutran said in -- in a similar issue, the

6   location of scanning in comparison whether it occurs down

7   the hallway, down the street, or across the city does not

8   detract from the conclusion that these claims or are at

9   bottom directed to getting the merchant's account credited

10  from the customer's purchase as soon as possible --

11        THE COURT:  If you're going to read, please

12  slow -- slow down.

13        MR. HEIDRICK:  I'm sorry.

14        THE COURT:  Talk to me a minute about the issue of

15  representativeness.  I think it's your position that Claim

16  1 of the '430 patent represents all the claims that are at

17  issue here.

18        MR. HEIDRICK:  Yes, Your Honor.

19        THE COURT:  Tell me why you think that and what

20  your support for that is.

21        MR. HEIDRICK:  We have gone through five pages of

22  analysis in our brief, Your Honor, where we analyzed every

23  claim and compared it to the '430, the reason being that

24  each of the claims at issue have a central system that

25  performs certain known functions.  And we've analyzed how

1    each of those claims -- the asserted claims relate back to

2    the same claim as the '430 and perform the same abstract

3    idea of check processing.

4          In addition to that, Your Honor, we cited to -- in

5    response to your question in your previous order on this

6    issue as to the terminal disclaimer, the effects of the

7    terminal disclaimers on the patent prosecution which is

8    undisputed and -- in the motion that those were entered in

9    order to overcome double patenting objections.

10         We've cited to testimony of one of the inventors

11   who said that these are basically the same patent -- his

12   invention is basically the same patent.  We've cited to

13   testimony from Plaintiff's expert who has, again, opined

14   that these are the same idea, the same patents.

15         There's going to be different -- it's -- it's

16   undisputed that they're going to have different claim

17   language in it, but all of the claims go to the same

18   abstract idea, the same concept of check processing or

19   collecting and comparing and transmitting, analyzing data.

20   That's a known business practice, and we've laid out

21   extensive evidence and argument on that, Your Honor, as to

22   why Claim 1 is representative as the other claims.

23         THE COURT:  All right.  Do you have any other

24   argument for me?

25         MR. HEIDRICK:  Not at this time, Your Honor.

1          THE COURT:  Let me hear from Plaintiff in

2  response, please.

3          MR. MADDOX:  Good afternoon, Your Honor.  Steven

4  Maddox for the Plaintiffs.

5          THE COURT:  Go ahead, counsel.

6          MR. MADDOX:  Let's just jump in with -- with where

7  it all starts.

8          Counsel referred to Content Exhaustion [sic],

9  Solutran, and Data Treasury.  The reason why all of those

10  were invalidated at the Federal Circuit lies in the claims,

11  which is where their motion is afraid to go on us.

12          When you -- take, for instance, Content

13  Extraction.  The claim actually there is at 1348 of 776

14  F.3d.  The claim reads:  A method of processing information

15  from a diversity of types of hard copy documents, said

16  method comprising the steps of -- and it lists three --

17  receiving input, recognizing portions, and storing

18  information.  That is a building block abstract idea.

19  That's what that claim is directed to.  That should not be

20  patented.

21          Similarly, in Solutran, the answer, again, is in

22  the claims.  This is at Star 2 in the Westlaw publication

23  of Solutran.  The claim they were dealing with says:  A

24  method for processing paper checks comprising, A,

25  electrically receiving a data file, and there's some more

1  language, but you'll see it there; B, crediting an account;

2  C, receiving paper checks; and D, using a computer to

3  compare images of the paper checks with the data file.

4        Again, that is a basic building block abstract

5  idea of getting data and an image and comparing it.  These

6  are not systems, and these are not claims to improvements

7  in -- in automated check processing systems like ours are.

8        Most importantly is the state of the record on

9  Step 2.  We have the evidence of our expert, Dr. Shamos, as

10  to why the claims are a non-conventional arrangement of

11  known conventional pieces and why figuring out a way for

12  multiple banks to go through a third-party site without

13  having to go through their -- each of their own microreader

14  accounting, cash management, float point systems, why that

15  was precisely the opposite of was conventional and routine.

16  What was conventional and routine was to run these checks

17  through everything else.  In this way, what they were

18  claiming was a better or better performing automatic check

19  system.

20        With respect to your comments about wasn't this

21  unconventional, wasn't this new, you're absolutely right.

22  In fact, their expert -- in our briefs, we cite this --

23  Michalson agrees it was new because that's what the patent

24  examiner said.  Shamos says it as well.  It was new.

25        Now, if he would like to split -- if -- if counsel

1    would like -- if -- if Jack Henry is trying to split hairs

2    between new and non-conventional, I would suggest that

3    non-conventional is a more high standard than novel or

4    non-obvious.

5          In fact, we've cited the federal case law that

6    says so.  In order to be something that's conventional, it

7    needs to be something much more than just a period in the

8    art.

9          The bottom line here is you've -- we've presented

10   you with -- well, they've presented you with a factual

11   issue.  They had a chance to put in some evidence on this

12   factual issue.  They chose not to.

13         We did.  The expert evidence before you is

14   unrebutted.  We think on summary judgment that means it

15   should be denied.

16         We think we fit much better into -- like the

17   BASCOM case, which is where the non-conventional

18   arrangement came from, and the most recent Cellspin

19   case which is now a few weeks old -- I'm sorry, a little

20   bit more than a month old, but it was about a week old when

21   we filed our opposition.

22         And in Cellspin, what the Court concluded was --

23   again, similar arguments.  In particular, they, the

24   Cellspin claims, recite a specific plausibly inventive way

25   of arranging devices using protocols rather than the

1   general idea of capturing, transferring, and publishing

2   data.

3          That's us.  That's what Dr. Shamos says is us, and

4   that's what there's no evidence to the contrary, just

5   attorney argument.

6          Nothing further, unless you have questions.

7          THE COURT:  Well, twice I've asked Defense counsel

8   if the patents-in-suit here include the kind of express

9   disclaimer of conventionality that's included in the

10  Solutran patents.  My reading of the patents-in-suit here

11  is that they don't include a disclaimer of conventionality.

12  And, in fact, they intrinsically indicate that this check

13  processing functionality was unconventional at the time the

14  application was filed back in 2000.  He's told me twice I'm

15  wrong about that.  What's your view on that issue?

16         MR. MADDOX:  I'm not aware of any such disclaimer,

17  and in the intrinsic evidence, as we've laid out on Pages

18  15 through 18 of our opposing brief, Document No. 91, is to

19  the contrary.

20         It is explaining, hey, we've come up with this

21  great idea, this -- this way that we can -- that a number

22  of things are possible, not the least of which is

23  third-party check processing which Jack Henry went into the

24  business of doing.

25         No, there has been no disclaimer, and that's why

1  we're different than Solutran.  There is an actual

2  inventive arrangement of things to improve the performance

3  of automated check processing systems.

4        THE COURT:  What's your view on the real-time

5  monitoring issue regarding the '106 patent?

6        MR. MADDOX:  That's something that they failed to

7  address in their representativeness, and it is another --

8  for the '106 patent, it is an additional advance over the

9  prior art, which is not addressed by their arguments.

10       THE COURT:  All right.  Thank you, Mr. Maddox.

11       MR. MADDOX:  Thank you.

12       THE COURT:  Mr. Heidrick, do you have any short

13  rebuttal to give me on this?

14       MR. HEIDRICK:  Yes, Your Honor.  Very short.

15       I would -- I would agree there is no express

16  disclaimer like in the Solutran case.  I just want to make

17  sure I'm clear on that.  But I would point you to Column 3,

18  Line 5, of the '430 patent, with the specifications that

19  are shared by all the patents.  The '106 is a little bit

20  different, but that's immaterial here.

21       And these types of references are throughout the

22  specification where it talks about routing the data through

23  normal check clearing paths and doing the same check

24  processing functions that have been done for years just at

25  a different location.

1          THE COURT:  All right.  Anything else?

2          MR. HEIDRICK:  No, Your Honor.  Thank you.

3          THE COURT:  Counsel, the Court takes all these

4    matters set for pre-trial today seriously, although the

5    Court gives particular seriousness to the 101 issue, both

6    because it's totally dispositive in the case potentially

7    and because I don't know anybody that would say this is a

8    clear and unambiguous area of the law.  It's a difficult

9    issue, and there's less than perfect guidance out there.

10         When the Federal Circuit expressly says, Congress,

11   please fix this, it's a pretty good indication of the state

12   of affairs that we're in.

13         Consequently -- and I'm aware that both sides have

14   filed what you've titled as a notice in this case, post the

15   Solutran decision coming out.

16         I'm going to order each side to prepare and file

17   by noon on this Friday an additional brief on this 101

18   issue of not more than five pages.  And I want you to focus

19   particularly and with specificity on what questions of fact

20   might exist as to inventiveness in the event the Court

21   concludes that this does address an abstract concept,

22   particularly with emphasis on the bypassing of the MICR

23   step and the real-time monitoring on the '106 patent,

24   together with anything else that may go to particular

25   specific inventiveness and unconventionality.

1        I'd also like you to address in further detail the

2  representativeness argument which is clearly the

3  Defendants' burden.  It's going to make a very real and

4  practical difference even if the 101 motion is denied,

5  which it may well not be.  I don't know what the answer is

6  as I sit here today.  That's why I want the additional

7  briefing.

8        But even if this case goes forward to trial, this

9  representative issue is going to make a big difference on

10  the quantity of the evidence that's going to have to be

11  presented and the amount of time it's going to take and the

12  number of issues that are going to have to be juggled by

13  the jury.

14        And the second part of what I want this briefing

15  to -- to address is a more specific targeted addressing of

16  the representativeness issue.  And I'll look for that by

17  noon on Friday.

18        Until that time, I'm going to carry the

19  Defendants' 101 motion.  I anticipate giving this prompt

20  attention on Friday, and hopefully next week, getting you

21  written guidance on the 101 issue, all right?

22        All right.  We're going to take a very brief

23  recess, counsel.  When I come back, we are going to turn

24  next to the Defendants' motion for summary judgment of

25  non-infringement.  That's Docket No. 83.

1          The Court stands in recess.

2          COURT SECURITY OFFICER:  All rise.

3          (Recess.)

4          COURT SECURITY OFFICER:  All rise.

5          THE COURT:  Be seated, please.

6          All right.  Counsel, before we go on to the

7    non-infringement summary judgment motion, I want to make

8    this clear.

9          On this additional briefing on the 101 issue, I

10   didn't dwell on Step 1 during the argument today.  That

11   doesn't mean I've already decided or excluded the Step 1

12   argument.

13         I'd like the Plaintiffs to -- excuse me, I'd like

14   the Plaintiffs to spell out in their briefing precisely

15   their position on abstract concept.  And if it's their

16   position that this concept is not abstract, be very

17   specific and clear as to why.

18         Also, Defendants told me today that it's abstract

19   because it has to do with check writing and check writing

20   has been around forever.  That is much more broad than what

21   you put in your briefing.  I want you to specify for me in

22   this additional five pages exactly the targeted area of

23   abstractness that you think is appropriate here.

24         I understand your argument that this is just

25   improvement on an abstract idea.

1          The problem is you can't make the abstract idea so

2    broad and pervasive that any improvement is just

3    improvement on an abstract idea.  And I don't think, if

4    you'll read your briefing, that your position in writing is

5    that the abstract idea here is check writing.  It may be

6    electronic check writing.  It may be something much more

7    than the traditional paper and pen check writing that's

8    been around forever.  So I want Step 1 addressed in this

9    five pages, as well.

10         Also, back to one housekeeping matter.  The

11   proposed juror questionnaire -- and, again, there's a

12   standing order on the website that tells you what I expect

13   that to cover and how it should be structured.  There's

14   even a sample there.

15         But that juror questionnaire needs to be emailed

16   in Word form to the deputy in charge and to my staff by the

17   deadline I gave you if we're going to meet the deadline

18   that we have to work with here and get this out so that we

19   can get it back for use when jury selection takes place.

20         All right.  Let's move on to Defendants' motion

21   for summary judgment of non-infringement.  Let me hear

22   argument from the Defendant, please.

23         MR. WIETJES:  Your Honor, Jason Wietjes for the

24   Defendant and the movant, Jack Henry.

25         THE COURT:  Proceed.

1          MR. WIETJES:   The central question here, Your

2    Honor, is whether Jack Henry is a bank of first deposit

3    under the Court's claim construction.

4          Now, PPS Data argues that Jack Henry is not a bank

5    of first deposit because it's not a bank.  And at first

6    blush, that may seem logical and to have some merit to it.

7          But what we have to do is look at the construction

8    for bank of first deposit in the Court's claim construction

9    order.

10          Now, that construction tells us that a bank of

11    first deposit is a financial institution, unqualified.  It

12    also tells us that the bank of first deposit must sponsor a

13    remote site and it must own or employ a central site for

14    processing financial transactions.

15          But the operative and pertinent part of the

16    construction remains financial institution for purposes of

17    Jack Henry's motion.

18          Now, why is this important?  Your Honor, Jack

19    Henry services two types of customers.  On one hand, Jack

20    Henry services banks.  So, for example, if you or I or if

21    anyone else walks into a bank and deposits a paper check,

22    that bank will take that check, along with all of the other

23    deposit -- deposited checks it receives that day, scan

24    them, and forward them on to Jack Henry for processing and

25    clearance by the Federal Reserve Bank.

1           The other type of customer that Jack Henry has is
2    a non-banking customer, for example, a rental property.
3    When the first of the month comes around, all the tenants
4    at that property bring their checks to the rental office,
5    put them in the dropbox to pay their monthly rent.  That
6    rental agency will scan the checks and send them along to
7    Jack Henry for processing.  Completely different customers.
8           This takes us to the Court's construction of
9    remote site, which is also very important here.  The claims
10   require a mote site -- a remote site.
11          PPS Data states in its infringement contentions
12   that the remote site is Jack Henry's customers, also or
13   otherwise stated as the location where the checks to be
14   processed are scanned.  The checks are scanned at the
15   customer's site, be it a bank or be it the rental property
16   non-bank customer that we've referenced.
17          Additionally, the construction for remote site
18   states that the remote site must be associated with the
19   financial institution.  That's important because Jack
20   Henry's non-bank customers, again, the rental property, are
21   not associated with the financial institution.  They
22   contract directly with Jack Henry.
23          On the other hand, with the banking customers,
24   Jack Henry's relationship is with that bank, not the
25   individual depositing checks at that bank.

1            So what PPS Data had stated in its contentions is

2    it is that bank, Jack Henry's customer, is the financial

3    institution associated with the remote site, again, the

4    location where the checks are scanned at the customer's

5    location.

6            This created a problem for PPS Data, however, and

7    at some point, they realized this.  And, notably,

8    Dr. Shamos's expert report doesn't distinguish between bank

9    and non-bank transactions.  The financial institution

10   identified by Dr. Shamos in his report, again, was the

11   bank.

12           So PPS Data and its expert, Dr. Shamos, came up

13   with a new theory because in order to infringe for these

14   non-banking transactions, again, the remote site had to be

15   associated with a financial institution.  And they came up

16   with this theory the day before Dr. Shamos's deposition,

17   and their theory was, is that with respect to these

18   non-bank customers, Jack Henry is the financial

19   institution.

20           We've briefed this.  The testimony that -- that

21   Dr. Shamos put on the record is referenced and attached to

22   the -- the briefing in our summary judgment motion.  And we

23   said, okay, well, if -- if that's your theory of the case,

24   that Jack Henry is a financial institution, so as to meet

25   this remote site limitation for infringement purposes, then

1   let's look at the -- the construction for bank of first

2   deposit which also requires a financial institution,

3   unqual -- again, unqualified.

4        So what PPS Data is now saying, Your Honor, is

5   that Jack Henry is a financial institution, so as to be

6   associated with a remote site to meet the limitation of

7   remote site.  But it's not a financial institution so as to

8   meet the limitation of a bank of first deposit because as

9   we'll explain, if Jack Henry is a bank of first deposit, it

10  cannot infringe.

11       Stated differently, what -- what they're saying,

12  Your Honor, is that PPS Data has specifically said this, if

13  you look at their briefing, that the financial institution

14  does not have to be a bank when you're talking about a

15  remote site.

16       But when you're talking about a bank of first

17  deposit, financial institution has to be a bank.  So on one

18  hand, they're saying Jack Henry, not a bank, remote site,

19  infringes.  On the other hand, with respect to bank of

20  first deposit, they're saying Jack Henry, not a bank,

21  cannot be a bank of first deposit, therefore, does not

22  infringe.

23       They can't have it both ways, Your Honor.  The

24  Court's claim constructions for remote site and bank of

25  first deposit do not distinguish between different

1    financial institutions.  They both recite a financial

2    institution, unqualified.

3           All we're saying, Your Honor, is that if -- if --

4    if they're correct and if Jack Henry is a financial

5    institution, that it's a financial institution for all

6    purposes across the board.  It can't be a financial

7    institution for purposes of being a remote site, but it's

8    not a financial institution for purposes of analyzing

9    whether or not it's a bank of first deposit.

10          Let's also look at what PPS Data's expert says.

11   Dr. Shamos testified that in order to become a user -- and

12   in this context, we're talking about a customer or a remote

13   site -- of any of the accused instruments, a user must be

14   sponsored by a financial institution and thus is associated

15   with a financial institution.

16          Dr. Shamos also testified that Jack Henry is a

17   financial institution sponsoring the remote site.

18          Now, they qualified that, and they -- they said

19   that's only for the non-banking customers, but that's

20   nonetheless testimony that Dr. Shamos opined to during his

21   deposition.

22          THE COURT:  All right.

23          MR. WIETJES:  And so what that means, Your Honor,

24   is -- is their own expert has admitted that the literal

25   construction for bank of first deposit fits on top of Jack

1  Henry.  He said:  Jack Henry is a bank of first deposit.

2           Now they're arguing in their response that Jack

3  Henry is not a bank, and, therefore, it can't be a bank of

4  first deposit, but it's still a financial institution.

5           THE COURT:  You're not telling me that this is

6  some kind of admission against interest that's imputable to

7  the Plaintiff through an expert witness, are you?

8           MR. WIETJES:  I don't think it's an admission

9  against interest.

10           THE COURT:  That's -- that's not summary judgment

11  evidence.

12           MR. WIETJES:  I don't -- I -- I would -- I would

13  agree, Your Honor, and I don't think it's an admission

14  against interest.  What we're saying is if that's their

15  theory, if what they're saying is that Jack Henry is a

16  financial institution, then that's fine, we can live with

17  that.

18           But if it's a financial institution, it's a

19  financial institution with respect to both of these terms

20  that are at issue.

21           And with respect to bank of first deposit, as

22  we'll -- as we'll get into next, if Jack Henry is a bank of

23  first deposit under the construction for bank of first

24  deposit, it cannot infringe these patents as a matter of

25  law.  And that's the argument, Judge, not that -- not that

1    the expert has made some admission against interest that

2    we're trying to intervene into the summary judgment

3    context.

4         THE COURT:  Let me ask you this, counsel.  It

5    seems to me that there's at least an argument that it's

6    unclear here whether Jack Henry's EPS system is the sole

7    MICR caption -- capture, deposit accounting, cash

8    management, and flat processing systems or it's a

9    secondary system that's separate from and bypasses the MICR

10   capture, deposit accounting, cash management, and float

11   processing systems of the bank of first deposit.  What's

12   your position on that?  Is that completely clear here?  And

13   if so, how?

14        MR. WIETJES:  I think it's clear, Your Honor.  And

15   I think if I may give some more context to that.

16        So what -- what PPS Data will tell you, and Jack

17   Henry doesn't dispute this for purposes of this motion, is

18   that a bank of first deposit will have its own systems in

19   place.

20        So, for example, it will have its own MICR capture

21   system, its own float processing system, its own deposit

22   accounting system.  And Jack Henry also does those

23   functions, and they have admitted that Jack Henry at least

24   does float processing -- and the other one -- I want to

25   make sure I tell you the right ones, deposit accounting.

1   What they'll tell you is that Jack Henry does that for

2   itself.  It doesn't do it for the bank of first deposit

3   because the bank of first deposit has its own systems that

4   perform those steps, and, therefore, when Jack Henry does

5   it, it's bypassing those systems for the bank of first

6   deposit.

7           Did I lose you, or do you have further questions

8   on --

9           THE COURT:  No.  I guess what I'm getting at is it

10  sounds like there's potentially a fact question mixed in

11  there.  And I want to know your position as to whether

12  there really is a material fact question related to whether

13  Jack Henry's EPS system is the sole avenue, whether it's

14  the secondary avenue that bypasses and is separate from.

15  That's what I'm trying to get to, if that's clear.

16          MR. WIETJES:  If I understand, Your Honor, there's

17  no dispute that Jack Henry does these -- these things, the

18  float processing, the deposit accounting, at least from our

19  standpoint.  We -- we're not disputing that.  We -- we're

20  saying we do those things.

21          THE COURT:  There's not a dispute that these are

22  done by Jack Henry's bank instead of by Jack Henry?

23          MR. WIETJES:  By Jack Henry.

24          THE COURT:  Okay.

25          MR. WIETJES:  We don't know what the bank does,

1   Your Honor.  We -- that's -- that's not in evidence in

2   terms of what the bank is doing.  But with respect to what

3   Jack Henry is doing, we don't dispute that we perform these

4   four -- these four steps.

5          Now, they will tell you that we do not do MICR

6   capture at all.  And we're not arguing that for purposes of

7   that because that's -- that's a fact that they're

8   disputing.  But they -- they've admitted in their response

9   to Jack Henry's statement of undisputed facts that Jack

10  Henry does deposit accounting and float processing.

11  They'll say -- they say that Jack Henry is not doing that

12  for the bank of first deposit, though, it's doing it for

13  itself.

14          THE COURT:  What's your position on whether or not

15  Jack Henry or its banking customers are sponsoring the

16  remote sites?

17          MR. WIETJES:  So --

18          THE COURT:  And is there a question of fact here?

19          MR. WIETJES:  So they're -- no.  Again, Your

20  Honor, there's -- in the context of -- of -- I think you

21  have to -- if I may, I think you have to analyze this

22  through the -- the lens that we're looking at, which is

23  that Jack Henry is a bank of first deposit.  If Jack Henry

24  is not a bank of first deposit under the Court's

25  construction, then -- then our -- admittedly, this argument

1    is -- is not sustainable.  In order -- in order for this to

2    work, Jack Henry has to be a bank of first deposit.

3           And so to answer your question, I think more --

4    more specifically, what -- what Jack Henry -- what Jack

5    Henry does in terms of the MICR capture, the -- the deposit

6    accounting, whatever it's doing, our position is that it's

7    doing that for the bank of first deposit.  Otherwise, why

8    would it do it?

9           And so when you're talking about the sponsoring,

10   you -- again, remember, we have two different types of

11   customers.  We have banking customers and non-banking

12   customers.

13          And so what PPS Data has alleged in their

14   infringement contentions is that the bank of first deposit

15   sponsor -- the bank -- the banking customer sponsors the --

16   the actual person that's coming to write the check at the

17   bank for purposes of -- of meeting the claim limitation.

18   Because, again, Jack Henry's relationship is not with --

19   with you or me or --

20          THE COURT:  Slow down a little bit.

21          MR. WIETJES:  I apologize.  Or whoever is

22   depositing the check.  Jack Henry's customer and Jack

23   Henry's relationship is with the bank.  And so that bank

24   sponsors the -- the customer in that sense.

25          Now, with respect to the -- the non-bank

1   customers, this gets to the heart of our argument.  What

2   they're saying in that context is Jack Henry is -- is

3   sponsoring the non-bank customers as the financial

4   institution.  That -- that's really the -- the nexus of our

5   entire position on this summary judgment motion is that if

6   Jack Henry, as they say -- as Dr. Shamos says, if we take

7   him at his word, if that's their position, that Jack Henry

8   is a financial institution, then Jack Henry cannot

9   infringe.

10          The reason why, Your Honor, is because if Jack

11   Henry is a financial institution, then it also meets the

12   construction of bank of first deposit.  If Jack Henry is a

13   bank of first deposit, they've admitted that Jack Henry

14   does float processing and these -- I mess these up -- and

15   deposit accounting.

16          So they've admitted that we do those two things.

17   And if we do those things and we're a bank of first

18   deposit, then those -- those functionalities are not being

19   performed at a system that's separate from the systems at a

20   bank of first deposit, as the claim requires.

21          THE COURT:  All right.  What else on this motion?

22          MR. WIETJES:  At this time, Your Honor, nothing

23   further.

24          THE COURT:  Let me hear Plaintiff's response.

25          MR. SON:  Good afternoon, Your Honor.  Anthony Son

1   of Maddox Edwards on behalf of PPS Data.

2          THE COURT:  Please go ahead.

3          MR. SON:  The very first question that needs to be

4   answered here is whether PPS Data is asserting that Jack

5   Henry is a bank of first deposit.  It is not.

6          Our briefing has made that very clear.  We said

7   that in our opposition.  We said that in our sur-reply to

8   them.  We have not taken the position that Jack Henry is a

9   bank of first deposit.

10          Counsel made a very interesting observation with

11   respect to the Court's definition and claim construction

12   related to a bank of first deposit.  As Your Honor may

13   recall from the Court's claim construction on that -- on

14   that issue, and that's Docket No. 55, the -- with respect

15   to the bank of first deposit, the Court adopted a

16   lexicography definition.

17          Within the specification, the -- the term "bank of

18   first deposit" was defined to mean the financial

19   institution sponsoring the remote site and which owns or

20   employs a central site for processing financial

21   transactions.

22          And this is at -- Your Honor, you discussed this

23   at Page -- I'm sorry, Docket No. 55, Page 14.

24          Within that same discussion of your -- of the

25   claim construction order, on Page 16 --

```
1          THE COURT:  Specifically respond to me -- or for
2   me, rather, to Defendants' argument that Plaintiff says
3   Jack Henry is not a bank of first deposit because it's not
4   a bank.
5          MR. SON:  I'm sorry, Your Honor.  I did not hear
6   you.
7          THE COURT:  Respond, if you will, to the -- to the
8   Defendants' argument that Plaintiff says that the Defendant
9   is not a bank of first deposit because it's not a bank.
10         MR. SON:  Your Honor, that's exactly what I'm
11  pointing to right now.
12         THE COURT:  Okay.
13         MR. SON:  On the screen on Page 16 of your claim
14  construction order, talking about the lexicography
15  definition, Your Honor -- and I highlighted this -- it said
16  particularly, in light of the above lexicography in which
17  the word "bank" refers to a financial institution, rather
18  than -- rather than a branch or a particular physical
19  location, the term "different bank of first deposit" refers
20  to a different financial institution.
21         The parties throughout this case do not dispute
22  that a financial institution that's discussed in the scope
23  of the patent is referring to a bank, a credit union, or an
24  entity that actually does have -- have depository accounts.
25  Indeed, the specification -- I'm sorry, the claims talk
```

1    about the account -- the deposit account designation of a

2    bank of first deposit.  So we're talking about these type

3    of entities, banks, credit unions, and other depository

4    account offers having that.

5           And the Court -- Your Honor recognized that with

6    this statement right here.  That's also consistent with the

7    other parts of the specification within the -- within

8    the -- within the -- the patent.  The patent teaches

9    that -- moreover, the '430 patent teaches that the act of

10   depositing or otherwise converting the financial

11   instrument, such as a check, draft, or other instrument,

12   have generally required the physical presentment of the

13   instrument by the bearer to a financial institution such as

14   a bank, credit union, or other institution authorized to

15   accept the process monitoring instrument.

16          THE COURT:  Slow down -- counsel, slow down.

17          MR. SON:  I'm sorry.

18          THE COURT:  When -- when counsel read this

19   volume -- I mean, the speed goes way up, and it's important

20   that you talk --

21          MR. SON:  I apologize, Your Honor.

22          THE COURT:  -- talk where I can follow you.

23          MR. SON:  And that is at the '430 patent, Column

24   1, Lines 15 to 20.

25          THE COURT:  So you're not saying Jack Henry is not

1   a bank of first deposit because it's not a traditional

2   commercial bank.  You're not saying that?

3        MR. SON:  We're saying that -- we are saying that

4   Jack Henry is not a commercial bank, correct.  We are

5   saying that they are not -- they are not a bank.  They

6   don't dispute that they are not a bank.

7        THE COURT:  And you're not saying that they are

8   not a bank of first deposit because they are not a bank?

9        MR. SON:  That's a double negative in there.  I

10  apologize.  They're not a bank of first deposit because

11  they are not a bank?

12       THE COURT:  Is that your position or is that not

13  your position?

14       MR. SON:  Correct, Your Honor.

15       THE COURT:  Correct --

16       MR. SON:  They are not a bank, and, therefore,

17  they are not a bank of first -- first deposit.

18       THE COURT:  So you're saying a bank of first

19  deposit has to be a bank, it can't be a financial

20  institution, which is contrary to the claim construction.

21       MR. SON:  Well, the claim construction says the --

22  I think the -- the dispute here is what is a financial

23  institution based on the Court's construction.

24       The Court construed a bank of first deposit to

25  say -- adopting the lexicographer definition.  The

1  specification defined what a bank of -- what a financial

2  institution was.

3          THE COURT:  So you think there's a dispute about

4  what a financial institution is?

5          MR. SON:  Correct, Your Honor.  I -- I think

6  that's the way they're interpreting it.  We don't think

7  that that's -- they are not a bank of first deposit because

8  they are not a financial institution within the meaning of

9  the patent.  That's -- that has been our position.

10          THE COURT:  So your position is not that they're

11  not a bank of first deposit because they are not a

12  commercial bank.  Your position is they are not a bank of

13  first deposit because they are not a financial institution

14  sponsoring the remote site and which owns or employs a

15  central site for processing financial transactions?

16          MR. SON:  Correct, Your Honor.

17          THE COURT:  Well, you understand, counsel, the

18  record here is -- with regard to financial institution is

19  pretty broad, whether it's a savings and loan, whether it's

20  a credit union.  It can be a lot of things and still be a

21  financial institution.

22          MR. SON:  That is -- that is correct, Your Honor.

23  I agree with that.  And financial institutions would also

24  include entities such as a casino which we -- we referenced

25  in our briefing to Your Honor.  It includes many other

 1   types of entities that would not be a bank of first deposit

 2   within the scope of this patent the -- within the meaning

 3   of this patent.

 4        THE COURT:  Well, Jack Henry is not a casino, as I

 5   understand it.  But the question is, is Jack Henry a

 6   financial institution?  And you say they're not?

 7        MR. SON:  They are not a financial institution

 8   within the meaning of this patent.  And that has never been

 9   the position of Dr. -- Dr. Shamos in his infringement

10   report.

11        And if I can back up and kind of give an overview

12   about why -- how did this issue even come about because it

13   really was not a dispute on this?  We have -- in our

14   infringement contentions, we did not -- PPS Data did not

15   take the position that Jack Henry was a bank of first

16   deposit.

17        In Dr. Shamos's opening expert report, he did not

18   take the opinion or opine that Jack Henry is a bank of

19   first deposit.  This issue was actually tied somewhat to

20   our -- to some of the issues that we'll discuss in a minute

21   related to the motion to strike Dr. Michalson's testimony.

22        They did not make a distinction or in discovery

23   between the supposed banking customers and non-banking

24   customers.  Throughout discovery, in response to

25   Interrogatory No. 5 where we asked them for

1    non-infringement contentions, they never identified that

2    there was a distinction between their banking and

3    non-banking customers.

4          We have another interrogatory.  It was

5    Interrogatory No. -- it was Interrogatory No. 3 where we

6    asked them to identify for us each person who they had a

7    contract with.  Other -- other -- in other words, identify

8    who your customers are.

9          They provided us with a spreadsheet eventually.

10   Two weeks before the close of discovery, they produced to

11   us a document -- or they identified for the first time in

12   their supplemental responses to interrogatories and

13   identified a spreadsheet, PPS 2817.

14         And, Your Honor, if I may, I have an additional

15   copy of this if I may give it to your court clerk.

16         THE COURT:  You can approach with it.

17         MR. SON:  Thank you.

18         THE COURT:  Just hand it to the courtroom deputy,

19   please.

20         Go ahead, counsel.

21         MR. SON:  This is the list of customers that they

22   identified in response to the -- their interrogatory.  When

23   you look through this entire list, which I have done, they

24   are all banks.  They're all credit -- banks, credit unions,

25   savings and loans, those type of -- type of entities.

1    These are all banking-type customers.  The one customer

2    that -- that they had talked about as being a -- what they

3    call a non-banking customer is a client -- customer of

4    theirs called RealPage.  And, unfortunately -- fortunately,

5    these are in alphabetical order, but it's not numerical

6    because of the -- it's not paginated because they're -- it

7    was in a spreadsheet.

8           You'll see RealPage identified here.  And even

9    with RealPage, when they identified it, they identified it

10   in connection with a bank.

11          PPS Data was never put on notice that there was

12   ever a distinction with any of their customers between

13   being a bank or a non-banking customer.  We relied on that

14   disclosure to us.  We proceeded throughout this case with

15   the understanding that these were all banking customers.

16          We submitted an expert opinion by Dr. Shamos who

17   relied on this -- this type of information and opined and

18   showed detail how -- how Jack Henry is infringing and meets

19   every limitation of the asserted claims with the

20   understanding that Jack Henry is not the bank of first

21   deposit.  The bank of first deposit are all these

22   customers, the banks.

23          THE COURT:  Have you identified this lack of

24   notice argument in your briefing, counsel, because I don't

25   remember --

1          MR. SON:  I believe that's subject to our --
2     subject to our notice of -- I'm sorry, our -- part of our
3     motion in limine.
4          THE COURT:  I understand --
5          MR. SON:  This -- this argument is specifically
6     part of our motion to strike.
7          THE COURT:  You know, counsel, if you'll stop
8     talking when I start talking, we'll get along a whole lot
9     better.  I'm not here to let you talk.  You're here to let
10    me talk.
11         And I don't find it in the briefing on this
12    motion.  I don't know where else you think it might be, but
13    if you're going to argue it to me, I shouldn't be hearing
14    it for the first time, as opposed to the written briefing
15    on the motion that I've seen.  And I don't see that lack of
16    notice argument in the briefing on this motion.
17         If it's there, please tell me it is and point it
18    out to me.  If it's some extraneous other place, that's
19    just as if it's not in the briefing.
20         MR. SON:  Under -- understood, Your Honor.  You
21    are -- you are correct, it's not expressly stated in the --
22    in the briefs.
23         THE COURT:  Okay.  What's your -- what's your
24    position on behalf of the Plaintiff with regard to whether
25    or not there's a lack of clarity on whether Jack Henry's

1  EPS system is the sole MICR capture, deposit accounting,

2  cash management, float processing system, or a secondary

3  system that's separate from and bypasses the MICR capture,

4  deposit accounting, cash management, and float processing

5  systems of the bank of first deposit?  What's your position

6  on that?

7          MR. SON:  Our position on that is that there are

8  factual issues with respect to that.  The claim language, I

9  think, makes it pretty -- pretty clear here that what we're

10 talking about with respect to the bank of financial --

11 first deposit, referring to the account -- deposit account

12 designation, you need to bypass those enumerated systems to

13 bypass, you know, the MICR capture, deposit accounting,

14 cash management, float processing of or for the bank of

15 first deposit.  That's referred -- and our -- our position

16 is that those are referring to those systems of the bank of

17 first -- first deposit, these entities here.

18         THE COURT:  Is it Plaintiff's position that there

19 is or is not a fact question here regarding whether Jack

20 Henry or its banking customers are sponsoring remote sites?

21         MR. SON:  That is a factual issue.  We don't

22 believe that there's a reasonable dispute there with

23 respect to -- that it is Jack Henry's customers.

24         THE COURT:  How is it a fact issue but not a

25 reasonable dispute?  I don't follow that at all.

1      MR. SON:  Because they're -- they're -- well -- I

2  apologize, Your Honor.

3      It is -- it is in dispute.  Our position is that

4  their customers -- the financial institution customers, the

5  banks, sponsor the remote sites.

6      THE COURT:  Okay.  What else do you want to argue

7  for the benefit of the Court that you haven't had an

8  opportunity to so far?  What else?

9      MR. SON:  I think that's it, Your Honor.

10      THE COURT:  All right.  Let me hear a brief

11  rebuttal from Defendant.

12      MR. WIETJES:  Your Honor, Jason Wietjes, again,

13  for the Defendant.

14      THE COURT:  Go ahead.

15      MR. WIETJES:  The issue isn't that they've taken a

16  position that Jack Henry is a bank of first deposit.  They

17  haven't.  They haven't argued that.  They haven't said

18  that.  We don't allege otherwise, and we're not disputing

19  that.

20      The issue is that they have said Jack Henry is a

21  financial institution.  And by doing that, that makes Jack

22  Henry a bank of first deposit because it otherwise -- Jack

23  Henry otherwise meets the description and the construction

24  of a bank of first deposit.

25      So they can't have it both ways, Your Honor.  If

1  they want Jack Henry to be a financial institution, then

2  it's a financial institution across the board.

3          THE COURT:  So you're -- you're telling me that

4  there's no dispute between the parties whether Jack Henry

5  is sponsoring the remote site and -- which owns or employs

6  a central site for processing financial transactions?  The

7  only issue is whether Jack Henry is or is not a financial

8  institution?

9          MR. WIETJES:  For purposes of this summary

10  judgment motion, that is correct, Your Honor.

11          THE COURT:  And why is that?

12          MR. WIETJES:  Well, they've -- they've stated in

13  their contentions, and I believe -- I believe we've cited

14  in our briefing, where they -- they've admitted that Jack

15  Henry -- I have it here.  I think it's -- here's -- here's

16  what they've stated.

17          They -- they've admitted in their response to Jack

18  Henry's statement of undisputed facts that Jack Henry owns

19  a central system, that that central system performs at

20  least the acts of deposit accounting and float processing

21  as required by the claims, and that -- that's really the

22  heart of this, Your Honor, because if we do those things

23  and we are a financial institution, then we are a bank of

24  first deposit.  And if we're a bank of first deposit and we

25  do float processing and we do deposit accounting, then

1  those systems are not separate from a bank of first

2  deposit.

3      THE COURT:  Well, in addition to the deposit

4  accounting and the processing systems, what about the MICR

5  capture and the cash management and the other elements

6  here?

7      MR. WIETJES:  Fair question, Judge.  And they

8  dispute whether or not we do MICR capture.  So we say, for

9  purposes of this motion, okay, let's assume that we don't.

10 We're not conceding that, but for purposes of this motion

11 it doesn't matter because all four of those systems have to

12 be bypassed.  So if Jack Henry does any one of the four,

13 then that one is not bypassed, and, therefore, there is --

14 there cannot be infringement.

15     And so that's why we've limited it to those two

16 because those are the two that they've admitted that we do.

17     THE COURT:  What about the sponsoring requirement

18 because it seems like to me you're glossing over that?

19     MR. WIETJES:  Well, if I may, Judge, I think

20 perhaps what their -- what their expert says could be

21 helpful there because what he's testified to is that Jack

22 Henry is the financial institution and that Jack Henry

23 sponsors the remote site.

24     And that is Statement of Undisputed Fact No. 19,

25 for reference.

1          THE COURT:  In the pre-trial order?

2          MR. WIETJES:  In our motion for summary judgment.

3 I'm sorry.  It may be -- Judge, it may appear in the

4 pre-trial order also as undisputed issues that we've

5 listed.  I don't have that cross-referenced.

6          THE COURT:  Well, in my mind, there's a difference

7 between somebody's expert witness saying something in a

8 deposition and it being a stipulated or undisputed fact

9 between the parties.  You're telling me that's an

10 undisputed fact between the parties?

11         MR. WIETJES:  They -- I believe they've agreed to

12 that, that that was undisputed in their response to our --

13 our statement of undisputed material facts because that's

14 what they're saying, Judge, in order to make out their

15 infringement case.  They're saying that's what -- that's

16 what Jack Henry does.  That's part of their infringement

17 allegations and contentions in the case.

18         So we're just taking them at their word for that.

19 We're saying, okay, if that's what your position is, if

20 that's what you want to say, if that's what you're going to

21 tell the jury in order to prove infringement, then that's

22 fine.

23         But if that's the case, then -- then Jack Henry is

24 a bank of first deposit.  If it's a financial institution,

25 it's a financial institution.  It can't be a financial

1   institution for purposes of proving infringement with

2   respect to the non-bank customers and the remote site

3   issue, but not a bank of first -- but not a financial

4   institution when we start looking at what a bank of first

5   deposit is.

6          THE COURT:  All right.  Anything else by way of

7   quick rebuttal?

8          MR. WIETJES:  Nothing at this time, Your Honor.

9          THE COURT:  I'm going to give Plaintiff one more

10  chance to address this.

11         Specifically, Plaintiff, I want to know if this is

12  a stipulated and undisputed fact or if it's controverted

13  evidence here.

14         MR. SON:  Your Honor, PPS Data's response to their

15  summary judgment motion, counsel just identified that was

16  Undisputed Fact No. 19.  Our response is that Undisputed

17  Fact No. 19 states, and I quote, PPS Data disputes JHA's

18  statement of Undisputed Material Fact No. 19.

19         THE COURT:  So --

20         MR. SON:  So we do -- that is a disputed fact,

21  Your Honor.

22         THE COURT:  Okay.  And I don't want to belabor

23  this.  But I mean, it's either undisputed or it's disputed.

24  I'm hearing one thing from one side and one thing from the

25  other, and it can't be both.

1          Do you have one final statement on this,

2   Defendant?  If you do, go to the podium.

3          MR. WIETJES:  I think here's the issue, Judge,

4   where -- where you're having a question.  It's either

5   disputed or it's undisputed.  So they've disputed it but

6   not as to Jack Henry's non-bank customers.  That -- that's

7   the --

8          THE COURT:  Well, that's not what you told me

9   earlier.  You said it was an undisputed fact, and you

10  stopped there, which --

11          MR. WIETJES:  That was --

12          THE COURT:  -- implies it's across the board for

13  everybody.

14          MR. WIETJES:  That was a mistake on my part, Your

15  Honor, and I -- I should have been more clear there.

16          But -- but I'm reading it now, and the statement

17  that they have is:  While this statement is accurate for

18  JHA's non-banking customers, it is inaccurate for JHA's

19  banking customers.  That's -- that's what they've

20  qualified.

21          So at a minimum, where that gets us, Judge, based

22  on their own admissions, is the non-bank customers, those

23  transactions and those infringement allegations simply do

24  not infringe under what they're -- what they're saying and

25  what they've admitted.

1          THE COURT:  All right.  Well, I'll say this,

2     counsel.  The argument I've heard today is not particularly

3     helpful.  But based on the briefing and the appropriate

4     summary judgment evidence, I'm persuaded there are still

5     material questions of fact at issue here such that I should

6     and it is the Court's ruling that the motion is denied.

7          That doesn't mean I won't hear a motion from

8     Defendant under Rule 50(a) at a later time, but I'm not

9     going to grant summary judgment on this motion today.

10          Okay.  Let's go on next to Plaintiff's Daubert

11    motion regarding Dr. Michalson.  That's Docket No. 79.  And

12    let me hear from Plaintiff on that, please.

13          MR. SABA:  Good afternoon, Your Honor.  Kaveh Saba

14    on behalf of Plaintiff, PPS Data.

15          THE COURT:  Please proceed.

16          MR. SABA:  Your Honor, the issue in the Daubert

17    motion is that the entirety of Defendants' expert,

18    Dr. Michalson's, non-litigation experience and non -- and

19    knowledge of electronic check processing is that of a

20    consumer with a checking account.  That's what he said

21    repeatedly at his deposition, and Jack Henry did not offer

22    an affidavit to try to explain that testimony away.

23          We believe that it's clearly not enough for him to

24    be qualified as an expert to opine on what we've been

25    discussing, which is what a POSA, a person of skill in the

1  art, in the field of electronic processing would have known

2  in the year 2000.  For example, how were checks processed,

3  what the customary understanding of terms like MICR capture

4  system -- that is magnetic ink character recognition --

5  float processing system, those types of things in the

6  industry of check processing.

7          THE COURT:  Is this the same Dr. Michalson that

8  you thought was qualified enough that you tried to hire him

9  as an expert in this case?

10         MR. SABA:  I believe Your Honor is referring to

11  the email of -- of PPS's counsel to him.  And what I think

12  we said in our briefing and what I would say here is the

13  fact that PPS Data's counsel saw Dr. Michalson's name on a

14  case associated, again, with Jack Henry and decided to

15  reach out to him is not the standard of Daubert.  The

16  standard of Daubert is does that expert himself, in fact,

17  have the qualifications?  That's what -- that's the only

18  thing that's relevant as to the Daubert issue.

19         THE COURT:  But when you reach out to him

20  ostensibly for the purpose of retaining him or at least

21  exploring retaining him as an expert for your side of the

22  case, that goes a long way in telling me that you think he

23  is qualified.  How -- how should I look at it any

24  differently?

25         MR. SABA:  Your Honor, that -- that individual may

1    or may not have believed that based on --

2         THE COURT:  I mean, are you in the -- are you in

3    the business of hiring non-qualified experts?

4         MR. SABA:  No, Your Honor, and -- and you'll note

5    that we didn't actually end up hiring him.  If someone

6    reached out to me and said, you know, we believe you have

7    expertise in this area, I'd be flattered, but I'm not an

8    expert in that area.  That's the fact of the matter.  I

9    wouldn't be qualified to opine on this area.  And I think

10   that's -- that's where the email takes us.  It's -- it's

11   optics, but it's not the actual issue here.

12        And if you look at the actual issue --

13        THE COURT:  Well, Dr. -- Dr. Michalson didn't say

14   I'm not qualified when your side reached out to him.  In

15   fact, he accepted employment by Jack Henry in this case for

16   that -- in that same posture, right?

17        MR. SABA:  That's -- that's true.

18        THE COURT:  So that doesn't indicate that he

19   doesn't believe he's qualified, like your example you'd be

20   flattered, but you'd admit you weren't qualified.

21        MR. SABA:  And you're -- you're right about that

22   distinction.  I only made that illustration to point out

23   that what we need to look at here is the facts of what his

24   experience is.  And what he said at deposition repeatedly

25   was:  You know, I had a checking account.  As a consumer, I

1   dealt with banks.  That was the entirety of his

2   non-litigation experience.

3           Jack Henry in their -- in their briefing, their

4   main position is not actually to dispute the fundamentals.

5   They point to that email, but it's -- it's not to dispute

6   the fundamentals of his lack of experience beyond a

7   layperson.

8           What they say is we're conflating the definition

9   of a POSA with the Daubert issue here.  Well, the

10  fundamental problem with that is in this type of situation,

11  the issue of a POSA is -- is necessarily intertwined with

12  the Daubert issue.

13          Dr. Michalson is offering opinions on invalidity

14  exclusively through the eyes of a POSA and non-infringement

15  for matter.  And in the Federal Circuit case, Sundance

16  versus DeMonte Fabricating, the Federal Circuit said such

17  an expert, to be qualified, must have at least the training

18  and expertise of a person of skill in the art.  In fact,

19  otherwise, it's an abuse of discretion to allow such a

20  person to testify.

21          THE COURT:  Isn't this -- isn't this really in the

22  final analysis a circular argument because it's a factual

23  issue as to the level of skill necessary for a person to be

24  a person of ordinary skill in the art?

25          MR. SABA:  Correct, Your Honor.

```
1            THE COURT:  Not an issue for the Court to decide
2  here.
3            MR. SABA:  Correct, Your Honor.  I say -- I would
4  say two things about that.
5            Number one, the Court does, in fact, decide the
6  person of skill in the art because it comes up in so many
7  issues -- for example, claim construction -- on a routine
8  basis.  It doesn't -- just because it's a factual issue
9  doesn't mean it must be decided by the jury.  It happens in
10  claim construction all the time.
11            In fact, the -- the Federal Circuit has reversed
12  and instituted its own person of ordinary skill definition
13  based on the evidence it's had.
14            And the second issue is -- is if -- if issues that
15  hinge on the person of skill in the art can never be
16  decided at the Daubert stage, if qualification issues,
17  then -- then we might as well moot the Daubert issue
18  altogether, because as in this case, you could have one
19  definition from a party that quite conveniently encompasses
20  their expert and another definition.  And you just say,
21  well, that's an issue for the jury.  And then what happens
22  is the expert, in fact, testifies at trial.
23            So this is an issue for the Court to decide as
24  gatekeeper.  And to do that, the Court does need to decide
25  the -- the -- we would say should decide the person of the
```

1   skill in the art issue.  And we think that's actually quite

2   clear.  I mean, we've been talking all afternoon about

3   electronic check processing.  It would make no sense to

4   exclude that very field from the definition of a POSA,

5   which is what Jack Henry's definition does.

6           Now, I also want to point out that there's this

7   dispute over whether -- I think Jack Henry has said that,

8   well, he -- he's -- he's an expert in this case, or you

9   reached out to him in this case, as Your Honor pointed out.

10  It can't be that his work on this case makes him an expert.

11  It can't be that -- that work -- litigation work on behalf

12  of a party is where you can gain the knowledge that you

13  need.

14          I think one -- one helpful illustration on that is

15  the Federal Circuit in Mintz versus Dietz & Watson pointed

16  out with obviousness and anticipation.  What that requires

17  is, quote, a form of amnesia that forgets the invention and

18  analyzes the prior art and understanding of the problem at

19  the date of the invention.

20          Well, how is Dr. Michalson, whose only specialized

21  knowledge in actual check processing industry experience

22  for the invention come solely from his work for Jack Henry?

23  How could he possibly perform that analysis?  He can't

24  because he has nothing independent to draw back on.

25          I will say this does appear to be a -- somewhat of

1    a unique issue.  And the question, I think, for the Court

2    is can an expert gain this qualification solely by

3    litigation-hired work on behalf of the party offering

4    the -- the expert?  We would say that that -- the answer is

5    no.

6              THE COURT:  Is there some agreement or admission

7    here that the only way this gentleman could have the

8    expertise that is in question is from his work on behalf of

9    the Defendant in this case?

10             MR. SABA:  Well, I would point to Jack Henry's

11   response on this issue, and -- and their response --

12             THE COURT:  You're telling me that the Defendants'

13   position is that the sole and only expertise this gentleman

14   has is acquired through the work he's done for us in this

15   case?

16             MR. SABA:  They also point to another case in

17   which he was hired for Jack Henry.  And that was the Data

18   Treasury I believe PTAB proceedings.

19             The first thing I would say about that is -- is

20   that was in 2012, which is about a -- over a decade after

21   the date of the patents here.  Although more importantly,

22   Dr. Michalson didn't put that in his CV and -- and didn't

23   feel it important enough to do so.

24             Now, at his deposition, when asked about his check

25   processing experience, he didn't actually bring that case

1    up.  That's the sworn testimony on the issue.

2         It's also unclear, what, if any, knowledge about

3    check processing in 2000 that Jack Henry itself believes it

4    gave Dr. Michalson based on that work.  And, of course,

5    it's -- it's Jack Henry's burden as the proponent of the

6    evidence to show that he did gain such expertise.

7         And the last thing I want to say about that is

8    that it -- just -- just in the same way that it can't be

9    his work on this case that renders him, you know, an expert

10   and knowledgeable about check processing, it doesn't make

11   much sense for him to have gained that knowledge while

12   working for Jack Henry as a hired expert in a previous case

13   either.

14        So they do point to that, as well.  I think that

15   is essentially the entirety of the experience they point

16   to.

17        I will say for -- in full disclosure, they point

18   to -- on -- on -- they make one statement about maintaining

19   servers that host a number of websites, several of which

20   involve e-commerce and is familiar with configuring a

21   server to support e-commerce activities.

22        This isn't something Dr. Michalson brought up at

23   his deposition.  Frankly, they didn't mention it in their

24   sur-reply.  I -- I don't think that that is actually

25   something that gave him electronic check processing

1  expertise.

2          THE COURT:  As I understand it, there's really no

3  dispute that this individual is an expert in databases and

4  computer systems.

5          The issue, does -- does he have sufficient

6  familiarity with check processing; isn't that right?

7          MR. SABA:  I believe that's correct.  And to be

8  clear, Dr. Michalson may well have expertise in computer

9  systems.  And we don't dispute that for purposes of this

10 motion.

11         But the Federal Circuit has -- has affirmed

12 numerous times, situations where the patents at issue

13 require specific expertise.  So someone with computer

14 knowledge, not just generally, but someone who actually has

15 some level expertise in the specific area of electronic

16 processing, this is one of those cases.

17         And it's for the reason that we've been talking

18 about all afternoon.  We've been talking about MICR capture

19 systems.  We've been talking about float processing

20 systems.  These aren't things that a computer programmer

21 deals with.

22         In order to understand the plain meaning of those

23 terms, in order to understand what these machines that have

24 been used for decades are, that there's got to be some

25 level of experience.  Otherwise, it just does not meet the

1  Daubert standard in our view.

2          THE COURT:  All right.  Let me hear a response

3  from the Defendant.

4          MR. WIETJES:  Your Honor, Jason Wietjes for the

5  Defendant.

6          THE COURT:  I'll hear your argument if you'll talk

7  slower than you did last time.

8          MR. WIETJES:  Deal.

9          THE COURT:  Go ahead.

10          MR. WIETJES:  So we -- we see this, Judge,

11  similarly to I think how the Court is viewing it, at least

12  based on the -- the questions of the Court, that what

13  they're really doing here is conflating two things.

14          One, the definition of a POSA, which has not been

15  ruled upon or decided by the Court or otherwise with what

16  level of skill in the art one would have to have to be a

17  POSA.

18          And our position is no matter how the person of

19  ordinary skill in the art is defined, the question of

20  whether Dr. Michalson or anyone else meets that definition

21  is a fact question.  The -- the case -- that's what the

22  case law tells us.

23          And so when -- when they're saying that

24  Dr. Michalson is not a POSA in their -- under their

25  definition, which we don't agree with, and, therefore, he's

1    not qualified in this case, we think they're really

2    short-circuiting this analysis in terms of whether or not

3    he's qualified.

4           He's clearly qualified to offer the opinions that

5    he's offered.  All of his opinions relate to computer

6    processing and the things that we've been discussing.

7           He doesn't offer a single opinion or any opinions

8    related to a new or a novel check processing system in the

9    banking sense or in the financial sense.

10          What they seem to be arguing is that to be an

11   expert in this case, you have to have some heightened

12   banking experience or some heightened financial experience

13   that would enable you to offer these opinions.

14          Those are not the kinds of opinions that

15   Dr. Michalson is -- is offering here.

16          Further, Your Honor, I think if you -- if you look

17   at the -- the totality of everything that -- that's been

18   briefed on this, we do think Dr. -- Dr. Michalson has

19   familiarity with check processing.  We've submitted at

20   least several examples of that.

21          And, further, PPS Data has not told us what

22   familiarity with check processing even is.  So there's not

23   a standard in place for the Court to say, okay, on one end

24   of the spectrum, someone has such familiarity, and on the

25   other end of the spectrum, they do not.  They're just

1 making the conclusion that Dr. Michalson has no such

2 familiarity, again, under their own definition of what they

3 think the person of ordinary skill in the art is.

4        If you look at the -- the individuals that have

5 been involved in the development of these systems, that's

6 also enlightening.  They're -- the inventors of the

7 asserted patents, the testimony we've cited to, show that

8 their expertise was not in banking or in financial services

9 in the sense that -- that they're talking about.  They were

10 computer programmers.  They were involved with writing code

11 and those types of things.

12        Similarly, Mr. Brad Quinn.  Mr. Quinn is employed

13 by Jack Henry.  Mr. Quinn is the architect of the accused

14 systems in this case.  He developed them.  He -- he wrote

15 the code for those systems.  Mr. Quinn has testified that

16 he knows very little about banking.

17        And so it begs the question, Your Honor, if -- if

18 the systems that they say are infringed in this case, if

19 the developer and the architect of those systems would not

20 even be a person of ordinary skill in the art, then you

21 start to wonder where the similarities actually lie and how

22 close these -- these systems are to the accused patents if

23 the -- if the person that developed them and -- and wrote

24 the code for them wouldn't even be a person of ordinary

25 skill in the art.

1          So there are a lot of questions at the factual

2    level regarding Dr. Michalson's familiarity with electronic

3    check processing that need to be answered in this context.

4          THE COURT:  All right.  Thank you, counsel.

5          Mr. Saba, I'll give you a brief rebuttal if you

6    want one.

7          MR. SABA:  Your Honor, I'll make three quick

8    points.

9          The first is Jack Henry has said that

10   Dr. Michalson doesn't offer any opinions specific to the

11   banking sense.  That's -- I would say the opposite is true.

12   The majority of his opinions are about banking, MICR

13   capture systems, what was known in the art.  For

14   non-infringement, same thing, whether a MICR capture system

15   exists, whether a float processing system exists.  These

16   are all about banking.

17         The second is what level of familiarity?  Some,

18   any, would -- would be sufficient above any of the rest of

19   us with a checking account.

20         The Court need not decide that right now.  In

21   fact, the Court could just decide that these patents are

22   directed to the relevant field of electronic check

23   processing.  And under that standard, I think what you just

24   heard is Dr. Michalson doesn't have that experience.

25         And the last one is on the inventors, and we noted

1  this -- saw this in their sur-reply, that the inventors are

2  somehow computer programmers.  That's entirely false.

3          The lead inventor, I don't believe, is a formal --

4  formally trained computer programmer at all.  He's worked

5  in the -- the banking industry for his entire career.

6          The same is true as -- of the second inventor.

7  He's been in banking industry, worked for banks, worked on

8  coin sorters, and then MICR capture reader sorters for his

9  entire career.  That is what the Federal Circuit has said

10 is significant to the POSA issue.

11         And that confirms that this is -- that POSA

12 requires electronic check processing which Dr. Michalson

13 simply doesn't have.

14         Thank you.

15         THE COURT:  All right.  Thank you, counsel.

16         One of the primary functions of the jury in any

17 trial is to consider, judge, and determine the weight and

18 credibility of each and every witness.  The Daubert

19 process, in the Court's view, is to ensure that someone

20 wholly unqualified does not attempt to give an opinion as

21 an expert.

22         It is not a process by which the Court should

23 supplant the jury's function of determining the credibility

24 of the witnesses and determining the weight to give to the

25 evidence that they've offered after they have endured the

1    process of careful and targeted cross-examination.

2          I don't think this situation rises to the level of

3    being excluded under Daubert.  I think there's sufficient

4    evidence to find, and the Court finds that Dr. Michalson

5    meets the threshold of familiarity, quote, unquote, with

6    check processing.  And I don't find that there's any

7    dispute that he is an expert in the -- in databases and

8    computer systems.

9          And, finally, I think it's pretty clear that the

10   Plaintiff's attempts to hire him themselves as an expert

11   for the same purpose in this case undercuts their argument

12   that somehow now he's so wholly unqualified that he should

13   be precluded from offering any testimony at trial at all.

14         I'm going to deny the Plaintiff's motion.

15         Also, counsel, before we move on to the next

16   dispositive motion, during the last recess, I did check,

17   and Plaintiff's counsel is right, Mr. Hyland did petition

18   the Court to withdraw.  It was done in conjunction with

19   other matters, and it doesn't show up on the docket sheet

20   as a stand-alone motion, therefore, that's why I missed it,

21   but I'm satisfied that he's properly out of the case.

22         Also, the Court requires that the parties submit

23   for the Court's consideration a joint proposed jury charge

24   and verdict form.  That means a single document where you

25   agree on certain portions of it, and areas where you don't

 1  agree, you set out the Plaintiff's position and the

 2  Defendants' position side-by-side so that it's easy for me

 3  to see where you disagree.  You haven't done that.

 4          Plaintiff submitted their own stand-alone charge

 5  and verdict form.  Defendant submitted their own

 6  stand-alone charge and verdict form.

 7          You all are going to have to comply with the local

 8  rules of this Court and the standing orders of this Court

 9  or I'm going to end up doing some things that I shouldn't

10  have to do.

11          You're going to submit, and I am ordering that you

12  submit, a jointly proposed final jury instruction and

13  verdict form as required by the Court's practice not later

14  than 2:00 p.m. tomorrow.  There's no reason I have to go

15  back and tell you to do that.  There's no reason I have to

16  go back and tell you to file public redacted versions of

17  the sealed documents.  That is sloppy lawyering on both

18  sides, and it needs to stop.

19          Consider yourselves warned.  If I see this

20  continued kind of practice going forward, I'll do more than

21  give you a warning and an opportunity to cure it.

22          All right.  Next is Plaintiff's motion to strike

23  portions of Dr. Michalson's expert report, Document 78.

24          And I'll hear from the moving Plaintiff on this.

25          MR. SON:  Anthony Son for PPS Data.

1          THE COURT:  Go ahead, counsel.

2          MR. SON:  Your Honor, the motion to strike

3    Dr. Michalson's opinions, there are four parts to it.

4          The first two parts that I'll address deals with

5    non-infringement issues.  The first part had to do with

6    source code.  Jack Henry did not produce source code to

7    PPS Data during the course of this case.  They did

8    identify, pursuant to Rule 3-4(a), that there are source

9    codes that are relevant to the operation of their products,

10   but they didn't produce any of the copies of any portion of

11   the source code that their expert had requested and that

12   they have provided to their -- to their expert during the

13   fact discovery phase of this case.

14         They -- they argue that, well, we told you that

15   they were available.  Why don't you go take a look -- look

16   at them?

17         PPS Data did not need the source code and rely on

18   the source code to be able to establish infringement in

19   this case based on their witness testimony, based on the

20   documentation that they had -- already produced.

21         What is relevant and important here for

22   determination of this motion is that we asked them in an

23   interrogatory to identify your non-infringement contentions

24   and identify what documents or things that you have that

25   will support your non-infringement contentions.

1          Notably missing from their response are any

2    mention of source code.  They didn't highlight the fact

3    that they were going to rely on source code as part of

4    their non-infringement defense, that they didn't -- it's

5    not a piece of document that they otherwise had already

6    provided.

7          So we didn't go -- go in with respect to this

8    motion to complain about other documents that they -- that

9    they produced copies of but they didn't specifically

10   identify in response to the interrogatory.

11         Our complaint here is that -- was something that

12   they said that, you know, we would have to come and

13   inspect.  They did not identify that as something in

14   response to the interrogatory where we specifically asked

15   them what documents in evidence do you have to support your

16   non-infringement contentions?

17         The first time we've learned about the reliance on

18   the source code was the connection with their rebuttal

19   expert report, and they do so to try to get around some of

20   what their -- their admissions that were -- that were

21   obtained during deposition and in -- in the documents.

22         Moving on to their non-infringement theories.  In

23   the same interrogatory, they identify several pieces --

24   several categories of how they do not infringe.  They do

25   not identify two non-infringement theories that

1  Dr. Michalson then opines on.

2         The first one we identified in our motion for

3  sum -- or, I'm sorry, in our motion had to do with that

4  there's no transmission of any data to a bank of first

5  deposit for these non-banking customers.  This goes back to

6  that motion for summary judgment that Your Honor just heard

7  testimony about.

8         They did not make a distinction in their response

9  to the Interrogatory No. -- in response to Interrogatory

10  No. 5 between banking and non-banking customers.  They

11  didn't -- that just never was present.

12         We've been prejudiced by that clearly, as you've

13  see now from the -- from the testimony -- from the argument

14  related to the motion for summary judgment of infringement.

15         The second non-infringement theory that was not

16  disclosed but was discussed by Dr. Michalson is what I call

17  the push versus pull transmission of bank of -- to the bank

18  of first deposit.

19         What that deals with is that -- is Jack Henry's

20  non-infringement defense that they do not transmit to the

21  bank of first deposit but rather the bank of first deposit

22  goes to Jack Henry and gets the data that way.

23         Our expert has already opined on -- on this that

24  it doesn't matter one way or the other.  It is the same --

25  it is doing the same thing.  They're both push -- it is a

1  transmission to the bank of first -- first deposit.

2        But that is still, nonetheless, a non-infringement

3  theory that they are -- that Dr. Michalson is advancing in

4  his expert report that was not disclosed to us in their

5  interrogatory responses.

6        Moving on to the third item which is anticipation.

7  There are two parts of this anticipation in our motion.

8        One has to do with the '430 patent, and their

9  disclosure of Archarya, a prior art reference, and whether

10 they can rely on Archarya as being anticipatory for any of

11 the claims of the '430 patent.

12        Dr. Michalson includes Archarya as an anticipating

13 reference.  There is no dispute here and they acknowledge

14 in their response that their -- Jack Henry's invalidity

15 contentions does not identify Archarya as an anticipatory

16 reference for any of the asserted claims.

17        What they argue is that they complied with the

18 3-3(a) and 3-(c) -- (c) -- 3-3(c) requirements for

19 identifying the prior art and for providing a chart of the

20 prior art.

21        But what they did not comply with was the 3-3(b)

22 requirements and identify the specific claims that are

23 anticipated by the Archarya reference, at least with

24 respect to the '430 patent.

25        Similarly, with respect to the '106 patent, Jack

1   Henry's invalidity contentions identified only Lowrey and

2   Gregorie as two prior art references that anticipate any of

3   the asserted claims of the '106 patent.

4         They did chart and identify numerous other prior

5   art references, but in compliance with 3 -- the

6   requirements of 3-3(b), they only relied on Lowrey and

7   Gregorie.

8         But in Dr. Michalson's opening report on

9   invalidity, he also opines that they are invalid for five

10  other references but definitely not and specifically not

11  Lowrey or Gregorie.  He never once discusses Lowrey or

12  Gregorie in -- in his invalidity opinions.

13        Now, in response to our motion, Jack Henry says,

14  but we -- Dr. Michalson incorporated by reference our

15  invalidity contentions, and, therefore, he should be

16  permitted to -- permitted to testify with respect to Lowrey

17  and Gregorie, even though he never provided any opinions

18  with respect to Lowrey and Gregorie and never said that

19  Lowrey and Gregorie are anticipatory.

20        And then, finally, with respect to obviousness, in

21  the invalidity contentions that Jack Henry served, they

22  identified obviousness with the boilerplate statement with

23  respect to each and every patent that simply stated that

24  the obvious -- that all the prior art references that they

25  identify either in the charts or within the contentions

1  that are not charted may be combined with any other

2  reference.

3        They didn't provide a specific motivation to

4  combine.  They didn't provide -- they did not discuss which

5  elements of which of these references would be used.  They

6  didn't identify which primary reference and then which

7  secondary reference would be used for those elements.  That

8  is not in compliance with this Court's jurisprudence on

9  3-3(b).

10        You cannot in this Court as a Defendant simply

11  identify a laundry list of prior art references and state

12  that you can combine any of them.  You, patentee, go figure

13  it out.

14        So we believe that based on their disclosures in

15  their invalidity contentions which failed to identify

16  their -- the specific anticipation defenses and did not

17  identify any obviousness combination, along with their --

18  their responses to our interrogatory related to invalidity

19  contentions that Dr. Michalson should be stricken from

20  testifying with respect to those contentions that he did

21  not -- that were not disclosed.

22        THE COURT:  All right.  Counsel, thank you for

23  your argument.

24        Let me hear a response from Defendant.  Let's take

25  them in the same four order.

1          MR. ALEXANDER:  Randy Alexander on behalf of

2   Defendant, Your Honor.

3          THE COURT:  Go ahead.

4          MR. ALEXANDER:  Your Honor, I think the

5   overarching thing that I would like to present to the Court

6   here is that a lot -- these issues brought to you are

7   essentially an end run around discovery issues that --

8   that PPS Data is now taking issue with well beyond the time

9   with which they should have brought this -- these issues to

10  Jack Henry had they had these issues with -- with these

11  issues.

12         But I will take them in turn.  With respect to the

13  source code, Your Honor, the parties agreed to the entry of

14  a protective order in this case, and that protective order

15  outlines the procedures with which source code in this case

16  would be inspected by the party, and once inspected, if --

17  if production was requested, there are procedures there.

18  The parties agreed to this -- to this protective order.

19         Subsequently, Jack Henry identified that its

20  source code and its -- and its invalidity contentions under

21  3-4(a), identified its source code as having this

22  operational disclosure for the accused products.

23         And then in response to Interrogatory 5, which is

24  the contention interrogatory that PPS Data complains that

25  we do not -- we did not include our source code as a basis

```
 1   for our non-infringement, what I would -- what I would say

 2   there, Your Honor, is, firstly, we -- we did provide

 3   objections and reservations there, those objections being

 4   that it was premature -- the -- the contention

 5   interrogatory was premature at the time, directed to

 6   expert -- directed to subject matter that was more subject

 7   to expert testimony, and -- and also that we reserved the

 8   right to submit those expert reports at a specific time in

 9   this case under the Court's scheduling order.

10        Beyond that, Your Honor, we also stated that the

11   accused products do not infringe because they do not meet

12   each and every element of the claimed invention.

13   Certainly, this is a software case here, so source code, we

14   would expect, would be at issue.

15        For us, we had our -- we wanted to make sure that

16   our expert was apprised of those issues, and once he

17   requested them, of course, he -- he took the -- took the

18   time to review them.

19        We let them know that we do not believe that we

20   infringed because we didn't meet all these elements.

21        And beyond that, we then incorporated by reference

22   our invalidity contention into the Interrogatory 5 response

23   wherein in the invalidity contentions, we had said the

24   source code provides further operational disclosure as to

25   these accused instrumentalities.
```

1          Now, Your Honor, I'd also point out that PPS Data

2     said that -- essentially they've admitted that they are not

3     prejudiced by this issue.  They have claimed that they're

4     okay with their infringement case here, that they don't

5     need the software, that they can go beyond that.

6          So to the extent that -- that this was an issue,

7     they're not prejudiced by it.  But, again, when we made

8     these disclosures, they never once requested to inspect

9     them.  They know this is a software case.  There's code

10    that's at issue underlying these -- these claims.

11         Moving on to the --

12         THE COURT:  Let me hear about the non-infringement

13    contentions.

14         MR. ALEXANDER:  I'm sorry, Your Honor?

15         THE COURT:  Let me hear about the non-infringement

16    contentions, the second issue.

17         MR. ALEXANDER:  The second issue with regard to

18    the transmission elements?

19         THE COURT:  Yes.

20         MR. ALEXANDER:  Yes, Your Honor.

21         So similarly, Your Honor, there -- Interrogatory

22    5, which, again, was directed to their non-infringement --

23    non-infringement -- or our non-infringement positions,

24    we -- again, those -- as I explained earlier, we provided

25    those objections and reservations as to the expert

1  testimony to which they made no challenges at the time.

2  And beyond that, we disclosed generally and specifically

3  Jack Henry's positions which we believe provide the

4  foundation for Dr. Michalson's testimony on these issues

5  for the transmission patent.

6          Generally, again, we point to the fact that the

7  accused instrumentalities do not meet the all elements

8  rule.  They do not meet each and every element of the -- of

9  the claims asserted against Jack Henry.

10          Beyond that, Jack Henry specifically stated that

11  the -- that the accused instrumentalities do not

12  transmit the -- transmit as required by the claims, and

13  that they do not transmit to the bank of deposit and

14  the first -- and -- and the federal -- the maker bank and

15  the Federal Reserve.

16          So, again, we believe that those do provide the

17  foundation for Jack Henry's non-infringement positions for

18  Interrogatory 5 with respect to this issue.

19          And, again, there was no challenge to those.  So

20  to the extent that they were not satisfied by those answers

21  or that they sought more detail as to how they wanted us to

22  explain them, they -- they never reached out to us and

23  asked us to supplement or that they were deficient in any

24  way.

25          And even if the discovery order did require the

1   level of detail to which they're saying is required at this
2   point, I think it goes to show you how the -- how they kind
3   of laid behind the log here and then just waited until
4   later in the case to say, oh, well, you didn't explain it
5   in detail now, so we're seeking to exclude it.
6          We don't believe that that's appropriate to -- to
7   do that in this case, Your Honor.
8          Moving on to the next issue with regard to the
9   anticipation prior art that Dr. Michalson includes in his
10  report.  I'll take the -- the '430 patent first, and
11  specifically that's the one where -- relating to the
12  Archarya reference.
13         There, Your Honor, we -- we believe that -- that
14  we have put PPS Data on notice here.  With -- Archarya is a
15  prior art reference that's -- that's part of this case.
16  There were five -- at the time, there were five patents
17  asserted.
18         Across those five patents, Archarya was cited as
19  anticipatory reference in the claim charts for those
20  contentions.  It's -- it's not new art.  It was cited there
21  and included in the claim charts with respect to each
22  element and how it -- Archarya did not anticipate as to
23  those patents.
24         Now, Dr. Michalson, when reviewing our invalidity
25  contentions, he's -- though our initial thought that

1  possibly Archarya might not have meet -- met all these

2  elements, Dr. Michalson said:  Well, wait a minute, I think

3  that Archarya would go here for the '430 patent.  And he

4  did include it in his expert report.

5       I'll -- I'll admit, Your Honor, it is not listed

6  in the invalidity contentions specifically in the body to

7  say Archarya anticipates Claim X, Y, Z.  But we do believe

8  that there is -- that they were provided notice of this

9  reference specifically with reference to the additional

10  patents in the case here, not the '430, that the patent

11  itself wasn't new, and that there's no -- there's no

12  prejudice to -- to their expert having known what the prior

13  art was that it was being assert -- that it was being

14  addressed in the context of patents that were very similar.

15       And similar arguments go for the '106 here and --

16  go for the '106 patent and the references, the Phillips,

17  the Jones, Slater, Geer '258, and the Archarya.  Again,

18  those references were cited not for the '106 specifically

19  in the body.

20       I will tell Your Honor it was not specifically in

21  the body of the invalidity contentions, but they were

22  included in the -- in the exhibit specific to that patent

23  and listed for nearly all the elements of that patent, even

24  though they weren't listed in the body of the claim.

25       And, again, those prior art references were

1   asserted as anticipatory references against the other four

2   patents that were asserted at the time.

3          To the extent that -- that Dr. Shamos could not --

4   once Dr. Michalson disclosed his opinions as to those

5   anticipatory references, to the extent that Dr. Michalson

6   had a problem to review and analyze that, it is a little

7   bit incredulous because they're not -- they weren't -- they

8   weren't new.  The claims are similar.  The patents are

9   similar.  It's something that he could have done.

10          And not only that, the issue wasn't raised at the

11  time Dr. Michalson had served his report.  Only now, you

12  know, at the very -- at the very end when the dispositive

13  motions are being filed is this -- is this issue brought to

14  us.  So it's a little bit -- we feel a little bit

15  disingenuous to think that they're prejudiced here.

16          With respect to the Gregorie and the Lowrey

17  references that Dr. Michalson does use against the '106

18  patent, Dr. Michalson did incorporate by reference his --

19  the invalidity contentions into -- into his expert report.

20  So we do believe that he does have basis to expound upon

21  those to the extent that these others are excluded.

22          PPS Data would have you believe -- would have you

23  say that you cannot incorporate an expert report by

24  reference in your invalidity contentions, but likewise,

25  you're not able to incorporate by reference in your expert

1    report your invalidity contentions.

2          With respect to the prior art combinations, again,

3    those -- those pieces of prior art were all identified and

4    charted in the exhibits to the contentions.

5          The -- the main body of the contentions notified

6    that these -- that the references included in the

7    contentions could be combined with the additional

8    references charted therein, and -- and that a person of

9    skill in the art would have been motivated -- would have

10   known that -- that you could have made those com --

11   combinations.

12         PPS Data states that, well, there's this mountain

13   of all these combinations that -- that are out there in

14   this case at this point.  Well, it's -- it's a little bit

15   of a product of their own making.

16         The patents themselves contain 10 pages of prior

17   art references, 300 odd non-patent publications that are

18   listed in there that -- that Jack Henry went through and --

19   and determined whether or not these are references that we

20   needed to include.

21         So we took those, we narrowed it down to I want to

22   say something around 32 or so references, and included

23   those in our invalidity contentions.

24         And because of the voluminous nature of them,

25   rather than creating a -- an exhibit that Your Honor might

1   be more familiar with with regard to charting a prior art

2   reference with respect to a patent, what we did is we

3   took -- for Exhibit A, for example, and said for the '430

4   patent, we're going to run down each and every limitation,

5   and for each and every limitation, we're going to include

6   in that limitation where in the -- in each -- in each

7   respective prior art where applicable that limitation is.

8           So you -- you could look at the chart and say, all

9   right, for Claim 1, Element 1, you've got Patent X, Y, and

10  Z.

11          For -- for the second element, you might have X,

12  Y, and then the third element, X, Y, Z.  Well, you would

13  know it'd be a combination and which of those would be the

14  prior -- or the primary and secondary references because

15  they were listed first almost every time for the -- for the

16  charts.

17          There -- we don't believe that there was any

18  guesswork there.  It's more of Jack Henry not going through

19  the ministerial act of saying, here's exactly how you would

20  read these charts, when we felt that those charts were --

21  were enough to notify of what those combinations were based

22  on how we presented it in our invalidity contentions.

23          And Michalson -- Dr. Michalson in his expert

24  report, he doesn't -- he doesn't include anything in his

25  expert report that's not charted that -- that wouldn't be a

1   combination that's not listed in those exhibits, the

2   invalidity contentions.  There's no prejudice there.

3        The -- we -- Dr. Michalson narrowed it down to a

4   handful of -- I want to say five -- prior art references

5   where he's using those com -- those references in

6   combination -- in stand-alone or combinations for

7   invalidity purposes.

8        And, again, knowing that we stated in our

9   invalidity contentions that these -- the references

10  included in those charts would be -- they're combinations,

11  you know, subject to our -- our position there, not once

12  did PPS Data say, hang on, wait a second, this is too much,

13  we want you to stop.  We think -- we think that you should

14  go through the -- the ministerial act of letting us know

15  what these are.

16       It's only, again, until now at this very last

17  moment in this case where they want to say, hey, no, you

18  can't do that.  We may not have caught it earlier, but

19  we're catching it now.  And you can't -- you can't --

20  we're -- we're going -- we're going to say that we're

21  prejudiced by it.

22       But, again, Dr. -- there is no prejudice because

23  Michalson -- Dr. Michalson narrowed it down to -- to a

24  relatively few number of those prior art references.

25       Your Honor, I think at this time, that's all I

1    have.

2           THE COURT:  All right.  Let me see if Plaintiff

3    has a brief rebuttal.

4           Anything further to add, Plaintiff?

5           Let me start out by asking a question.

6           MR. SON:  Yes, sir.

7           THE COURT:  Defense counsel has basically argued

8    that you've laid behind the log, and while they haven't

9    complied with the Court's patent local rules on

10   disclosures, that you never asked them to fix it.  And you

11   knew you should have asked them to fix it, and you waited

12   until late in the case when it was well beyond time and of

13   no real curative effort.  And then for the first time, you

14   brought up these issues that are in the motion before me.

15          I'd like you to respond to that.  Have you laid

16   behind the log?  Did you have -- noticed things needed to

17   be fixed when they weren't disclosed in the first place?

18   Is this a point in the litigation that's so late in the

19   process, it really makes no difference at this point?  I'd

20   like you to respond to the argument that the Defendant gave

21   me in that regard.

22          MR. SON:  And, Your Honor, for point of

23   clarification, are you referring to -- with respect to the

24   non-infringement contentions, or are you referring to with

25   respect to the in -- invalidity?

1            THE COURT:  With regard to basically everything

2    except the source code issue, I heard Defendants argue you

3    never told us that you needed us to supplement, you could

4    have, you should have, you didn't, you laid behind the log

5    and lulled us into a sense of security, and now late in the

6    case, you've pulled this up for the first time, and it's

7    not fair.

8            That's basically what I heard Defendants argue as

9    to the non-infringement, the anticipation, and the

10   obviousness issues.  Not so much as to the source code but

11   as to those other three.

12           MR. SON:  Well, I -- I think the non-infringement

13   issue is the -- exactly the same issue with respect to the

14   source code issue because that had to deal with their

15   response to the interrogatory, and the -- PPS Data

16   certainly had -- should have been allowed to rely on

17   what they told us would be their non-infringement

18   contentions there.

19           Certainly, the parties are always under an

20   obligation under Rule 26(e) to supplement -- seasonably

21   supplement, and Your Honor's discovery order also requires

22   that the parties seasonably supplement to -- to ensure that

23   that would be complete and full.

24           So I -- I think with respect to that issue, it is

25   the same as the source code issue.  It's not that -- this

1   is not a situation where we were lying in wait and being --

2   and feigning surprise at -- at that.

3           The first time we learned about this -- those two

4   non-infringement contentions was when Dr. Michalson

5   provided his expert report -- rebuttal expert report on

6   non-infringement.  It's not something they had -- they had

7   previously disclosed beforehand, nor would we have known or

8   know what they were -- why they believing that they were

9   non-infringing, other than what they had told us in their

10  interrogatory responses.

11          So that would be my response with respect to that.

12          With respect to the --

13          THE COURT:  I guess -- I guess -- I guess that

14  means, counsel, we can't be expected to tell them to update

15  something that we don't know about in the first place.  Is

16  that, in essence, what you're telling me?

17          MR. SON:  Correct, Your Honor.

18          THE COURT:  All right.  Let me hear the rest of

19  your argument.

20          MR. SON:  Correct, Your Honor.  And then that's --

21  that's the same thing with respect to their anticipation --

22  in the invalidity contentions.  We -- we're not the ones

23  who had to figure out which -- which of these references

24  they're going to rely upon as being anticipate --

25  anticipatory.  And we certainly did not expect that with

1    respect to the '106 reference, that we would go beyond --

2    that they would -- they would take an entirely different

3    anticipation argument than what they -- what they had

4    disclosed before to us.

5            THE COURT:  What else?

6            MR. SON:  I think that's it, Your Honor.

7            THE COURT:  All right.  Thank you.

8            With regard to this motion, and particularly

9    beginning with the first issue dealing with the source

10   code, it's clear to the Court that Jack Henry made the

11   source code available for copying and respect -- and

12   inspection as is required by Patent Rule 3-4(a).  And it's

13   clear to the Court that Jack Henry disclosed the source

14   code was relevant evidence.

15           There's no requirement in the local rules or in

16   the rules of evidence that a party must affirmatively

17   disclose the specific portions of the source code that it

18   may use to support its contentions.

19           Consequently, I'm going to deny the Plaintiff's

20   motion as to the source code issue.

21           And I don't find that the Defendants failed to

22   comply with Patent Rule 3-4(a).  In fact, I find that they

23   did comply with it.

24           With regard to the second issue, the

25   non-infringement contentions, I find that the Defendant did

1  not comply with the local patent rules and did not disclose

2  those particular non-infringement positions.

3       Having found that they did not comply with the

4  local rules, there's a four-factor test the Court should

5  consider.

6       One, their explanation for not complying; two,

7  what level of prejudice the other party would be subjected

8  to by their failure to comply; and the importance of these

9  matters to the non-complying party's case; and the fourth

10 factor being whether a continuance is adequate to cure the

11 harm.

12      Applying that four-factor test, I find that the

13 two specific non-infringement contentions at issue being,

14 one, the accused products allegedly do not transmit any

15 data to a bank of first deposit or non-banking customers;

16 and, two, the accused products allegedly do not transmit

17 any data for customers that downloaded files.  Applying the

18 four-factor test, I do not find that these -- that the

19 Defendants' failure to comply with the local rules should

20 be excused.

21      And I'm going to grant the Plaintiff's motion as

22 to those two non-infringement contentions.  And those are

23 struck as not complying with the local patent rules.

24      With regard to the third issue, the anticipator --

25 anticipate -- anticipation references at issue, it's clear

1    to me that the Defendants did not comply with patent Rule

2    3-3.  The disclosure is clearly lacking.  There is

3    prejudice to the Plaintiff.  You can't very well argue the

4    Plaintiff failed to ask us to amend our contentions when

5    the Plaintiff didn't know about these contentions because

6    they were never disclosed in the 3-3 disclosure.

7         With regard to the importance of these to the

8    Defendants' case, there are other anticipation theories

9    other than these, both as to the '430 patent and the '106

10   patent.  Therefore, the importance is not so elevated as to

11   excuse their failure to comply.

12        I'm going to grant the Plaintiff's motion as to

13   the anticipation references.  And, consequently, those

14   references being Archarya as to the '430 patent is struck,

15   and Phillips, Jones, Geer '258, Slater, and Archarya as to

16   the '106 patent is struck.

17        Lastly, turning to the fourth issue, the

18   obviousness combinations, this, to me, is a clear and

19   egregious failure to comply with the local patent rules.

20   You cannot list multiple invalidating references and then

21   say in a simple sentence:  And we may combine these in any

22   way we want to to form some other invalidating combination

23   but you figure it out, we're not going to tell you.

24        The entire purpose of the local rule is to require

25   specific disclosure of combinations and not put the burden

1  on the Plaintiff to figure it out.  This is a clear

2  violation of the local patent rules, and I'm going to grant

3  the Plaintiff's motion in that regard.  And those

4  obviousness -- all these obviousness combinations that

5  could be achieved by Plaintiff figuring out for themselves

6  what they might be are going to be struck.  This

7  effectively is going to strike the obviousness -- excuse

8  me, the -- yeah, the obviousness defenses that the

9  Defendant would assert.

10         It's just a very clear and egregious violation of

11  the local patent rules to stick in this boilerplate

12  language of anything that we can combine here, we're going

13  to assert and we're not going to tell you what it is, and

14  you have to figure it out.  And to say that Plaintiff

15  should have asked you to update and supplement that is --

16  quite honestly, that's incredulous in the Court's view.

17         So on the source code issue, Plaintiff's motion is

18  denied.

19         On the non-infringement contentions as specified,

20  it's granted.

21         On the anticipation references as specified, it's

22  granted.

23         And on the obviousness combinations, based on the

24  wholly inadequate boilerplate catch-all language and a

25  failure to specify any specific combinations, the motion is

1  granted.

2        Now, I understand, counsel, that the motion to

3  strike portions of Dr. Ugone's report, Document 80 --

4  Docket No. 85 of this case, is live before the Court but

5  the parties have jointly requested that the Court determine

6  this based on a review of the papers and will avoid oral

7  argument on that.  Is that still your positions?

8        MR. MAZINGO:  That's still our position, Your

9  Honor, I believe.

10       THE COURT:  Is that still Plaintiff's position?

11       MR. SON:  Yes, it is, Your Honor, and I would go

12  one step further.

13       THE COURT:  I don't need you to go a step further.

14  I'll consider it on the papers, and I'll give you a ruling.

15       MR. MAZINGO:  Thank you, Your Honor.

16       THE COURT:  All right.  There's one other matter I

17  want to mention to the parties.  It's my understanding that

18  Document 80 or Docket No. 80 is effectively moot now

19  because it addresses a matter that's been withdrawn in the

20  case.

21       I want to confirm with the parties that both sides

22  agree that that's effectively moot.  Is that the

23  understanding of both sides?

24       Plaintiff, is that your understanding?

25       Defendant, is that your understanding?

1          MR. HEIDRICK:  Your Honor, Jay Heidrick.

2          Is that the motion to strike Shamos's opinions on

3   the '956 patent?

4          THE COURT:  I believe that's right.

5          MR. HEIDRICK:  If that is so, then, yes, Your

6   Honor.

7          THE COURT:  You agree with that, Plaintiff?

8          MR. SON:  Yes, Your Honor.

9          THE COURT:  Okay.  Then that's denied as moot.

10          All right.  Counsel, before we go any further,

11   let's take a short recess.  The Court will reconvene in

12   about 10 or 15 minutes.

13          The Court stands in recess.

14          COURT SECURITY OFFICER:  All rise.

15          (Recess.)

16          COURT SECURITY OFFICER:  All rise.

17          THE COURT:  Be seated, please.

18          Counsel, during the recess, I've reviewed where we

19   are on this pre-trial.  I know that we have motions in

20   limine to take up and the final issue of disputed exhibits,

21   which will be pre-admitted in advance of the trial.

22          But other than the Ugone matter that I'm going to

23   rule on based on the papers, I've heard argument on the

24   dispositive motions and have ruled on all of them but for

25   the 101 issue, which I've directed you to provide

1  additional briefing on.

2           What I'm saying in so many words is I do not see

3  any compelling basis to go through the remaining MILs and

4  exhibit disputes today.  There's not really any way that we

5  can finish them within the less than an hour that we have

6  left.

7           Consequently, we're going to bring this pre-trial

8  to a close for today.

9           I have set aside time beginning at 1:30 on August

10  the 26th to reconvene and to complete the pre-trial that's

11  outstanding at that point.  I'll re-notice the second

12  pre-trial -- or I'll notice the second pre-trial for August

13  the 26th at 1:30, shortly.

14           I am directing that you continue to meet and

15  confer, particularly on the exhibit disputes, as well as

16  the limine disputes, in the hope that they can be narrowed

17  further from where they are now to where they'll be when we

18  reconvene on the 26th.

19           But given the time that what we've done so far has

20  taken this afternoon and what we have before us, it seems

21  to me the better part of valor is to reconvene on the 26th

22  of August and to let what's happened so far conclude the

23  efforts on pre-trial for today.

24           So with that, I'm going to order you back on

25  August 26th at 1:30.

1              In the meantime, the Court stands in recess.

2              COURT SECURITY OFFICER:  All rise.

3              (Hearing concluded.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              <u>CERTIFICATION</u>

2

3           I HEREBY CERTIFY that the foregoing is a true and

4    correct transcript from the stenographic notes of the

5    proceedings in the above-entitled matter to the best of my

6    ability.

7

8

9    <u> /S/ Shelly Holmes         </u>          <u>8/19/19    </u>
     SHELLY HOLMES, CSR, TCRR                 Date
10   OFFICIAL REPORTER
     State of Texas No.: 7804
11   Expiration Date: 12/31/20

12

13

14

15

16

17

18

19

20

21

22

23

24

25